# EXHIBIT 4

Execution Copy

## SALE PROMOTION CONSULTING AGREEMENT

This Sale Promotion Agreement (the "Agreement"), dated March 27, 2006, is made between Fineman Furniture Co. Inc., a New York corporation (the "Company"), and Planned Furniture Promotions, Inc., a Pennsylvania corporation (the "the Consultant").

The Company is engaged in the retail sale of furniture and home furnishings at an approximately 40,000 square foot showroom and upstairs storage area located at 2182 3rd Avenue, New York, New York, 10035 (the "Showroom", together with the Company's four-story warehouse (the "Warehouse") located adjacent to the Showroom, the "Sale Location"). The Company desires to conduct a high impact promotional sale at the Sale Location and desires to obtain the services of the Consultant (the "Sale").

The parties hereby agree as follows:

1.  **HIRING**

The Company appoints the Consultant as its exclusive consultant to assist the Company to conduct the Sale under the terms and conditions of this Agreement.

2.  **CONSULTANT'S SERVICES**

    2.1. <u>The Consultant Services</u>. The Consultant will:

    (a) provide a team of experienced furniture personnel including a manager and additional sales personnel for the conduct of the Sale. The Consultant will also arrange for administrative, clerical and warehouse personnel, as necessary;

    (b) provide assistance and direction with Sale-related operations including merchandising, display, pricing, tagging, advertising, administrative, sales, delivery, service and other aspects regarding the conduct of the Sale.

    (c) make available the benefit of its buying power to provide Additional Inventory (as defined in Section 5 below) for the Sale, if applicable. The Sale will benefit from all discounts, savings, and price reductions resulting from the Consultant's buying power;

    (d) advance funds for services in preparation of the Sale and for Sale Expenses, in the Consultant's discretion, which advances will be reimbursed to the Consultant from the Sale Account. The Consultant shall advance to the Company on an interest-free basis (advances under this Section 2.1(d) collectively, the "Advance"), on or before the Commencement Date, a sum equal to the greater of: (1) fifty (50%) percent of

<u>**Execution Copy**</u>

the Cost Value (as defined in Section 3 below) on the Company Inventory (as defined in Section 3.1 below) located at the Showroom on the date of the taking of the inventory pursuant to Section 3.1 below or (2) One Hundred Fifty Thousand ($150,000) dollars. The Advance will be remitted to the Company on or before the Commencement Date.

3. **PAYMENTS TO THE COMPANY.**

   3.1. <u>Valuation of the Company's Inventory</u>. Representatives of the Company and the Consultant will take a complete physical count and inspection of the Company Inventory. The "<u>Company Inventory</u>" means the Company's entire inventory of good, clean, matched sets of home furniture that is available for retail sale at the Sale and upon which no customer deposits have been made or taken. Company Inventory excludes any: (i) accessories, odd and unmatched merchandise, clearance, distressed, damaged, unsaleable and/or used merchandise (collectively the "<u>Other Inventory</u>"), (ii) electronics goods ("<u>Electronics</u>"), (iii) appliances ("<u>Appliances</u>") and (iv) inventory held by the Company under a floor plan, locker stock, consignment, or other similar arrangement.

   The Consultant and the Company will value first quality-matched sets of Company Inventory at 100% of its invoice cost plus billed freight (the "<u>Cost Value</u>").

   3.2. <u>Payment of the Cost Value</u>. Once the Advance has been repaid to the Consultant from the Sale Account in accordance with Section 4.3, the Consultant will pay to the Company from the Sale Account (as defined in Section 4.3 below) the Cost Value of the Company Inventory as each item of Company Inventory is sold and delivered.

   3.3. <u>Other Inventory</u>. In addition to payments under Section 3.2, once the Advance has been repaid to the Consultant from the Sale Account in accordance with Section 4.3, the Company will be paid on a weekly basis fifty percent (50%) of the proceeds (excluding sales tax) received from the sale and delivery of Other Inventory.

4. **CONDUCT OF THE SALE**

   4.1. <u>Theme of Sale</u>. The Company and the Consultant will conduct a Sale with a mutually agreeable theme to raise funds, liquidate excess inventory, and improve the Company's financial condition. If such Sale does not achieve its objective, the Company and the Consultant will immediately change the theme of the sale to a "Going Out of Business" sale.

   4.2. <u>Duration of the Sale</u>. The Company will obtain (with the assistance of the Consultant) permits or licenses, if any, that are necessary to conduct the Sale. The Sale will be conducted for up to 120 days from the Commencement Date. The Commencement Date will be on or before April 1, 2006. The Consultant will have unimpeded access to the Sale Location at all times during the Sale and auction. "<u>Commencement Date</u>" means the first day that the Sale Location is open to the public under the advertising and promotion campaign launched by the

2



**Execution Copy**

Consultant. The "Sale Term" means the period from the Commencement Date to the termination of the Sale. In any event, the Sale Term shall expire and the auction, if any, shall be concluded no later than July 10, 2006.

    4.3. **Sale Bank Account.** The Consultant will establish bank accounts controlled by the Consultant (the "Sale Account"). The Consultant will deposit all of the proceeds of the Sale into the Sale Account. On a weekly basis, the Consultant will pay from the Sale Account, in the priority set forth below, the following: (A) first, to pay the Consultant for amounts advanced by the Consultant with respect to the Sale (including the Advance), and to pay the landed factory cost of Additional Inventory; (B) second, to pay the Consultant's Fee, Sales Personnel Commission (as defined below) and payment of salaries and wages to personnel at the Sale; (C) third, to pay other Sale Expenses (as defined below), and (D) fourth, to pay the Company amounts owing under Section 3.2 and 3.3 for the Company Inventory, the Other Inventory under the terms of this Agreement, _provided, however_, that the Consultant may leave a reasonable amount of funds in the Sale Account to pay ongoing Sale Expenses, to fund a net operating loss and to maintain the Sale Account. The Company and the Consultant shall make their respective books and records with respect to the Sale, including the Sale Account, available for inspection by each other during normal business hours upon reasonable notice, such inspection not to unreasonably interfere with the operation of the Sale.

    4.4. **Expenses of the Sale.**

    (a) "**Expenses of the Sale**" means Sale Expenses and Non-Sale Expenses (as defined in this Section). The Company will be solely responsible for payment of all Expenses of the Sale. Sale Expenses will be initially paid from available funds in the Sale Account in accordance with the terms of this Agreement. The Company will pay Non-Sale Expenses from its separate funds. The Consultant will not be responsible or liable for Expenses of the Sale.

    (b) "**Sale Expenses**" means all store-level operating expenses of the Sale which arise during the Sale Term at the Sale Location, limited to the following: (i) rent and all related expenses under the lease relating to the Sale Location (including, without limitation, CAM and property taxes) in an aggregate amount not to exceed $25,000.00 per month on a daily basis; (ii) any special permit or license fees; (iii) liability, casualty and contents insurance; (iv) utility charges; (v) trash removal, (vi) advertising costs; (vii) costs of any Additional Inventory; (viii) lodging expenses for all personnel referred to the Company by the Consultant; (ix) gross compensation paid to the Consultant and all personnel at the Sale, including applicable federal, state and local payroll taxes, and workers' compensation; (x) legal fees for the Sale, (xi) 10% of the Profits of the Sale (as defined in Section 8.1 below), if any, to the manager referred to the Sale by the Consultant, (xii) the Owner's Commission (as defined in Section 6.2 below) (xiii) insurance on Additional Inventory according to Section 5.2 below; and (xiv) the costs and expenses of providing such additional services which the Consultant in its reasonable discretion deems appropriate.

3

**Execution Copy**

(c)     "Non-Sale Expenses" means without limitation the following: (i) non-routine and/or non day-to-day maintenance or repair expenses (including repair expenses to the roof, structural portions and HVAC system at the Sale Location); (ii) executive compensation and employee benefits (including pension benefits, medical benefits, vehicles, vacation pay, sick days, leaves of absence, and severance pay); (iii) any Pre-Sale Order expenses (as defined in Section 4.6 below); (iv) any and all expenses incurred prior to or after the Sale Term; (v) any costs (including, without limitation, maintenance or repair costs) associated with the Appliances or Electronics; (vi) any matters that are the responsibility of the Company or that are unrelated to the Sale.

(d)     If the Consultant incurs an Expense of the Sale, the Consultant will have the right to reimburse itself from funds due to the Company under this Agreement including the Company Inventory and the Other Inventory and their respective proceeds and/or the Profits of the Sale (as defined in Section 8.1 (a) below).

4.5.    Sales Tax.    Sales tax with respect to the Sale will be collected by the Company and the Consultant and will be delivered to the Company or directly to the applicable taxing authority on behalf of the Company.

4.6.    Pre-Sale Orders and Expenses.    The Company will be responsible for satisfying all customer orders for which a deposit was made prior to the start of the Sale (the "Pre-Sale Orders"). Proceeds from the satisfaction of Pre-Sale Orders will be the property of the Company.

4.7.    Existing Assets.    The Sale may make use of, without charge, the Company's furnishings, fixtures, equipment, customer lists and mailing lists, trade names and other intangible rights, computer hardware and software, existing supplies located at the Sale Location, and any other assets of the Company located at the Sale Location.

4.8.    Salaried/Hourly Personnel and Sales (Commission) Personnel.    The Sale shall use the Company's federal and state tax identification numbers with respect to workers' compensation benefits and the payment of salaries and wages to all hourly and salaried personnel at the Sale, such as warehouse and clerical personnel (including those referred by the Consultant). The Company will be reimbursed on a weekly basis for such gross payroll expenses (including actual payroll taxes and workman's compensation) from the Sale Account. The Company's sales persons working at the Sale during the Sale Term will remain employees of the Company. Sales Personnel Commission paid to the Company's salespersons and amounts paid by the Company for medical and retirement benefits will be included as a Sale Expense.

All salespersons and managers referred to the Sale by the Consultant will be independent contractors and will receive their Form 1099s from the Consultant.

4.9. <u>Cooperation; Advertising.</u> The Consultant and the Company shall cooperate and consult on the advertising campaign for the Sale, on staffing and on the Additional Inventory to include in the Sale. The parties shall discuss and agree upon an advertising budget that will maximize the results of the Sale. Except for the first two weeks of the Sale and the last two weeks of the Sale, and unless otherwise agreed to, the advertising budget for the Sale shall not exceed for each week nine (9%) percent of the prior week's written business.

4.10. <u>Replenishment of Inventory.</u> As the Company Inventory and Other Inventory in the Showroom are sold and delivered during the Sale Term and space in the Showroom is made available, Company Inventory and Other Inventory shall be taken from the Warehouse and displayed and offered for Sale in the Showroom.

4.11. <u>Electronics and Appliances Excluded form the Sale.</u> While the Company may engage in the sale of the Electronics and the Appliances during the Sale Term, the Sale does not include nor does this Agreement cover the sale of the Electronics and the Appliances. All proceeds for the sale of Electronics and Appliances, if any, will be remitted to the Company and will not be remitted into the Sale Account.

4.12. <u>Termination.</u> If the Sale is obstructed by a force majeure or the acts of a third party (including, without limitation a governmental agency) such that in the reasonable judgment of the Consultant the Sale will not be profitable, the Consultant will have the right to terminate the Sale upon ten (10) days prior written notice to the Company, and if the Sale is so terminated, the Consultant and the Company will conduct a Final Accounting under Section 8 below.

5. **ADDITIONAL INVENTORY**

5.1. At the Company's request, and at the Consultant's discretion, the Company may obtain additional inventory (the "<u>Additional Inventory</u>") for the Sale. The Consultant will order Additional Inventory on the Consultant's credit lines. The Company hereby grants the Consultant a purchase money security interest in the Additional Inventory and the proceeds therefrom. Upon the Company's default or breach of its representations, warranties or obligations hereunder, the Consultant shall have the right to terminate the Sale and to enforce its security interests and legal and equitable rights and remedies pursuant to the Uniform Commercial Code and applicable law. The Company will sign Uniform Commercial Code financing statements to perfect the security interests contemplated by this Agreement.

5.2. The Company will maintain insurance on the Additional Inventory on the Company's policy in limits reasonably acceptable to Consultant. Proof of payment being current on said insurance shall be furnished to Consultant as a condition prior to Consultant's performance under this Agreement. Consultant will be named as an additional insured and loss payees on the Company's insurance policy and the Company shall furnish proof of said insurance to Consultant upon the reasonable request of Consultant. Consultant shall be entitled to thirty (30) days prior notice of cancellation on all the Company's insurance.

5

**Execution Copy**

6. **CONSULTANT'S FEE AND SALES PERSONNEL COMMISSION**

   6.1. <u>Consultant's Fee</u>. The Consultant shall be paid on a weekly basis, a commission (the "Consultant Fee") equal to nine percent (9.0%) of the delivered gross sales amount of all merchandise sold at the Sale, including rugs. With respect to Additional Inventory, the Consultant's Fee shall be conditioned upon the average gross margin of each week's sales being equal to or greater than forty-two (42%) percent. If such average gross margin during a particular week falls below the applicable gross margin requirement, then sufficient individual sales in which the gross margin was less than such applicable gross margin shall be deducted from that week's gross sales until such applicable gross margin is reached. In such event, Consultant shall be paid the Consultant's Fee based upon the adjusted weekly gross sales amount. During the last fourteen (14) days of the sale, the gross margin requirement for Additional Inventory shall be thirty percent (30%) and otherwise calculated in the same fashion as described above.

   6.2. <u>Owner's Commission.</u> In consideration of the devotion of his entire working time and energy to the performance of service on behalf of the Sale as may reasonably be requested by Consultant, Seymour Fineman will be paid out of the Sale proceeds on a weekly basis a commission equal to one (1%) percent of the delivered gross sales amount (excluding sales tax) of all merchandise sold at the Sale (the Owner's Commission), separately from the Consultant Fee but otherwise on the same terms and conditions as the Consultant Fee.

   6.3. <u>Sales Personnel Commission.</u> Sales persons will be paid a weekly commission (the "Sales Personnel Commission") of five percent (5%) of delivered sales.

7. **AUCTION FOLLOWING THE SALE**

   At the conclusion of the Sale, the Consultant may, on its own or through a third party, conduct an auction of Company Inventory, Other Inventory, and Additional Inventory. The proceeds of such auction will be deposited in the Sale Account. In lieu of the Consultant's Fee, the Consultant will be paid out of the proceeds of the auction, a commission equal to three (3%) percent of the delivered gross sales amount (excluding sales tax) of all merchandise sold at the auction (the "Auction Fee"). The Auction Fee and expenses from the auction will be paid from the Sale Account proceeds. The Cost Value of Company Inventory payable to the Company during an auction will be the lesser of (a) the landed factory cost of an item of Company Inventory sold at such auction, or (b) the auction selling price for such item of Company Inventory (excluding sales tax and delivery charge).

8. **FINAL ACCOUNTING**

   8.1. <u>Determination and Distribution of the Profits of the Sale</u>. At the conclusion of the Sale and auction, if held, the Consultant will calculate and distribute the Profits of the Sale.

**Execution Copy**

    (a)    "Profits of the Sale" means the SUM of:

        (i)    all cash proceeds remaining in the Sale Account after final disbursements are made from the Sale Account in accordance with Sections 4.4(b) and 9; plus

        (ii)    the value of any remaining unsold Additional Inventory, if any, which has been paid for out of the proceeds of the Sale.

    (b)    Distribution of the Profits. The Profits of the Sale will be distributed seventy-five (75%) percent to the Company and twenty-five (25%) percent to the Consultant.

    8.2.    All Additional Inventory remaining, if any, at the conclusion of the Sale will become the property of the Consultant, free and clear of all Liens. The Company shall retain responsibility for Company Inventory and Other Inventory.

## 9.  RESERVE ACCOUNT

The Company and the Consultant will maintain in the Sale Account a mutually agreed upon amount of the Profits of the Sale, not to exceed 1.5% of gross sales, for the handling of chargebacks, customer complaints, and accrued and unpaid Sale Expenses. After 180 days (or shorter period determined by the Consultant), the balance of the reserve in the Sale Account, if any, will be distributed 75% to the Company and 25% to the Consultant.

## 10.  INSURANCE

The Company will increase the limits of its casualty, liability and contents insurance coverage at the Consultant's reasonable request. The Company will indicate the Consultant as an "additional insured" on its liability and casualty coverage, and as a "loss payee" on its property coverage as the Consultant's interests may appear.

## 11.  RELATIONSHIP /LIMITATION OF LIABILITY/DECISIONS

The parties acknowledge and agree that nothing contained in this Agreement will be construed to create a relationship between them as employer/employee, joint venturers, or partners. It is the intention of the parties that each party be deemed independent of the other. Nothing in this Agreement will cause or deem to cause the Consultant to assume or have any liability, directly or indirectly, for any debt or obligation of the Company. The Consultant will have the right to make all final decisions regarding the operation of the Sale and auction.

**Execution Copy**

12. **PRIOR REPRESENTATIONS**

The parties hereto agree that the Consultant has not guaranteed the profitability of the Sale and the Company has not been induced into executing this Agreement by, or has relied upon, any projections of potential profitability of the Sale or other representations. THE COMPANY ACKNOWLEDGES THAT THE SALE MAY RESULT IN A NET LOSS AND THAT THE COMPANY WILL BE RESPONSIBLE FOR PAYMENT OF SUCH LOSS FROM ITS SEPARATE ASSETS (INCLUDING COMPANY INVENTORY).

13. **COMPANY'S REPRESENTATIONS.**

The Company hereby represents, warrants and agrees that:

13.1. The Company is a corporation duly organized and validly existing in good standing under the laws of the state of its organization, with the full power and authority to enter into this Agreement and to consummate the transactions contemplated herein.

13.2. The Company has duly executed and delivered this Agreement and the documents contemplated hereby.

13.3. The execution, delivery and performance by the Company of this Agreement will not violate any material agreement or instrument by which the Company is bound, including any real estate lease or obligation for borrowed money.

13.4. The Company is current with regards to all taxes owed by the Company and there are no outstanding judgments or tax liens against the Company or any of its assets and there are no pending or, to the Company's best knowledge, threatened actions against the Company.

13.5. The Company has good and marketable title to its assets, including, the Company Inventory and Consultant's Collateral, free and clear of all liens. The Company shall not create or permit to exist any lien on any asset of the Company without prior written consent of the Consultant.

13.6. The financial, sales, inventory and other information provided by the Company to Consultant, or hereafter requested by Consultant, are accurate in all material respects and fairly present the financial and business condition of the Company and Consultant has relied on the accuracy of the foregoing information in entering into this Agreement.

13.7. The Company has operated its business in the ordinary course and the Company has not transferred any merchandise to or from the Sale Location in anticipation of the Sale.

8

Execution Copy

13.8. The Company has not conducted any promotional sales event outside the ordinary course of business within thirty days preceding the date of this Agreement.

13.9. All obligations and liabilities of the Company to the Consultant, now existing or later incurred, including, without limitation, the Advance, the Pre-Sale Order expenses, the Expenses of the Sale and any amounts the Consultant advanced or is entitled to be reimbursed are hereby secured by a senior first priority security interest and lien in Consultant's Collateral. "Consultant's Collateral" means all of the Company Inventory and Other Inventory wherever located, now owned or hereafter acquired, and all rights of the Company under the terms of this Agreement, including, amounts due or to become due to the Company under the terms of this Agreement, and all the proceeds (including any insurance proceeds and credit card receivables), products and accessions of and to all of the foregoing.

13.10. It understood that the appropriate officer or director of the Company executing this Agreement has carefully read the entire terms of this Agreement and know and understand its binding effect, and have been advised to take the opportunity to review its terms with an attorney prior to execution.

14. **CONSULTANT'S REPRESENTATIONS**

The Consultant hereby represents and warrants to the Company that:

14.1. The Consultant is a corporation duly organized and validly existing in good standing under the laws of the state of its incorporation, with the full power and authority to enter into this Agreement and to consummate the transactions contemplated herein.

14.2. The execution, delivery and performance by the Consultant of this Agreement has been duly authorized by all corporate action. The Consultant has duly executed and delivered this Agreement.

15. **CONDITIONS OF THE SALE**

This Agreement shall not become effective until any and all third parties with security interests in the Consultant's Collateral consent to the Sale and execute an agreement not to take any action against the Company, the Sale and/or the Consultant, nor exercise their rights and remedies as a creditor or otherwise, until after the termination by Consultant of the Sale.

9

**Execution Copy**

16. **MISCELLANEOUS**

    16.1. <u>Binding Effect; Assignments</u>. This Agreement will be binding upon and inure to the benefit of the Company and the Consultant and their respective, successors and assigns.

    16.2. <u>Notices</u>. Any notice provided for herein will be in writing and will be deemed to have been given when: (i) personally delivered; (ii) when sent by telecopier and confirmed within forty-eight (48) hours by letter mailed or delivered to the party to be notified; or (iii) three (3) days following deposits for mailing by first class registered or certified mail, return receipt requested. Notices will be delivered to the addresses set forth below:

    | | |
    |---|---|
    | If to the Company, to: | Fineman Furniture Co. Inc.<br>2182 3rd Avenue<br>New York, New York 10035<br>Attn: Mr. Seymour Fineman |
    | If to the Consultant, to: | Planned Furniture Promotions, Inc.<br>9 Moody Road<br>Bldg. D, Suites 17-18<br>Enfield, CT 06082<br>Attention: Mr. Roy Hester<br>              Mr. Arvin Pine |
    | with a copy to: | Cohen Tauber Spievack & Wagner, LLP<br>757 Third Avenue<br>19th Floor<br>New York, NY 10017<br>Attention: Y. Jerry Cohen, Esq. |

    16.3. <u>Waiver</u>. No waiver by a party hereto of a breach or default hereunder by the other party will be considered valid, unless in writing signed by such first party.

    16.4. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof, and supersedes any and all prior agreements between the Company and the Consultant, whether written or oral, relating to any or all matters covered by and contained or otherwise dealt with in this Agreement.

    16.5. <u>Amendment</u>. No modification, change or amendment of the Agreement or any of its provisions will be valid, unless in writing and signed by both parties.

10

<u>**Execution Copy**</u>

16.6. <u>Applicable Law</u>. This Agreement will be governed by and construed in accordance with the substantive laws of the State of New York.

16.7. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which will be deemed an original and all of which when taken together will constitute a single agreement.

16.8 <u>Severability</u>. If any provision of this agreement, or the application thereof, to any extent is held by any court of competent jurisdiction to be invalid, illegal, or unenforceable for any reason whatsoever, the remainder of this Agreement, or the application of such term or provision will not be affected thereby.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

FINEMAN FURNITURE CO. INC.

By: _[signature]_
Name: _Seymour Fineman_
Title: _Pres_

PLANNED FURNITURE PROMOTIONS, INC.

By: _[signature]_
Name: _L. R. Hester, Jr._
Title: _V Pres Sales_

11