TAB 2

Westlaw.
Slip Copy                                                                                                    Page 1
Slip Copy, 2007 WL 2049771 (S.D.N.Y.)
(Cite as: Slip Copy)

**H**Gurfein v. Ameritrade, Inc.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Hadassah GURFEIN, individually and on behalf of all others similarly situated, Plaintiff,
v.
AMERITRADE, INC., Defendant.
No. 04 Civ. 9526(LLS).

July 17, 2007.

**OPINION and ORDER**

LOUIS L. STANTON, U.S.D.J.
*1 In this class action alleging violations of state contract law, defendant moves to dismiss the Third Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6).

*BACKGROUND*

The allegations [FN1] arise from frustrations in the execution of plaintiff's orders for sales of options on the American Stock Exchange ("AMEX"). On December 6, 2002, plaintiff, Hadassah Gurfein ("Gurfein") placed a limit-order to Ameritrade to sell fifty Forest Labs December 100 put contracts at the electronically displayed price, yet cancelled it when it had not been executed in less than three minutes. She attempted several more times to sell her shares at prices at or below the electronically displayed bid, yet each time the order was not executed and Gurfein cancelled it. Ameritrade routed Gurfein's orders only to specialists at the AMEX, and never to the Chicago Board Options Exchange or the Philadelphia Stock Exchange where Forest Labs equity options were also listed.

> FN1. The facts of this case are given in detail in the January 26, 2006 and October 13, 2006 Opinions.

On January 26, 2006, the Court dismissed plaintiff's initial claim of federal securities law violations. Plaintiff filed a Second Amended Complaint claiming breach of contract against Ameritrade for failing to execute her options orders instantaneously, which the Court dismissed on October 13, 2006 for failure to state a claim on which relief could be granted. Plaintiff filed this Third Amended Complaint, revising her breach of contract claim to allege that Ameritrade failed to route her orders to multiple market centers and failed to execute her orders at the quoted price, the "best" price, or with the best execution.

Ameritrade moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Third Amended Complaint for failure to state a claim.

*DISCUSSION*

Under Fed.R.Civ.P. 12(b)(6), on a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, a court must accept the factual allegations of the complaint as true, and draw all inferences in favor of the plaintiff. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993)."Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."*Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007) (internal citations omitted). The court may consider exhibits annexed to the complaint or incorporated in it by reference. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

In her Third Amended Complaint, plaintiff alleges that Ameritrade breached its contractual obligations to route her options orders to multiple markets and to execute them at the quoted price, the "best" price, or with the best execution. She bases her contract claim on Ameritrade's Fiscal Form 10-K, the Frequently Asked Questions ("FAQ") page of Ameritrade's website, and the 1999 and 2002 Terms and Conditions [FN2] of her customer agreement. None of those sources imposes those duties on Ameritrade.

> FN2. The 1999 and 2002 Terms and Conditions are attached to Ameritrade's March 9, 2007 Memorandum of Law as Exhibits I and D, respectively.

1.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 2
Slip Copy, 2007 WL 2049771 (S.D.N.Y.)
(Cite as: Slip Copy)

*2 Plaintiff alleges that Ameritrade had the duty to distribute her orders to multiple market centers. See Third Am. Cmplt. ¶ 35 ("when the customer 'clicks' on the represented price ... the transaction would be distributed to multiple market centers and executed"); ¶ 54 ("Ameritrade's agreement called for Plaintiff's order to be distributed to multiple market centers"); ¶ 59 ("the order should have been distributed to multiple market centers for execution upon presentment"); ¶ 65 ("Under the terms of Gurfein's contract with Ameritrade, that limit order and subsequent limit orders should have been distributed to multiple market centers and executed"); ¶ 86 ("Defendant breached its contract with Plaintiff and members of the Class by failing to distribute market and limit orders to multiple market centers").

(a)

The 2002 Terms and Conditions did not impose an obligation on Ameritrade to route plaintiff's orders to multiple market centers. Rather, they stated that "Stock and option orders are routed via an electronic matrix to *an* exchange, listed, Nasdaq *or* over-the-counter agent, electronic communications network or other market *participant*..." 2002 Terms and Conditions ¶ 91 (emphasis added). The Ameritrade Trading Account Handbook, referred to in the 2002 Terms and Conditions, made clear that orders would be routed to only one market. See Defendant's March 9, 2007 Memorandum Ex. J, at 6; Ex. K, at 10 ("Stocks and options can trade on multiple exchanges, but an order may only be placed with one exchange or third market").

(b)

Nor do the 1999 Terms and Conditions oblige Ameritrade to route individual orders to multiple market centers. Rather, they state that "Ameritrade is an order taker that accepts customer orders to buy or sell securities and delivers those orders through Advanced, to the appropriate market or market maker for execution." 1999 Terms and Conditions ¶ 1.

(c)

Plaintiff alleges that the following provision from the FAQ page required Ameritrade to route its orders to multiple markets: "Our sophisticated order routing technology allows us to dynamically distribute orders to multiple market centers. The goal? To seek the best execution of your online order, leveraging a competitive combination of speed, price, and liquidity." Third Am. Cmplt. ¶ 33. However, this general language does not oblige Ameritrade to route each individual order to multiple markets simultaneously. If an individual order was routed to multiple markets at the same time, it would be subject to multiple acceptances simultaneously in multiple markets.[FN3] Industry standards and logic also dictate that there could be no obligation to re-route orders to a second market if they were not promptly filled. A limit sell order sets the minimum price at which the customer is willing to sell an option, and a considerable amount of time may pass before the limit order is marketable on the exchange that receives it. A brokerage firm would have no reason to believe that a limit order needed to be re-routed simply because it was not filled instantaneously. The sources cited by plaintiff do not impose on Ameritrade the duty to re-route Gurfein's orders to another market because they were not executed within three minutes.

> FN3. Plaintiff, now recognizing that fact, says in her April 23, 2007 brief p. 34, that she "does not allege that Ameritrade should have sent plaintiff's trade to multiple markets for multiple executions [but] that Ameritrade failed in its obligation to seek out the best (or indeed any) execution by routing the trades to any other market besides the Amex .... " That is the argument of a duty to provide "best execution," dealt with at page 9 below.

2.

*3 Plaintiff alleges that Ameritrade breached its contract by failing to execute her orders at the prices displayed on her computer screen. The 2002 Terms and Conditions of her customer agreement do not impose that obligation on Ameritrade. Rather, they state:
Orders are routed to the marketplace as promptly as possible in view of prevailing market conditions. However, there can be delays in the processing of orders related to the security being traded, market conditions, manual entry or discretionary order review procedures. *I understand that the price at which an order executes in the marketplace may be different from the prices quoted at the time of order entry.* I also understand that the quoted price may not reflect the trading activity from all markets.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 Terms and Conditions ¶ 92 (emphasis added).

Plaintiff claims the 1999 version of the Terms and Conditions supports her claim of breach by non-execution of her orders at the quoted price. However, the portions of the 1999 Terms and Conditions which contain the words "executed at the 'best bid,' 'best offer,' " etc. apply to stock orders, not the execution of option orders such as plaintiff's. Plaintiff has not pointed to any provision requiring Ameritrade to execute options orders at the quoted price.

3.

The Terms and Conditions of plaintiff's customer agreement contain the following clauses:
All transactions under this Agreement are made subject to the constitution, rules, regulations, customs and usage of the exchange or market and its clearinghouse, if any, where Advanced or its agents execute the transaction.

1999 Terms and Conditions ¶ 28. All my option transactions are subject to the rules and regulations of the Options Clearing Corporation, the Chicago Board Options Exchange or the appropriate options exchange, and the National Association of Securities Dealers, Inc.

2002 Terms and Conditions ¶ 139.

Plaintiff claims that those rules and regulations obligated Ameritrade to execute orders at the best available price (NASD Rule 2320), execute limit orders which matched or were better than the quoted prices (AMEX Rules 126 and 156), and execute orders at the posted quote (AMEX Rule 958A and SEC Rule 11Ac1-1). However, none of those regulations create a private cause of action. No one injured by a failure to comply with those regulations can sue a broker-dealer for failing to follow the rule. Therefore, when those regulatory rules are incorporated into a customer agreement, they do not bring with them a right to sue for an infraction. _SSH Co. v. Shearson Lehman Bros. Inc., 678 F.Supp. 1055, 1058 (S.D.N.Y.1987)_; _Frota v. Prudential-Bache Sec., Inc., 639 F.Supp. 1186, 1190 (S.D.N.Y.1986)_; _Davantzis v. Painewebber Inc._, No. 20032/2000, slip op. at 5 (N.Y. July 23, 2001).

However, Ameritrade is under an independent duty to make reasonable efforts to provide best execution, arising from common law agency principles which require broker-dealers "to use reasonable efforts to maximize the economic benefit to the client in each transaction."_Newton v. Merrill, Lynch, Pierce, Fenner & Smith, 135 F.3d 266, 270 (3d Cir.1998), cert. denied 525 U.S. 811 (1998)_. Plaintiff argues that Ameritrade breached that duty by sending her orders to the AMEX. Its fundamental argument in that respect is that the AMEX had been shown to be a deficient market for the execution of option orders by the SEC's Office of Compliance Inspections and Examinations Report ("OCIE Report"). The OCIE Report does not support plaintiff's claim because:

*4 The OCIE Report reflected a staff review of orders placed during the week of October 22, 2001-more than a year before plaintiff's attempted trades. The review covered ten options classes, which did not include Forest Labs, or over 1500 other options classes traded on the AMEX. It was limited to orders placed through "the three primary direct access firms," not including Ameritrade.... the OCIE Report's conclusions rest on different transactions by different specialists in different options classes, placed through different direct access firms, at times over a year earlier and not involving any defendant in this case.

_Gurfein v. Ameritrade, Inc., 411 F.Supp.2d 416, 426 (S.D.N.Y.2006)_. The SEC did not suggest that those brokerage firms sending orders to other specialists on the AMEX were violating their duty of best execution. As a matter of law, the OCIE Report standing alone is insufficient to establish that the routing by a broker-dealer of options for execution by a specialist on the AMEX not mentioned in the Report breached that broker-dealer's duty to provide best execution.

Indeed, according to the SEC Website, a broker-dealer satisfies its duty of best execution by evaluating orders in the aggregate and periodically assessing which competing markets, market makers, or electronic communications networks offered the most favorable terms of execution, without requiring an individual evaluation of each order. See Defendant's March 9, 2007 Memorandum Ex. G. at 2. The Third Amended Complaint makes no claim that Ameritrade failed to do that.

Thus, the Third Amended Complaint fails to

state a claim on which relief can be granted, and accordingly, is dismissed.

*Leave to Replead*

This is the third motion to dismiss this Court has granted in this case. Plaintiff has twice tried to state a claim for breach of contract and failed to do so. The Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 72 (2d Cir.1996). "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v.. County of Nassau,* 180 F.3d 42, 53 (2d Cir.1999).

Plaintiff's suggested amendment, which would incorporate recent SEC orders, would not cure her inability to state a claim for breach of contract. In those orders, the SEC states that the AMEX had regulatory deficiencies over a period of five years because of its failure to devote the attention and resources needed to ensure its compliance with regulatory obligations. Those orders do not imply that each brokerage firm who routed a customer order for execution on the AMEX in those years failed in its best execution obligation, and it is clear from plaintiff's First Amended Complaint, and the order dismissing it, that the specialist to whom plaintiff's orders were directed was not even mentioned in the OCIE Report. The new orders do not mention any specific options, options specialists, or brokerage firms. Like the OCIE Report, they do not mention Forest Labs or Ameritrade, nor do they provide proof of a breach of ally provision of the contract between plaintiff and Ameritrade.

*5 Plaintiff has had ample opportunity to state a breach of contract claim, her proposed amendment would be futile, and her request for leave to replead is denied.

*CONCLUSION*

Ameritiade's motion to dismiss the Third Amended Complaint is granted with prejudice.

So ordered.

S.D.N.Y.,2007.
Gurfein v. Ameritrade, Inc.
Slip Copy, 2007 WL 2049771 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.