TAB 3

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

▷ Alter v. Bogoricin
S.D.N.Y.,1997.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Hal ALTER, Plaintiff,
v.
Julio BOGORICIN, Rita Bogoricin, Claudio Bogoricin, Julio Bogoricin Real Estate Corp., Julio Bogoricin Real Estate Group, and Julio Bogoricin Real Estate Co., Defendants.
No. 97 CIV. 0662(MBM).

Nov. 6, 1997.

Andrew P. Karamouzis, Esq., King, Pagano & Harrison, New York, NY, for Plaintiff.
Richard M. Resnik, Esq., Mandel & Resnik, P.C., New York, NY, for Defendants.

OPINION AND ORDER

MUKASEY, D.J.

*1 Hal Alter sues Julio Bogoricin, Rita Bogoricin, Claudio Bogoricin, Julio Bogoricin Real Estate Corp. ("JBRE Corp."), Julio Bogoricin Real Estate Group ("JBRE Group"), and Julio Bogoricin Real Estate Co. ("JBRE Co.") for breach of contract, and various contrived tort and statutory claims, arising out the termination of his employment at JBRE Corp. Defendants move to dismiss most of the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, defendants' motion is granted in substantial part and denied in small part.

I.

The facts alleged in the complaint are accepted as true for the purposes of this motion. *Doe v. City of New York,* 15 F.3d 264, 266 (2d Cir.1994). Julio Bogoricin, a resident of New York (Compl.¶ 3), is the president and majority owner of three entities: JBRE Corp., a New York real estate corporation; JBRE Group, a group of real estate companies based in Brazil and doing business in New York and other foreign cities; and JBRE Co., a real estate company based in Brazil and doing business in New York. (*Id.* ¶¶ 6-8) Rita Bogoricin and Claudio Bogoricin have ownership interests in these three entities and assist Julio Bogoricin in their management. (*Id.*) Julio Bogoricin, with the assistance of Rita Bogoricin and Claudio Bogoricin, thoroughly dominates each of these entities, ignores corporate formalities, and commingles corporate funds with personal funds. (*Id.*)

In April 1992, Julio Bogoricin offered plaintiff the executive vice presidency of JBRE Corp.'s New York office. (*Id.* ¶ 15) Thereafter, in early July 1992, Julio Bogoricin and Claudio Bogoricin told plaintiff that he would receive a "sizeable compensation package" if he accepted the position, including: a base monthly salary; an annual bonus; a share of commissions; and at least a 10 percent share of any increase in the value of JBRE Corp.'s real estate portfolio. (*Id.*) Julio and Claudio Bogoricin also assured plaintiff that JBRE Corp. "liked to share" profits with employees and that profit sharing would be a fundamental part of his compensation. (*Id.*)

On July 13, 1992, plaintiff drafted a letter (the "Employment Agreement") summarizing the terms of his employment and compensation. (*Id.* ¶ 17; Resnik Aff., Ex. A) The Employment Agreement provided that in exchange for "overseeing activities of [JBRE Corp.] and other interests of [JBRE Group]" plaintiff would receive: (1) a base salary of $7,500 per month, adjustable for inflation; (2) an annual bonus equal to one month's salary; (3) 10 percent of any commissions received by JBRE Group or JBRE Co. as a result of any business generated by JBRE Corp.; and (4) profit sharing "in the range of 10% but according to a formula yet to be determined." (Compl. ¶ 17; Resnik Aff., Ex. A) The Employment Agreement provided also that plaintiff would receive paid vacation leave and that, unless his employment was terminated for cause, he was entitled to six months notice before termination. (*Id.*) Both plaintiff and Claudio Bogoricin, on behalf of JBRE Corp., signed the Employment Agreement.

*2 From July 1992 through January 1996, JBRE Corp. made substantial financial gains that, plaintiff alleges, were due largely to his efforts. (Compl.¶ 18) These gains generated commissions for both JBRE Group and JBRE Co., and resulted in an increase in the value of JBRE Corp.'s real estate holdings. (*Id.* ¶¶ 18-19) However, during the course of plaintiff's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 2

employment, Julio Bogoricin and JBRE Corp. consistently failed to make either incentive compensation or profit sharing payments to plaintiff. (*Id.* ¶ 20) They failed also to provide plaintiff with documentation proving that plaintiff was not entitled to these payments, but simply told him that such payments were not due or owing. (*Id.*)

In December 1996, Julio Bogoricin instructed the payroll administrator at JBRE Corp. to withhold plaintiff's December salary and his yearly bonus. (*Id.* ¶ 21) When plaintiff arrived at work on January 22, 1997, an attorney for Julio Bogoricin barred him from entering his office and informed him that his employment with JBRE Corp. was suspended immediately. (*Id.* ¶ 22) Plaintiff was not allowed to return to his office to retrieve his personal property. (*Id.*) Julio Bogoricin officially fired plaintiff on January 31, 1997, shortly after plaintiff filed the present action. (*Id.* ¶ 23; Resnik Aff. Ex. B) On February 6, 1997, Julio Bogoricin and JBRE Corp. remitted three payrolls checks to plaintiff totalling $8,273.91. (Compl.¶ 24) Additional facts will appear below, as necessary.

Plaintiff filed the initial complaint in this action on January 31, 1997 and an amended complaint on April 11, 1997.[FN1] He alleges eight claims arising out of the termination of his employment: (1) breach of contract; (2) breach of an implied covenant of good faith and fair dealing; (3) fraud; (4) quantum meruit and unjust enrichment; (5) tortious interference with contract; (6) violation of § 198 of the New York Labor Law; (7) violation of § 4305 of the New York Insurance Law; and (8) conversion. (*Id.* ¶¶ 27-74, 81-84) In addition, plaintiff asks the court to order an accounting of "all monies due and owing to him" (*id.* ¶ 78) and to impose a constructive trust on defendants' funds in a corresponding amount. (*Id.* ¶¶ 75-80) Defendants move to dismiss the first cause of action in part and the second through seventh causes of action in their entirety. (Def.Mem.) In addition, defendants contend that plaintiff is not entitled to an accounting or to the imposition of a constructive trust. (*Id.* at 31-34)

FN1. Hereinafter, all references to the "complaint" are to the amended complaint.

II.

Before addressing the merits of defendants' motion, it is necessary to consider two threshold issues. First, defendants contend that this court does not have subject matter jurisdiction over plaintiff's claims. (Def. Mem. at 7 n.4; Def. Reply Mem. at 2-3) Plaintiff brings this action in federal court pursuant to 28 U.S.C. § 1332(a)(1) alleging diversity of citizenship among the parties and an amount in controversy in excess of $75,000. (Compl.¶ 11) Defendants do not dispute the diversity of the parties. Rather, defendants argue that once I have properly ruled on their motion to dismiss, plaintiff's remaining claims will amount at most to $52,500, a sum below the jurisdictional threshold. (Def. Mem. at 7 n.4)

*3 Defendants' misread the law of diversity jurisdiction. In a diversity case, the court determines the amount in controversy based on plaintiff's allegations "at the time the action is commenced,"*Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir.1994)*, and generally not after a subsequent change such as partial dismissal or summary judgment. *Id.; see also* 15 James Wm. Moore et al., *Moore's Federal Practice* ¶ 102.104(3) (3rd ed.1997) (if diversity jurisdiction existed at time case was filed, it is not affected by dismissal of one or more claims, even though amount recoverable on remaining claims falls below jurisdictional requirement). Even when a plaintiff's allegations leave "grave doubt about the likelihood of recovery of the requisite amount,"*Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir.1982)*, dismissal is not warranted unless it appears " 'to a legal certainty that the claim is really for less than the jurisdictional amount ....' '*Tongkook,* 14 F.3d at 784 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)); *see also Pariente v. Scott Meredith Literary Agency, Inc.,* 771 F.Supp. 609, 614 (S.D.N.Y.1991). Thus, a party invoking federal jurisdiction bears the burden of proving to a "reasonable probability" that the amount in controversy exceeds the jurisdictional minimum. *Tongkook,* 14 F.3d at 784.

Based on the claims for relief alleged in the complaint, I cannot say to a legal certainty that the amount in controversy is really less than $75,000. Plaintiff contends that defendants owe him at least seven months salary-at a rate of $7,500 per month-plus a percentage of commissions and profits. (Compl.¶ 30-33) Plaintiff contends further that this unpaid compensation amounts to over $1 million. (Compl.¶ 34) However doubtful plaintiff's chances of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR    Document 10-4    Filed 01/10/2008    Page 4 of 13

Not Reported in F.Supp.                                                                               Page 3
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

recovering that sum may be, defendants cannot divest this court of jurisdiction it otherwise has through a motion to dismiss under Rule 12(b)(6). St. Paul Mercury, 303 U.S. at 289-90 (events subsequent to filing of action do not oust federal courts of jurisdiction); see also Tongkook, 14 F.3d at 785 (if damages are uncertain, "doubt should be resolved in favor of plaintiff's pleadings"). Accordingly, because I find to a reasonable probability that plaintiff's claims exceed the jurisdictional minimum, this court has subject matter jurisdiction.

The second threshold issue is choice of law. The Employment Agreement does not specify the law that is to govern disputes between the parties, and it is unclear where the parties entered into that agreement. However, the parties rely exclusively on New York law, and neither suggests that another jurisdiction may have a more significant interest in this dispute. See Brink's Ltd. v. South African Airways, 93 F.3d 1022, 1030 (2d Cir.1996), cert. denied,519 U.S. 1116, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997) (under New York choice of law analysis, "law of the jurisdiction with the most significant interest" in dispute controls). Thus, "[u]nder the principle that implied consent to use a forum's law is sufficient to establish choice of law,"Tehran-Berkeley Civil & Envtl. Engs. v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir.1989), I will apply New York law here.

III.

*4 Defendants move to dismiss seven of plaintiff's eight causes of action on the ground that they fail to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must take the facts alleged in the complaint as true and draw all reasonable inferences in the favor of the plaintiff. Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir.1994).

On a motion to dismiss, a court generally may not consider the contents of documents that are extraneous to the complaint. See, e .g., North American Dev., Inc. v. Shahbazi, No. 95-4803, 1996 WL 306538, at *5 (S.D.N.Y. June 6, 1996). However, when a plaintiff fails to attach or to incorporate by reference a document that is integral to the complaint and upon which the plaintiff heavily relies, the court may take that document into account in deciding a motion to dismiss. International Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir.1995); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir.1991), cert. denied,503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992) (if plaintiff had actual notice of document at issue and relied upon it, no need to convert motion to dismiss into motion for summary judgment); see also Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir.1993), cert. denied,510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994) (if court does not consider dispositive document, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach [the] document"). Here, plaintiff has failed to attach to his complaint a copy of the Employment Agreement. However, because plaintiff relies heavily on its terms-which he drafted himself-and because those terms are integral to this dispute, I will consider the Employment Agreement in ruling on the present motion.

A. *Breach of Contract*

Plaintiff's first claim is that defendants are in breach of the Employment Agreement because they: withheld incentive, profit sharing, and salary payments; withheld vacation benefits; failed to give him six months notice prior to termination; and terminated him without cause. (Compl.¶ 30-33) Defendants seek partial dismissal of this claim on two grounds.

1. *Sufficiency of Plaintiff's Alter Ego Allegations*

Defendants assert that plaintiff had a contractual relationship *only* with JBRE Corp., and that therefore this claim must be dismissed as to all other defendants. (Def. Mem. at 9-11) Although plaintiff acknowledges that he entered into the Employment Agreement with JBRE Corp. (Compl.¶ 17), he argues that all other defendants are parties to that agreement because JBRE Corp. is merely the "alter ego" of the other defendants. (Pl. Mem. at 11-12)

*5 New York courts are generally reluctant to rely on a claim that a corporation is the alter ego of its principals as a basis for piercing the corporate veil. Itel Containers Int'l Corp. v. Atlanttrafik

Case 1:07-cv-09749-JSR    Document 10-4    Filed 01/10/2008    Page 5 of 13

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 4

*Express Serv. Ltd.,* 909 F.2d 698, 703 (2d Cir.1990) (citing *Gartner v. Snyder,* 607 F.2d 582, 586 (2d Cir.1979)). A party seeking to pierce the veil must "make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *American Fuel Corp. v. Utah Energy Dev. Co.,* No. 96-7970, 1997 WL 491621, at *3 (2d Cir. Aug.25, 1997); *see also Morris v. New York State Dept. of Taxation and Finance,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11, 623 N.E.2d 1157 (1993). Because it is not necessary to allege fraud in order to pierce the corporate veil, plaintiff's alter-ego allegations are judged by the liberal notice pleading standards of Fed.R.Civ.P. 8(a) rather than the more stringent pleading standards of Fed.R.Civ.P. 9(b). *See Citicorp Int'l Trading Co. v. Western Oil & Refining Co.,* 771 F.Supp. 600, 608 (S.D.N.Y.1991).

Defendants contend that plaintiff has failed to satisfy either prong of this test. However, it is unnecessary to determine whether plaintiff has met the first prong because, even under the liberal pleading standards of Rule 8(e), plaintiff has failed to meet the second prong. *See Morris,* 82 N.Y.2d at 142-43, 603 N.Y.S.2d at 811, 623 N.E.2d 1157 (unnecessary to reach first prong when second prong not satisfied). Under the second prong, plaintiff must allege facts sufficient to establish that defendants "misused the corporate form for [their] personal ends so as to commit a wrong or injustice against" him. *Id.,* 82 N.Y.2d at 143, 603 N.Y.S.2d at 811, 623 N.E.2d 1157. In other words, plaintiff must establish a relationship between the alleged wrong against him and defendants' alleged abuse of the corporate form. *See American Fuel Corp.,* 122 F.3d 130, 1997 WL 491621, at *6 (plaintiff "failed as a matter of law to show the use of the corporate form for a wrongful or fraudulent purpose"). Plaintiff has failed to assert facts that would establish such a relationship in this case.

Read liberally, the complaint demonstrates only that plaintiff entered into a contract with a closely held corporation which is controlled by one or more equity owners who make employment decisions for the corporation. Although plaintiff contends that Julio Bogoricin "ignored corporate formalities, diverted corporate resources and commingled [personal] funds" in his dealings with JBRE Corp., he does not allege that any of these abuses of the corporate form led to a violation of the Employment Agreement. For example, plaintiff does not allege that any of the defendants: furthered their personal interests, rather than those of JBRE Corp., by hiring and then terminating him; misled him into believing that he was entering into an employment agreement with them in their personal capacities; or failed to invest JBRE Corp. with funds sufficient to pay him.

*6 In short, plaintiff has not established that the wrong allegedly committed against him-the breach of contract-is related to any misuse of the corporate form. *See Mass v. McClenahan,* 893 F.Supp. 225, 234 (S.D.N.Y.1995) (in employment termination case, no reason to pierce corporate veil when defendant did not act in furtherance of his personal interest or mislead employee). In essence, plaintiff seeks to convert a breach of contract claim against his former employer, JBRE Corp., into multi-party litigation based solely on the unexceptional fact that in closely held corporations the owners typically make the employment decisions. Accordingly, the breach of contract claim is dismissed as to all defendants except JBRE Corp.

2. *The Profit-Sharing Provision*

Defendants contend also that the breach of contract claim should be dismissed against JBRE Corp. to the extent that it alleges a violation of the profit sharing provision of the Employment Agreement. The Employment Agreement provides that "[p]rofit sharing shall be in the range of 10% but according to a formula yet to be developed, including the determination of accrued value in the event of termination." (Resnik Aff., Ex. A) Defendants argue that this provision is only an "agreement to agree" and therefore unenforceable. (Def. Mem. at 12-13)

Under the "definiteness doctrine," New York courts will not enforce a material contract term if it is impossible to determine "what in fact the parties have agreed to ...." *166 Mamaroneck Ave. Corp. v. 151 East Pond Road Corp.,* 78 N.Y.2d 88, 91, 571 N.Y.S.2d 686, 687, 575 N.E.2d 104 (1991) (citation omitted); *see also Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher,* 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 249, 417 N.E.2d 541 (1981) ("definiteness as to material matters is of the very essence in contract law"). Thus, " 'a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." ' *166 Mamaroneck,* 78 N.Y.2d at 91, 571 N.Y.S.2d at 687, 575 N.E.2d

104 (quoting *Martin,* 52 N.Y.2d at 109, 430 N.Y.S.2d at 249). A compensation clause is sufficient and enforceable only if the amount of compensation can be determined "in accordance with the terms of the agreement without any further expression by the parties." *Benevento v. RJR Nabisco, Inc.,* No. 89-6266, 1993 WL 126424, at *5 (S.D.N.Y. Apr.1, 1993).

New York courts refuse to apply the definiteness doctrine rigidly, however. *166 Mamaroneck,* 78 N.Y.2d at 91, 571 N.Y.S.2d at 687, 575 N.E.2d 104. "Thus, where it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, the court should endeavor to hold the parties to their bargain." *Id.* 78 N.Y.2d at 91, 571 N.Y.S.2d at 688, 575 N.E.2d 104 (citation omitted). In *Martin,* the Court of Appeals recognized two situations in which a court could attach a definite meaning to an otherwise indefinite term: (1) if the agreement contained "a methodology for determining [the missing term] ... within the four corners of the [agreement]," or (2) if the agreement "invited recourse to an objective extrinsic event, condition or standard on which the amount was made to depend." 52 N.Y.2d at 110, 436 N.Y.S.2d at 250-51, 417 N.E.2d 541;*see also 166 Mamaroneck,* 78 N.Y.2d at 92-93, 571 N.Y.S.2d at 688, 575 N.E.2d 104 (concluding that lease provision providing for arbitration to determine rental price was enforceable because it established a method for calculation).

*7 In this case, the Employment Agreement-which plaintiff drafted himself-does not specify the share of profit plaintiff is to receive. It provides only that such share "shall be in the range of 10% ...." More important, it leaves the precise determination of this share to a future "formula yet to be developed...." This statement strongly suggests that the parties left the profit sharing provision to future negotiations, particularly when one considers the precision with which the Employment Agreement addresses other terms of plaintiff's compensation. Moreover, the Employment Agreement neither contains a methodology for developing a profit sharing formula nor refers to an extrinsic standard, event or condition from which such a formula could be calculated. *See Martin,* 52 N.Y.2d at 110, 436 N.Y.S.2d at 251, 417 N.E.2d 541. Accordingly, even drawing all reasonable inferences in favor of plaintiff, I find that, by its very design, the profit sharing provision is an agreement to agree and therefore unenforceable under a breach of contract theory.

B. *Breach of an Implied Covenant of Good Faith and Fair Dealing*

Plaintiff's second claim alleges a breach of an implied covenant of good faith and fair dealing. Plaintiff bases this claim on allegations that defendants failed to provide him with financial records that would have allowed him to calculate his incentive compensation and profit sharing payments, and barred him from entering his office after his termination. (Compl.¶ 39, 41-42) Defendants move to dismiss this claim on the ground that it duplicates the breach of contract claim. (Def. Mem. at 14-16; Reply at 7-8)

New York courts recognize an implied covenant of good faith and fair dealing in every contract. *Apfel v. Prudential-Bache Securities, Inc.,* 183 A.D.2d 439, 439, 583 N.Y.S.2d 386, 387 (1st Dep't 1992), *modified on other grounds and affirmed,*81 N.Y.2d 470, 660 N.Y.S.2d 433 (1993). This covenant ensures that "neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract ...."*M/A-COM Sec. Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir.1990) (per curiam). However, the covenant of good faith and fair dealing is not distinct from the underlying contract, *see Geler v. National Westminster Bank USA,* 770 F.Supp. 210, 215 (S.D.N.Y.1991), and therefore, "[a]s a general rule, '[t]he cause of action alleging breach of good faith is duplicative of a cause of action alleging breach of contract ...." '*OHM Remediation Servs. Corp. v. Hughes Environmental Systems, Inc.,* 952 F.Supp. 120, 124 (S.D.N.Y.1997) (quoting *Apfel,* 183 A.D.2d at 439, 583 N.Y.S.2d at 387);*see also Canstar v. J.A. Jones Constr. Co.,* 212 A.D.2d 452, 453, 622 N.Y.S.2d 730, 731 (1st Dep't 1995) ("[A] breach of an implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from a breach of the contract."). In fact, one court in this district recently has observed that every court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative. *See W.S.A., Inc. v. ACA Corp.,* Nos. 94-1868, 94-1493, 1996 WL 551599, at *9 (S.D.N.Y. Sept. 27, 1996), *modified on other grounds on reconsideration,*1996 WL 735508 (Dec. 20, 1996) (Haight, J.).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR     Document 10-4     Filed 01/10/2008     Page 7 of 13

Not Reported in F.Supp.                                                                                          Page 6
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*8 Plaintiff acknowledges the general rule against duplicative claims. (Pl. Mem. at 12) He seeks to avoid its application on the ground that defendants committed "separate and distinct wrongful acts" by: (1) refusing to provide financial documents pertaining to his compensation; (2) concealing of financial information and documents; and (3) barring him from entering his office to retrieve his personal belongings. (*Id.* at 13-14) Plaintiff contends that these three acts support a separate claim for breach of an implied covenant of good faith and fair dealing.

This contention is unpersuasive. With respect to the first two of these acts, the relief sought by plaintiff "is intrinsically tied to the damages allegedly resulting from [the] breach of contract ."*Canstar,* 212 A.D.2d at 453, 622 N.Y.S.2d at 731. That is, the damages plaintiff seeks as a result of defendants' alleged failure to turn over financial information is identical to the damages he seeks for the alleged breach of contract-in both instances, unpaid compensation. That plaintiff did not allege withholding or concealment of financial information in the breach of contract portion of his complaint does not mean that those acts support a separate claim for breach of an implied covenant of good faith. *See W.S.A., Inc.,* 1996 WL 551599, at *9 (bifurcating breach of contract allegations does not create two separate causes of action).

The third alleged "act"-barring plaintiff from entering his office-also fails to state a claim for breach of an implied covenant of good faith and fair dealing. To the extent this "act" is intended to show that defendants violated the Employment Agreement by refusing to allow plaintiff to come to work, it duplicates the breach of contract claim. To the extent that this "act" is intended to show that defendants wrongfully refused to allow plaintiff to retrieve his property *after* firing him, it treats events outside the employment contract and essentially restates plaintiff's claim for conversion. In either case, the act of barring plaintiff from entering his office does not give rise to a separate, cognizable claim for breach of the implied covenant of good faith and fair dealing. Accordingly, plaintiff's claim that defendants violated an implied covenant of good faith and fair dealing is dismissed.

C. *Fraud*

Plaintiff's third claim is for fraud and deceit. He alleges that defendants fraudulently induced him to enter into the Employment Agreement, and fraudulently concealed financial information from [him] in order to avoid paying his compensation and to "induce him to continue to expend his best efforts" at JBRE Corp. (*Id.* ¶ 45-50) Defendants move to dismiss this claim on the grounds that it fails to satisfy the special pleading requirements of Fed.R.Civ.P. 9(b) and duplicates the breach of contract claim. (Def. Mem. at 17-23) Although it is arguable whether plaintiff's allegations satisfy Rule 9(b), there is no need to address this issue. Even if fraud has been pleaded with sufficient particularity, plaintiff has failed to establish that the alleged fraud gives rise to a separate cause of action.

*9 As a general rule, "no cause of action for fraud is stated or exists where the only fraud charged relates to a breach of the employment contract." *Dalton v. Union Bank of Switzerland,* 134 A.D.2d 174, 176, 520 N.Y.S.2d 764, 766 (1st Dep't 1987). (Pl. Mem. at 16) However, as plaintiff points out (Pl. Mem. at 16), New York courts allow a litigant simultaneously to maintain a fraud and a breach of employment contract claim provided he either: "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract ... or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 20 (2d Cir.1996). Plaintiff does not contend that defendants owed him a separate duty outside the contract. Rather, he contends that, because the profit-sharing provision of the Employment Agreement is not enforceable, defendants' promises regarding profit sharing constitute a "collateral oral agreement" that fraudulently induced him to enter into the Employment Agreement. (Pl. Mem. at 17) *See OHM Remediation Servs. v. Hughes Envtl.,* 952 F.Supp. 120, 123 (N.D.N.Y.1997) (fraud claim permissible if based on "an agreement not integrated into the contract at issue, such as a collateral oral agreement").

This argument has two fundamental flaws. First, it collapses the issues of collateralness and enforceability. A "collateral agreement" is one that is extraneous to the terms of the contract. *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d at 20. However, the subject of profit sharing was explicitly incorporated into the terms of the Employment Agreement. Simply because it was incorporated in such a way as to render it unenforceable does not make profit sharing,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR    Document 10-4    Filed 01/10/2008    Page 8 of 13

Not Reported in F.Supp.                                                                                                Page 7
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

or the negotiation leading up to the Employment Agreement, the subject of a "collateral agreement." The second flaw in plaintiff's argument is that he drafted the Employment Agreement himself. His claim that he was fraudulently induced by pre-contractual promises is defeated by the stark fact that it was within his power to incorporate those promises-in enforceable terms-into the Employment Agreement. His failure to do so reflects either his own inconvenient candor or his lack of foresight, but not fraud.

For similar reasons, plaintiff's contention that defendants withheld financial documentation while he was employed at JBRE Corp. also fails to state a separate claim for fraud. To the extent that plaintiff alleges that defendants fraudulently avoided their payment obligations, this claim is redundant to the breach of contract claim. To the extent that plaintiff alleges that defendants fraudulently induced him "to continue to expend his best efforts" at JBRE Corp., he has not alleged that he sustained any separate damages not recoverable under his breach of contract claim. See _R.H. Damon & Co. v. Softkey Software Prods. Inc.,_ 811 F.Supp. 986, 992 (S.D.N.Y.1993) (fraud claim not separately maintainable where plaintiff does not "allege that [he] sustained damages in addition to those [he] could have anticipated in the event of a breach"). Accordingly, plaintiff's third cause of action alleging fraud and deceit is dismissed.

D. *Quantum Meruit and Unjust Enrichment*

*10 In his fourth claim for relief, plaintiff alleges that defendants have been unjustly enriched because they have "reaped the economic benefits of [his] substantial work and efforts" without adequately compensating him with a yearly bonus, vacation benefits, incentive compensation payments, or profit sharing payments. (Compl.¶ 57) Defendants move to dismiss this claim on the ground that the doctrines of quantum meruit and unjust enrichment are not available when the parties have executed an express contract. (Def. Mem. at 23-24)

The equitable doctrines of quantum meruit and unjust enrichment are related. Quantum meruit, which means "as much as he deserves," is based on the concept that " 'no one who benefits by the labor and materials of another should be unjustly enriched thereby ...." '_Allstate Ins. Co. v. Administratia Asigurarilor De Stat,_ 948 F.Supp. 285, 312 (S.D.N.Y.1996) (quoting *Black's Law Dictionary* 1119 (5th Ed.1979)). Thus, a claim of quantum meruit is the means by which an unjust enrichment is remedied. See _Allstate,_ 948 F.Supp. at 312. Both doctrines are quasi-contractual in nature and apply only in the absence of an express agreement. *See, e.g.,* _Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,_ 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190 (1987). Thus, "the existence of a valid and enforceable written contract governing a particular subject matter" generally precludes recovery on a theory of quantum meruit or unjust enrichment for events arising out of the same subject matter. _Randall v. Guido,_ 655 N.Y.S.2d 527, 528 (App. Div. 1st Dep't 1997).

With respect to his right to compensation other than profit sharing, plaintiff's attempt to avoid this general rule is unavailing. He points out that Fed.R.Civ.P. 8(e)(2) permits a litigant to assert inconsistent theories of recovery and that therefore a party may "sue on a contract and at the same time alternatively repudiate the agreement and seek recovery on a quantum meruit claim ...." 5 Charles Allen Wright & Arthur R. Miller, _Federal Practice and Procedure_ § 1283, at 535-37 (1990). The defect in the plaintiff's argument is that nowhere in his complaint does he repudiate the Employment Agreement. Indeed, with the exception of plaintiff's right to a share of the profits, there is no dispute that the terms of plaintiff's compensation are governed by the express provisions of the Employment Agreement. *Compare* Compl. ¶ 61 ("the Employment Agreement has been and continues to be a valid, binding contract in full force and effect") *with* Def. Mem. at 24 (defendants "do not dispute that there is an Employment Agreement governing ... the present action"). Plaintiff cannot circumvent those otherwise valid provisions by invoking the quantum meruit doctrine as an alternative theory of recovery.

With respect to his right to profit sharing, plaintiff's quantum meruit claim stands on a different footing. As discussed above, the profit sharing provision of the Employment Agreement is too indefinite to be enforced under a breach of contract theory. In similar circumstances, New York courts have suggested that a wrongfully terminated employee may pursue a quasi-contract claim for unpaid profit sharing at the same time that he seeks salary benefits under a breach of contract theory. See _Varney v. Ditmars,_ 217 N.Y. 223, 232, 111 N.E. 822 (1916) (dictum); _Hardy v. Erickson,_ 36 N.Y.S.2d 823, 825 (N.Y.Sup.1942); *see also* _Benevento,_ 1993

Case 1:07-cv-09749-JSR    Document 10-4    Filed 01/10/2008    Page 9 of 13

Not Reported in F.Supp.                                                                                     Page 8
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

WL 126424, at *8 (citing *Varney* ); 1 E. Allen Farnsworth, *Farnsworth on Contracts,* § 3.30, at 371 (1990).

**\*11** In *Varney,* for example, the plaintiff, an architect employed at a weekly wage of $40, had been promised by his employer that he would "receive a fair share of [the company's] profits." 217 N.Y. at 225, 111 N.E. 822. After being discharged, the plaintiff sought to recover contractual damages in the form of unpaid salary benefits and a "fair and reasonable share" of the profits. Although the Court of Appeals concluded that a promise to share a "fair" amount of the profits was too "indefinite and uncertain" to enforce, *id.* at 228, 111 N.E. 822, it stated that "if the work actually performed [by the plaintiff] was worth more than $40 per week, he ... could, on a proper complaint [alleging quantum meruit], recover its value less the amount received." *Id.* at 232, 111 N.E. 822.

Similarly, in *Hardy,* the plaintiff entered into an employment contract at a minimum salary of $500 per month for the first six months of employment and, thereafter, at "an amount as should be agreed upon between the parties." 36 N.Y.S.2d at 824. After being dismissed, plaintiff brought suit alleging that he was entitled, not only to a base salary of $500 per month, but also to the value of his services above that amount. The court upheld his claim against a motion to dismiss, stating:

> The complaint sets up an existing, valid and enforceable contract for personal services. It is complete as to all terms except the additional compensation over the tentative minimum rate, and contains a provision for the fixing of that additional compensation at a later day. Assuming that it had never been fixed the plaintiff may still be permitted to recover upon quantum meruit.

*Id.* at 825.

To be sure, *Varney* and *Hardy* are not recent decisions. Yet they exemplify a court's equitable power to prevent unjust enrichment, even where the parties have a valid contract as to most of the relevant terms of compensation. Thus, if plaintiff can establish that his services at JBRE Corp. were worth more than the damages, if any, he may be able to collect under the Employment Agreement, he is entitled to prevent unjust enrichment by recovering a share of JBRE Corp.'s profits. *See* 1 Farnsworth, § 3.30, at 371 (if promise to share profits is unenforceable for lack of definiteness, employee may have restitution of reasonable value of services in excess of contract wages).

Thus, defendants' motion to dismiss plaintiff's quantum meruit claim is denied with respect to plaintiff's claim to a share of the profits in excess of any contractual damages. The motion is granted with respect to all other contract issues expressly covered by the Employment Agreement. Further, because plaintiff had an employment relationship only with JBRE Corp. and because he has not alleged that the other defendants received unjust enrichment that was separate or distinct from that obtained by JBRE Corp., he may pursue this quantum meruit claim only against JBRE Corp.

E. *Tortious Interference with Employment Contract*

**\*12** Defendants move next to dismiss plaintiff's claim of tortious interference with his employment contract. Plaintiff alleges that, Julio Bogoricin, Rita Bogoricin, Claudio Bogoricin, JBRE Group and JBRE Co. "intentional[ly], malicious[ly] and willful[ly]" caused JBRE Corp. to violate the Employment Agreement by terminating plaintiff's employment. (Compl.¶ 63-64)

Under New York law, a plaintiff must allege four elements to state a claim for tortious interference with contract: "(1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach; and (4) damages." *Foster v. Churchill,* 87 N.Y.2d 744, 749-50, 642 N.Y.S.2d 583, 586, 665 N.E.2d 153 (1996). In order to state a claim for tortious interference, a plaintiff must allege facts sufficient to establish that the defendant actually interfered with the contract. *See Graal Enters. Ltd. v. Desourdy Int'l 1949 Inc.,* No. 95-0752, 1996 WL 353003, at *7 (S.D.N.Y. June 26, 1997); *EDP Hosp. Computer Sys., Inc. v. Bronx-Lebanon Hosp. Ctr.,* 212 A.D.2d 570, 571, 622 N.Y.S.2d 557, 558 (2d Dep't 1995).

In this case, plaintiff has failed entirely to allege facts sufficient to establish that Rita Bogoricin, Claudio Bogoricin, JBRE Co. or JBRE Group interfered with his contractual relations with JBRE Corp. Indeed, in his memorandum of law, the only "facts" plaintiff could point to in support of this claim are those asserted in paragraphs 20-25 of the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR   Document 10-4   Filed 01/10/2008   Page 10 of 13

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 9

complaint, all of which relate to Julio Bogoricin's actions. (Pl. Mem. at 20) Although a district court is required to accept as true all well-pleaded allegations in deciding a motion to dismiss, it is not required to accept as true conclusory allegations for which there are no factual underpinnings. See *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir.), cert. denied, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996) ("conclusory allegations unsupported by factual assertions [fail] even the liberal standard of Rule 12(b)(6)") (quotations omitted). Plaintiff's tortious interference claim against Rita Bogoricin, Claudio Bogoricin, JBRE Co. and JBRE Group is devoid of such underpinnings.

Plaintiff's only possible claim for tortious interference is against Julio Bogoricin. Although defendants contend that Julio Bogoricin cannot be considered a "third party" to the employment contract, New York courts have permitted an employee to sue the equity owner of his corporate employer for tortious interference provided that the interference was motivated by malice toward the employee. See *Foster,* 87 N.Y.2d at 750, 642 N.Y.S.2d at 587, 665 N.E.2d 153; *Felsen v. Sol Cafe Mfg. Corp.,* 24 N.Y.2d 682, 687, 301 N.Y.S.2d 610, 614, 249 N.E.2d 459 (1969); see also *American Protein Corp. v. AB Volvo,* 844 F.2d 56, 63 (2d Cir.), cert. denied, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). The rationale behind this rule is that the immunity from suit that equity owners generally enjoy should not extend to decisions that are not made for economic reasons. *Foster,* 87 N.Y.2d at 750, 642 N.Y.S.2d at 587, 665 N.E.2d 153. In this case, plaintiff has alleged that the Julio Bogoricin acted with malice in causing JBRE Corp. to fire him. (Compl.¶ 64) Although defendants may choose to attack this bare allegation at a later evidentiary stage, the allegation-as it relates to state of mind-appears to be sufficient to withstand a motion to dismiss. See *Preferred Health Care Ltd. v. Empire Blue Cross & Blue Shield,* No. 94-9326, 1997 WL 160489, at *3, (S.D.N.Y. Apr.7, 1997); *In the Matter of Sunrise Sec. Lit.,* 793 F.Supp. 1306, 1325 (E.D.Pa.1992) (malice may pleaded generally in tortious interference claim); cf.Fed.R.Civ.P. 9(b) ("malice ... may be averred generally"). Accordingly, defendants' motion to dismiss plaintiff's claim for tortious interference is granted with respect to Rita Bogoricin, Claudio Bogoricin, JBRE Co. and JBRE Group and denied with respect to Julio Bogoricin.

F. *Section 198 of New York's Labor Law*

*13 Defendants move to dismiss plaintiff's fifth claim alleging a violation of § 198 of New York's Labor Law. Subsection 1-a of § 198, upon which plaintiff's claim is based, provides that

[i]n any action instituted upon a wage claim by an employee ... the court shall allow such employee reasonable attorney's fees and, upon finding that the employer's failure to pay the wage required by this article was willful, an addition amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due.

Plaintiff contends that, by withholding compensation and other benefits properly owing under the Employment Agreement, defendants are liable for attorney's fees and liquidated damages under this section. (Compl. ¶¶ 66-71; Pl. Mem. at 22-23)

There are two flaws in this argument. First, § 198 does not stand alone. It sets forth the remedies available in "actions for wage claims founded on the substantive provisions of Labor Law article 6."*Gottlieb v. Kenneth D. Laub & Co.,* 82 N.Y.2d 457, 464, 605 N.Y.S.2d 213, 217, 626 N.E.2d 29 (1993). In *Gottlieb* for example, the plaintiff alleged "only a common-law contract cause of action and a second cause of action for a 'violation of Labor Law section 198'...."*Id.* 82 N.Y.2d at 460, 605 N.Y.S.2d at 215, 626 N.E.2d 29. He did not allege a violation of the provisions of article 6. The Court of Appeals dismissed his § 198 claim, reasoning that the New York legislature intended that section to apply only when a plaintiff has brought a "wage claim" under a separate statutory provision in article 6. *Id.* 82 N.Y.2d at 463-64, 605 N.Y.S.2d at 217, 626 N.E.2d 29. In this case, as in *Gottlieb,* plaintiff has not brought a wage claim under the provisions of article 6. Accordingly, he cannot pursue the statutory remedies available for such a claim.

*Gottlieb* suggests a second fundamental flaw in plaintiff's § 198 claim. In *Gottlieb,* the Court of Appeals recognized that the Labor Law does not apply to "employees serving in an executive, managerial or administrative capacity." *Id.* 82 N.Y.2d at 461, 605 N.Y.S.2d at 216, 626 N.E.2d 29;seeN.Y. Labor Law § 190(4-7) (McKinney 1986 & Supp.1997); see also *Cohen v. Fox-Knapp, Inc.,* 226 A.D.2d 207, 208, 640 N.Y.S.2d 554, 555 (1st Dep't 1996) ("the salary claim of an executive is not within the purview of Labor Law § 198"). In this case, the

Case 1:07-cv-09749-JSR   Document 10-4   Filed 01/10/2008   Page 11 of 13

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 10

complaint states explicitly that plaintiff served as the "vice-president" of JBRE Corp.'s New York office (Compl.¶ 15), a position that gave him "full authority to act and bind [JBRE Corp.] and its subsidiaries." (Id. ¶ 77, 640 N.Y.S.2d 554) It is impossible to imagine how plaintiff could not be considered an executive.

Plaintiff unsuccessfully attempts to avoid this classification by arguing that, at the time of his termination, he was suspended and therefore no longer serving in an executive capacity. (Pl. Mem. at 23) It is true, as plaintiff points out, that the Appellate Division in Cohen held that a former executive could recover under § 198 because he was working as a salaried salesman, rather than an executive, at time of his termination. 226 A.D.2d at 208, 640 N.Y.S.2d at 555. However, nothing in the holding of that case suggests that an executive who is suspended prior to termination ought to be considered a non-executive employee for purposes of § 198. Such a reading would make the availability of § 198 contingent, not on the position held by the employee, but on the procedure used by the employer to fire him. This result "would afford a windfall remedy to litigants whom the [New York] Legislature consciously chose *not* to afford the protections and benefits of the wage payment regulatory provisions of the Labor Law."*Gottlieb,* at 465, 605 N.Y.S.2d 213, 626 N.E.2d 29, 605 N.Y.S.2d at 218. Accordingly, plaintiff's claim for attorney's fees and liquidated damages under § 198 of New York's Labor Law is dismissed.

G. *Section 4305(e)(2)(A) of New York's Insurance Law*

*14 Plaintiff claims that defendants violated § 4305(e)(2)(A) of New York's Insurance Law. The following additional facts, taken from the complaint, are relevant to this claim: On March 1, 1997, one month after plaintiff's termination on January 31, 1997, JBRE Corp. sent plaintiff a letter informing him that he had the right to continue his group health insurance policy. (Compl.¶ 26) The letter provided that plaintiff had to send a written notice to JBRE Corp. of his intent to continue health insurance "within sixty days of [[his] termination date [January 31, 1997], or complete the attached COBRA election form and return the same directly to [JBRE Corp.] prior to April 1, 1997." (Id. ¶ 26)

Plaintiff contends that the continuation notice sent by JBRE Corp. violated § 4305(e)(2)(A) of the Insurance Law. That section provides:

An employee ... who wishes continuation [of the group health coverage] must request such continuation in writing within the sixty day period following the later of: (i) the date of [his] termination; or (ii) the date the employee is sent notice by first class mail of the right of continuation by the group policyholder.

Plaintiff argues that, because he did not receive the continuation notice until March 1, 1997, and because that date was later than the date of his termination, he should have had sixty days from that date-or until April 30, 1997-to request continuation. However, the letter sent by JBRE Corp. stated that plaintiff had to request continuation either within 60 days from the date of his termination-that is, by March 31, 1997-or by April 1, 1997. Either way, plaintiff contends, the notice sent by JBRE Corp. was defective because it gave him only about 30 days to elect continuation of group health insurance, rather than the 60 days guaranteed by § 4305(e)(2)(A). (Pl. Mem. at 24)

Plaintiff's argument misconstrues the obligations and rights created by § 4305(e)(2)(A). First, that section is directed to employees, not employers. *See* N.Y. Insurance Law § 4305(e)(2)(A) (McKinney 1997) ("[a]n employee who wishes continuation of coverage must request ...") It does not mandate the contents of a continuation notice; it merely provides that an employee has a two-month window to respond once he receives such notice. Second, contrary to the import of plaintiff's argument, nothing in § 4305(e)(2)(A) suggests that an inaccurate continuation letter may serve to reduce the time in which an employee may request continuation. The 60-day period is statutorily mandated and does not depend on the accuracy of a continuation letter.

Notably, plaintiff does not allege that the defective continuation letter misled him into believing that the statutory notice period was less than 60 days or that he had lost his right to request continuation. Indeed, plaintiff's actions belie any such allegation. Plaintiff filed his amended complaint on April 11, 1997-alleging a violation of § 4305(e)(2)(A)-19 days before the expiration of the 60 day period. Thus, I must assume that, as of the date of the amended complaint, plaintiff was aware of § 4305(e)(2)(A) and the rights conferred under that statute. His failure to request either a continuation of health coverage or an extension of time in which to

Case 1:07-cv-09749-JSR    Document 10-4    Filed 01/10/2008    Page 12 of 13

Not Reported in F.Supp.                                                                                                Page 11
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

request such a continuation-if there was such a failure-moots the defective notice. Accordingly, plaintiff's sixth claim alleging a violation of § 4305(e)(2)(A) of New York's Insurance law is dismissed.

IV.

*15 Defendants move also to dismiss plaintiff's claim for equitable relief in the form of an accounting and a constructive trust. Plaintiff alleges that he is entitled to a "full accounting [of] all monies due and owing" under the Employment Agreement and to the imposition of a constructive trust over such monies. (*Id.* ¶¶ 78-80) Defendants object to these remedies, principally on the ground that plaintiff was only an employee of JBRE Corp. and therefore not entitled to such equitable relief. (Def. Mem. at 31-34) For the reasons stated below, plaintiff's requests for these forms of relief are stricken.

A. *Accounting*

" 'The right to an accounting is premised upon the existence of confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest.' " *Adam v. Cutner & Rathkopf,* 656 N.Y.S.2d 753, 759 (App. Div. 1st Dep't 1997) (quoting *Palazzo v. Palazzo,* 121 A.D.2d 261, 265, 503 N.Y.S.2d 381, 384 (1st Dep't 1986)). An accounting is unavailable when the parties have only an employee-employer relationship. See *Michnick v. Parkell Products, Inc.,* 215 A.D.2d 462, 462-63, 626 N.Y.S.2d 265, 266 (2nd Dep't 1995); *Reichert v. MacFarland Builders, Inc.,* 85 A.D.2d 767, 767, 445 N.Y.S.2d 264, 264 (3rd Dep't 1981); *see also* 1 N.Y. Jur.2d § 30, at 183 (1979).

Plaintiff's claim for an accounting founders on these principles. Although plaintiff, as a corporate officer of JBRE Corp., may have owed some fiduciary duty to the corporation, defendants did not owe plaintiff a similar duty not to fire him or to withhold his compensation. To the extent that these actions were wrongful, they were wrongful because they violated the Employment Agreement, not because defendants were "in breach of [a] duty imposed" by a fiduciary obligation owed to the plaintiff. *Adam,* 656 N.Y.S.2d at 759;*cf. Waldman v. Englishtown Sportswear, Ltd.,* 92 A.D.2d 833, 835-36, 460 N.Y.S.2d 552, 556 (1st Dep't 1983) (mere fact that employer owes money to employee does not make employer a fiduciary). That plaintiff may have expected to share some profits in the corporation does not change this conclusion. New York courts have held that an employee may not compel an accounting if, as here, the employment relationship entails only a sharing of profits, not a sharing of losses. *Reichert,* 85 A.D.2d at 767, 445 N.Y.S.2d at 265. In such a case, the employer is not considered a fiduciary of or joint venturer with the employee. *See Michnick,* 215 A.D.2d at 462-63, 626 N.Y.S.2d at 266.

The "other special circumstances" that plaintiff alleges-defendants' withholding of compensation and concealment of financial information (Compl. ¶ 20, 35; Pl. Mem. at 26)-do not justify an accounting. These circumstances establish only that defendants may have breached the Employment Agreement.

B. *Constructive Trust*

*16 Plaintiff's request for a constructive trust fails for similar reasons. A constructive trust may not be imposed unless four elements have been established: a confidential or fiduciary relationship, a promise, a transfer made in reliance on that promise, and unjust enrichment. *In Re Koreag, Controle Et Revision, S.A.,* 961 F.2d 341, 352 (2d Cir.), *cert. denied,*506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992). Thus, a constructive trust is generally not available in the absence of a breach of fiduciary duty. See *Smallwood Estates, Inc. v. Nikola,* 163 A.D.2d 763, 764, 558 N.Y.S.2d 725, 726 (3d Dep't 1990); *see also* 106 N.Y. Jur.2d § 163, at 207 (constructive trust imposed where "by virtue of a fiduciary relationship, one has obtained property in derogation of his duties as" fiduciary). As noted, plaintiff has failed to allege a breach of fiduciary duty.

Plaintiff contends that New York courts have not applied the fiduciary requirement rigidly. See *In Re Koreag,* 961 F.2d at 353. Perhaps. But, it is equally true that the constructive trust is an equitable doctrine that applies only when equity so demands. *Id.* at 352. Under the circumstances of this case, in which plaintiff is protected from any unjust enrichment under a theory of quantum meruit and in which the gravamen his claim is a simple common-law breach of contract, there is no reason to impose a constructive trust on assets of defendants.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR     Document 10-4     Filed 01/10/2008     Page 13 of 13

Not Reported in F.Supp.                                                                 Page 12
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

3

For the above reasons, defendants' motion to dismiss is granted as to the following claims: breach of covenant of good faith and fair dealing, fraud, violation of § 198 of New York's Labor Law, and violation of § 4305 of New York's Insurance Law. Defendants' motion for partial dismissal of the breach of contract claim is also granted. Defendants' motion to dismiss plaintiff's claims for quantum meruit and tortious interference with contract is granted in part and denied in part. Finally, plaintiff's requests for equitable relief in the form of an accounting and a constructive trust are stricken.

SO ORDERED:

S.D.N.Y.,1997.
Alter v. Bogoricin
Not Reported in F.Supp., 1997 WL 691332 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.