# TAB 4

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

HW.S.A., Inc. v. ACA Corp.
S.D.N.Y.,1996.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
W.S.A., INC. d/b/a Harmon Contract, Plaintiff,
v.
ACA CORPORATION and Westchester Fire Insurance Company, Defendants.
ACA CORPORATION, Plaintiff,
v.
W.S.A., INC. d/b/a Harmon Contract, American Home Assurance Company and St. Paul Fire and Marine Insurance Company, Defendants.
Nos. 94 Civ. 1868 (CSH), 94 Civ. 1493 (CSH).

Sept. 27, 1996.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, Senior District Judge:

*1 In these consolidated breach of contract actions, W.S.A. Inc. d/b/a Harmon Contract ("Harmon") moves under Rule 15(a), Fed. R. Civ. P., to dismiss the second amended complaint filed by ACA Corporation ("ACA"), and to dismiss five counts of ACA's original complaint under Rule 12(b)(6). ACA opposes both motions, which the other named parties have neither joined nor opposed. There is diversity jurisdiction, under U.S.C. § 1332, in each of the consolidated actions. In the first action, Harmon, a Minnesota corporation, has brought suit against ACA, a Connecticut corporation, and Westchester Fire Insurance Company ("Westchester"), a New York corporation with its principal place of business in New Jersey. The second action has been brought by ACA against Harmon, and ACA seeks to add as defendants American Home Assurance Company ("American Home"), a New York corporation, and St. Paul Fire and Marine Insurance Company ("St. Paul"), a Minnesota corporation.

BACKGROUND

A. *Factual History*

These actions are the result of the souring of a sub-contractual relationship between Harmon and ACA. The account of this rupture contained in ACA's complaint,[FN1] which I must accept as true for purposes of Harmon's Rule 12(b)(6) motion, is as follows:

In April, 1992, the City of New York hired Morse Diesel International ("MDI") as the general contractor of a project to construct a 500 cell addition to the Otis Bantum Correctional Center on Rikers Island (the "Project"). (ACA Compl. ¶ 7; Second Am. Compl. ¶ 9). On June 15, 1993, MDI sub-contracted with Harmon for the design and construction of the exterior wall panel system (the "curtainwall") for the Project. (ACA Compl. ¶ 8; Second Am. Compl. ¶ 10). Harmon, in turn, solicited a bid from ACA for the installation of this curtainwall. (ACA Compl. ¶¶ 9-10; Second Am. Compl. ¶ 11). ACA's bid of $1,112,238, was based on a novel and allegedly "easier" curtainwall design provided by Harmon. The bid was accepted by Harmon in a contract dated July 23, 1993. (ACA Compl. Ex. 5; Second Am. Compl. ¶ 6). In discussions between the parties, Harmon agreed to provide the materials and specifications necessary for ACA to complete the task in a timely fashion. (ACA Compl. ¶ 15; Second Am. Compl. ¶ 17).

Problems between Harmon and ACA developed as soon as the job commenced. Harmon decreed that work was to begin at 8:00 A.M. on July 19, 1993. When ACA's team arrived, however, the requisite materials had not yet been delivered. When the materials did arrive a few days later, they were insufficient to sustain continuous work. (ACA Compl. ¶¶ 18-19; Second Am. Compl. ¶ 22). Over the course of ACA's work, this pattern continued. In a fax sent to Harmon on July 27, 1993, ACA complained that it had been delayed two weeks from the original schedule, and was nearly out of work due to the lack of materials and design drawings. (ACA Compl. ¶ 20; Second Am. Compl. ¶ 23). ACA continued to complain on a regular basis that its work was being delayed because of a lack of readiness on the worksite by other non-ACA crews; lack of timely delivery of the necessary design drawings from Harmon; intermittent delay-causing changes in Harmon's designs; lack of timely delivery of the requisite building materials; and, delivery of the wrong size or quality of certain materials. (*See* ACA Compl. ¶¶ 21-24; Second Am. Compl. ¶¶ 24-27).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 2
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*2 For its part, Harmon complained that ACA's workers were not devoting sufficient hours to the task, and it threatened to terminate the contract if this situation was not corrected. (ACA Compl. ¶ 31; Second Am. Compl. ¶ 35). By letter dated January 6, 1994, after the targeted completion date, Harmon notified ACA that it was in default, and that payments would be withheld until "performance in the field immediately improved."(ACA Compl. ¶ 32; Second Am. Compl. ¶ 36).

Ultimately, the relationship could not be salvaged. Under a Harmon directive, ACA boosted manpower to 20 for the weekend of January 22-23, 1994. (ACA Compl. ¶¶ 38, 40; Second Am. Compl. ¶¶ 44, 46). This effort was fruitful and by Monday, January 24, 1994, the job was virtually complete. (ACA Compl. ¶ 41; Second. Am. Compl. ¶ 47). Nevertheless, ACA's on-site supervisor was notified on January 24, 1994 that the contract had been terminated by Harmon, and that ACA was no longer allowed on the project site. (ACA Compl. ¶¶ 42-43; Second Am. Compl. ¶¶ 48-49). On that same date ACA received a letter, dated January 21, 1994 -- prior to the weekend's work -- stating that ACA was being "terminated from [its] obligations at Rikers Island project due to breach of contract ...."[FN2] (ACA Compl. ¶ 42; Second Am. Compl. ¶ 48). Harmon's lockout prevented ACA from retrieving some of its equipment and tools. (ACA Compl. ¶43; Second Am. Compl. ¶ 49).

*B. Procedural History*

The contentious nature of the dispute at issue is manifested in this case's convoluted procedural history. A complaint was first filed by Harmon on March 14, 1994, naming ACA and Westchester, ACA's surety, as co-defendants. That complaint presented claims for breach of contract and failure by Westchester to pay moneys owed, and demanded compensatory relief. On March 17, 1994, ACA filed its own complaint against Harmon, raising claims for breach of contract, quantum meruit, negligence, intentional misrepresentation, negligent misrepresentation, conversion, breach of implied bailment, tortious interference with economic relations, and breach of the implied covenant of good faith and fair dealing. ACA sought compensatory damages on all claims, as well as punitive damages for the tort claims. The two actions were consolidated by stipulation of the parties which was signed by this Court on April 28, 1994.[FN3]

On April 20, 1994, Harmon filed an answer to ACA's complaint. Less than a week later, on April 26, 1994, ACA purported to serve an amended complaint, adding a single claim on Harmon's bond against Harmon's sureties, American Home and St. Paul. (ACA Am. Compl. ¶¶ 108-111). In direct correspondence between the parties, Harmon objected to ACA's Amended Complaint, arguing that under Fed. R. Civ. P. 15(a), ACA was required to seek permission to file an amended complaint after an answer had been submitted. (Cohen Aff. Ex. A). Harmon and ACA then agreed between themselves that the parties would stipulate to the filing of a second amended complaint on the condition that ACA would voluntarily withdraw the Amended Complaint. (Cohen Aff. Ex. B). In short order, the parties signed a stipulation to a second amended complaint, which was approved by this Court on June 28, 1994. (ACA Mem. Opp. Mot. to Dismiss Second Compl. Ex. A). That stipulation labeled ACA -- which had begun the action as plaintiff -- as "Counterclaim Plaintiff." It also characterized defendant Harmon as the "Counterclaim Defendant." (ACA Mem. Opp. Dismiss Second Compl. Ex. A).

*3 ACA sent a second amended complaint to Harmon on June 10, 1994, (Harmon Rep. to ACA Mem. in Opp. at n. 1), but it was never filed with the Court. According to ACA, the Court Clerk rejected the pleading on the ground that ACA had titled the parties in the second action as "Plaintiff" and "Defendant," and therefore the pleading did not match the titles of "Counterclaim Plaintiff" and "Counterclaim Defendant" specified in the stipulation.[FN4](ACA Mem. Opp. Dismiss Second Compl. at 7).

As if all this were not sufficiently unkempt, on September 23, 1994, ACA's bank filed an involuntary petition against ACA under Chapter 7 of the U.S. Bankruptcy Code. (ACA Second Compl. ¶ 51). As a result of that filing, Harmon's claims against ACA were automatically stayed, as this Court acknowledged by order dated December 5, 1994. The stay was ultimately lifted by the bankruptcy court, and the proceedings in this Court were ordered resumed on May 8, 1995.

The litigation has since rekindled. Even before the stay was lifted, on May 1, 1995, Harmon filed a Motion for Partial Dismissal pursuant to Rule

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 3

12(b)(6). In that motion, Harmon sought dismissal of ACA's claims for negligence, intentional misrepresentation, negligent misrepresentation, tortious interference with economic relations, and implied covenant of good faith and fair dealing. On May 26, 1995, ACA filed a second amended complaint with the Court -- now with the parties in the second action titled, "Counterclaim Plaintiff" and "Counterclaim Defendant" to match the stipulation. The Second Amended Complaint, like the original complaint, includes claims against Harmon for breach of contract, quantum meruit, conversion, breach of implied bailment, tortious interference with economic relations, and breach of the implied covenant of good faith and fair dealing. The Second Amended Complaint does not include the claims for negligence and negligent misrepresentation raised in ACA's initial complaint, and reformulates the claim of intentional misrepresentation as fraud in the inducement. Finally, the Second Amended Complaint adds a claim for monies purportedly owed to ACA by Harmon's sureties, American Home and St. Paul.[FN5]

Harmon now moves for dismissal of this Second Amended Complaint on grounds that under Fed. R. Civ. P. 15(a), ACA did not procure permission to file the pleading, and that in any case such permission should not be granted because the Second Amended Complaint is prejudicial, untimely in adding new parties, and ultimately futile.

I will first consider Harmon's Motion to Dismiss the Second Amended Complaint, and will then proceed to the Rule 12(b)(6) motion.

*DISCUSSION*

A. *Motion to Dismiss the Second Amended Complaint*

A party may amend its pleadings after a responsive pleading has been filed "by leave of court or by written consent of the adverse party."Fed. R. Civ. P. 15(a). Once the adverse party has consented to an amendment of a pleading, the court has no control over the matter under Rule 15(a). The pleader's right to amend is not subject to the court's discretion and the court must permit the amendment to be filed. Bilmar Drilling, Inc. v. IFG Leasing Co., 795 F.2d 1194, 1199 (5th Cir. 1986); Fern v. U.S., 213 F.2d 674, 677 (9th Cir. 1954); 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1490 at 700 (1990).

*4 The underlying policy of the Federal Rules of Civil Procedure, as evidenced in their liberal approach to pleading and amendment, is to have cases decided on the merits. Foman v. Davis, 371 U.S. 178, 181-82 (1962); U.S. v. Hougham, 364 U.S. 310, 317 (1960). Thus, a mere technical mistake in an amended pleading will not defeat an otherwise valid amendment: "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."Conley v. Gibson, 355 U.S. 41, 48 (1957).

ACA's entitlement to file a Second Amended Complaint turns on the interpretation given the Stipulation to a Second Amended Complaint of June 28, 1994. The Stipulation reads:
It is hereby stipulated and agreed, by and between the undersigned attorneys for the parties hereto, that Counterclaim Plaintiff ACA Corporation may file a Second Amended Complaint.
(ACA Mem. Opp. Dismiss Second Compl. Ex. A)

The plain wording of this stipulation gives ACA the right, free from the interference or oversight of the Court, to submit a Second Amended Complaint on any chosen date.

Harmon attempts to negate the force of this stipulation by insisting that it refers only to the June 10, 1994 Second Amended Complaint. Toward this end, Harmon states that the June 10 Complaint was specifically "referenced in the June 28, 1994 stipulation."(Harmon Reply Second Am. Compl. at 3). However, there is no mention of any particular second amended complaint in, on, or around the stipulation. (*See* ACA Mem. Opp. Dismiss Second Compl. Ex. A). Harmon's argument therefore fails. Harmon goes on to insist that the May 26, 1995 Second Amended Complaint "was *never* supplied to Harmon before it was filed and therefore, *could not* have been consented to."(Harmon Reply Second Am. Compl. at 3)(emphasis in original). This argument is also without merit. Harmon misinterprets Rule 15(a) as stating that a party can only consent to an amendment after having that amendment in hand. (Harmon Reply Second Am. Compl. at 3). There is no such requirement apparent in the text of the Rule. Rather, Rule 15(a) leaves the parties to consent to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR    Document 10-5    Filed 01/10/2008    Page 5 of 10

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

amend as they so choose, without the interference of the court. Moreover, it is not alleged anywhere that the May 26, 1995, Second Amended Complaint differs, except in the caption names, from the June 10, 1994 edition.[FN6] Thus, Harmon gives no indication that it did not have notice of any of the claims to be raised in the May 26, 1995, Second Amended Complaint by dint of receiving the failed June 10, 1994 version thereof.

In any case, even if the two versions of the Second Amended Complaint were different, it would be contrary to the spirit of the Federal Rules to bar ACA's May 26, 1995, Second Amended Complaint on merely technical grounds. ACA's June 10, 1994 version of the Second Amended Complaint was rejected by the Court Clerk for the sole reason that the caption did not match the caption of the stipulation. (*supra* at 6-7). These titles have no bearing on the merits of the case and should not be dispositive of whether ACA can submit a properly captioned second amended complaint. *Cf. Speed Products Co. v. Tinnerman Products, Inc., 222 F.2d 61, 68 (2d Cir. 1955)*(where two actions had been consolidated, "it made no difference whether [a] claim should be stated by an amendment in the first action or by complaint in the second action").

*5 There is one obstacle to the filing of ACA's amended complaint, however, which is not so easily surmounted. Although Harmon consented to the complaint's filing, the two sureties which WSA seeks to name as additional defendants were not parties to the stipulation, and thus have never agreed to permit ACA's amendment. Moreover, Harmon contends that ACA's complaint is untimely as to these defendants.

The fact that one defendant has agreed to permit the filing of an amended complaint is not binding on any additional defendants that the complaint seeks to add. *CFTC v. American Metal Exchange Corp., 693 F. Supp. 168, 189 (D.N.J. 1988); Madery v. Int'l Sound Technicians, Local 695, 79 F.R.D. 154, 156 (C.D. Cal. 1978)*. Rather, leave of the court must be obtained as to the newly added parties.[FN7] *See* Fed. R. Civ. P. 21 ("Parties may be dropped or added by order of the court ....").

Neither American Home nor St. Paul has objected to the filing of the amended complaint, although they have both received notice of its submission. Moreover, while Harmon contends that the complaint is untimely as to these parties, it has no standing to raise the affirmative defense of statute of limitations on their behalf, nor may I consider its application *sua sponte*. See *Davis v. Bryan, 810 F.2d 42, 44 (2d Cir. 1987)*.

Thus, to the extent that leave of this Court is necessary before ACA may add the two sureties as defendants, such leave is hereby granted.[FN8] For the reasons stated above, I deny Harmon's motion to dismiss ACA's Second Amended Complaint.

B. *Motion for Partial Dismissal under Rule 12(b)(6)*

On a motion to dismiss under Rule 12(b)(6), the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980); see Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 124 (2d Cir. 1991)*. "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)*. The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)(citing Conley, 355 U.S. at 45-46)*.

Except in certain circumstances, consideration of a motion to dismiss the complaint must focus on the allegations contained on the face of the complaint. See *Cortec Industries, Inc. v. Sum Holdings, L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 112 S.Ct. 1561 (1992); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991)*. On a motion to dismiss, a district court must accept plaintiff's well-pleaded factual allegations as true, *Papasan v. Allain, 478 U.S. 265, 283 (1986)*, but the court need not accept the pleader's "legal conclusions [and] characterizations." *United States v. Weisz, 914 F. Supp. 1050, 1053 (S.D.N.Y. 1996)(citing Madonna v. United States, 878 F.2d 62 (2d Cir. 1989))*. The allegations made by the pleader must be "construed favorably to the plaintiff." *LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991)*. "[A] Rule 12(b)(6) motion to dismiss need not be granted nor denied in toto but may be granted as to part of a complaint and denied as to the remainder." *Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 115 (2d Cir. 1982)*.

Case 1:07-cv-09749-JSR    Document 10-5    Filed 01/10/2008    Page 6 of 10

Not Reported in F.Supp.                                                                                          Page 5
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*6 Harmon has moved, under Rule 12(b)(6), to dismiss five of ACA's claims: negligence, intentional misrepresentation, negligent misrepresentation, tortious interference with economic relations, and breach of the implied covenant of good faith and fair dealing. (Harmon Mem. Dismiss at 1). Harmon claims that its Rule 12(b)(6) motion is made against ACA's Second Amended Complaint. (*Id.* at 4). ACA's Second Amended Complaint was not filed with the court, however, until May 26, 1995, while Harmon's 12(b)(6) motion was filed with the court on May 1, 1995. Further, not all the claims Harmon moves to dismiss are contained in ACA's May 26, 1995 Second Amended Complaint. Therefore, Harmon's motion to dismiss is mooted as to ACA's claims of negligence and negligent misrepresentation upon the Court's receipt and acceptance of the May 26, 1995 Second Amended Complaint. As ACA continues to raise claims for fraud in the inducement (or intentional misrepresentation), tortious interference with economic relations and breach of implied covenant of good faith and fair dealing in the latest incarnation of its complaint, Harmon's dismissal motion may be considered as to these three claims. *Cf. In re Agent Orange Products Liability Litigation,* 635 F.2d 987, 989 (2d Cir. 1980) (where complaint was amended after motion to dismiss was filed, district court treated motion as brought against amended complaint), *cert. denied,* 454 U.S. 1128 (1981).

*1. Fraud in the Inducement*

To state a claim for fraud in the inducement[FN9] under New York Law, the plaintiff must show: 1) that the defendant made a representation; 2) as to a material fact; 3) which was false; 4) and known to be false by the defendant; 5) that the representation was made for the purpose of inducing the other party to rely upon it; 6) that the other party did rightly so rely; 7) in ignorance of its falsity; 8) to its injury. *U.S. v. Rodolitz,* 786 F.2d 72, 76 (2d Cir. 1986); *Brown v. Lockwood,* 432 N.Y.S.2d 186, 193 (A.D.2d 1986).

In order to avoid inflating every breach of contract action into a fraud action, fraud in the inducement cannot be sustained when the only fraud charged relates to a breach of contract. *Hargrave v. Oki Nursery, Inc.* 636 F.2d 897, 899,*reh'g denied,* 646 F.2d 716 (2d Cir. 1980); *DePinto v. Ashley Scott, Inc.,* 635 N.Y.S.2d 215, 216 (A.D.1st 1995); *Metropolitan Trans. Auth. v. Triumph Advertising Prod.,* 497 N.Y.S.2d 673, 675 (A.D.1st 1986). This does not mean, however, that a party cannot plead actions for breach of contract and fraud in the inducement at the same time. Fraud in the inducement can be maintained separately from a breach of contract action when a plaintiff alleges a material misrepresentation of *present* fact, rather than promises of future action,[FN10] which is collateral or extraneous to the terms of the parties' agreement and which induced the plaintiff to contract with the defendant. *Stewart v. Jackson & Nash,* 976 F.2d 86, 89 (2d Cir. 1992).

*7 If a promise is collateral or extraneous to the contract and was made with the *undisclosed* present intention of not performing that promise, the intent to breach the promise can be a misrepresentation of material fact upon which an action for damages may be based. *Deerfield Communications Corp. v. Chesebrough-Ponds, Inc.,* 510 N.Y.S.2d 88, 89 (Ct.App. 1986).*See Stewart,* 976 F.2d at 89;*Cumberland Oil Corp. v. Thropp,* 791 F.2d 1037, 1043 (2d Cir.)*cert. denied,*479 U.S. 950 (1986); *Channel Master v. Aluminum Sales Ltd.,* 176 N.Y.S.2d 259, 262 (Ct.App. 1958)("a person's intent, his state of mind, it has long been recognized, is capable of ascertainment and a statement of present intention is deemed a statement of material existing fact, sufficient to support a fraud action"). However, if the misrepresentation says "nothing which is not legally embraced by [a] cause of action for breach of contract," then no fraud action exists. *Vista Co. v. Columbia Pictures Indus., Inc.,* 725 F.Supp. 1286, 1294 (S.D.N.Y. 1989)(quoting *L. Fatato, Inc. v. Decrescente Distrib. Co.,* 446 N.Y.S.2d 120, 121 (A.D.2d 1982)).

ACA has sufficiently pled a cause of action for fraud in the inducement. In ACA's Second Amended Complaint, ACA alleges that Harmon stated that:
> [I]ts new design provided for a curtainwall system that utilized a maximum of twenty (20) different sizes of pilasters and infills and, thus, was of a nature that made it easier, faster and less costly to install and erect .... In fact, the new design required installation of nearly three hundred (300) different sizes of pilasters and infills, making installation much more difficult, time-consuming and costly.
> (ACA Second Am. Compl. ¶ 72).

ACA alleges that Harmon intentionally made the misrepresentation in order to induce ACA to enter the Contract for a lesser amount and with the intention that ACA would rely thereon; ACA did so rely;

Case 1:07-cv-09749-JSR    Document 10-5    Filed 01/10/2008    Page 7 of 10

Not Reported in F.Supp.                                                                                           Page 6
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Harmon knew its representation was false or alternatively was made with reckless disregard for the truth; ACA would not have entered that Contract but for Harmon's false representations; and ACA sustained damages as a result. (ACA Second Am. Compl. ¶¶ 73-78). ACA has thus alleged the essential elements of a claim for fraud in the inducement.

ACA's claim does not, as Harmon contends, "relate solely to an alleged breach of contract."(Harmon Mot. Dismiss at 12). According to the fraud allegation, Harmon induced ACA to sign a contract for an amount reflecting one level of work effort, when, in fact, and to Harmon's knowledge, the level of effort required was to be much greater. The breach of contract claim, in contrast, centers on Harmon's failure to provide adequate support, scheduling and compensation under the terms of the contract signed by Harmon and ACA. (*See* ACA Second Am. Compl ¶¶ 53-66). In addition, the fraud claim does not pertain to a future promise. ACA does not solely allege that Harmon failed to meet an obligation undertaken under the contract; rather, it contends that Harmon's characterization of the nature of that project was misleading in the first instance. Therefore, Harmon's Rule 12(b)(6) motion is denied as to this count.

*2. Tortious Interference with Economic Relations*

**\*8** To prove tortious interference with economic relations[FN11] under New York State Law, a plaintiff must show "1) business relations with a third party; 2) defendants' interference with those business relations; 3) defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and 4) injury to the relationship."*Purgess v. Sharrock,* 33 F.3d 134, 141 (2d Cir. 1994); *Robbins v. Ogden Corp.,* 490 F.Supp. 801, 811 (S.D.N.Y. 1980); *Burba v. Rochester Gas & Elec. Corp.,* 528 N.Y.S.2d 241 (A.D.4th 1988)."The interference must be intentional, not merely negligent or incidental to some other, lawful, purpose."*Alvord and Swift v. Stewart M. Muller Const. Co.,* 413 N.Y.S.2d 309, 313 (Ct.App. 1978). Furthermore, "[i]f the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct."*PPX Enterprises,* 818 F.2d 266, 269 (2d Cir. 1987).*See Nifty Foods Corp. v. Great Atlantic & Pac. Tea Co.,* 614 F.2d 832, 838 (2d Cir. 1980). Finally, courts are always wary of attempts to "dress up a contract claim in a [tort] suit of clothes."*Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 747 (2d Cir. 1979).

ACA alleges that Harmon tortiously interfered with its economic relations by demanding payment from ACA's surety, Westchester, when Harmon knew that ACA had substantially completed the required work. (ACA Second Am. Compl. ¶ 88-99). Moreover, ACA contends that Harmon knew or should have known that this untimely action would have ill effects on ACA's ability to secure future surety bonds, and therefore that ACA's economic stability would be harmed thereby. (ACA Second Am. Compl. ¶¶ 90, 91, 97).

Harmon, however, was an obligee of the performance bond. (Del Bello Aff. Ex. B). The bond states in part:
Whenever Principal shall be, and declared by Obligee to be in default under the subcontract, the Obligee having performed Obligee's obligations thereunder: ... (2) Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee, may arrange for the performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein .... (Harmon Mot. Dismiss at 24).

Thus, Harmon clearly had competing economic interests in making its demand on Westchester. It hoped to receive full benefit of its contract with ACA so that it could receive full expected compensation in its contract with MDI. As a result, ACA cannot prevail on this claim absent a showing that Harmon acted in a "criminal or fraudulent manner."

ACA states that Harmon's actions were taken "for the express and improper purpose of pressuring ACA to concede on its claims and to accept a lesser amount of money than that due ACA under the Contract."(ACA Second Am. Compl. ¶ 96). While this motive may be improper, it does not rise to the level of fraud or criminal activity. ACA's remaining contentions are entirely conclusory in this regard. In paragraphs 92-94 and in paragraph 96 of the Second Amended Complaint, ACA repeats the phrase "employing unlawful means and without legal justification" to describe those actions by Harmon which gave rise to a claim of tortious interference with economic relations, without stating the precise nature of those unlawful means. (ACA Second Am. Compl. ¶¶ 92-94).

Case 1:07-cv-09749-JSR     Document 10-5     Filed 01/10/2008     Page 8 of 10

Not Reported in F.Supp.                                                                                Page 7
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

*9 In light of Harmon's contractual rights under the performance bond, ACA's contentions do not meet the standard for tortious interference, and this claim must be dismissed.

*3. Breach of the Implied Covenant of Good Faith and Fair Dealing*

Under New York Law, there is an implied covenant of good faith and fair dealing implicit in every contract. *M/A Com Security Corporation v. Galesi,* 904 F.2d 134, 136 (2d Cir. 1990)."The covenant of good faith and fair dealing 'precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement.'"*Leberman v. John Blair & Co.,* 880 F.2d 1555 (2d Cir. 1989)(quoting *Filner v. Shapiro,* 633 F.2d 139, 143 (2d Cir. 1980)). An implied obligation cannot, however, be inconsistent with the explicit terms of the contractual relationship. *Murphy v. American Home Products Corp.,* 461 N.Y.S.2d 232, 237 (Ct.App. 1983).

Because the duty of good faith is an implied contractual term, "breach of that duty is merely a breach of the underlying contract."*Fasolino Foods Co., Inc. v. Banca Nazionale Del Lavoro,* 961 F.2d 1052, 1056 (2d Cir. 1992)(citation omitted). Raising both claims in a single complaint is, therefore, redundant. As a result, every court confronted with such a complaint brought under New York law has dismissed the claim for breach of the covenant of fair dealing. See *Canstar v. J.A. Jones Construction Co.,* 622 N.Y.S.2d 730, 731 (1st Dep't 1995); *Apfel v. Prudential Bache Securities, Inc.,* 583 N.Y.S.2d 386, 387 (1st Dep't 1992), *aff'd as modifed on other grounds,*600 N.Y.S.2d 433 (Ct. App. 1993); *NFL Properties, Inc. v. Dallas Cowboys Football Club, Ltd.,* 922 F. Supp. 849, 855 (S.D.N.Y. 1996); *In re Houbigant, Inc.,* 914 F. Supp. 964, 989 (S.D.N.Y. 1995).

ACA contends that the allegations underlying its breach of contract and breach of covenant of fair dealing claims are entirely different. (ACA Mem. Opp. Dism. at 31-32). This is far from apparent. ACA's Second Amended Complaint bases its breach of covenant claim, in part, on the assertions that Harmon wrongfully withheld payments, and "wrongfully violated the Contract," allegations also presented in support the breach of contract claim. *Compare* Second Am. Compl. ¶¶ 103, 105 *with id.* ¶¶ 58, 65.In any event, ACA's argument is off target.

The fact that it has bifurcated its breach of contract claim, so as to place some of the allegations in support thereof in the category of "breach of covenant of fair dealing," does not grant it two separate causes of action. Rather, the latter claim must be dismissed.

*CONCLUSION*

Harmon's Rule 15(a) motion for dismissal of ACA's Second Amended Complaint is denied, and ACA is granted leave to add St. Paul and American Home as defendants. ACA is directed to file and serve its amended complaint, consistent with this opinion, within twenty (20) days of the date of this opinion.

Harmon's Rule 12(b)(6) motion is mooted in part, granted as to ACA's claims for tortious interference with economic relations and breach of the covenant of good faith and fair dealing, and denied as to ACA's fraud in the inducement claim.

*10 Counsel are directed to attend a status conference in Room 17C, 500 Pearl Street, at 2:00 P.M. on November 8, 1996.

It is SO ORDERED.

FN1. As discussed *infra,* the question of which complaint should properly be the subject of the Rule 12(b)(6) motion is in some dispute. To avoid any confusion, the facts set forth below may be found in both ACA's initial complaint and its second amended complaint.

FN2. According to Harmon, it also demanded payment from Westchester on ACA's performance bond. In the bond, Westchester had accepted liability in the event that ACA should fail to perform its contractual obligations. (Harmon Compl. ¶¶ 16, 26).

FN3. The stipulation reads:
It is hereby stipulated and agreed by and between counsel for the parties in Action No. 1 and Action No. 2, as the two actions share common issues of fact and law, Action No. 2 shall be and is hereby consolidated with Action No. 1 pursuant to Rule 42(a), Fed. R. Civ. Pro., and that the claims of both

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 8
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

parties shall be hereafter determined in a single consolidated proceeding bearing the caption as set forth in Action No. 1.

> FN4. ACA and Harmon have corresponded voluminously on the question of whether the parties in the second action should be titled, "Plaintiff" and "Defendant," as originally designated, or "Counterclaim Plaintiff" and "Counterclaim Defendant" as designated in the Stipulation to a Second Amended Complaint. (*See, e.g.,* ACA Mem. Opp. Mot. to Dismiss at 17 n.4). ACA maintained that the names should remain as originally designated, while Harmon insisted on the designations noted in the Stipulation. Because consolidated cases do not lose their separate identities, *see infra* n.5, ACA's argument appears correct. In any event, for reasons discussed *infra* at 11-12, the proper caption is of no import to the motion at hand.

> FN5. ACA's additional claim against American Home, a New York company, and St. Paul, a Minnesota company, does not destroy diversity. Cases consolidated pursuant to Fed. R. Civ. P. 42(a) do not lose their separate identity, *Garber v. Randell,* 477 F.2d 711, 716 (2d Cir. 1973) (citing *Johnson v. Manhattan Ry. Co.,* 289 U.S. 479, 497 (1933)), and thus diversity is evaluated in terms of each individual case.*Continental Airlines v. Goodyear Tire & Rubber Co.,* 819 F.2d 1519, 1523 n.1 (9th Cir. 1987); *Webb v. Just in Time, Inc.,* 769 F.Supp. 993, 996 (E.D.Mich. 1991) (in a consolidated case, "when determining whether diversity of citizenship exists, the claims must be addressed separately ....").*See*9 Wright, Miller & Kane, *Federal Practice and Procedure* § 2382 (1990).

> FN6. Both parties recognize that the bankruptcy proceeding against ACA was the cause of the bulk of the delay between the stipulation on June 28, 1994, and the receipt of ACA's Second Amended Complaint on May 26, 1995. (Harmon Mem. Reply Second Am. Compl. at n.7; ACA Mem. Opp. Second Am. Compl. at 8).

> FN7. There is some dispute as to whether leave is required if a party is added before service of a responsive pleading. *Compare McClelan v. Mississippi Power & Light Co.,* 526 F.2d 870, 872-73)(1976)(no leave required), *vacated in part on other grounds,*545 F.2d 919 (5th Cir. 1977)(en banc) *with La Batt v. Twomey,* 513 F.2d 641, 651 n.9 (7th Cir. 1975)(leave required). I need not resolve this conflict, as Harmon answered ACA's first complaint.

> FN8. Although ACA has not sought leave to amend its complaint, this Court may grant that remedy on its own initiative, if the circumstances of the case make that appropriate. *See Webb v. District of Columbia,* 864 F. Supp. 175, 187 (D.D.C. 1994); *Acme Printing Ink Co. v. Menard, Inc.,* 812 F. Supp. 1498, 1513 n.8 (E.D. Wis. 1992).*See also Springer-Penguin, Inc. v. Jugoexport,* 648 F. Supp. 468, 470 (S.D.N.Y. 1986)(amended complaint can be viewed as motion to add defendant); Fed. R. Civ. P. 21 (court may add party "on its own initiative").

> FN9. ACA's Original Complaint included a claim for intentional misrepresentation. Harmon moved to dismiss this claim in its Rule 12(b)(6) motion. In ACA's Second Amended Complaint, ACA restated the claim of intentional misrepresentation as a claim of fraud in the inducement. In actuality, the two claims amount to the same thing. *See Black's Law Dictionary* (6th ed. 1990). Since the parties are in agreement as to the elements of the claim, this semantic shift is unimportant.

> FN10."No cause of action for fraud arises when the only fraud alleged is, in essence, a failure to fulfill promises to perform acts in the future, since failure to fulfill such promises, even where relied upon to the promisee's detriment, is a breach of contract, not fraud."*Rubenstein v. East River Tenants Corp.,* 527 N.Y.S.2d 29, 32 (A.D.1st 1988).

> FN11. ACA's claim is titled "tortious interference with economic relations," but in setting forth its allegations ACA also refers to this claim as tortious interference with prospective business relations and/or

Case 1:07-cv-09749-JSR    Document 10-5    Filed 01/10/2008    Page 10 of 10

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)  
(Cite as: Not Reported in F.Supp.)

Page 9

economic advantage. (ACA Second Am. Compl. at ¶¶ 91-98). The specific title of these various torts is irrelevant. In *PPX Enterprises v. Audio Fidelity Enterprises, 818 F.2d 266, 269 (2d Cir. 1987)*, the Court noted that whether the plaintiff is alleging "tortious interference with: prospective economic advantage, beneficial business relations, prospective business advantage, and business of economic relations ... the elements necessary to establish such a claim remain constant."

S.D.N.Y.,1996.  
W.S.A., Inc. v. ACA Corp.  
Not Reported in F.Supp., 1996 WL 551599 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.