TAB 5

Westlaw.

Not Reported in F.Supp.                                                                  Page 1
Not Reported in F.Supp., 1993 WL 404076 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

CDopp v. Teachers Ins. and Annuity Ass'n of
America
S.D.N.Y.,1993.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Paul S. DOPP, Plaintiff,
v.
TEACHERS INSURANCE AND ANNUITY
ASSOCIATION OF AMERICA; North Coast
Investment Corporation; Connecticut General Life
Insurance Company; and Dorado Beach Hotel
Corporation, Defendants.
No. 91 Civ. 1494 (CSH).

Oct. 1, 1993.

MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:
    *1 In this diversity action, defendants Teachers
Insurance and Annuity Association of America
("TIAA") and Connecticut General Life Insurance
Company ("CG") move pursuant to Fed.R.Civ.P.
12(b)(6) for an order: (1) dismissing the complaint of
plaintiff Paul S. Dopp for failure to state a claim upon
which relief can be granted; and (2) dismissing the
complaint because plaintiff's claims are barred by the
statute of limitations. Defendant Dorado Beach Hotel
Corporation ("DBHC") also moves pursuant to
Fed.R.Civ.P. 12(b)(6) for an order dismissing the
complaint. For the reasons provided below, the
motions to dismiss are granted.

BACKGROUND

    Plaintiff is a resident of the State of New Jersey
who sues as the "successor and assignee" of Code
Hospitality Group, Inc. ("Code"), a Delaware
corporation whose principal place of business is
located in New Jersey.

    Defendant TIAA is a New York corporation
whose principal place of business is in New York,
New York. Defendant CG is a Connecticut
corporation whose principal place of business is
located in Bloomfield, Connecticut, a city within
commuting distance of New York, New York. North
Coast Investment Corporation ("North Coast") is a
Delaware corporation whose principal place of

business is also located in New York City. Defendant
DBHC is a Delaware corporation whose principal
place of business is in Illinois. At all relevant times
herein, North Coast was the sole stockholder of
DBHC. North Coast in turn was a wholly owned
subsidiary of defendants TIAA and CG.

    This action arises out of a contract dated May 9,
1984, between Code, North Coast, and DBHC, under
which Code contracted to buy the stock or assets of
DBHC. The complaint alleges that the purchase-sale
agreement as amended by North Coast, DBHC and
Code required that closing take place on or before
December 3, 1984. If the deadline for closing were
missed, Code would have forfeited $2,000,000.00
and all expenses and effort expended to complete the
transaction.

    Plaintiff next alleges that by late November,
1984, Code had commenced negotiations with Jay
Pritzker, an Illinois investor, to provide financing for
the acquisition. However, when negotiations between
Pritzker and Code stalled, TIAA and CG, as sole
stockholders of North Coast, commenced "secret
negotiations" with Pritzker for the sale of DBHC to
Pritzker notwithstanding the contract between Code,
North Coast and DBHC, and notwithstanding having
been informed by plaintiff that he was negotiating
with Pritzker to obtain financing for the transaction.
These secret negotiations allegedly resulted in Code
entering into a "most unfavorable" agreement with
Pritzker which placed Code as an oppressed 12%
minority stockholder in HTP Corporation, the
acquiring entity used by Pritzker to purchase DBHC.
Defendants' alleged wrongful conduct, according to
plaintiff, constituted a breach of contract, breach of
good faith covenant, and breach of fiduciary duty.
Plaintiff seeks monetary damages of at least
$25,000,000.

    *2 This action was commenced by plaintiff in
the District of Puerto Rico on April 17, 1991.
Defendants TIAA and CG moved in that district to
transfer the case, under 28 U.S.C. § 1404, to New
York or Connecticut. When North Coast was later
served, TIAA and CG filed a joinder in the transfer
motion on its behalf. On October 15, 1991,
contemporaneously with the filing of the transfer
motion, TIAA and CG moved to dismiss the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 2
Not Reported in F.Supp., 1993 WL 404076 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

complaint for failure to state a claim upon which relief could be granted, and because the claims were time barred by the statute of limitations. On the same day, DBHC filed a separate motion to dismiss. After North Coast was served, TIAA and CG filed on its behalf a joinder in their motion to dismiss.

By opinion and order dated March 31, 1992, the Puerto Rico District Court granted defendants' transfer motion and transferred the case to the Southern District of New York without deciding the dismissal motions. These motions are considered here.

DISCUSSION

The Statute of Limitations

I. Which State's Law Governs?

The issue of whether plaintiff's claims are time barred hinges on which statute of limitations the Court applies. Defendants argue that plaintiff's claims are barred because plaintiff failed to assert his claim within the three year period allowed by Delaware's applicable statute of limitations. Plaintiff counters that the applicable law is that of Puerto Rico, under which the statute of limitations for breach of contract claims is fifteen years, and, thus, his claims are not time barred.

In *H.L. Green v. McMahon,* 312 F.2d 650, 653 (2d Cir.1962), *cert. denied*372 U.S. 928 (1963) the Second Circuit held that where dismissal was sought on statute of limitations and substantive grounds, the statute of limitations and substantive law of the transferor state should continue to apply. "The case should remain as it was in all respects but location." *Id.* at 653 (citing *Headrick v. Atchison, T. & S.F. Ry. Co.,* 182 F.2d 305 (10th Cir.1950); *Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co.,* 178 F.2d 866, 868 (2d Cir.1950)). This holding was expressly approved by the Supreme Court in *Van Dusen v. Barrack,* 376 U.S. 612, 639 (1964) ("[a] change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms"). Accordingly, this Court will examine the instant statute of limitations and substantive issues using the same law the Puerto Rico Court would have used.

In its decision on the transfer motion, the Puerto Rico District Court expressly stated that "Delaware

law governs this dispute." Slip. Op. at 9. The court noted that the contract in question contains a clause stating that it would be governed not by Puerto Rico law, but rather, by Delaware law, and reasoned that:

Since the contracting parties were Delaware corporations, who were negotiating for the purchase and sale of stock of another Delaware corporation, we will not upset their decision to have Delaware law govern their contract. *See* E. Scales & P. Hay, *Conflicts of Laws,* § 18.1 (1984) (it is well settled that contracting parties are free to select the law governing their contract); *Delhomme Industries, Inc. Houston Beechcraft, Inc.,* 669 F.2d 1049, 1058 (5th Cir.1982) ("Courts favor, and tend to uphold, choice of law provisions in contracts"); *Walborg Corp. v. Tribunal Superior,* 104 D.P.R. 184, 192 (1975) (when parties have agreed on a body of law to govern their transaction, their choice will be respected when the chosen jurisdiction has substantial contacts with the contract, and the law of the chosen state is not contrary to fundamental public policy considerations of the forum state).

*\*3* Slip. Op. at 8. The court elaborated:Plaintiff has not alleged that the relevant Delaware law is in any way offensive to the public policy of Puerto Rico. Since the parties voluntarily chose Delaware law to govern their transaction, and Delaware has a substantial interest in transactions involving sales of stock of one Delaware corporation by a second Delaware corporation to a third Delaware corporation, we find that Delaware law governs this dispute.

*Id.*

Plaintiff's arguments do not undermine the persuasiveness of the Puerto Rico court's reasoning. Plaintiff argues that the choice of law rule included in Code's contract with North Coast and DBHC does not require that the parties be irremediably bound to Delaware substantive law. Rather, courts defer to the parties' choice only when that selection has been made in good faith; the selection is not contrary to public policy; the contract is properly referable to the state selected; and such state has a real or substantial connection with the transaction or subject matter of the contract. 16 Am.Jur.2d § 78; 17 C.J.S. *Contracts* § 12(3), p. 595 (1963); Restatement of the Law, 2nd Conflicts of Law § 187; *Bartlett & Co., Grain v. Merchants Co.,* 323 F.2d 501 (5th Cir.1963); *National Union Fire Ins. Co. v. D & L Constr. Co.,* 353 F.2d 169 (8th Cir.1965), *rehearing denied* Dec.

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1993 WL 404076 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

27, 1965, *cert. denied*384 U.S. 941 (1966). Plaintiff contends that as defendants do not have substantial connections with the state of Delaware, there is no logical basis for the Delaware choice of law clause.

This Court disagrees with the contention that the state of Delaware does not have a real and substantial connection with the instant transaction. Even if the subject matter of the contract was the purchase of real estate in Puerto Rico, and the contract was almost entirely negotiated in San Juan and Dorado as stated in plaintiff's affidavit, the fact that the transaction involved two Delaware corporations negotiating for the purchase and sale of stock in a third Delaware corporation provides a logical basis for recourse to Delaware law. Thus, the Court sees no reason to refute the Puerto Rico court's finding that Delaware substantive law applies.

As a final step in this analysis, the Court notes that under Puerto Rico's choice of law rules statutes of limitations are viewed as substantive rather than procedural issues, suggesting that in the instant case the Puerto Rico court would apply the statute of limitations of Delaware, the state whose substantive law governs. *See Rodriguez Narvaez v. Nazario,* 895 F.2d 38, 43 (1st Cir.1990) ("the rules governing the limitation of actions form part of the substantive, not procedural, law of Puerto Rico"); *Felix Davis v. Vieques Air Link,* 892 F.2d 1122, 1125 n. 2 (1st Cir.1990) ("[t]he Supreme Court of Puerto Rico, in *Febo Ortega v. Superior Court,* 102 P.R.R. 506 (1974), held that the limitation of actions is not a procedural issue but substantive"); *Santiago v. Becton Dickinson & Co., S.A.,* 539 F.Supp. 1149, 1151 (D.P.R.1982) ("[t]he Supreme Court of Puerto Rico has often held that the matter of extinctive prescription is a substantive, not procedural, question"); *Febo Ortega v. Superior Court,* 102 D.P.R. 506, 509 (1974) ("the limitation of actions is not a procedural, but a substantive matter"); *Olmo v. Young & Rubicam of Puerto Rico, Inc.,* 110 D.P.R. 965, 969 (1981) ("We have decided that 'prescription' is a substantive and not a procedural matter").

**\*4** In *Arrieta-Gimenez v. Arrieta-Negron,* 859 F.2d 1033, 1037 (1st Cir.1988), the First Circuit, although not ruling on this issue, agreed with this Court's conclusion that Puerto Rico choice of law rules treating statute of limitations questions as substantive rather than procedural suggest "that Puerto Rico courts would borrow the statutes of

limitations of the state whose substantive law governs ..." The reasoning in that case provides further support for the application of the Delaware statute of limitations to the instant transaction.

Thus, the Court concludes that Delaware, not Puerto Rico, law applies.

II. Delaware's Statute of Limitations

Delaware's three year statute of limitations is applicable to this claim because it is an "action to recover damages caused by an injury unaccompanied with force." 10 Del.Code Ann. tit. Courts and Judicial Procedure, § 8106 (1975).[FN1] *See also Oliver B. Cannon & Son, Inc. v. Fidelity and Casualty Co.,* 484 F.Supp. 1375, 1388 (D.Del.1980) (section 8106 "imposes a three year limitation on actions sounding in contract and/or tort"); *Allstate Ins. Co. v. Spinelli,* 443 A.2d 1286 (Del.Super.1982) (section 8106 is ["Delaware's] statute of limitations for breach of contract"); *Dofflemeyer v. W.F. Hall Printing Co.,* 558 F.Supp. 372, 378 (D.Del.1983) (Delaware limitations period normally applicable for breach of fiduciary duty is three years).

The second issue between the parties is when the statute of limitations began to run. Plaintiff concedes that it is well established that "under general principles of contract law, the time limitation of a contract claim limitation statute begins to run from the date of breach of the contract." *Allstate Ins. Co. v. Spinelli,* 443 A.2d at 1292. *See also Murrey v. Nationwide Ins. Co.,* 674 F.Supp. 154, 157 (D.Del.1987). Nor does plaintiff dispute that tort actions are similarly constrained. *Kaufman v. C.L. McCabe & Sons, Inc.,* 603 A.2d 831, 834 (Del.Supr.1992) (a cause of action in tort occurs at the time of injury). However, plaintiff refutes defendants' argument that as the alleged breach of contract occurred at the time of defendants' negotiations in November or early December 1984, and this action was not commenced until April 17, 1991, it is barred by § 8106. Plaintiff claims that either the fraudulent concealment doctrine or the discovery rule properly tolls the statute of limitations in this case.

Delaware courts have held that fraudulent concealment tolls the running of the statute of limitations until such time as the cause of action is discovered or could have been discovered by the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 4
Not Reported in F.Supp., 1993 WL 404076 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

exercise of due diligence. *Bradford, Inc. v. Travelers Indem. Co.,* 301 A.2d 519, 525 (Del.Super.1972). Fraudulent concealment requires that something affirmative be done by a defendant, some "actual artifice" which prevents a plaintiff from gaining knowledge of the facts, or a misrepresentation intended to put plaintiff off the trail of inquiry. *Halpern v. Barran,* 313 A.2d 139, 143 (Del.Ch.1973); *see also Lecates v. Hertrich Pontiac Buick Co.,* 515 A.2d 163, 176 (Del.Super.1986) ( "claim of fraudulent concealment requires the twin showing of (a) the defendant's knowledge of the alleged wrong, and (b) an affirmative act of concealment by defendant"). Mere "ignorance of the facts is, in the ordinary case, no obstacle to the operation of a Statute of Limitations." *Mastellone v. Argo Oil Corp.,* 82 A.2d 379, 383 (Del.Supr.1951).

*5 Here, plaintiff has not indicated any affirmative acts of concealment on the part of defendants. Plaintiff's alternative contention, that defendants "failed to disclose" their "secret negotiations", boils down to a charge that their knowing silence qualifies as fraudulent concealment. However, this exception to the affirmative act requirement only applies where a plaintiff and defendant are in a fiduciary relationship. *Dunleavy v. Dugan,* 1990 WL 49421, (D.Del.) (directors owe plaintiff shareholder a fiduciary duty and therefore failure to notify plaintiff about merger which allegedly injured company and deprived plaintiff of the value of her stock might constitute fraudulent concealment) (citing *Toner v. Baltimore Envelope Co.,* 498 A.2d 642, 648 (Md.1985) (directors owe fiduciary duty to shareholders)); *Hood v. McConemy,* 53 F.R.D. 435, 447 (1971) (because attorney-client relationship is fiduciary and attorney is held to strictest standard of fidelity and good faith, attorney's failure to inform his clients that action has been dismissed, with repeated assurances that action is progressing properly, is sufficient to constitute fraudulent concealment in a legal malpractice action); *see also* 51 Am.Jur.2d Limitation of Actions § 149 (1970) (if there is a fiduciary relationship between the parties, there need be no evidence of fraudulent concealment other than that implied from the transaction itself; mere failure to reveal may be fraudulent when there is a duty to reveal).

While the complaint alleges that defendants breached their fiduciary duties to Code or its assignee, it fails to allege how such a relationship came to exist between the parties. A fiduciary relationship is a relationship where, because one person reposes special trust and confidence in the integrity of another, or because one party's property is entrusted to the other, a special duty exists on the part of the latter to protect the former. *See* 36A C.J.S. *Fiduciary* (1961). The arm's-length relationship of parties in a business transaction is, if anything, antithetical to the notion that either would owe a fiduciary relationship to the other. Consequently the Court finds that defendants did not owe a fiduciary duty to plaintiff, and that defendants' alleged failure to disclose their negotiations cannot constitute fraudulent concealment.

The second element of plaintiff's argument is that the cause of action did not accrue until he learned of the negotiations between defendants and Pritzker during the deposition of Thomas Pritzker in the case of *Dopp v. HTP Corporation, et al.,* 755 F.Supp.491 (D.P.R.1991), on January 23, 1989. Thus plaintiff seeks application of the "time of discovery rule." *Layton v. Allen,* 246 A.2d 794 (Del.Supr.1968); *Rudginski v. Pullella,* 378 A.2d 646 (Del.Supr.1977).

The time of discovery rule originated in Delaware with *Layton,* 246 A.2d at 797, in which the Delaware Supreme Court held that the cause of action in a medical malpractice case did not accrue until the plaintiff had discovered the injury. The rule was subsequently extended to other types of professional malpractice cases. *See Pioneer Nat'l Title Ins. Co. v. Sabo,* 382 A.2d 265 (Del.Super.1978), *aff'd,* 401 A.2d 68 (Del.Supr.1979) (attorney error); *Child, Inc. v. Jan Rodgers, Del.,* 377 A.2d 374 (1977) (same); *Issacson, Stolpen & Co. v. Artisan's Savings Bank,* 330 A.2d 130 (Del.Supr.1974) (accountant and tax specialist error). Nonetheless, application of the rule has been narrowly constrained. As the district court of Delaware stated in *Ontario Hydro v. Zallea Systems, Inc.,* 569 F.Supp. 1261 (D.Del.1983), the "common thread" in the malpractice cases to which the Delaware Supreme Court has applied the time of discovery rule is "the fact that a lay person has been injured by a professional person of superior knowledge such as a doctor, lawyer or accountant." *Id.* at 1269. The formal requirements for the application of the rule are (a) an "inherently unknowable" injury; (b) sustained by a "blamelessly ignorant" plaintiff who relied upon the professional expertise of the wrongdoer. *Pioneer Nat'l Title Ins. Co.,* 382 A.2d at 266; *see also Kaufman v. C.L. McCabe & Sons, Inc.,* 603 A.2d at 835; *Isaacson,* 330

Not Reported in F.Supp.                                                                    Page 5
Not Reported in F.Supp., 1993 WL 404076 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

A.2d at 133;*Began v. Dixon,* 547 A.2d 620 (Del.Super.1988); *Hodges v. Smith,* 517 A.2d 299 (Del.Super.1986).

**\*6** This case cannot be likened to a malpractice suit involving a lay person alleging injury by a professional person of superior knowledge. It is not about an "inherently unknowable" injury, such as those which occur in professional malpractice cases, or about an injury not "physically ascertainable by due diligence" until after the statute of limitations had run, *see, e.g., Rudginski,* 378 A.2d at 649 (plumber installed defective septic tank). Rather, it is a breach of contract action arising out of an arm's length transaction between sophisticated parties. As the court found in *Studiengesellschaft Kohle, MHB v. Hercules, Inc.,* 748 F.Supp. 247 (D.Del.1990), application of the time of discovery exception to such an action would essentially eviscerate Delaware's contract statute of limitations.

In *Studiengesellschaft Kohle,* the plaintiff sued for breach of contract, claiming that the defendant concealed sales and royalties due under the contract. *Id.* at 252. In response to defendant's § 8106 defense, plaintiff-as here-contended that it had "no notice" of the breach, and "therefore had no reason to suspect an injury was present" until after the limitations period had run. *Id.* at 253. In barring plaintiff's claim, the court stated:

[I]f [plaintiff's] contention was adopted it would emasculate the purpose of statutes of limitation and always require actual knowledge of injury as a prerequisite for any limitations period to commence.

This Court believes that allowing the instant plaintiff to avail himself of the time of discovery exception would have the same undesired result.

The Court concludes that the statute of limitations was not tolled by operation of either the fraudulent concealment or time of discovery exceptions. As the alleged breach of contract occurred in November or December of 1984 when defendants engaged in negotiations for the sale of DBHC to Pritzker, but plaintiff failed to bring this action until April 17, 1991, in excess of six years after the claim accrued, it is clear that the action is barred by § 8106.

CONCLUSION

For the reasons set forth above, defendants' motions to dismiss the complaint are granted.

The Clerk of the Court is directed to dismiss the complaint as to all defendants with prejudice.

FN1.10 Del.C. § 8106 reads:
No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108-8110, 8119 and 8127 of this title.
The sections referred to in the final phrase are not pertinent here.
S.D.N.Y.,1993.
Dopp v. Teachers Ins. and Annuity Ass'n of America Not Reported in F.Supp., 1993 WL 404076 (S.D.N.Y.)

END OF DOCUMENT