TAB 6

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Pope v. Rice
S.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Michael POPE, Plaintiff,
v.
Joseph F. RICE, Ronald L. Motley, Motley Rice LLC, Ness Motley PA, The Jaques Admiralty Law Firm, and Alan Kellman, Defendants.
No. 04 Civ. 4171(DLC).

March 14, 2005.

Joseph D. Pope, Cohen Pope PLLC, New York, New York, for the Plaintiff.
Samuel Issacharoff, New York, New York, Susan E. Brune, Theresa Trzaskoma, Brune & Richard LLP, New York, New York, for Defendants Joseph F. Rice, Motley Rice LLC, and Ronald L. Motley.
Steven G. Storch, Storch Amini & Munves PC, New York, New York, for Defendant Ness Motley PA.
Jordan M. Sklar, Babchik & Young, LLP, White Plains, New York, for Defendants Alan Kellman and The Jaques Admiralty Law Firm, P.C.

*OPINION & ORDER*

COTE, J.

*1 The plaintiff was a claimant in a series of "pre-packaged" bankruptcy workouts involving various companies with substantial asbestos-related liabilities. The plaintiff has filed suit against his own lawyer and law firm, who reside in Michigan, as well as the South Carolina lawyers who played the lead role in negotiating the terms of the bankruptcy plans and asbestos settlements, for breaches of their fiduciary duties to him. To state claims against the South Carolina defendants who were not his retained counsel, he has asserted that they had a fiduciary duty to him because they acted as co-counsel or conspired with his own attorneys. Among other things, this Opinion addresses the pleading requirements to state a claim for breach of fiduciary duty by an attorney who represents others but is working cooperatively with plaintiff's counsel. The motions to dismiss filed by both groups of defendants are granted and the case is dismissed.

BACKGROUND

The following facts are taken from the allegations contained in the Second Amended Complaint ("Complaint"), unless otherwise noted. In 1996, the plaintiff Michael Pope ("Pope") retained the defendants Alan Kellman ("Kellman") and his law firm, the Jaques Admiralty Law Firm ("Jaques Firm") (collectively, the "Jaques Group"), from Detroit, Michigan, to pursue asbestos-related personal injury claims against various companies (collectively, "Asbestos Companies") including Combustion Engineering, Inc. ("CE"), ACandS, Inc., Shook and Fletcher, Inc. ("Shook"), North American Refractories Co. ("NARCO"), and a number of companies that the Complaint collectively calls "Halliburton." Pope was not diagnosed with any asbestos-related illnesses until 1997.

The Complaint states that "[u]nbeknownst to Pope," defendants Motley Rice LLC ("Motley Rice"), Ness Motley PA ("Ness Motley"), and Motley Rice partners Joseph F. Rice ("Rice") and Ronald L. Motley ("Motley") (collectively, the "Rice Group"),[FN1] established a "co-counsel" relationship with the Jaques Firm in or before 1999, such that it "assists the Jaques Group in the prosecution and settlement of Pope's asbestos personal injury claims" and has "one or more fee-sharing agreements with the Jaques Group."The Complaint alleges that since "no later than 2001 and continuing to date, the Rice Group has, pursuant to its co-counsel relationship with the Jaques Group and without Pope's knowledge, been acting as one of the attorneys for Pope in the prosecution and settlement of his asbestos ... claims."Motley Rice also "has, sometimes jointly with the Jaques Group, negotiated, approved or signed agreements with the Asbestos Companies on behalf of Pope and others which settled Pope's asbestos personal injury claims" from mid-2001 to mid-2003.

> FN1. The Complaint states that the predecessor in interest of Motley Rice was the law firm Ness Motley, and that Motley Rice's partners include Rice and Motley.

The five specific examples of Motley Rice's alleged representation of Pope that the Complaint references involve Shook, ACandS, NARCO, CE,

Case 1:07-cv-09749-JSR    Document 10-7    Filed 01/10/2008    Page 3 of 15

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

and Halliburton. In each of these circumstances, Rice negotiated "most, if not all, the material terms of 'pre-packaged' bankruptcy plans." The Complaint alleges that the Jaques Firm "knew or approved of the Rice's [sic] negotiation" of those plans.

*Shook*

***2** Rice allegedly negotiated a master settlement agreement with Shook ("Shook Agreement") starting in mid-2001, culminating in Rice signing the agreement on November 28, 2001.[FN2] The Shook Agreement apparently identified Rice as "Claimants' Counsel." The Complaint states that "Claimant's Counsel" is "a term that includes Pope and other persons who had asbestos personal injury claims pending against Shook as of November 28, 2001."[FN3] Rice allegedly received a $3 million payment from Shook for advising Shook on creating a pre-packaged bankruptcy plan and settlement that would resolve Shook's ongoing asbestos liability issues. Pope claims that the Jaques Firm was aware of the fee, that neither the Jaques Firm nor Motley Rice informed him of the fee, and that he did not consent to it. This fee allegedly reduced the amount of money that would have been available to asbestos claimants such as Pope.

> FN2. The Shook Agreement was later amended on February 25, 2002.
>
> FN3. It is presumed that the plaintiff considers himself a "claimant," not "Claimant's Counsel."

Pope also claims that the settlement trust, which was to pay the claims of asbestos claimants, divided claimants into different categories that would be paid different amounts based on how far each claim had progressed in the litigation and settlement process. The Complaint does not describe the categories, nor does it describe what category Pope was in, other than to allude to "higher paying levels ... that discriminated against Pope." After Rice signed the Shook Agreement, Kellman executed a document adopting the Shook Agreement on behalf of Pope and others. Motley Rice and the Jaques Firm allegedly shared fees in some way in connection with this pre-packaged bankruptcy plan settlement agreement.

*ACandS*

After negotiations beginning in the fall of 2001, in April 2002, Rice signed or approved the ACandS pre-packaged bankruptcy plan on behalf of Pope and others. In May 2002, Kellman executed a document adopting the ACandS Master Agreement ("ACandS Agreement") on behalf of Pope and others. Motley Rice and the Jaques Firm allegedly shared fees in some way in connection with this pre-packaged bankruptcy plan settlement agreement.

*NARCO*

Rice allegedly negotiated a settlement agreement with NARCO ("NARCO Agreement") from 2002 until February 2003, when Rice and Kellman jointly signed the NARCO Agreement on behalf of Pope and others. The Complaint notes that the NARCO Agreement identifies the Jaques Firm as "Affiliated Counsel." Motley Rice and the Jaques Firm allegedly shared fees in some way in connection with this pre-packaged bankruptcy plan settlement agreement. Pope also alleges that the NARCO Agreement would "pay different amount [sic] to claimants with the same asbestos-related disease as Pope, to the detriment of Pope," although the Complaint does not specify how.

*Combustion Engineering*

From October 2002 until November 2002, Rice negotiated a master settlement agreement with CE ("CE Agreement"). Pope alleges that Rice signed the CE Agreement as "Claimants [sic] Representative" on November 22, 2002. The Complaint alleges that "[d]uring all or part of the process of negotiating the [CE Agreement], Rice held himself out to Combustion Engineering as the legal representative of all individuals, including Pope, who had asbestos personal injury claims against Combustion Engineering." The Complaint also alleges that Rice accepted a $20 million fee from CE for advising CE on creating a pre-packaged bankruptcy plan and settlement that would resolve CE's ongoing asbestos liability issues. Pope claims that the Jaques Firm was aware of the fee, that neither the Jaques Firm nor Motley Rice informed him of the fee, and that he did not consent to it. This fee allegedly reduced the amount of money that would have been available to asbestos claimants such as Pope.

***3** The CE pre-packaged bankruptcy plan also allegedly incorporated a $30 million pre-bankruptcy

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

fund that would be reserved exclusively for the clients of "approximately three law firms" that generally had the same asbestos-related illness that Pope had. Pope alleges that he was not informed of, and did not consent to that fund, and that the existence of the fund reduced the amount of money that would have been available to asbestos claimants such as Pope. The CE Settlement Trust, which Rice negotiated, and which was to pay the claims of asbestos claimants, allegedly divided claimants into three categories whereby Category 1 claimants would receive 95% of the value of their claim, Category 2 claimants would receive 85% of the value of their claim, and Category 3 claimants would receive between 37.5% and 75% of their claim. The Complaint alleges that the categories were established pursuant to how far each claim had progressed in the litigation and settlement process. Pope states that he was not informed of, and did not consent to, this category system that placed him in Category 3.

On January 31, 2003, Kellman executed a signature page of the CE Agreement on behalf of Pope and others, and sent a list of claimants to CE that included Pope. Motley Rice and the Jaques Firm allegedly shared fees in some form in connection with this pre-packaged bankruptcy plan settlement agreement.

The Complaint notes that the bankruptcy judge evaluating the pre-packaged CE bankruptcy plan found, among other things, that "Mr. Rice has an actual conflict of interest in this case" because he was paid $20 million by the parent of an entity he is suing.[FN4] *See also In re Combustion Engineering, 295 B.R. 459, 478 (Bankr.D.Del.2003)*. Aside from the description of the bankruptcy court's opinion in the Complaint, the opinion also stated that although the bankruptcy court did not have the power to interfere with Rice's fee from CE's parent, *Combustion Engineering, 295 B.R. at 479*, the court had the "equitable power to fashion a remedy," stating that "Mr. Rice and [his] firm are prohibited from collecting any fees from tort clients as the result of distributions they have received or will receive through the CE Settlement Trust." *Id. at 478.*

> FN4. The Complaint states that the bankruptcy judge recommended withholding confirmation of the CE bankruptcy plan. It neglects to state that the withholding of confirmation was only for ten days in order to receive supplemental affidavits on issues unrelated to this case, and that confirmation was subsequently granted. *See In re Combustion Engineering, 295 B.R. at 491; In re Combustion Engineering, Inc., 391 F.3d 190, 200 n. 2 (3d Cir.2004).*

Following an appeal to the district court where the bankruptcy court's recommendation of confirmation of the CE bankruptcy plan was approved, the Third Circuit Court of Appeals vacated the district court's opinion for reasons unrelated to this case, and remanded the case back to the district court for further proceedings. *In re Combustion Engineering, Inc., 391 F.3d 190, 248-49 (3d Cir.2004).*

*Halliburton*

From the summer of 2002 until April 2003, Motley Rice negotiated settlement agreements with Halliburton ("Halliburton Agreements"), acting as "co-counsel" with "several dozens of lawyers and law firms," signing over 200 such settlement agreements for the clients "jointly represented by the Rice group and the lawyers and law firms with which they were co-counsel." The Complaint alleges that Rice and Kellman jointly signed a settlement agreement with Halliburton that identified them both as "Plaintiffs' Counsel" on behalf of Pope and others in April 2003. Motley Rice and the Jaques Firm allegedly shared fees in some form in connection with this pre-packaged bankruptcy plan settlement agreement. Pope also alleges that the Halliburton Agreements, like the NARCO Agreement, would "pay different amount [sic] to claimants with the same asbestos-related disease as Pope, to the detriment of Pope," although the Complaint does not specify how.

*4 With respect to all of these settlement agreements, the plaintiff alleges that he "was not informed of and did not consent to any" of them, and was informed neither that Motley Rice participated in negotiations, nor that the Jaques Firm signed or adopted the agreements on his behalf. He also alleges that he was not informed of, and did not consent to, any fee sharing arrangements between the Jaques Firm and Motley Rice. With respect to all of the agreements except for the ACandS Agreement, Pope alleges that at the same time Motley Rice was "representing" Pope in connection with his asbestos claims, it was representing thousands of other

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR   Document 10-7   Filed 01/10/2008   Page 5 of 15

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

asbestos claimants with claims that competed with Pope's, without the knowledge or consent of Pope.

Based on the foregoing allegations, the Complaint pleads twelve causes of action. First, Pope claims a breach of fiduciary duty owed by the Rice Group to Pope, because "as one of the attorneys for Pope," Rice owed a duty of undivided loyalty to Pope that was breached when Rice gave advice to CE for a fee. Second, Pope claims a breach by the Rice Group of the fiduciary duty of undivided loyalty by causing CE to create a $30 million pre-bankruptcy fund that excluded Pope. Third, Pope claims a breach by the Rice Group of the fiduciary duty of undivided loyalty by negotiating and agreeing to the CE Agreement that created different categories of claimants, and that placed Pope in a lower category than other claimants.[FN5] Fourth, Pope claims a breach by the Rice Group of the fiduciary duty of undivided loyalty by giving advice to Shook for a fee. Fifth, Pope claims a breach by the Rice Group of the fiduciary duty of undivided loyalty by negotiating and agreeing to the Shook Agreement that created "higher paying levels" that "discriminated against Pope." [FN6] Sixth, Pope claims that all defendants breached their fiduciary duty of undivided loyalty to Pope by representing other asbestos claimants with claims that competed with Pope's without Pope's knowledge or consent and subordinating Pope's claims to those of other claimants.[FN7] Seventh, Pope claims that all defendants breached their fiduciary duty to disclose "all facts and proceedings material to the prosecution or settlement of [Pope's] asbestos personal injury claims" where they failed to disclose all of the above breaches, in addition to "any fee-splitting, co-counsel, affiliation or assistance agreements," thereby depriving him of the opportunities to give his "informed consent" to adopt the agreements and to resist the settlements that "unfairly discriminate" against him. Eighth, Pope claims that the Jaques Group breached its fiduciary duty of undivided loyalty to Pope during motion practice in the ACandS litigation. Ninth, Pope seeks an injunction to compel the Jaques Group to disclose its fee-sharing arrangements with the Rice Group to Pope. Pope's tenth and twelfth claims advance theories that the Rice Group knowingly aided and abetted the Jaques Group's breaches of its fiduciary duties to Pope, and that the Rice Group and Jaques Group conspired to breach their fiduciary duties to Pope, while the eleventh claim asserts that the Jaques Group knowingly aided and abetted the Rice Group's breaches of its fiduciary duties to Pope.

> FN5. This cause of action also contains a claim of breach of fiduciary duty by the Jaques Group for adopting the CE Agreement on behalf of Pope, and for knowing about the Rice Group's breach in this cause of action and failing to disclose it to Pope.
>
> FN6. This cause of action also contains a claim of breach of fiduciary duty by the Jaques Group for knowing about the Rice Group's breach in this cause of action and failing to disclose it to Pope.
>
> FN7. The ultimate claim in this cause of action omits essential words: "As a result of their undisclosed multiple representation, the Rice Group and the Jaques Group agreed with Halliburton, Shook, NARCO and Combustion Engineering that persons with the same asbestos-related disease as Pope's would payment before." It is assumed that Pope intends to claim that the agreements contemplated that other claimants would *receive* payment before *Pope*.

*Procedural History*

**\*5** Pope filed this action on June 3, 2004. After a motion to dismiss by defendants Rice, Motley Rice, and Ness Motley was fully submitted, the plaintiff filed a First Amended Complaint on September 20. An Order of September 24 required that any further amendment to the pleadings must take place by October 1, and that no further amendments would be permitted in the event a renewed motion to dismiss were granted. The plaintiff filed the Second Amended Complaint on October 1. The Complaint greatly expands the factual allegations and adds new defendants and nine more claims for relief than were in the initial pleading. Among other things, it focuses on five bankruptcy proceedings instead of one.[FN8]

> FN8. The defendants assert that plaintiff's counsel has a professional relationship with asbestos defendants and is using his father's claim, valued at $15,000, to "reform the world of asbestos litigation."

Defendants Motley Rice, Rice, and Ness Motley renewed their motion to dismiss, incorporating by

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR    Document 10-7    Filed 01/10/2008    Page 6 of 15

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

reference arguments from the first motion and adding new arguments. They move to dismiss the Complaint on the grounds that this Court does not have jurisdiction to review workouts approved by bankruptcy courts in other jurisdictions or to hear a claim for damages that was administratively dismissed by the MDL court with exclusive jurisdiction over all federal court asbestos cases, that there is no personal jurisdiction over the defendants or venue for this action in this district, that there is no diversity jurisdiction because the dispute does not meet the amount in controversy threshold, and that the Complaint fails to state a claim. As explained below, it is only necessary to reach this last issue. Defendant Motley filed a Notice of Joinder in the motion to dismiss by Motley Rice, Rice, and Ness Motley.[FN9]

> FN9. Motley's Notice of Joinder states that he "did not join in the Motions to Dismiss at the time of original filing because he had not been served." Motley filed his joinder after he had been served.

The Jaques Group has separately filed its own motion to dismiss. It asserts that it has not been properly served, and that there is no personal jurisdiction over it.

DISCUSSION

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. Pleadings are to give "fair notice" of a claim and "the grounds upon which they rest" in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002). "The federal rules allow simple pleadings and rely on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 293 (2d Cir.2003) (citation omitted). Because Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, "extensive pleading of facts is not required." *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir.2004) (citation omitted). If it is clear, however, that "no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed. *Swierkiewicz*, 534 U.S. at 514.[FN10] In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997).

> FN10. Pope's allegations pose complex issues concerning subject matter jurisdiction. He seeks to challenge collaterally the fairness of bankruptcy workouts in other jurisdictions through accusations that the defendants represented thousands of clients with competing claims and caused the unfair categorization of at least one of these clients. Ordinarily, federal courts address issues pertaining to their subject matter jurisdiction over a case before considering the merits or other issues in the case. *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2d Cir.1996). "On some occasions, however, considerations of judicial economy and restraint may persuade the court to avoid a difficult question of subject-matter jurisdiction when the case may be disposed of on a simpler ground." *Id.* Such a decision is appropriate where the court is "convinced that the challenge to the court's subject-matter jurisdiction is not easily resolved and that the alternative ground is considerably less difficult to decide." *Id.*
> Here, deciding the Rice Group's motion to dismiss on subject matter jurisdiction grounds would require an extensive analysis of the Bankruptcy Code, what matters constitute "core" bankruptcy issues, whether the claims here are "related to" bankruptcy proceedings in other jurisdictions, and whether the claims are barred by the approval given by other courts to bankruptcy workouts and settlements of claims. By contrast, because Pope fails to plead an attorney-client relationship with the Rice Group as demonstrated below, and this alleged relationship serves as the linchpin to Pope's fiduciary duty claims, the claims are disposed of more easily and succinctly on this ground.

*Attorney-Client Relationship*

*6 Fiduciary duties such as the duty of undivided loyalty are generated with the formation of an attorney-client relationship. *In re Hayes*, 183 F.3d 162, 168 (2d Cir.1999) (applying New York law).[FN11] The formation of an attorney-client relationship is governed by contract principles. *See C.K. Indus.*

Case 1:07-cv-09749-JSR    Document 10-7    Filed 01/10/2008    Page 7 of 15

Not Reported in F.Supp.2d                                                                                Page 6
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*Corp. v. C.M. Indus. Corp.,* 623 N.Y.S.2d 410, 411 (3d Dep't 1995).*See also**Priest v. Hennessy,* 409 N.E.2d 983, 986 (N.Y.1980). Although a formal written contract is not necessary, the existence of such a relationship depends upon whether there is contractual privity and a legally binding contract.*C.K. Indus. Corp.,* 623 N.Y.S.2d at 411. *See also**Mason Tenders Dist. Council Pension Fund v. Messera,* 4 F.Supp.2d 293, 298 (S.D.N.Y.1998). The existence of an attorney-client relationship depends on a variety of factors, including:

> FN11. The plaintiff has relied on New York law to defend his claims, and the Rice defendants have agreed to the application of New York law to their motion. The parties having consented, New York law shall be relied upon. *SeeAmerican Fuel Corp. v. Utah Energy Dev. Co., Inc.,* 122 F.3d 130, 134 (2d Cir.1997).

1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in an aspect of the matter (e.g., at a deposition); 5) whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; 6) whether the purported client believed that the attorney was representing him and whether this belief was reasonable.
*M.J. Woods, Inc. v. Conopco, Inc.,* 271 F.Supp.2d 576, 585 (S . D.N.Y.2003) (citation omitted) (applying New York law).

The Complaint identifies the Jaques Group as plaintiff's counsel. It asserts that he retained the Jaques Group in 1996 to pursue his asbestos claims. The Complaint denies that the plaintiff ever had knowledge that the Jaques Group was acting as co-counsel with the Rice Group, that they shared fees, or that the Rice Group was acting as the plaintiff's counsel. These factual allegations are fatal to any legal claim by the plaintiff that the Rice Group had an attorney-client relationship with Pope, or had a fiduciary duty to him through the existence of such a relationship. The Complaint underscores this conclusion with its assertions that the institution with the authority to transmit Pope's votes in favor of bankruptcy plans and to bind Pope to the settlement agreements was the Jaques Firm, not the Rice Group. Kellman executed documents adopting the Shook Agreement, ACandS Agreement, and CE Agreement on behalf of Pope. Pope was only bound to the NARCO and Halliburton Agreements when Kellman signed the agreements jointly with Rice.

The Rice Group's negotiation of pre-packaged bankruptcies is insufficient as a matter of law to create a fiduciary relationship with claimants represented by separate counsel. The Bankruptcy Code's laws governing pre-packaged bankruptcies provide that once a pre-packaged bankruptcy plan is negotiated and finalized, it still must be approved by a majority, and in some cases, a supermajority, of creditors. 11 U.S.C. §§ 1126(c), 524(g)(2)(B)(ii)(IV)(bb).*SeeIn re Combustion Engineering, Inc.,* 391 F.3d 190, 201 n. 4 (3d Cir.2004). Since the Rice Group's negotiations did not have any binding effect on Pope's claims until the plans were approved by creditors and the Jaques Firm signed the settlement agreements on his behalf, the negotiation did not as a matter of law create an attorney-client relationship between the Rice Group and claimants such as Pope who were separately represented by counsel.

*7 Pope has not only pleaded facts which directly undermine a claim that he had a fiduciary relationship with the Rice Group, he has also failed to plead any fact that would give "fair notice" of the existence of such a relationship. *Swierkiewicz,* 534 U.S. at 512. For example, he alleges no communications or contact with Rice, no reliance on Rice, no knowledge about Rice's involvement in asbestos bankruptcy workouts, and no other experience that could have led a reasonable person to believe he was represented by Rice or the Rice Group. The bald assertion of a legal conclusion that an attorney-client relationship existed is insufficient in the face of these profound deficiencies. In sum, the Complaint fails to allege an attorney-client relationship between the Rice Group and Pope, and therefore, fails to allege a fiduciary duty owed by the Rice Group to Pope.

*Alternate Fiduciary Duty Theories*

In an attempt to salvage his fiduciary duty claims, Pope resists the motion to dismiss by advancing three alternate theories to support the existence of a fiduciary duty owed by Rice to Pope, to wit, that there was a "co-counsel" relationship

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR    Document 10-7    Filed 01/10/2008    Page 8 of 15

Not Reported in F.Supp.2d                                                                                      Page 7
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

between the Rice Group and the Jaques Group, that there was a "subagency" relationship between the two firms, and that he was a third-party beneficiary of Rice's activities. These efforts are also unsuccessful to state a claim.

*Co-Counsel Relationship*

The Complaint alleges that the Rice Group had a co-counsel relationship with the Jaques Group, and without Pope's knowledge was acting as counsel for Pope. Generally, a client must consent to a co-counsel arrangement in order to create a fiduciary relationship between the client and additional counsel. See *Lacher v. Gordon*, 111 N.Y.S. 283, 284 (2d Dep't 1908); *Grennan v. Well Built Sales of Richmond County, Inc.*, 231 N.Y.S.2d 625, 628 (N.Y.Sup.Ct.1962). Since Pope explicitly denies any knowledge, approval, or reliance on the co-counsel arrangement, he has failed to allege the existence of a fiduciary relationship with the Rice Group through the co-counsel arrangement.

The plaintiff argues that the Complaint successfully alleges a co-counsel relationship between the Rice Group and the Jaques Group because the firms had an express fee-sharing arrangement, the settlement agreements with the Asbestos Companies were jointly signed by both the Rice Group and the Jaques Group on Pope's behalf, and in some of the settlement agreements, where Pope is listed as a settling plaintiff, the Rice and Jaques Groups refer to themselves jointly as "Plaintiffs Counsel" or "affiliated counsel." These assertions, however, do not allege a bona fide, consensual co-counsel relationship, because such a relationship depends on, among other things, the plaintiff having consented to the Rice Group's representation of the plaintiff as co-counsel to the Jaques Group, a fact the Complaint explicitly denies.[FN12]

> FN12. Even Pope's assertion in his motion papers that the settlement agreements with the Asbestos Companies were jointly signed by both the Rice Group and the Jaques Group on Pope's behalf is belied by the Complaint, which alleges that while the Rice Group signed all of the agreements, only the Jaques Group, not the Rice Group, executed the Shook Agreement, ACandS Agreement, and CE Agreement *on behalf of Pope.*

None of the cases on which Pope relies applies to the situation at hand. None of them applies New York law. None of them involves counsel who have established relationships with their own clients and who work cooperatively in a litigation or proceeding with plaintiff's counsel. Each of the cases cited by Pope involves retained counsel hiring another lawyer to assist him in representing his client. See*Huston v. Imperial Credit Commercial Mortgage Inv. Corp.*, 179 F.Supp.2d 1157, 1166, 1168 (C.D.Cal.2001) (attorney who was managing director of defendant and outside counsel acted as co-counsel for defendant); *Streit v. Covington & Crowe*, 82 Cal.App. 4th 441, 443 (Cal.Ct.App.2000) (additional counsel hired to make special appearance at summary judgment hearing); *In re Woodall*, 499 S.E.2d 150, 152 (Ga.Ct.App.1998) (additional counsel retained to assist at trial).

*8 Because the Complaint describes a relationship in which the Rice Group and the Jaques Group each had their own clients, and explicitly denies that Pope had knowledge of or consented to the Rice Group acting as his counsel, it fails as a matter of law to allege a relationship in which the Rice Group had a fiduciary relationship to Pope. The fact that the Rice Group took a leading role in negotiating pre-packaged bankruptcies and settlement plans, and did so in concert with other asbestos litigation law firms, does not, as a matter of law, create a fiduciary relationship to separately represented claimants under a theory that the Rice Group became co-counsel for other firms' clients.

*Subagency Relationship*

Plaintiff next argues that, because the Complaint has alleged a co-counsel relationship, it has alleged a subagency relationship in which the Rice Group was a subagent of plaintiff's counsel and owed the same fiduciary duties to the plaintiff. The plaintiff admits that the agency was created without his authorization, but asserts that where the agent delegates authority to the subagent, and the subagent accepts fees for the services rendered, that the subagent is liable to the principal for a breach of fiduciary duty.

The attorney-client relationship is traditionally viewed as that of agent and principal. *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir.1994). A subagent is a person "appointed by an agent *empowered to do so,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR    Document 10-7    Filed 01/10/2008    Page 9 of 15

Not Reported in F.Supp.2d                                                                 Page 8
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible."*Manley v. AmBase Corp.,* 121 F.Supp.2d 758, 772 (S.D.N.Y.2000) (citation omitted) (citing Restatement (Second) of Agency § 5(1)) (emphasis supplied). Ordinarily, a subagent owes to the principal the same fiduciary duties as the agent owes to the principal. *See* Restatement (Second) of Agency § 428. Where an agent does not have actual or apparent authority to appoint a subagent, however, the subagent "is the agent *solely of the appointing agent and is not the principal's subagent* unless the principal ratifies the appointment ."Restatement (Third) of Agency (Tentative Draft No. 3) § 3.15 cmt. c (emphasis supplied). In such cases, the subagent "is *the agent of the agent only,* and *the latter is responsible* both *to the principal* for any improper delegation or/and to third persons *for his agent's conduct.*"Restatement (Second) of Agency § 5 cmt. b (emphasis supplied). In the context of legal representation, "a firm may be liable to the client for the acts and omissions of [an] outside lawyer if the firm assumes responsibility to a client for a matter, for example pursuant to obligations in fee-sharing arrangements or by assigning work to a temporary lawyer who has no direct relationship with the client. Such arrangements make the outside lawyer *the firm's* subagent."Restatement (Third) of the Law Governing Lawyers § 58 cmt. e (citations omitted) (emphasis supplied). In such circumstances, "the outside lawyer may be liable *to the firm* for contribution or indemnity."*Id.* (emphasis supplied).

*9 An agent gains the authority to appoint a subagent when the principal through word or conduct causes the agent reasonably to believe it has such authority. Restatement (Second) of Agency § 26. *See also* *Carte Blanche (Singapore) PTE, Ltd. v. Diners Club Int'l, Inc.,* 758 F.Supp. 908, 919 (S.D.N.Y.1991). An agent gains apparent authority "by the same method as that which creates authority, except that the manifestation of the principal is to [a] third person rather than to the agent."Restatement (Second) of Agency § 27 cmt. a. *See also* *Standard Funding Corp. v. Lewitt,* 678 N.E.2d 874, 877 (N.Y.1997); Restatement (Second) of Agency § 77. An agent's designated authority to conduct a transaction does not include the authority to delegate to another the power to perform related acts involving special skills.Restatement (Second) of Agency § 78. Indeed, the "relation of principal and agent is a fiduciary one in which the principal ordinarily relies upon the personal qualities of the agent; unless the transaction includes no element of discretion, the one appointed to conduct it cannot properly appoint another to perform it, in the absence of other facts."*Id.* cmt. a. An agent's designated authority to conduct a transaction only creates an inference of authority to appoint a subagent in certain limited circumstances not at issue here. *Manley,* 121 F.Supp.2d at 772. *See also* Restatement (Second) of Agency § 80.

An attorney is generally authorized to delegate a client's business only to the attorney's *employees,* and even then, such a delegation is inappropriate when the attorney would have reason to know that his client was unaware of how the attorney's business was organized. *See* Restatement (Second) of Agency § 80 cmt. a. Because the relationship between an attorney and client is personal, without "specific" authorization from the client, an attorney cannot delegate the trust and create an agency relationship between the client and other counsel. *Mackler v. Richard Hyde Estate,* 105 N.Y.S.2d 276, 278 (1st Dep't 1951).*See also* *Quintel Corp. v. Citibank, N.A.,* 589 F.Supp. 1235, 1239 (S.D.N.Y.1984).

Accepting the allegations in the Complaint as true, Pope has not pleaded that the Rice Group acted as an authorized subagent of the Jaques Group on behalf of Pope. Because the acts of litigation and negotiation are acts requiring the exercise of discretion, the Jaques Group could not hire a subagent without authority from its client. The Complaint expressly disavows that Pope authorized the Rice Group to act on his behalf. Accordingly, the Jaques Group did not have either actual or apparent authority to appoint the Rice Group as subagent, and the Rice Group did not owe a separate and independent fiduciary duty to Pope as a subagent of the Jaques Group.

Again, none of the cases on which Pope relies to assert the existence of a fiduciary relationship through a subagency address the circumstance he describes in his complaint: two separate law firms with their own sets of clients working cooperatively together in litigation. Moreover, he fails to distinguish between circumstances where an attorney is a subagent of the principal, or merely of the agent. At best, it is only this latter situation which is pleaded here. *See* *United States v. Schwab,* 88 F.Supp.2d 1275, 1286-87 (D.Wyo.2000) (insurance agent); *Credit Gen. Ins. Co. v. Midwest Indem. Corp.,* 916

Case 1:07-cv-09749-JSR    Document 10-7    Filed 01/10/2008    Page 10 of 15

Not Reported in F.Supp.2d                                                                                                   Page 9
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

F.Supp. 766, 775-76 (N.D.Ill.1996) (insurance company and manager of surety bonds); *N.Y. State Energy Res. & Dev. Auth. v. Nuclear Fuel Servs.*, 714 F.Supp. 71, 73 (W.D.N.Y.1989) (client's failure to act not excused where local counsel received notice); *American Equity Ins. Co. v. Beck*, 108 Cal.Rptr.2d 728, 733-34 (Cal.Ct.App.), superseded by 31 P.3d 1270 (Cal.2001) (co-counsel hired by same client).

*Third-Party Beneficiary Theory*

*10 Pope's resort to a third-party beneficiary theory of liability is equally unavailing. Pope has not pleaded a third-party beneficiary claim. This alone is fatal since further amendments will not be permitted. Nevertheless, in his brief Pope advances the theory that the Jaques Group engaged the Rice Group for the purpose of assisting it in settling the claims of Pope and others, thereby making Pope a third-party beneficiary of the alleged co-counsel agreement between the Jaques and Rice Groups. This, Pope contends, generated a fiduciary duty owed to him by the Rice Group.

In New York, a third party to a contract may receive a recovery based on the contract only if that party is an "intended beneficiary" of the contract. Restatement (Second) of Contracts §§ 304, 315. *See also Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 212 (N.Y.1985) (adopting Restatement (Second) of Contracts for New York third-party beneficiary law); *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir.1993) (noting essence of New York third-party beneficiary law captured in Restatement); *Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F.Supp.2d 208, 217 (S.D.N.Y.2002) (noting adoption).

[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts § 302. "Among the circumstances to be considered is whether manifestation of the intention of the promisor and promisee is sufficient, in a contractual setting, to make reliance by the beneficiary both reasonable and probable." *Fourth Ocean*, 485 N.E.2d at 212. A contract is intended for the benefit of a third-party if "(1) no one other than the third party can recover if the promisor breaches the contract or (2) the language of the contract otherwise evidences an intent to permit enforcement by third parties." *Chen v. Street Beat Sportswear, Inc.*, 226 F.Supp.2d 355, 362 (E.D.N.Y.2002) (citation omitted).

In the context of negligence claims brought by third parties against attorneys, New York law treats such claims as "a theory close to that of third-party beneficiary," and has held attorneys liable to parties who are not their clients only in limited circumstances. *Crossland Sav. FSB v. Rockland Ins. Co.*, 700 F.Supp. 1274, 1281 (S.D.N.Y.1988) (Leval, J.). An attorney is not liable to a third party for simple negligence. *See United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs.*, 755 F.Supp. 1195, 1200 (S.D.N.Y.1989). As a general rule in New York, a lawyer has "no duty of due care to third parties." *Friedman v. Hartmann*, No. 91 Civ. 1523(PKL), 1994 WL 97104, at *7 (S.D.N.Y. Mar. 23, 1994). *See also Crossland*, 700 F.Supp. at 1280; *Redhead v. Winston & Winston, P.C.*, No. 01 Civ. 11475(DLC), 2002 WL 31106934, at *5 (S.D.N.Y. Sept. 20, 2002). The requirement of privity has its roots in ethical considerations since "the interests of the attorney's client may not be harmonious with other persons." *Massera*, 4 F.Supp.2d at 298 (citation omitted). In addition, imposing a duty of care to a third party is "likely to interfere with the client's right to confidentiality." *United Bank of Kuwait*, 755 F.Supp. at 1203. The rationale for the requirement of privity is that it "is necessary in order to provide fair and manageable bounds to what otherwise could prove to be limitless liability." *Prudential Ins. Co. of America v. Dewey, Ballantine, Bushby, Palmer & Wood*, 605 N.E.2d 318, 320 (N.Y.1992). Thus, "[u]nder New York law, attorneys are not liable to the third party for negligent representations, even where they prepare documents knowing that third parties will rely upon them." *Crossland*, 700 F.Supp. at 1281.

*11 A duty of care to third parties may arise in certain limited circumstances, however, such as in cases of fraud or other malicious acts, *see Chinello v. Nixon, Hargrave, Devans & Doyle, LLP*, 788 N.Y.S.2d 750, 751 (4th Dep't 2005), where an attorney for a trustee places his own self-interest

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR    Document 10-7    Filed 01/10/2008    Page 11 of 15

Not Reported in F.Supp.2d                                                                                  Page 10
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

above the interest of the trustee, *seeid.*, negligence claims by intended beneficiaries in wrongful death actions, *seeBaer v. Broder*, 447 N.Y.S.2d 538, 539 (2d Dep't 1982), or where there is "a relationship so close as to approach that of privity,"*Prudential*, 605 N.E.2d at 320, as when "a lawyer *at the direction of her client* prepares an opinion letter which is *addressed to the third party* or which *expressly invites the third party's reliance,"Crossland*, 700 F.Supp. at 1282 (emphasis supplied).*See alsoPrudential*, 605 N.E.2d at 321-22.

As already noted, the Complaint does not state a claim based on a third party beneficiary theory. It does not even allege the existence of a contract between the Rice and Jaques Groups intended to benefit Pope, nor a breach of that contract. Moreover, its causes of action are not among the limited circumstances which New York law has acknowledged may permit recovery for tortious conduct. The first six causes of action allege breaches of the fiduciary duty of undivided loyalty, while the seventh cause of action alleges a breach of the fiduciary duty to disclose all facts and proceedings material to an attorney's prosecution of a client's claim. Pope cannot pursue these causes of action against the Rice Group under a third-party beneficiary theory because these duties are owed by an attorney to his client, not to a third party. In sum, the Complaint does not allege one of the special circumstances required to permit a departure from the long-standing rule that a lawyer has no duty of care to third parties with whom he is not in privity of contract.

The plaintiff cites *Crossland*, 700 F.Supp. at 1281, to support the contention that, having held themselves out and signed agreements as Pope's counsel, the Rice Group is estopped from denying an attorney-client relationship. *Crossland* is inapposite. The attorney in *Crossland* issued an opinion letter at his client's direction that expressly invited reliance by a third party. *Id.* at 1282-83.

Other authorities cited by Pope, none of which applies New York law, do not alter this conclusion. *Pizel v. Zuspann*, 795 P.2d 42 (Kan.1990), declined to follow New York law, but nonetheless simply restates the notion that in the special circumstance where the negligence of an attorney for a trust harms the beneficiaries of that trust, it may be possible to hold that attorney liable even though he is not in contractual privity with the beneficiaries. *Id.* at 51.*Red River Valley Bank v. Home Ins. Co.*, 607 So.2d 892 (La.Ct.App.1992), involves negligent investigation of real estate title. *Id.* at 896.*Rutkoski v. Hollis*, 600 N.E.2d 1284 (Ill.App.Ct.1992), addressed a third-party beneficiary claim brought by the beneficiary of an estate for whom the attorney had performed work, and rejected the claim. *Id.* at 1289-90.*Leyba v. Whitley*, 907 P.2d 172 (N.M.1995), contains an exceedingly narrow holding permitting third-party beneficiaries to recover from attorneys in the context of a New Mexico wrongful death statute. *Id.* at 177, 180.

*12 In sum, the plaintiff's attempt to salvage his first seven causes of action by resort to a third-party beneficiary theory fails. To the extent they purport to assert claims against the Rice Group, the first seven causes of action are dismissed for failure to state a claim.

*Aiding and Abetting*

Pope's tenth cause of action proceeds on the theory that the Rice Group aided and abetted breaches of fiduciary duty by the Jaques Group. To state a claim for aiding and abetting a breach of fiduciary duty under New York law, a plaintiff must plead: "1) a breach of fiduciary obligations to another; 2) that the defendant knowingly induced or participated in the breach; and 3) that the plaintiff suffered damages as a result of the breach."*In re Sharp Int'l Corp.*, 302 B.R. 760, 770 (E.D.N.Y.2003) (Trager, J.).*See alsoWight v. Bankamerica Corp.*, 219 F.3d 79, 91 (2d Cir.2000) (applying New York law); *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (1st Dep't 2003). The complaint must plead actual, not constructive, knowledge of the breach of fiduciary duty.*Kaufman*, 760 N.Y.S.2d at 169. The "knowing participation" prong of the second element means that the defendant must have provided "substantial assistance to the primary violator."*Id.* at 170."Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur."*Id.See alsoKolbeck v. LIT America, Inc.*, 939 F.Supp. 240, 246 (S.D.N.Y.1996) (Mukasey, J.)."[T]he mere inaction of an alleged aider and abettor," however, "constitutes substantial assistance *only* if the [aider and abettor] owes a fiduciary duty *directly to the plaintiff."Kaufman*, 760 N.Y.S.2d at 170 (emphasis supplied).*See alsoIn re Sharp*, 302 B.R. at 774. The "knowing inducement" prong of the second element means "advice or encouragement to

Case 1:07-cv-09749-JSR    Document 10-7    Filed 01/10/2008    Page 12 of 15

Not Reported in F.Supp.2d                                                                                              Page 11
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

act, in instances where the act encouraged is known to be tortious." *In re Sharp,* 302 B.R. at 775 (citation omitted).

Pope has failed to plead any fact that would give "fair notice" of how the Rice Group knowingly induced or participated in any alleged breach by the Jaques Group.[FN13] *Swierkiewicz,* 534 U.S. at 512. In his opposition papers, Pope identifies the underlying wrongdoing which the Rice Group "induced" as the signing of "settlement agreements that the Jaques Group knew were unfavorable to and had not been approved by Pope and by failing to disclose to Pope the co-counsel and fee-sharing agreements between the Rice and Jaques Groups." These assertions do not allege that the Rice Group *knew* that the Jaques Group was breaching its fiduciary duties to Pope. The Complaint does not allege that the Rice Group knew that the Jaques Group had not consulted sufficiently with Pope before signing the settlement agreements on his behalf. As such, the Complaint fails to allege the knowledge component of an aiding and abetting claim. Consequently, the tenth cause of action is dismissed.

> FN13. The Complaint asserts only: "The Rice Group knowingly induced or participated in the Jaques Group's breaches of fiduciary duty to Pope *by engaging in the conduct alleged in this complaint.*" (Emphasis supplied.)

*Conspiracy*

**\*13** Pope's twelfth cause of action proceeds on the theory that the Rice Group conspired with the Jaques Group to breach fiduciary duties to Pope. New York law does not recognize a substantive tort of civil conspiracy. *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,* 755 F.2d 239, 251 (2d Cir.1985). Rather, a claim for civil conspiracy is only tenable where there is "evidence of an underlying actionable tort." *Missigman v. USI Northeast, Inc.,* 131 F.Supp.2d 495, 517 (S.D.N.Y.2001). Where there is an underlying tort, the elements of civil conspiracy are: "(1) the corrupt agreement between two or more persons, (2) an overt act, (3) their intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage." *Kashi v. Gratsos,* 790 F .2d 1050, 1055 (2d Cir.1986) (applying New York law). In order to sustain an allegation of civil conspiracy that involves a conspiracy to breach a fiduciary duty, all members of the alleged conspiracy must independently owe a fiduciary duty to the plaintiff. *See Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.,* No. 00 Civ. 8688(WHP), 2002 WL 362794, at \*13-14 (S.D.N.Y. Mar. 6, 2002) (collecting cases).

The Complaint does not allege facts supporting the existence of an independent fiduciary duty owed by the Rice Group to Pope. Therefore, the Complaint fails to allege an essential component of civil conspiracy, and consequently, the twelfth cause of action is dismissed with respect to the Rice Group.

*Service of Process on the Jaques Group*

On October 5, 2004, the plaintiff had two copies of the Summons and Complaint delivered to Danielle Kinney ("Kinney"), a receptionist for the Jaques Firm. As Kellman's declaration notes, Kinney is not an officer, director, or agent of Kellman or of the Jaques Firm. A Cohen Pope attorney's declaration pertaining to service issues attaches a declaration by the process server that simply asserts "Corporate Service by serving the Authorized Agent 'Danielle Kinney," 'but it does not state how, if at all, the process server determined that Kinney held the status of "Authorized Agent." Kellman also notes that the Summons and Complaint were never mailed to him or the Jaques Firm, nor were they ever affixed to the door or inserted in the mailbox of his residence or place of business. The Cohen Pope attorney's declaration on this point attaches an affidavit of service from a process server stating that she mailed, among other things, a summons and a copy of the First Amended Complaint to Kellman at the Jaques Firm.[FN14] An examination of the docket sheet in this case reveals that the plaintiff has not, to this date, filed any proof of service with the Clerk of Court with respect to Kellman or the Jaques Group.

> FN14. The affidavit states that the documents were placed in an envelope "bearing the legend 'Personal and Confidential" ' and that did not indicate in any way that the communication was from an attorney or concerned an action against the person being served.

"[I]nsufficiency of service of process" is an appropriate ground for dismissal of a complaint. Rule 12(b)(5), Fed.R.Civ.P. *See also Martin v. N.Y. State*

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 12

*Dep't of Mental Hygiene,* 588 F.2d 371, 373 (2d Cir.1978). The burden of proof to show the adequacy of service rests with the plaintiff. *Blue Ocean Lines v. Universal Processing Equip., Inc.,* No. 93 Civ. 1722(SS), 1993 WL 403961, at *4 (S.D.N.Y. Oct. 7, 1993). "[T]he return of a private process server [under penalty of perjury] is not conclusive as to the facts of service" where "the defendant has produced affidavits controverting the allegations of the return."*Id.*

*14 Service of process may be effected upon an individual in any judicial district of the United States either "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons" upon a defendant in that state's courts, or "by delivering a copy of the summons and of the complaint to the individual personally or ... by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."Rule 4(e), Fed.R.Civ.P. New York law provides for service of process on a natural person by, among other ways, delivering the summons and complaint "to a person of suitable age and discretion at the actual place of business ... of the person to be served *and* by ... mailing the summons by first class mail to the person to be served at his or her actual place of business" with such delivery and mailing "to be effected within twenty days of each other."N.Y. C.P.L.R. § 308(2).[FN15] If this method is used, "proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later."*Id.* Service will only be deemed properly completed "ten days after such filing," and must "identify [the] person of suitable age and discretion" who was served and must "state the date, time and place of service."*Id.* As a result, " 'leave and mail' service under Section 308(2) is ineffective where a plaintiff does not file proof of service with the clerk within twenty days of the date on which the process server mailed the summons and complaint."*Howard v. Klynveld Peat Marwick Goerdeler,* 977 F.Supp. 654, 660 (S.D.N.Y.1997).

> FN15. Michigan law does not provide for such service.

[T]he specific language of CPLR 308(2) confers jurisdictional import upon the filing which is accomplished in connection with that section. Jurisdiction over a natural person is obtained when service is complete. Personal service is complete when a natural person is himself served. Substituted service is complete when: a) a person of suitable age and discretion is served; and b) a copy of the summons and complaint is mailed to the defendant; and c) upon the expiration of ten days after proof of such service has been filed.

*Roth v. Syracuse Housing Auth.,* No.2001-5404, 2002 WL 31962630, at *12 (N.Y.Sup.Ct. July 17, 2002).[FN16]

> FN16. It is worth noting that the New York Court of Appeals has endorsed such analysis in the context of Section 307, N.Y. B.C.L., which provides for an analogous method of service of process on unauthorized foreign corporations: "Where service of a copy of process was effected by mailing in accordance with this section, proof of service shall be by affidavit of compliance with this section filed, together with the process, within thirty days after receipt of the return receipt signed by the foreign corporation, or other official proof of delivery or of the original envelope mailed.... Service of process shall be complete ten days after such papers are filed with the clerk of the court."N.Y. B.C.L. § 307(c). The Court of Appeals has held that the "fail[ure] to file an affidavit of compliance as required by Business Corporation Law § 307(c)(2)... is [a] jurisdictional [defect] and does not constitute a 'mere irregularity' subject to cure."*Flannery v. General Motors Corp.,* 655 N.E.2d 176, 176 (N.Y.1995) (citation omitted). The statute thus prescribes a "mandatory sequence and progression of service completion options necessary to acquire jurisdiction,"*id.*(citation omitted), and therefore where plaintiff failed to comply with the affidavit filing requirement, the defendant's motion to dismiss was "properly granted." *Id.*

Service of process may be effected upon a corporate entity in any judicial district of the United States "in the manner prescribed for individuals by subdivision (e)(1),"*i.e.,* pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons, or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent,

Case 1:07-cv-09749-JSR    Document 10-7    Filed 01/10/2008    Page 14 of 15

Not Reported in F.Supp.2d                                                              Page 13
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

or to any other agent authorized by appointment or by law to receive service of process." Rule 4(h)(1), Fed.R.Civ.P. Under New York law, service on a corporation may be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1). Where service is on a receptionist of a professional corporation, the requirements of Section 311(a)(1) are not met and service is invalid. Albilia v. Hillcrest Gen. Hosp., 508 N.Y.S.2d 10, 10-11 (1st Dep't 1986). Under Michigan law, service on a corporation [FN17] may be made, among other ways, by: "(1) leaving a summons and a copy of the complaint with any officer or the resident agent, or (2) leaving a summons and a copy of the complaint with any director, trustee, or person in charge of any office or business establishment and sending a summons and a copy of the complaint by registered mail, addressed to the principal office of the corporation." Mich. Comp. Laws § 600.1920.

> FN17. It is assumed, for the purposes of this Opinion, that under Michigan law, the rules governing the service of process on a corporation apply to the Jaques Firm due to its designation as "P.C.," or "professional corporation." It bears noting, however, that the rules governing the service of process on a partnership are similar, such that service may be made by "(1) leaving a summons and a copy of the complaint with any general partner personally, or (2) leaving a summons and a copy of the complaint with a person in charge of a partnership office or business establishment at such office or place of business and sending a summons and a copy of the complaint by registered mail, addressed to any general partner at his usual place of abode or last known address." Mich. Comp. Laws § 600.1917.

*15 With respect to the Jaques Firm, the plaintiffs, in serving a copy of the summons and complaint on a receptionist who was unauthorized to accept service, did not deliver those documents to an officer, director, a managing or general agent, cashier, assistant cashier, trustee, person in charge of the office, or to any other agent authorized by appointment or by law to receive service of process. The process server's declaration's bald characterization of the receptionist as "the Authorized Agent" with no further support is not sufficient to find effective service, particularly where it is the plaintiff's burden to demonstrate compliance with the law, and where there is an affidavit from the defendants indicating that the receptionist has never been, and in practice is not, authorized to accept service.[FN18] Therefore, all claims against the Jaques Firm are dismissed due to insufficient service of process.

> FN18. A hearing has not been requested, and in any event is unnecessary since the plaintiff has not identified any disputed facts that need to be resolved through a hearing.

Since service of process was not delivered to Kellman personally, the only possible avenue for service is pursuant to Section 308(2), N.Y. C.P.L.R. Although process was left with a person of "suitable age and discretion" at Kellman's "actual place of business," there is a dispute as to whether the summons was mailed to Kellman at his actual place of business. The process server contends in an affidavit that she mailed the summons and the First Amended Complaint, along with other documents, to Kellman at his workplace on October 11, 2004, while Kellman states in an affidavit that no such mailing took place. This dispute need not be resolved, however, because the plaintiff failed to comply with Section 308's requirement that proof of service shall be filed with the Clerk of Court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later. Compliance with this filing requirement is particularly important where there is a dispute as to whether a proper mailing took place, as it represents evidence of mailing created and properly filed *in advance* of the dispute. Because failure to file proof of service is a jurisdictional defect,[FN19] all claims against Kellman are dismissed due to insufficient service of process.

> FN19. There is no need for a hearing on this point because it is clear from the public record that no proof of service has been filed. Moreover, because plaintiff has been officially on notice for almost three months that Kellman was contesting sufficiency of service of process, and has made no effort to correct the filing deficiency, it is appropriate to grant the motion to dismiss.

CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are granted. The action against Rice, Motley, Motley Rice LLC, and Ness Motley PA is dismissed with prejudice. The action against the Jaques Admiralty Law Firm and Kellman is dismissed without prejudice. The Clerk of Court shall close the case.

SO ORDERED:

S.D.N.Y.,2005.  
Pope v. Rice  
Not Reported in F.Supp.2d, 2005 WL 613085 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.