TAB 7

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 177291 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

Debora v. WPP Group PLC
S.D.N.Y.,1994.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Frank DEBORA, Plaintiff,
v.
WPP GROUP PLC, David M. Ogilvy and Martin S. Sorrell, Defendant.
No. 91 Civ. 1775 (KTD).

May 5, 1994.

Wechsler Skirnick Harwood Halebian & Feffer, Stuart D. Wechsler, Andrew D. Friedman, Law Offices of Curtis V. Trinko, Curtis V. Trinko, New York City, for plaintiff.
Davis & Gilbert, Howard J. Rubin, New York, NY, Hornsby, Sacher, Zelman & Stanton, Miami, FL, for defendant.

MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

*1 Plaintiff Frank Debora ("Debora") brought this action alleging that defendants WPP Group PLC ("WPP"), David M. Ogilvy ("Ogilvy"), and Martin S. Sorrell ("Sorrell"): (1) violated federal securities law, including § 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b) (the "1934 Act"), and the Securities and Exchange Commission (the "SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, and (2) committed common law fraud and deceit.

The defendants have moved to dismiss the federal securities claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for failing to plead fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. In addition, the defendants have moved to dismiss the common law fraud and deceit claims pursuant to Rule 12(b)(1), claiming that subject matter jurisdiction is lacking. For the following reasons, the defendants' motion is granted in its entirety. The Second Amended Complaint is hereby dismissed with prejudice.

BACKGROUND

(1) *Procedural History*

On April 8, 1993, I granted the defendants' motion to dismiss the First Amended Complaint for failing to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. In this decision, I noted that the First Amended Complaint "approaches the genre of 'we lost money, therefore, someone defrauded us or is otherwise to blame.' " Debora was, however, granted leave to replead within twenty days of the date of the decision. On April 28, 1993, Debora did so by filing a Second Amended Complaint. Thereafter, the defendants brought the instant motion.

(2) *The Second Amended Complaint*

Debora purchased American Depositary Shares as evidenced by American Depositary Receipts ("ADRs") of WPP between August 7, 1990 through December 21, 1990 (the "Class Period"). (¶ 15).[FN1] Although the Second Amended Complaint does not specify the particular dates Debora purchased the ADRs, an affidavit provided by his counsel in connection with his previous motion for class certification establishes that Debora purchased 1,000 WPP ADRs on December 3, 1990, on December 7, 1990, and on December 21, 1990 for a total 3,000 shares.[FN2] (Friedman Aff. ¶ 2 & Ex. A).

The Second Amended Complaint alleges that WPP issued a Form 6-K press release on August 8, 1990, and filed it with the SEC on August 9, 1990 (the "August 6-K"). The August 6-K states WPP's interim financial results as of June 30, 1990. More importantly, through the August 6-K, WPP announced that it intended to pay an interim dividend and that its earnings should match "expectations both inside and outside the company," which were approximately £> 110 million. (¶¶ 37-38, 42).

In October 1990, WPP entered into a new credit agreement with its lenders (the "October Credit Agreement"). This agreement was apparently not disclosed to the public by WPP until it filed its Form 20F Annual Report with the SEC on July 1, 1991. (¶ 7). In addition, on November 19, 1990, WPP issued another Form 6-K press release, in which it disclosed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR    Document 10-8    Filed 01/10/2008    Page 3 of 8

Not Reported in F.Supp.                                                                                                          Page 2
Not Reported in F.Supp., 1994 WL 177291 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

that WPP's pre-tax profits would be lower than what had been estimated in August 1990 (the "November 6-K"). WPP later confirmed a revised profit forecast of £90 million for fiscal 1990. (¶ 46). After this disclosure, WPP's ADRs lost two-thirds of their value in just two days. (¶ 47).

*2 On December 21, 1990, WPP announced in a letter to its shareholders, which it filed with the SEC in a Form 6-K, that it had decided not to pay an interim dividend in order to conserve cash (the "December 6-K"). (¶ 50). After this announcement, WPP's ADR price fell even further. (¶¶ 51-52).

From these facts, Debora alleges that WPP defrauded the market by making the following misrepresentations or omissions:
 (1) WPP failed to disclose its diminishing profitability, liquidity problems, large debt payments due, and deteriorating cash flow, and as a result, WPP did not have a reasonable basis for the announcement in the August 6-K that it would pay an interim dividend and that earnings for 1990 would equal expectations (¶¶ 6, 12, 37-45, 51);
 (2) WPP failed to disclose that during the Class Period, it had negotiated and entered into the October Credit Agreement (¶¶ 6, 7, 12);
 (3) WPP failed to disclose that from approximately November 20 through December 21 it began re-negotiations of the October Credit Agreement with its lenders (¶¶ 6, 7, 12);
 (4) WPP failed to disclose that it would not be financially able and/or permitted by its lenders to pay the proposed interim dividend (¶¶ 6, 9, 12); and
 (5) WPP failed to disclose the terms of its Credit Agreement with various lenders, dated June 21, 1990 (the "June Credit Agreement") (¶¶ 6, 9, 36).

In sum, the Second Amended Complaint can be boiled down to two factual allegations. First, WPP misrepresented its projected earnings for the second half of fiscal 1990 (hereinafter "the projected earnings allegation"). Second, WPP misrepresented its ability to pay an interim dividend (hereinafter "the interim dividend allegation"). According to Debora, these alleged omissions would have revealed the falsity of WPP's representations. More importantly, because of these alleged misrepresentations and omissions, Debora alleges that WPP defrauded the market, thereby artificially inflating the price of WPP's ADRs when he purchased the shares. Consequently, he alleges that he overpaid for the ADRs, causing him to suffer damages. (¶¶ 8, 60, 67, 71). Thus, as a result of this "fraud on the market," [FN3] the Second Amended Complaint alleges that: (1) the defendants violated § 10(b) and Rule 10b-5 of the 1934 Act (¶ 54-61); (2) Ogilvy and Sorrell violated § 20(a) of the 1934 Act as controlling persons; and (3) the defendants committed common law fraud and deceit. (¶¶ 68-71).

DISCUSSION

A complaint may dismissed pursuant to Rule 12(b)(6) only if the plaintiff can prove no set of facts that would entitle him to relief. Frasier v. General Elec. Co., 930 F.2d 1004, 1007 (2d Cir.1991), (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). As a result, I must treat all factual allegations in the Second Amended Complaint as true and draw all reasonable inferences in favor of Debora. Id.

(1) *Section 10(b) and Rule 10b-5*

*3 In order to state a cause of action under § 10(b) and Rule 10b-5, a plaintiff must allege facts that, if proved, would establish that the defendant (1) with scienter (2) made a material misrepresentation or omitted to disclose a material fact that it had a duty to disclose (3) upon which plaintiff reasonably relied (4) causing plaintiff to be damaged (5) in connection with the purchase or sale of a security. See Basic Inc. v. Levinson, 485 U.S. 224, 231 (1988); Buchman v. Primerica Corp., [1991-92 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,586 at 92,749 (S.D.N.Y.1992). If Debora fails to allege facts sufficient to support each of these elements, his claim must fail. See Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1494 (2d Cir.1992).

In addition, all § 10(b) claims must be pled with requisite particularity. See Buchman [1991-92 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,586 at 92,749. At minimum, a party pleading fraud must specify the time, place, speaker, and content of the alleged misrepresentation. Lydon v. Estate of Winston, 715 F.Supp. 600, 601 (S.D.N.Y.1989). In addition, a plaintiff who pleads fraud solely on upon information and belief "must adduce facts supporting a strong inference of fraud or [the complaint] will not satisfy even a relaxed pleading standard." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir.1990).

(a) *The Projected Earnings Allegation*

Case 1:07-cv-09749-JSR    Document 10-8    Filed 01/10/2008    Page 4 of 8

Not Reported in F.Supp.  Page 3
Not Reported in F.Supp., 1994 WL 177291 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

To establish the cause element of a § 10(b) and Rule 10b-5 claim, a plaintiff must allege facts sufficient to establish two types of causation: (1) loss causation, *i.e.,* the misrepresentations or omissions caused the plaintiff an economic harm; and (2) transaction causation, *i.e.,* the misrepresentations or omissions caused the plaintiff to purchase or sell the security. *Citibank,* 968 F.2d at 1494;*Roots Partnership v. Land's End, Inc.,* 965 F.2d 1411, 1419 (7th Cir.1992). In this case, Debora can in no way establish either type of cause as to the projected earnings allegation. The Second Amended Complaint specifically alleges that WPP disclosed that its projected earnings would not meet the August 1990 expectations on November 19, 1990. (¶ 46). Debora's earliest purchase of WPP ADRs was December 3, 1990. (Friedman Aff. ¶ 2 & Ex. A). Thus, the market had already accounted for the revised downward projection when Debora purchased the ADRs. Indeed, WPP's shares lost 2/3's of their value after the release of the November 6-K. (¶ 47).

Debora's purchases occurred after this disclosure. As a result, he cannot allege facts sufficient to show that the alleged misrepresentation caused him economic harm since he did not pay the allegedly inflated price for the shares. Nor can Debora establish that the alleged misrepresentation caused him to purchase the ADRs since the revised downward profit projection had already been made when he purchased the shares. Indeed, fraud on the market claims, such as this one, expressly require that the plaintiff trade the security "between the time the misrepresentations were made and the time the truth was revealed." *Basic, Inc.,* 485 U.S. at 248 n. 27 (citations omitted). *See also Roots,* 965 F.2d at 1419 ("[T]he fraud-on-the-market theory under which [plaintiff] proceeds presumes that news is promptly incorporated into [the] stock price."). Therefore, Debora has not alleged facts sufficient to establish cause as to the projected earnings allegation. As a result, he fails to state a claim upon which relief can be granted for this claim.

(b) *The Interim Dividend Allegation*

*4 Debora did purchase 2,000 WPP ADRs prior to WPP's announcement on December 21, 1990 that it would not be paying an interim dividend. He, however, purchased 1,000 ADRs on December 21, 1990, the same day of the announcement, for a price of a 1 7/8 . (Friedman Aff. ¶ 2 & Ex. A). The Second Amended Complaint is not clear as to the time Debora purchased the ADRs on December 21, 1990. The price of WPP ADRs closed at 2 1/8 on December 21, 1990. (¶ 52). If the announcement followed Debora's purchase, then the announcement did not have a negative impact on the price of the WPP ADRs. If this is the case, then Debora will have failed to allege facts sufficient to establish "loss causation" since no economic loss occurred. *See Citibank, N.A.,* 968 F.2d at 1495-96. As such, Debora will have failed to state a claim for this particular purchase.

This scenario, however, does not seem probable because such an announcement would likely cause the price of the ADRs to decrease. Thus, it appears Debora purchased these 1,000 ADRs after the announcement. In that case, Debora will also be unable to establish the cause element as to this particular purchase for the same reasons he failed to establish cause for the projected earnings allegation. In any event, Debora still fails state a claim upon which relief can be granted as to the entire interim dividend allegation.

The crux of the interim dividend allegation is that WPP fraudulently represented its intent to pay such a dividend in the August 6-K. As part of this fraudulent scheme WPP failed to disclose: (1) the terms of the June Credit Agreement (¶¶ 35-36); (2) WPP's profitability and liquidity problems (¶ ¶ 6, 7, 12, 51); (3) the fact that it had entered into the October Credit Agreement (¶¶ 6, 7, 12); (4) the fact that it had entered into negotiations to renegotiate the October Credit Agreement (¶¶ 6, 7, 12); and (5) that it was not financially able and/or permitted by its lenders to pay the interim dividend prior to such a disclosure in the December 6-K. (¶¶ 6, 9, 12). I will address each of these alleged omissions in turn.

(a) *June Credit Agreement*

Debora contends that the failure to disclose the terms of the various covenants in WPP's June Credit Agreement made WPP's August 1990 projection concerning the proposed interim dividend misleading in light of the omitted information. Debora specifically alleges that "the actual size of each semi-annual payment that would have to be made and [that] the various covenants in WPP's banking and loan agreements remained within the knowledge of defendants and WPP's banks." (¶ 36).

Case 1:07-cv-09749-JSR    Document 10-8    Filed 01/10/2008    Page 5 of 8

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 177291 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 4

On July 5, 1990, WPP filed a Form 20-F Annual Report for the fiscal year ending December 31, 1989 and attached the June Credit Agreement as an exhibit. Thus, WPP had publicly disclosed the June Credit Agreement nearly 5 months prior to Debora's first purchase of the ADRs and prior to the release of the August 6-K. More importantly, the June Credit Agreement discloses the dates and dollar amounts of the semi-annual installments, and it provides a detailed list of the various "undertakings" with which WPP was to comply, including a detailed description of the financial ratios which were to be maintained, and the methods by which those ratios were to be maintained. (June 1990 Agreement at 39-50) (Appendix to Def. Mem. of Law, Ex. 8 (hereinafter "Appendix")). Thus, it is clear that the information that Debora alleges remained in the hands of WPP was in the hands of the public markets. Indeed, the June Credit Agreement contains a schedule of loan payments listing the size of each payment and the various covenants that Debora claims were never disclosed. (June 1990 Agreement at 30-31) (Appendix Ex. 8).

*5 A complaint fails to state a § 10(b) claim when the alleged omission has actually been disclosed. Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 116-17 (2d Cir.1982). See also Kramer v. Time Warner Inc., 937 F.2d 767, 773-74 (2d Cir.1991) (court may consider documents filed with the SEC on a motion to dismiss even though the documents were not attached to or incorporated into the complaint); Ferber v. Travelers Corp., 802 F.Supp. 698, 702 (D.Conn.1992) ("To the extent that the written document contradicts the allegations in the complaint, the former controls.") (citations omitted). The June Credit Agreement disclosed "the actual size of each semi-annual payment ... and the various covenants in WPP's banking and loan agreements...." (¶ 36). As such, the allegations regarding the non-disclosure of the terms of the June Credit Agreement fails to state a claim upon which relief can be granted.

(b) *WPP's Profitability*

Debora claims that WPP failed to disclose its "diminishing profitability" and "deteriorating cash flow." (¶¶ 6, 7, 12, 51). As a result, it did not have a reasonable basis for making the announcement that it would pay an interim dividend. This, according to Debora, amounts to fraudulent conduct that violates § 10(b) of the 1934 Act.

Nowhere in the Second Amended Complaint does Debora describe or identify with specificity the "cash flow problems" that he alleges WPP was experiencing when it released the August 6-K. Indeed, Debora has not alleged any facts or figures demonstrating the cash flow or liquidity problems he alleges existed. In a most conclusory way, the Second Amended Complaint that Debora only alleges these problems. Such allegations are insufficient under Rule 9(b). See Brown v. Hutton Group, 795 F.Supp. 1317, 1320-21 (S.D.N.Y.1992); DiLeo v. Ernst & Young, 901 F.2d 624, 626-27 (7th Cir.), cert. denied,498 U.S. 941 (1990). See also Shields v. Washington Bancorporation, [1992-93 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,310, at 95,529 (D.D.C.1992) (dismissing alleged omission of bank's financial problems where complaint failed to allege particular facts about the bank's problems); Salit v. Centerbank, 767 F.Supp. 429, 431 (D.Conn.1990) (allegations that defendants overstated company's profitability and understated reserves not actionable where plaintiff failed to allege specific facts to support his conclusion). In other words, simply stating that these "cash flow problems" existed at the time the August 6-K was released is not particular enough to meet the requirements of Rule 9(b).

(c) *October Credit Agreement*

Debora alleges that had WPP disclosed it was negotiating, and then later entered into, the October Credit Agreement, investors "may have been alerted that WPP was experiencing liquidity declines or that it was unlikely that WPP be able ... to pay the" interim dividend. (¶ 7). An omission is not actionable under § 10(b) and Rule 10b-5 unless it is an omission of a material fact that the defendant had a duty to disclose. Glazer v. Formica Corp., 964 F.2d 149, 154-55 (2d Cir.1992). To establish that an omitted fact was material, a plaintiff must allege facts showing that there was a substantial likelihood that a reasonable investor would have considered the omitted information significant at the time the he or she purchased or sold the security. Basic, Inc., 485 U.S. at 231. In other words, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." Id. at 231-32 (quoting TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976)).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*6 The October Credit Agreement replaces the June Credit Agreement. The sole difference between the two agreements is that the October Credit Agreement replaces certain lenders who were parties to the June Credit Agreement with a new lender. (October 1990 Agreement at 2, 22) (Appendix Ex. 9). In all material respects, the October Credit Agreement is identical to the June Credit Agreement. The total amount of the credit facility, the interest and instrument fees, the repayment schedules and the various undertakings with which WPP was to comply all remained unchanged. (*Compare* June Credit Agreement §§ 2.1, 2.2, 8, 9.1, 9.2, 13 to October Credit Agreement §§ 8, 9.1, 9.2, 13) (Appendix Exs. 8 & 9).

The material terms of the June Credit Agreement had been fully disclosed. Thus, there is nothing in the October Credit Agreement that would have "significantly altered the 'total mix' of information made available" during the Class Period concerning WPP's debt obligations. *Basic, Inc.,* 485 U.S. at 231-32 (citations omitted). Accordingly, the October Credit Agreement and the negotiations leading up to it, were not material, and the defendants failure to disclose them in no way amounts to a violation of § 10(b) and Rule 10b-5.

(d) *The Re-negotiation of the October Credit Agreement*

After WPP's disclosure that it had lowered its profit projections for the year ended 1990, WPP's management began discussions with its lenders to review arrangements for the future should recently experienced trading conditions continue for the whole of 1991." (December 6-K) (Appendix Ex. 6). Debora alleges that the failure to disclose this information violated § 10(b) and Rule 10b-5.

The Second Amended Complaint contains no allegation as to how these negotiations were material. The mere fact that some discussions or negotiations have occurred, by itself, is not necessarily material. *See Taylor v. First Union Corp. of South Carolina,* 857 F.2d 240, 244 (4th Cir.1988), *cert. denied,* 489 U.S. 1080 (1989). "Those in business routinely discuss and exchange information on matters which may or may not eventuate in some future agreement." *Glazer,* 964 F.2d at 155 (citations omitted). It is the responsibility of a plaintiff to explain how a discussion, which may lead to an agreement, is material. Failure to put forth such an explanation in a complaint is tantamount to not stating a claim under § 10(b) and Rule 10b-5. *See Konstantinakos v. FDIC,* 719 F.Supp. 35, 38-39 (D.Mass.1989). Debora has failed to allege any facts explaining how defendants' nondisclosure of these negotiations was material. He merely alleges that the negotiations occurred. He does not allege how these negotiations made the interim dividend announcement in August materially misleading.

In addition, "[e]ven if information is material, there is no liability under Rule 10b-5 unless there was a duty to disclose it." *Glazer,* 964 F.2d at 156 (citations omitted). The duty to disclose in this case would only arise if WPP made a statement that would become inaccurate, incomplete or misleading without disclosure of additional information.[FN4] *Id.* at 156-57 (citations omitted). Without such a duty, there can be no liability for an alleged omission of a purported material fact. *See Chiarella v. United States,* 445 U.S. 222, 235 (1980); *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 26 (1st Cir.1987). "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic, Inc.,* 485 U.S. at 239 n. 17. In other words, a defendant must disclose only that information necessary to correct a previous statement that would be rendered inaccurate absent disclosure.

*7 Debora fails to allege any facts that support the imposition of a duty to disclose the negotiations of a new credit agreement. Specifically, the Second Amended Complaint contains no allegation that the defendants previously made any statements whatsoever regarding the possibility of renegotiating WPP's debt structure in the future. *See Roeder,* 814 F.2d at 26-27. *See also Evankowski v. BankWorcester Corp.,* 788 F.Supp. 611, 615 (D.Mass.1991) (dismissing complaint alleging failure to disclose material renegotiations concerning merger where issue of potential renegotiations was not within the scope of defendants initial disclosure concerning possible acquisition). Thus, because the issue of "renegotiations" was not within the scope of any prior disclosure, defendants had no duty to disclose the negotiations. Without such an allegation establishing duty, Debora fails to state claim under § 10(b) and Rule 10b-5.

Finally, an article in the Wall Street Journal dated November 27, 1990 that Debora cites in the Second Amended Complaint quotes a confidential

Case 1:07-cv-09749-JSR    Document 10-8    Filed 01/10/2008    Page 7 of 8

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 177291 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 6

letter written by Sorrell as stating that "[WPP's bankers] have been sympathetic to our situation and we are examining the implication of the profits warning with them." Joann S. Lublin, *Two WPP Group Units Lay Off Staffers,* Wall St. J., Nov. 27, 1990 at B7. Thus, it appears that information that WPP and its lenders were examining WPP's financial strength had been disclosed to the market. See *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1115 (9th Cir.1989) (in fraud on the market case, information made credibly available to market from other sources excuses non-disclosure). As a result, any importance that the renegotiations may have had on the price of WPP's ADRs was likely to be accounted for prior to Debora's purchase on December 3, 1990. Accordingly, Debora for all the foregoing reasons, fails to state a claim regarding the alleged non-disclosure of the renegotiation of the October Credit Agreement.

(e) *WPP's Inability to Pay Interim Dividend*

Debora's claim of nondisclosure of WPP's inability to pay the interim dividend appears to be premised on three separate allegations. First, payment of the interim dividend would cause a breach of covenants in WPP's Credit Agreements (¶ 9). Second, the defendants should have predicted that WPP's lenders would not permit WPP to pay the interim dividend (¶ 6), and third, WPP's lenders prevented WPP from paying the interim dividend (¶¶ 12, 13).

As to the alleged non-disclosure of WPP's "inevitable breach" of covenants, it is undisputed that Debora presently has in his possession both the June and October Credit Agreements. Despite this, he has failed to provide a particularized allegation with facts and figures to support this conclusion. For this reason alone, the allegation is insufficient. See *Brown v. Hutton,* 795 F.Supp. at 1320-21.

Moreover, the material terms and covenants in WPP's outstanding Credit Agreements, the amount of the interim dividends, and WPP's revised profit projections were already disclosed to the market when Debora purchased the ADRs. A prospective investor could have easily used these disclosed facts to determine whether WPP was likely to pay the interim dividend. Securities laws only require issuers to disclose specific firm information to the market. They do not provide insurance for investors who either ignore or neglect the underlying public information that is part of a company's stock price.

See *Wieglos v. Commonwealth Edison Co.,* 892 F.2d 509, 515 (7th Cir.1989). All the underlying information had been disclosed, and as such, WPP's alleged non-disclosure of its ability to pay an interim dividend fails to state a sufficient claim.

*8 Debora's conclusory allegation that WPP somehow should have predicted and then disclosed that WPP's lenders would not permit WPP to pay the interim dividend is equally insufficient. Federal securities laws do not require management to be clairvoyant. See *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978). See also *Diamon v. Arend,* 649 F.Supp. 408, 416 (S.D.N.Y.1986) (dismissing alleged omission of third-party's intentions). The Second Amended Complaint simply fails to give any basis for believing that prior to December 21, the defendants "knew" that WPP's lenders would insist upon the cancellation of the interim dividend.

Debora's allegation that WPP's lenders actually told WPP prior to December 21, 1990 that it could not pay the interim dividend is not supported by any specific factual allegations to support such an assertion. Allegations of fraud based solely on information and belief do not satisfy Rule 9(b), except as to matters peculiarly within the knowledge of the opposing party. *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1. (2d Cir.1986). Even with respect to matters within the knowledge of the other party, the allegations must be accompanied by a statement of facts upon which belief is founded. *Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1003 (2d Cir.), cert. denied, 488 U.S. 852 (1988). Debora fails to even remotely put forth any grounds for his belief that WPP's lenders did not permit it to pay the interim dividend. In particular, Debora fails to allege any facts from which it can be inferred that such a decision had in fact been reached prior to December 21, 1990 when WPP disclosed that it would not pay an interim dividend. Thus, this allegation is insufficient under Rule 9(b). See *Lydon,* 715 F.Supp. at 601.

In sum, the projected earnings allegation is not sufficient to establish a § 10(b) and Rule 10b-5 claim. Because Debora purchased the ADRs after the November 6-K disclosed the revised profit projections, he cannot establish that the alleged misrepresentation caused him to purchase the ADRs or that it caused the ADRs' price to be inflated. The interim dividend allegation fails because all of Debora's allegations of omissions concern: (1)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09749-JSR    Document 10-8    Filed 01/10/2008    Page 8 of 8

Not Reported in F.Supp.                                                                  Page 7
Not Reported in F.Supp., 1994 WL 177291 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

information that was actually disclosed; (2) events that were not material as a matter of law; or (3) involved "facts" that WPP had no duty to disclose. In addition, the Second Complaint failed to plead essential facts with the requisite particularity under Rule 9(b). Accordingly, Debora fails to state a claim for which relief can be granted under § 10(b) and Rule 10b-5.

(2) *Section 20 of the 1934 Act*

A claim for secondary liability under § 20 of the 1934 Act can only be sustained if the plaintiff is able to state a claim for some primary violation of the securities laws by the controlling persons. *Brown v. Hutton Group,* 795 F.Supp. at 1324-25. For the reasons stated above, Debora fails to state a claim for a primary violation in this case. As such, the claims for controlling person liability against Sorrell and Ogilvy also fail.

(3) *Common Law Fraud and Deceit*

*9 By failing to allege sufficient federal claims under § 10(b) and § 20 of the 1934 Act, Debora fails to provide a basis upon which a federal court may exercise pendent jurisdiction over his state law claims for common law fraud and deceit. *See Doyle v. Suffolk County,* 786 F.2d 523, 525 (2d Cir.), *cert. denied,* 479 U.S. 825 (1986) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966). Therefore, because Debora has failed to state any federal claims, jurisdiction over the pendent state claim is dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Finally, Debora has had two years to conduct an investigation and three opportunities to plead a viable securities fraud claim. The defects in the Second Amended Complaint do not appear to be curable by amendment. Thus, it is clear that providing Debora an opportunity to replead would be futile. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 50 (2d Cir.1991), *cert. denied,* 112 S.Ct. 42, 50 (1992). Accordingly, the Second Amended Complaint is dismissed with prejudice.

CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss the Second Amended Complaint is granted in its entirety.

SO ORDERED.

FN1. References to paragraphs in the Second Amended Complaint are hereinafter designated as "¶ --." In addition, Debora alleges that he is bringing this action on behalf of all purchasers of WPP ADRs during the Class Period. The class, however, has yet to be certified.

FN2. General rules prohibit reference to affidavits and other matters outside the pleading when addressing a 12(b)(6) motion. Fed.R.Civ.P. 12(b). A blind application of that rule would require the Court to ignore a judicial admission by Debora. I am unwilling to make such blind application, particularly when Debora appears to have purposefully failed to include the dates of his purchases in the Second Amended Complaint. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 773-74 (2d Cir.1991).

FN3. The fraud on the market theory is based on the hypothesis that in an open and developed securities market the price of a company's stock is determined by the available material information regarding the company and its business. Misleading statements defraud purchasers of stock by inflating the market price of a particular security. *See Peil v. Speiser,* 806 F.2d 1154, 1160-61 (3d Cir.1986).

FN4. Disclosure is also required if: (1) a statute or regulation requires disclosure; or (2) a corporate insider trades on confidential information. *Glazer,* 964 F.2d at 156-57. Neither of these reasons are implicated in this case.

S.D.N.Y.,1994.
Debora v. WPP Group PLC
Not Reported in F.Supp., 1994 WL 177291 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.