Case 1:07-cv-09749-JSR    Document 11-4    Filed 01/31/2008    Page 1 of 26

Page 5

244 F.R.D. 204, *; 2007 U.S. Dist. LEXIS 49641, **

failure to disclose; (3) [**13] the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." [58]

55  *Fed. R. Civ. P. 9(b).*

56  *See, e.g., Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007)* (citing 5A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1297 (3d ed. 2004)).

57  *Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000)* (quotation marks omitted).

58  *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000).*

## C. Breach of Contract

To establish a claim for breach of contract under New York law, a party must prove "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." [59] In determining a party's obligations under a contract, it is not for the court to "supply a specific obligation the parties themselves did not spell out." [60] "The interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint." [61] At the motion to dismiss stage, where a plaintiff's "factual allegations or legal conclusions are flatly [**14] contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[,]" in the context of a breach of contract action. [62] If the language of the contract is ambiguous, New York law requires the court to interpret a written contract "so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." [63] Where "a contract recites that all of the parties' agreements are merged in the written document, parol evidence is not admissible [*214] to vary, or permit escape from, the terms of the integrated contract." [64] Finally, under the New York Statute of Frauds, an agreement which by its terms cannot be performed within one year must be in writing. [65]

59  *Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000).*

60  *Tonking v. Port Auth. of New York and New Jersey, 3 N.Y.3d 486, 490, 821 N.E.2d 133, 787 N.Y.S.2d 708 (2004).*

61  *Taussig v. Clipper Group, L.P., 13 A.D.3d 166, 787 N.Y.S.2d 10, 11 (1st Dep't 2004).*

62  *Id.*

63  *Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992).*

64  *Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310, 315 (2d Cir. 1993).*

65  *See N.Y. Gen. Oblig. Law § 5-701(a)(1)* (McKinney 2007).

## D. Breach of Implied Covenant of Good Faith and [**15] Fair Dealing

"In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." [66] Breach of the implied covenant is considered a breach of the underlying contract. [67] "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." [68] Additionally, the covenant imposes an obligation on the parties to refrain from "'intentionally and purposefully [doing] anything to prevent the other party from carrying out the agreement on his part.'" [69] While the implied covenant of good faith and fair dealing does not "imply obligations 'inconsistent with other terms of the contractual relationship,'" [70] it does encompass "'any promises which a reasonable person in the position of the promisee would be justified in understanding were included.'" [71]

66  *511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 746 N.Y.S.2d 131 (2002)* (citations omitted).

67  *See Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002).*

68  *Id.* (quotation marks omitted).

69  *Carvel Corp. v. Diversified Mgmt. Group., 930 F.2d 228, 230 (2d Cir. 1991)* [**16] (quoting *Grad v. Roberts, 14 N.Y.2d 70, 75, 198 N.E.2d 26, 248 N.Y.S.2d 633 (1964)).*

70  *511 West 232nd Owners, 98 N.Y.2d at 153* (quoting *Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 304, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983)).*

71  *Id.* (quoting *Rowe v. Great Atl. & Pac. Tea Co., 46 N.Y.2d 62, 69, 385 N.E.2d 566, 412 N.Y.S.2d 827 (1978)).*

## E. Unjust Enrichment

Case 1:07-cv-09749-JSR    Document 11-4    Filed 01/31/2008    Page 2 of 26

Page 6
244 F.R.D. 204, *; 2007 U.S. Dist. LEXIS 49641, **

A plaintiff may recover in a claim for unjust enrichment if it can show that "(1) defendant was benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." [72] Under New York law, "[t]he theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the *absence* of any agreement." [73] Therefore, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." [74] However, this rule only applies when the existence of a contract governing the transaction in question is undisputed. [75]

[72] *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006)* (citation omitted).

[73] *Id. at 586-87*(citation omitted) (emphasis added).

[74] *Id. at 587* (citation omitted).

[75] *See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996)* [**17] (claim for unjust enrichment "properly pleaded as such in the alternative to the contractual claim" where one defendant disputes being a party to the contract). *See also Soft Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006)* (unjust enrichment claim survived dismissal where the parties disagreed as to whether underlying contracts were binding on defendants).

## F. Breach of Fiduciary Duty

A claim for breach of fiduciary duty involves three elements: "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." [76] There are four elements essential to the establishment of a fiduciary relationship: "(1) [t]he vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been [*215] solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." [77] Generally, where parties deal at arms-length in a commercial transaction, "'no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances.'" [78] Nevertheless, "a distributorship [**18] agreement may, in some rare instances, create a confidential relationship out of which a duty of fiduciary care arises." [79]

[76] *SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 342 (2d Cir. 2004)*.

[77] *Atlantis Info. Tech., GmbH v. CA, Inc., 485 F. Supp. 2d 224 (E.D.N.Y. 2004)* (quotation marks omitted).

[78] *Cal Distributor, Inc. v. Cadbury Schweppes Ams. Bevs., Inc., No. 06 Civ. 496, 2007 U.S. Dist. LEXIS 854, 2007 WL 54534, at *9 (S.D.N.Y. Jan. 5, 2007)* (quoting *Pan Am Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 511 (S.D.N.Y. 1994))*.

[79] *Lake Erie Distrib., Inc. v. Martlet Importing Co., 221 A.D.2d 954, 634 N.Y.S.2d 599, 601 (4th Dep't 1995). Accord A.S. Rampell, Inc. v. Hyster Co., 3 N.Y.2d 369, 377, 144 N.E.2d 371, 165 N.Y.S.2d 475 (1957)* (upholding sufficiency of claim for breach of fiduciary duty owed by manufacturer to distributor).

A fiduciary is obliged to exercise the "highest degree of good faith, honesty, integrity, fairness and fidelity" in its dealings with those to whom the duty is owed. [80] It is "elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect." [81] Once a fiduciary duty is established, it is so "inflexible" that the fiduciary must avoid not only self-dealing, but also "situations [**19] in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty." [82]

[80] *U.S. Ice Cream Corp. v. Bizar, 240 A.D.2d 654, 659 N.Y.S.2d 492, 492 (2d Dep't 1997)*.

[81] *Birnbaum v. Birnbaum, 73 N.Y.2d 461, 466, 539 N.E.2d 574, 541 N.Y.S.2d 746 (1989)*.

[82] *Id.*

## G. Negligent Misrepresentation

Under New York law, a claim of negligent misrepresentation must satisfy the following five elements: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that it should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." [83] The alleged misrepresentation must be factual in nature: promises of future conduct or representations as to future events are not actionable as negligent misrepresentations. [84] The special relationship and duty required for a negligent misrepresentation

Case 1:07-cv-09749-JSR    Document 11-4    Filed 01/31/2008    Page 3 of 26

Page 7

244 F.R.D. 204, *; 2007 U.S. Dist. LEXIS 49641, **

claim is based on consideration of the following three factors: "whether the person making the representation held or appeared to [**20] hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." [85] A simple commercial relationship, such as that between a franchisor and franchisee, does not constitute the kind of special relationship necessary for a negligent misrepresentation claim. [86] However, courts have found a special relationship and duty, for example, where a defendant sought to induce plaintiffs into a business transaction by making certain statements or providing specific information with the intent that plaintiffs rely on those statements or information. [87]

[83]   *Hydro Investors, Inc. v Trafalgar Power, Inc., 227 F.3d 8, 20 (2d Cir. 2000).*

[84]   *See id. at 20-21.*

[85]   *Suez Equity Investors, 250 F.3d at 103.*

[86]   *See Dimon, Inc. v. Folium, Inc., 48 F. Supp. 2d 359, 373 (S.D.N.Y. 1999).*

[87]   *See Kimmell v. Schaefer, 89 N.Y.2d 257, 264-65, 675 N.E.2d 450, 652 N.Y.S.2d 715 (1996).*

## H. The New York Franchised Motor Vehicle Dealer Act

The Franchised Motor Vehicle Dealer Act (the "FMVDA") regulates motor vehicle manufacturers, distributors and factory or distributor representatives, as well as dealers [**21] [*216] of motor vehicles doing business in the State of New York. [88] Section 466 of the FMVDA makes it unlawful "for a franchisor directly or indirectly to impose unreasonable restrictions on [a] franchised motor vehicle dealer relative to . . . site-control . . . and assertion of legal or equitable rights with respect to its franchise or dealership." [89] Section 469 of the FMVDA provides a private cause of action for a franchised motor vehicle dealer who is or may be aggrieved by a violation of the FMVDA. [90]

[88]   *N.Y. Veh. & Traf. Law §§ 460-473 (2007).*

[89]   *Id. § 466(1).*

[90]   *See id. § 469.*

## I. Account Stated

"An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due." [91] Recovery on a claim for account stated is permitted on the theory that "the parties have, by their conduct, evidenced an agreement upon the balance of an indebtedness." [92] The agreement may be express [93] or, it

> may sometimes result from the retention of accounts current without objection. But the result does not always follow. It varies with the circumstances that surround the submission of the statements and those circumstances [**22] include, of course, the relation between the parties. [94]

Among the circumstances to be considered in implying an agreement is whether an objection has been made to the account within a reasonable time. [95]

[91]   *Jim-Mar Corp. v. Aquatic Const., Ltd., 195 A.D.2d 868, 600 N.Y.S.2d 790, 790 (3d Dep't 1993)* (citations omitted).

[92]   *Interman Indus. Prods., Ltd. v. R.S.M. Electron Power, Inc., 37 N.Y.2d 151, 153-154, 332 N.E.2d 859, 371 N.Y.S.2d 675 (1975).*

[93]   *Jim-Mar Corp., 600 N.Y.S.2d at 790* (citations omitted).

[94]   *Newburger-Morris Co. v. Talcott, 219 N.Y. 505, 512, 114 N.E. 846 (1916)* (Cardozo, J.).

[95]   *See Interman, 37 N.Y.2d at 154.*

## IV. DISCUSSION

### A. Common-Law Fraud

Lamborghini moves to dismiss the fraudulent misrepresentation, fraudulent omission, and fraudulent inducement claims for failure to plead fraud with the particularity required by *Rule 9(b).* [96] Specifically, it finds the Amended Complaint deficient due to Manhattan's failure to disclose the names of the Lamborghini representatives who made the allegedly fraudulent representations regarding exclusivity, and where and when the representations were made. [97]

[96]   *See* Lamborghini's Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 12.

Case 1:07-cv-09749-JSR    Document 11-4    Filed 01/31/2008    Page 4 of 26

Page 8

244 F.R.D. 204, *; 2007 U.S. Dist. LEXIS 49641, **

97  *See id.*

Manhattan's Amended Complaint asserts only that the [**23] allegedly fraudulent statements were made by unnamed "representatives" of Lamborghini, "in or about 1996" in the first instance, [98] and "[b]efore and after the signing of the Letter of Intent" in the second instance. [99] The Amended Complaint also fails to identify where these representations were made. Additionally, Manhattan's allegations of fraudulent omission fail to identify the representatives responsible for the failure to disclose Lamborghini's intentions with regard to Champion. Manhattan's response to these deficiencies -- that the "actual experience of the parties" obviates the failure to satisfy *Rule 9(b)* [100] -- is without support in the law and provides no excuse. [101] Accordingly, Manhattan's causes [*217] of action sounding in fraud must be dismissed.

98  Am. Compl. P 16.

99  *Id.* P 26

100  Manhattan's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") at 9.

101  As Lamborghini notes, this attempted justification "cannot be squared with the text of *Rule 9(b)*, which by its terms applies to 'all averments of fraud.'" Def. Mem. at 3.

**B. Breach of Express Contract**

Manhattan's breach of contract claims are based upon an oral agreement, allegedly made in 1996 and re-affirmed [**24] in 2004, whereby Lamborghini granted exclusive selling rights in New York State to Manhattan. [102] Even if Manhattan's allegations regarding oral promises of exclusivity are taken to be true, it is nonetheless apparent that Manhattan's breach of express contract claim must be dismissed.

102  *See* Am. Compl. PP 16, 26.

The relationship between Manhattan and Lamborghini was governed by the 1996 Agreement until the parties entered into the 2005 Agreement, which terminated and superseded "any and all other prior agreements between the parties, whether oral or in writing." [103] Manhattan alleges that Lamborghini breached the contract by conferring dealer rights on Champion in 2006. [104] Thus it is the 2005 Agreement -- entered into September 1, 2005 -- that dictates the rights and obligations of Manhattan and Lamborghini at the time of the alleged breach. [105] The 2005 Agreement makes no mention of exclusivity. Therefore, any contractual right of Manhattan to an exclusive New York territory must stem from the alleged

oral promises of exclusivity. Lamborghini argues, however, that becausee all oral promises alleged in the Amended Complaint pre-date the signing of the 2005 Agreement, enforcement of [**25] those promises is explicitly barred by the integration clause contained in the 2005 Agreement [106] and, therefore, no action for breach of contract can lie. [107]

103  2005 Agreement, Ex. A to Am. Compl. at 36.

104  *See* Am. Compl. PP 36, 51.

105  *See* 2005 Agreement, at 40.

106  *See id.* at 36.

107  *See* Def. Mem. at 14.

Manhattan responds by noting that the 2005 Agreement, although dated September 2005, became effective on January 16, 2004. [108] Therefore, it reasons, oral representations of exclusivity made after January 16, 2004 are not barred by the 2005 Agreement's integration clause. [109] Although the interplay between the integration clause and the Agreement's effective date does create an ambiguity, that ambiguity need not be resolved in the context of this claim. The only representations alleged to have been made after January 2004 are those whereby Lamborghini promised Manhattan that it "would be the sole dealership selling Lamborghinis in Long Island, and [that] if Defendant *ever* wanted to expand its dealer base in Long Island, [Manhattan] would be given the first option." [110] The New York Statute of Frauds has been held to bar the enforcement of oral distributorship agreements of indefinite duration [**26] that can be terminated within one year only by a breach of the agreement (as opposed to at will by either party). [111] As the oral agreement alleged here does not specify a duration, and contains no provision under which either party might rightfully terminate it within the year of its making, it comes within the ambit of the Statute of [*218] Frauds. [112] Thus, even if Manhattan's interpretation of the contract were applied, and the oral promises made after January 16, 2004 were not nullified by the integration clause, the alleged oral contract is void for failure to satisfy New York's Statute of Frauds. Accordingly, no action for breach can lie and Manhattan's claims for breach of express contract are dismissed.

108  *See id.* at 27.

109  *See* Pl. Opp. at 9. Manhattan's Amended Complaint alleges that oral representations of exclusivity were made "[b]efore and after signing the Letter of Intent," which was entered into on

Case 1:07-cv-09749-JSR    Document 11-4    Filed 01/31/2008    Page 5 of 26

Page 9
244 F.R.D. 204, *; 2007 U.S. Dist. LEXIS 49641, **

January 16, 2004. Am. Compl. P 26. It follows, therefore, that some oral representations of exclusivity were made after the effective date of the 2005 Agreement.

110   Am. Compl. P 26 (emphasis added).

111   *See D & N Boening, Inc. v. Kirsch Beverages, Inc., 63 N.Y.2d 449, 457, 472 N.E.2d 992, 483 N.Y.S.2d 164 (1984)* ("[T]he [**27] oral agreement between the parties called for performance of an indefinite duration and could only be terminated within one year by its breach during that period. As such, the agreement [falls] within the Statute of Frauds, and [is] void."); *Romaine v. Colonial Tanning Corp., 301 A.D.2d 732, 753 N.Y.S.2d 552, 554 (3d Dep't 2003)* (dismissing breach of contract claim where oral employment contract could be terminated within one year only upon breach). *Accord Alan Skop, Inc. v. Benjamin Moore, Inc., 909 F.2d 59, 60 (2d Cir. 1990)* (dismissing breach of contract claim where oral dealership agreement of indefinite duration could be terminated only upon breach).

112   *See D & N Boening, 63 N.Y.2d at 458.*

## C. Breach of Implied Covenant of Good Faith and Fair Dealing

Manhattan asserts a claim for breach of the implied covenant of good faith and fair dealing based on Lamborghini's: (1) grant of dealership rights to Champion, (2) failure to inform Manhattan of its intention to grant rights to another dealer on Long Island, and (3) failure or refusal to approve Manhattan's Westhampton Dealer Application. [113] Lamborghini moves to dismiss this cause of action, characterizing it as an attempt by Manhattan to "shoehorn" [**28] into the 2005 Agreement several rights, none of which were negotiated. [114] While Lamborghini correctly notes that the covenant of good faith and fair dealing cannot be used to impose an obligation that would be inconsistent with other express terms of the contractual relationship, the contract here -- namely, the 2005 Agreement -- is "silent on the issues of exclusivity and territory." [115] Similarly, it makes no mention of a duty to disclose the appointment of new dealers. As the implied covenant of good faith and fair dealing could be interpreted to incorporate these duties without contradicting the express terms of the contract, the proper question is whether such implied terms are appropriate under the circumstances.

113   *See id.* PP 56-58.

114   Def. Mem. at 18.

115   Am. Compl. P 18.

By spelling out the basis for its claims that Lamborghini failed to exercise good faith and deal fairly when it appointed Champion as a dealer on Long Island and failed to inform Manhattan of its decision to do so, Manhattan has pled a valid cause of action for breach of the implied covenant of good faith and fair dealing. Specifically, Manhattan has pled that the unique nature of the market for Lamborghini automobiles [**29] carries with it an understanding that the manufacturer will not "park a competitor in [an approved dealer's] backyard[,]" such that the exclusivity term could fairly be implied into the contract. [116] Manhattan has also noted that Lamborghini's grant of dealer rights to Champion has the potential to deny Manhattan the fruits of its contract, inasmuch as an additional dealer in the same territory "will inevitably cut into the original dealer's allocation." [117] This loss of market share increases "the risk of a termination by Defendant under the dealer agreement, because each dealer must sell a specified minimum number of vehicles, and failure to meet the minimum is grounds for termination . . . ." [118] Combined with the alleged oral promises of an exclusive dealership territory in New York, these considerations support Manhattan's reasonable understanding that Lamborghini would not "cannibalize" its dealer by introducing additional competitors into the same territory. [119] Accordingly, the motion to dismiss Manhattan's claims for breach of the implied covenant of good faith and fair dealing arising from (1) the appointment of Champion as a Lamborghini dealer and (2) Lamborghini's failure [**30] to inform Manhattan of its intention to do so is denied.

116   Pl. Opp. at 11.

117   Am. Compl. P 14.

118   *Id.*

119   Pl. Opp. at 12.

Manhattan's third claim, that Lamborghini has further breached the implied covenant of good faith and fair dealing by failing to approve its Westhampton Dealer Application, is untenable. The language of that Application explicitly states that it "does not give rise to any obligation on the part of Lamborghini and that unless and until a Lamborghini Dealer Agreement is executed by the parties and delivered, [Manhattan] [*219] will have no rights as an authorized Lamborghini Dealer." [120] As the Dealer Application creates neither rights in Manhattan, nor obligations in Lamborghini, it cannot properly be characterized as a contract. The Westhampton Dealer Application, therefore, does not give rise to an implied

Case 1:07-cv-09749-JSR    Document 11-4    Filed 01/31/2008    Page 6 of 26

Page 10

244 F.R.D. 204, *; 2007 U.S. Dist. LEXIS 49641, **

covenant of good faith and fair dealing and no claim for breach of that covenant can lie. Accordingly, Manhattan's claim that Lamborghini failed to act in good faith and deal fairly by refusing to approve the Westhampton Dealer Application is dismissed with prejudice.

120    Westhampton Dealer Application, Ex. B to Def. Mem. at 13-14.

### D. Unjust Enrichment

Manhattan claims that    [**31] Lamborghini has been enriched at Manhattan's expense by retaining proceeds from the sale of Lamborghini automobiles at plaintiff's Westhampton facility and the Champion facility on Long Island, and also through the "promotion of its vehicles, franchises and good will at both facilities." [121] It asserts that it would be unjust for Lamborghini to retain these benefits as Lamborghini has denied Manhattan its "expected exclusivity on Long Island" and withheld formal approval of Manhattan's Westhampton showroom despite "dup[ing]" Manhattan into constructing the facility. [122] Lamborghini moves to dismiss this claim, noting that the law precludes actions sounding in quasi-contract when there is a valid and enforceable contract addressing the subject matter of the claim. [123] As the parties have a bona fide dispute as to the existence of an enforceable contract governing the Westhampton facility, plaintiff's unjust enrichment claim cannot be dismissed at this stage. Accordingly, Lamborghini's motion to dismiss Manhattan's claim for unjust enrichment is denied.

121    Am. Compl. P 62.

122    *Id.* P 63.

123    *See* Def. Mem. at 20-21.

### E. Breach of Fiduciary Duty

Manhattan claims that Lamborghini owed it a duty [**32] of fiduciary care arising out of the "fiduciary and confidential relationship" established by their various Dealer Agreements. [124] Manhattan further alleges that Lamborghini breached this fiduciary duty by, *inter alia,* demanding that Manhattan submit a separate dealer application for the Westhampton facility, granting Champion dealer rights on Long Island, and failing to inform Manhattan of its intention to appoint Champion as a dealer on Long Island. [125] Lamborghini responds that Manhattan has failed to plead sufficiently exceptional circumstances to establish a fiduciary relationship and that Lamborghini owes no such duty to Manhattan. [126]

124    Am. Compl. P 70.

125    *See id.* P 72.

126    *See* Def. Mem. at 7-8.

Although the franchisor-franchisee relationship does not give rise to fiduciary obligations absent exceptional circumstances, Manhattan has alleged that a number of terms contained in the Dealer Agreements effectively grant Lamborghini "the authority to exercise near life and death economic power over [Manhattan] . . . ." [127] Of particular significance are those terms "requiring [Manhattan] to provide reports to [Lamborghini] concerning sales, inventories, customer data, and all information [**33] concerning [Manhattan]'s business . . . ." [128] In *A.S. Rampell, Inc. v. Hyster Co.,* the New York Court of Appeals held that contract provisions requiring the plaintiff company to make its lists of prospective customers available to the defendant, and to provide records of business activities and report on its inventory and financial situation, were indicative of a confidential relationship between the parties. [129] The court held that these contractual terms, combined with the "dependency" inherent in the manufacturer/distributor relationship, [*220] were sufficient to plead a relationship giving rise to fiduciary duties. [130] The facts alleged in the Amended Complaint, including the presence of a manufacturer/distributor relationship and a contractual requirement that Manhattan turn over proprietary information to Lamborghini, parallel those found in *Rampell.* Manhattan has therefore pled circumstances sufficiently extraordinary to allow its claims for breach of fiduciary duty to proceed.

127    Am. Compl. P 70.

128    *Id.*

129    3 N.Y.2d 369, 376-77, 144 N.E.2d 371, 165 N.Y.S.2d 475 (1957).

130    *Id. Accord Zimmer-Masiello, Inc. v. Zimmer, Inc.,* 159 A.D.2d 363, 552 N.Y.S.2d 935, 935 (1st Dep't 1990) (citing *Rampell* and concluding that plaintiff properly pled  [**34] claim for breach of fiduciary duty where defendant manufacturer, *inter alia,* required plaintiff to provide confidential and proprietary information).

### F. Negligent Misrepresentation

Manhattan alleges that the special relationship between itself and Lamborghini created a duty on Lamborghini's part to use reasonable care when making representations to Manhattan, and that this duty was breached when it "recklessly and negligently" informed Manhattan that it would be the sole Lamborghini dealer in New

Case 1:07-cv-09749-JSR    Document 11-4    Filed 01/31/2008    Page 7 of 26

Page 11

244 F.R.D. 204, *; 2007 U.S. Dist. LEXIS 49641, **

York. [131] Manhattan claims that because it reasonably relied upon these representations to its detriment, it is entitled to compensatory damages. [132] While Manhattan has properly pled all of the elements required to state a cause of action for negligent misrepresentation, it has pled purely economic damages as a result of its reliance, thereby inviting application of New York's "economic loss rule." [133] New York courts have attempted to keep "contract law 'from drown[ing] in a sea of tort'" [134] by erecting various "dikes," which serve to bar actions in tort when an action in contract is available. [135] One such dike is the economic loss rule. [136] Viewing the purpose of the law of contract to  [**35] be "the [facilitation] of voluntary economic exchange," New York courts restrict plaintiffs who have "suffered 'economic loss,' but not personal or property injury, to an action for the benefits of their bargains." [137] Thus, "[i]f the damages suffered are of the type remediable in contract, a plaintiff may not recover in tort." [138] Under New York's economic loss rule, because Manhattan has not suffered any personal or property damage, it is limited to an action in contract for the benefit of its bargain.

131   Am. Compl. PP 83-84.

132   See id. PP 85-89.

133   See id. PP 87-88.

134   *Carmania Corp., N.V. v. Hambrecht Terrell Int'l*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989) (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986)).

135   *Id.*

136   *See id.*

137   *Id.*

138   *Id. Accord PPI Enters. (U.S.) v. Del Monte Foods Co., No. 99 Civ. 3794, 2003 U.S. Dist. LEXIS 16006, 2003 WL 22118977, at *27 (S.D.N.Y. Sept. 11, 2003)* (dismissing negligent misrepresentation claim where plaintiff alleged only economic loss).

Manhattan's response -- that it bases its negligent misrepresentation claim on "duties independent of any contract, including the fiduciary duties . . . not to conceal material information from and act against the  [**36] interests of the person to whom it owes the duty[,]" -- is inapposite. [139] The fact that the duty breached here is independent of any contract between the parties merely prevents this claim from being dismissed as duplicative

of Manhattan's breach of contract claims. [140] It does not allow evasion of the economic loss rule, which presents a second, distinct barrier. [141] Accordingly, Manhattan's claim for negligent misrepresentation is dismissed with prejudice.

139   Pl. Opp. at 24.

140   *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987).*

141   *See, e.g., Robehr Films, Inc. v. American Airlines, Inc., No. 85 Civ 1072, 1989 U.S. Dist. LEXIS 10998, 1989 WL 111079, at *2 (S.D.N.Y. Sept. 19, 1989)* ("Under New York law, . . . [plaintiff must meet] two requirements: (1) it must establish that the defendant violated a legal duty separate from its contractual obligations, *and* (2) it must demonstrate that the damages suffered do not constitute mere 'economic loss.'" (citation omitted; emphasis added)).

### [*221] G. Violation of the New York Franchised Motor Vehicle Dealer Act

Manhattan alleges that Lamborghini violated *section 466 of the FMVDA* by "imposing unreasonable and capricious restrictions relative to site control  [**37] and compliance with subjective standards, at both the Manhattan and Westhampton facilities," by "holding up approval of the Westhampton Dealer Application," and "by granting certain rights to Champion to sell Lamborghinis in New York." [142] Although Lamborghini argues that these allegations fail to place it on notice of the FMVDA claims against it, [143] Manhattan's allegations satisfy the liberal pleading standards of the Federal Rules of Civil Procedure. [144] Manhattan has stated a valid FMVDA claim with regard to the violations alleged in connection with its Manhattan showroom. Furthermore, Manhattan has alleged both legal and equitable rights to an exclusive territory in New York and that Lamborghini has taken steps designed "to induce, if not coerce [Manhattan] to accede to the rights granted to Champion." Accordingly, Manhattan's allegations regarding Lamborghini's assignment of dealer rights to Champion support a claim under *section 466 of the FMVDA.*

142   Am. Compl. P 78.

143   *See* Def. Mem. at 23.

144   *See Bell Atlantic Corp., 127 S. Ct. at 1977* (A "bare allegation suffices under a system that 'restricts the pleadings to the task of general notice-giving and invest[s] the deposition-discovery

Case 1:07-cv-09749-JSR    Document 11-4    Filed 01/31/2008    Page 8 of 26

Page 12

244 F.R.D. 204, *; 2007 U.S. Dist. LEXIS 49641, **

[**38] process with a vital role in the preparation for trial.'" (quoting *Hickman v. Taylor, 329 U.S. 495, 501, 67 S. Ct. 385, 91 L. Ed. 451 (1947)).*

Lamborghini also argues that Manhattan cannot bring a claim for alleged violations of the FMVDA at the Westhampton facility because the Letter of Intent had been nullified by the 2005 Agreement's integration clause. [145] With the Letter of Intent no longer in force, Manhattan would have no right to operate the Westhampton facility and no right to bring suit under the FMVDA. Manhattan responds that the 2005 Agreement, although executed in September 2005, is effective as of January 16, 2004. [146] Thus, Manhattan reasons, the integration clause does not encompass the Letter of Intent, which was executed in March 2004. [147] As noted above, the 2005 Agreement is ambiguous on this issue. However, when deciding a motion to dismiss, a court must draw all reasonable inferences in plaintiff's favor. Thus, because the Letter of Intent grants Manhattan the right to operate a Lamborghini dealership in Westhampton, Manhattan may bring a cause of action under the FMVDA. Lamborghini's motion to dismiss Manhattan's claims under the FMVDA is denied.

145   *See* Def. Mem. at 24.

146   *See* [**39] Pl. Opp. at 22.

147   *See id.*

**H. Account Stated**

Manhattan asserts that it: (1) "expended monies to promote and market the Lamborghini brand"; (2) that Lamborghini "is required by agreement of the parties to pay for or reimburse" Manhattan for these expenditures; and, (3) that Manhattan rendered invoices to Lambor-

ghini for the expenditures, which were retained "without timely objection" and partially paid. [148] Construing the Amended Complaint liberally, the latter two allegations suffice to plead an implied agreement between the parties as to the existence and amount of the indebtedness. In combination, Manhattan's allegations state a valid claim for an account stated. Accordingly, Lamborghini's motion to dismiss the claim for account stated is denied.

148   Am. Compl. PP 97-100.

**V. CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss the Amended Complaint is granted as to plaintiff's claims sounding in fraud, breach of contract, and negligent misrepresentation. The motion is denied as to plaintiff's claims of unjust enrichment, breach of fiduciary duty, violations of the Franchised Motor Vehicle Dealer Act and account stated. The motion is granted in part and denied in part with [**40] regard to plaintiff's claims of breach of the implied [*222] covenant of good faith and fair dealing. Manhattan is granted leave to replead the claims that were not dismissed with prejudice, within twenty days of this Opinion and Order. The Clerk of the Court is directed to close this motion (Document # 5). A conference is scheduled for July 30, 2007 at 4:30.

SO ORDERED:

Shira A. Schemdlin

U.S.D.J.

Dated: New York, New York

July 9, 2007

LEXSEE 2007 U.S DIST LEXIS 18437

**I. STEPHEN RABIN, Plaintiff, v. MONY LIFE INSURANCE COMPANY, Defendant.**

**06 Civ. 775 (LTS)(KNF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2007 U.S. Dist. LEXIS 18437*

**March 8, 2007, Decided**
**March 9, 2007, Filed**

**COUNSEL:** [*1] For I. Stephen Rabin, Plaintiff: John Halebian, LEAD ATTORNEY, Lovell Stewart Halebian LLP, New York, NY; Joseph P. Garland, LEAD ATTORNEY, Law Office of Joseph P. Garland, New York, NY.

For Mony Life Insurance Company, Defendant: Emily A. Mily, Joel S. Feldman, LEAD ATTORNEYS, Sidley Austin LLP, Chicago, IL; Alfred Robert Pietrzak, Sidley Austin LLP, New York, NY.

**JUDGES:** LAURA TAYLOR SWAIN, United States District Judge.

**OPINION BY:** LAURA TAYLOR SWAIN

**OPINION**

LAURA TAYLOR SWAIN, DISTRICT JUDGE:

MEMORANDUM AND ORDER

Plaintiff I. Stephen Rabin ("Plaintiff" or "Rabin") brings this putative class action [1] against MONY Life Insurance Company ("Defendant" or "MONY"), asserting causes of action for: (1) breach of contract; (2) breach of fiduciary duty; (3) common law fraud and deceit; (4) unjust enrichment; and (5) deceptive practices under New York General Business Law ("GBL") § 349. [2] Plaintiff's claim arises from MONY's apparent practice of making certain policy surrender disbursements by placing the funds in a "MONY Market" checking account in the former policyholder's name. Plaintiff alleges that the disbursement method was not authorized by the insurance policies that he surrendered [*2] and that the interest rate paid on funds that he left on deposit on the account was lower than that promised by MONY. He seeks damages measured by the difference between the interest rate paid and the rate(s) allegedly available on similar investments, as well as injunctive relief and attorneys' fees.

1 Plaintiff defines the proposed class to include "all persons who purchased or were the beneficiaries of whole-life insurance from MONY and who since January 31, 2000 were eventually paid pursuant to such policies by means of an investment by MONY in its own money fund. Such payments include, without limitation, payment upon surrender of the policy, loans against the policy, and payment to beneficiaries upon the death of the insured." (Am. Class Action Compl. P 8.) There has been no motion practice on the class certification application, thus certification has not been granted.

2 The New York statute provides, "Deceptive acts or practices in conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." *N.Y. Gen. Bus. L. § 349* (McKinney 2007).

[*3] Defendant moves to dismiss Plaintiff's Amended Class Action Complaint (the "Complaint") in its entirety for failure to state a claim under *Rule 12(b)(6) of the Federal Rules of Civil Procedure.*

The amended complaint avers that this Court has jurisdiction over these claims pursuant to *Section 1332(d)* of the Judicial Code, *28 U.S.C. § 1332(d)*, as amended by the Class Action Fairness Act of 2005. Defendant has not contested the factual premises of Plaintiff's jurisdictional allegation, which appears on its face to meet the requirements of the statute.

For the following reasons, Defendant's motion to dismiss the Complaint is granted as to Plaintiff's cause of

action for Fraud and Deceit (Third Claim for Relief) and is denied in all other respects.

BACKGROUND

The factual allegations of the Complaint are taken as true for purposes of the instant motion practice. The Plaintiff held two whole-life insurance policies [3] with Defendant. (See Compl. PP 6, 13-17.) In December 2004, Rabin submitted a form to MONY to redeem (or "surrender") his policies. (Id.) The surrender form described the manner in which the disbursement [*4] would be made as follows:

'Proceeds are made available to you by means of an interest-bearing checking account. This account will be opened in your name, and you will receive a supply of checks with which you can immediately access all, or a portion of the funds, by writing checks for $ 250 or more. *The funds in the account earn interest at a competitive, variable rate.*' [Emphasis added.]

(Id. P 17.) MONY's promotional material describing the rate to be paid on this account read in pertinent part: "*The interest rate is a competitive rate* and will always equal or exceed the national average for bank money market deposit accounts, as measured by the Bank Rate Monitor National Index.' [Emphasis added.]" (Id. PP 21, 24.) Rabin received a checkbook for a "MONY Market Draft Account" initiated in his name ("Access Account") on or about January 7, 2005, and he maintained a balance in that account until on or about February 16, 2005. (Id. P 6.) The interest earned on the account was paid to him by separate check in April 2005. (Id.)

3   These whole-life policies accumulated a cash value as premiums were paid and as dividends were declared. (Compl. P 13.) Insureds had the option of redeeming their policies for the cash value or borrowing against them. (Id. P 14.)

[*5]  Plaintiff alleges that MONY's payment of policy proceeds through the checking account violated the policies' provisions for payment and/or surrender for cash value, and further alleges that, while the interest rate paid on the checking account balance did equal or exceed the Bank Rate Monitor National Index ("BRMNI") referred to in the promotional materials, the rate paid was lower than other available "money fund" rates and therefore violated MONY's representations that the checking account rate would be "competitive." (Id. PP 16, 19, 21, 26-27.) Rabin further alleges that MONY was unjustly

enriched by, among other things, the allegedly improper disparity in interest rates, its receipt of compensation for administering the MONY fund, and third party compensation in connection with the MONY Market account. (Id. P 43.)

Standard of Review

When evaluating a motion under *Rule 12(b)(6)* to dismiss a complaint for failure to state a claim, the court assumes that all the facts alleged in the plaintiff's complaint are true and draws all reasonable inferences in the plaintiff's favor. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993);* [*6] *Courtenay Comm. Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003).* Dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).*

Although the Court generally looks only at the pleadings to decide a motion to dismiss a complaint, the Court may also consider any documents referenced by the complaint and documents "that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000).*

DISCUSSION

*Breach of Contract*

Defendant urges the Court to dismiss Plaintiff's breach of contract claims on the grounds that there was no breach. According to Defendant, Plaintiff received what was promised to him and thus no injury was sustained. Defendant further submits that any alleged damages would be completely speculative to the extent that they would be determined by what alternative to the MONY account Plaintiff may have chosen to invest in, assuming that he would have invested the funds at all if MONY had [*7] disbursed them by cash or check.

Under New York law, for an actionable breach of contract claim, plaintiff must allege (1) the existence of an agreement; (2) performance of the contract by plaintiff; (3) breach of the agreement by defendant; and (4) damages. *Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).* Taking Plaintiff's allegations as true and making all inferences in his favor, the Court finds that the Complaint satisfies these elements and that it cannot be said at this stage of the litigation that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Defendant asserts that the Complaint fails to state a claim because nothing in the relevant contracts precluded MONY from disbursing funds through the MONY Market account vehicle, the promotional brochure defined the BRMNI as the relevant rate benchmark, and the Complaint itself acknowledges that the rate credited to Plaintiff's account exceeded the BRMNI. Plaintiff's contract claims turn principally on his assertions that the "cash value" payment provisions of his policies did not permit MONY to choose its own financial vehicle as a payment conduit, and that the [*8] separate references in the surrender form and promotional materials to the payment of a "competitive" rate on the MONY Market fund account balance required payment at a rate comparable to those paid on other, higher-rate money market type investments. The Court finds that Plaintiff is entitled to an opportunity for further development of the record as to the meaning of these allegedly ambiguous contract terms.

Defendant also argues that Plaintiff's contract claim should be dismissed because his damages claim is speculative, in that one cannot know whether Plaintiff would have invested a direct disbursement at all, nor what investment vehicle he would have chosen. Defendant's argument misconstrues the allegations of the Complaint. Plaintiff seeks to recover damages measured by the difference between the rate paid by MONY and other allegedly competitive money market fund rates. While there are, of course, factual questions as to whether the policyholders were entitled to be paid a "competitive rate" as defined by some standard other than the index referred to in the promotional material, and as to what such a "competitive" rate would have been, the damages claim is not so speculative [*9] as to warrant dismissal of the contract claim pursuant to *Rule 12(b)(6)*.

Accordingly, Defendant's motion is denied in so far as it seeks dismissal of Plaintiff's First Claim for Relief (Breach of Contract).

*Breach of Fiduciary Duty*

Defendant argues that Plaintiff's claim for breach of fiduciary duty should be dismissed because: (1) neither the parties' issuer-policyholder relationship nor any debtor-creditor relationship arising from the MONY Market account relationship gave rise to fiduciary duties; and (2) the fiduciary duty claim is merely duplicative of the breach of contract claim.

The relationship between an insurer and insured is generally not a fiduciary one. *Freeman v. MBL Life Assurance Corp., 60 F. Supp. 2d 259, 266 (S.D.N.Y. 1999).* However Plaintiff asserts that, in the instant case, the parties' relationship went beyond that of insurer-insured when Rabin redeemed his policies and MONY chose to deposit the cash value of his policies in its own fund. Plaintiff submits that this conduct, along with MONY's solicitations of Plaintiff to contract for further financial services, gave rise to a fiduciary relationship akin to that of a broker and investor. [*10] New York courts have held that exercising investment discretion can be a fiduciary function. See *Conway v. Icahn & Co., Inc., 16 F.3d 504, 510 (2d Cir. 1994).* Because investment discretion can give rise to a fiduciary duty, Plaintiff is entitled to further develop the record as to whether the facts specific to this case gave rise to such a duty.

Moreover, the fiduciary duty claim is not coextensive with Plaintiff's breach of contract claim. Plaintiff asserts that MONY exercised discretion in choosing the MONY fund as an investment vehicle on the policyholder's behalf, and breached a fiduciary duty by choosing a low-paying investment vehicle. (Compl. P 33.) This claim is different from the breach of contract claim, which asserts that MONY lacked the authority to place the money into its own fund in the first place and that the interest paid by that fund was less than promised.

Accordingly, Defendant's motion is denied in so far as it seeks dismissal of Plaintiff's Second Claim for Relief (Breach of Fiduciary Duty).

*Common Law Fraud and Deceit*

The elements of fraud under New York law are (1) defendant's false or misleading material representation; [*11] (2) an intent to defraud; (3) plaintiff's reasonable reliance on the misrepresentation; and (4) actual damages stemming from the fraudulent act. *May Dept. Stores Co. v. Int'l Leasing Corp., Inc., 1 F.3d 138, 141 (2d Cir. 1993).* Rule 9(b) of the Federal Rules of Civil Procedure requires that a complaint alleging fraud must set forth the circumstances of the fraudulent act with particularity.

Plaintiff asserts that MONY materially misled policyholders to induce them to receive payments through a money market fund and to keep money in that fund. Plaintiff claims that Plaintiff did so by knowingly misleading policyholders as to the "competitive" nature of the interest paid. Plaintiff further asserts that he relied on MONY's representations and kept his funds in the account, thus suffering actual damages. Defendant argues that Plaintiff's fraud claim should be dismissed for failure to plead a materially false representation, failure to articulate non-speculative damages, failure to allege scienter, and failure to plead all of those claims with particularity.

This Court finds that it need not address the substance of Defendant's arguments [*12] because Plaintiff alleges a claim for both fraud and breach of contract arising from the same underlying contract terms, which is impermissible under New York law. *D.S. Am. (E.) v.*

Case 1:07-cv-09749-JSR     Document 11-4     Filed 01/31/2008     Page 12 of 26

2007 U.S. Dist. LEXIS 18437, *                                      Page 4

*Chromagrafx Imaging Sys., 873 F. Supp. 786, 795-96 (E.D.N.Y. 1995).* New York law does permit a separate action for fraudulent inducement if a promise is a made where promisor has a preconceived and undisclosed intent not to perform. *Id. at 796.* However, that promise must not merely be a promise to perform an aspect of the contract at issue; rather it must be a promise collateral or extraneous to the terms of the contract. See, e.g. *North Triphammer Dev. Corp. v. Ithaca Assoc., 704 F. Supp. 422 (S.D.N.Y. 1989).*

Plaintiff alleges that the breach of contract consisted of (1) MONY's failure to pay a competitive rate of interest; and (2) MONY's failure to make a "payment directly to policyholders." (Compl. P 29.) In his fraud and deceit claim, Plaintiff alleges that MONY induced policyholders to "receive payments by investing in a money market fund, and to keep that money in that fund" by fraudulently promising to pay interest at a competitive rate. [*13] (Id. P 37.) A "cause of action for fraud and inducing a contract cannot be based solely upon a failure to perform contractual promises of future acts. An alleged failure to perform such acts is a breach of contract which must be enforced by an action on the contract." *D.S. Am. (E.), 873 F. Supp. at 796* (citation and internal quotation marks omitted). Furthermore, because payment of a competitive interest rate was allegedly a term of the contract, Plaintiff alleges no promise extraneous or collateral to the terms of the contract and the claim is thus entirely duplicative of the breach of contract claim.

For these reasons, Defendant's motion to dismiss the Claim of Common Law Fraud and Deceit is granted.

*Unjust Enrichment*

The elements of an unjust enrichment claim under New York law are that: (1) the defendant was enriched; (2) defendant's enrichment came at the expense of plaintiff; and (3) the circumstances are such that in equity and good conscience, defendant should make restitution. *Compudyne Corp. v. Shane, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006); Chase Manhattan Bank (Nat. Ass'n) v. Banque Intra, S.A., 274 F. Supp. 496, 499 (S.D.N.Y. 1967).* [*14]

Defendant seeks dismissal of Plaintiff's unjust enrichment claim, invoking the general rule that an equitable, quasi-contract claim of unjust enrichment is proper only in the absence of an express agreement between the parties. See *Chrysler Capital Corp. v. Century Power Corp., 778 F.Supp. 1260, 1272 (S.D.N.Y. 1991).* However, an unjust enrichment claim is not precluded where the existence of the contract is in dispute or where the contract does not cover the subject matter at issue. E*Trade Financial Corp. v. Deutsche Bank, AG, 420 F. Supp. 2d 273, 291; Joseph Sternberg, Inc. v. Walber 36th* Street Assoc., 187 A.D.2d 225, 594 N.Y.S.2d 144 (1st Dep't 1993).

Here, there is no dispute as to the existence of a contract between the parties. There is at this stage an issue, however, as to whether the terms of the parties' agreement covered such matters as the propriety of MONY's establishment of a payment vehicle that allegedly benefitted MONY by, among other things, enabling MONY to receive "fees or other remuneration, directly or indirectly, from [that] money fund or from others who rendered services to [that] money fund." (See Compl. [*15] P 12.) Accordingly, Defendant's motion to dismiss Plaintiff's unjust enrichment claim (Fourth Claim for Relief) is denied.

*New York General Business Law § 349*

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in conduct of any business, trade or commerce or in the furnishing of any service in this state." *N.Y. Gen. Bus. L. § 349 (McKinney 2007).* Defendant, reiterating its position that the term "competitive" rate was defined for relevant purposes by MONY's reference to the BRMNI, argues that Plaintiff has failed to state a claim under *Section 349* because he has not alleged sufficiently that MONY engaged in a deceptive practice or that MONY had the requisite intent to defraud. See *Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 344, 725 N.E.2d 598, 704 N.Y.S.2d 177 (1999)* (defining the deceptive acts or practices required under *section 349* as acts "likely to mislead a reasonable consumer acting reasonably under the circumstances") (internal citations and quotations omitted).

As noted earlier in connection with the breach of contract claim, it cannot be said at this stage of the litigation that there is no set of facts under which [*16] Plaintiff could prove that his interpretation of the rate language is the appropriate one. Accordingly, Plaintiff is entitled to proffer evidence to prove the allegation and Defendant's motion to dismiss the *N.Y. General Business Law § 349* Claim (Fifth Claim for Relief) is denied.

*Motion to Strike Class Allegations in Connection with Fifth Claim for Relief*

Defendant made a separate motion to strike Plaintiff's class allegations in connection with Count Five, noting that, under *N.Y. C.P.L.R. § 901(b)*, "an action to recover a penalty . . . may not be maintained as a class action" absent explicit authorization. (Def. Mot. to Strike Class Allegations P 2.) In paragraph 38 of the original complaint, Plaintiff had requested treble damages, which Defendant contends would constitute a penalty within the meaning of *C.P.L.R. 901(b)*. (Id. P 3.) Plaintiff's Amended Complaint, however, does not seek treble

damages under General Business Law § 349. The motion is, accordingly, denied as moot.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is granted as to Count Three of the Amended Complaint [*17] (Common Law Fraud and Deceit) and is denied in all other respects. Defendant's motion to dismiss the class action allegation pertaining to the fifth cause of action is denied as moot (Docket item # 12).

Pursuant to Plaintiff's May 10, 2006, request, the Court adjourned the initial pretrial conference and the related deadlines for the required submissions pending resolution of these motions. The initial pre-trial conference in this matter will be held on April 13, 2007 at 11:15 a.m. The parties shall comply with the consultation and submission requirements of the Court's February 22, 2006, Initial Conference Order in advance of the April 13, 2007, conference.

SO ORDERED.

Dated: New York, New York

March 8, 2007

LAURA TAYLOR SWAIN

United States District Judge

LEXSEE 2004 U.S. DIST. LEXIS 16157

**STEPHEN M. ROSS, Plaintiff, - against - FSG PRIVATAIR INC. d/b/a PRIVATAIR, Defendant.**

**03 Civ. 7292 (NRB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2004 U.S. Dist. LEXIS 16157*

**August 16, 2004, Decided**
**August 17, 2004, Filed**

**DISPOSITION:** [*1] Defendant's motion to dismiss granted in part and denied in part, and its motion for Rule 11 sanctions denied.

**COUNSEL:** For Plaintiff: Mark Walfish, Esq., Robert C. Weisz, Esq., Esanu Katsky Korins & Siger, LLP, New York, NY.

For Defendant: Joseph C. Maya, Esq., Russell J. Sweeting, Esq., Bryan T. Carmody, Esq., Maya & Associates, P.C., Fairfield, CT.

**JUDGES:** NAOMI REICE BUCHWALD, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** NAOMI REICE BUCHWALD

**OPINION**

**MEMORANDUM and ORDER**

**NAOMI REICE BUCHWALD**

**UNITED STATES DISTRICT JUDGE**

Plaintiff Stephen M. Ross ("plaintiff" or "Ross") initiated this action against defendant FSG PrivatAir Inc., d/b/a PrivatAir ("defendant" or "PrivatAir") claiming, through an Amended Complaint, breach of contract, breach of fiduciary duty and negligence, all related to Ross's prospective but ultimately unconsummated purchase of an aircraft from a third-party, Grafair. Defendant essentially acted as plaintiff's agent [1] in the failed transaction, and has now moved to dismiss plaintiff's Amended Complaint pursuant to *Fed. R. Civ. P. 12 (b) (6)* on various grounds, including plaintiff's supposed failure to state a claim for any of [*2] his three causes of action. Additionally, defendant claims that in this suit

plaintiff is advocating certain positions of law and fact that are inconsistent with those plaintiff advanced in prior related litigation, and as such plaintiff should be sanctioned pursuant to *Fed. R. Civ. P. 11*. For the reasons that follow, defendant's motion to dismiss is granted in part and denied in part, and its motion for *Rule 11* sanctions is denied.

    1  *See infra* note 2.

**BACKGROUND**

For purposes of this motion, the following facts, drawn from plaintiff's Amended Complaint unless otherwise noted, are taken as true, and all inferences are drawn in plaintiff's favor. *See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)*.

A. *The Failed Aircraft Purchase.*

In or about 2001, plaintiff Ross, a New York resident, and defendant PrivatAir, a Delaware corporation with its principal place of business in the Connecticut, entered into an agreement whereby PrivatAir [*3] would act as Ross's agent [2] in connection with Ross's prospective purchase of an aircraft in exchange for a commission if the purchase was consummated. At all times relevant to this agreement, PrivatAir held itself out as an expert in aircraft purchases and sales and the contract negotiations accompanying such transactions. According to Ross, he relied on this expertise in entering into his agreement with PrivatAir.

    2  Ross alleges that PrivatAir was his agent. On a motion to dismiss, the Court need not credit legal conclusions included in a complaint's factual allegations. For purposes of this factual background, we refer to PrivatAir as Ross's "agent"

only in a generic and not a legal sense. *See Papasan v. Allain, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986)* ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.")

On behalf of Ross, PrivatAir [*4] located and negotiated the purchase of a used 1981 Challenger 600 aircraft (the "Aircraft") owned by Grafair, a Florida corporation. An Aircraft Purchase Agreement (the "Grafair Agreement") drafted by PrivatAir codifying the transaction was entered into by Ross and Grafair on October 29, 2001. *See* Am. Compl., Ex. A. At some unspecified point, PrivatAir represented to Ross that the Grafair Agreement was PrivatAir's "standard purchase agreement." *See* Am. Compl., P 13.

Ross placed into escrow a $ 100,000 deposit on the Aircraft. Upon satisfaction of all applicable terms and conditions in the Grafair Agreement, Ross was to purchase the Aircraft for $ 6,650,000. The Grafair Agreement reserved to Ross prior to closing the right to inspect the Aircraft at his own expense. It is Ross's contention that PrivatAir represented to him that pursuant to the terms of the Grafair Agreement Ross could terminate the Grafair Agreement after inspection for any or no reason. Ross further contends that if he chose to terminate, he would be refunded $ 85,000 of his deposit, and the $ 15,000 balance would be remitted to Grafair to cover the expense of relocating the Aircraft for inspection.

The inspection [*5] uncovered problems with the Aircraft itself and its regulatory paperwork. After the inspection, PrivatAir, allegedly without Ross's authorization or knowledge, urged Grafair to undertake certain repairs of the Aircraft. Ross, however, in light of the inspection results, elected to terminate the Grafair Agreement. Grafair, in response, claimed that the Ross had no right to repudiate because the Grafair Agreement did not provide Ross such a right and because of PrivatAir's post-inspection statements encouraging Grafair to repair the Aircraft. Grafair took the position that Ross would be in breach of contract if he did not complete the purchase.

### B. *The Florida Lawsuit.*

The contract dispute between Ross and Grafair prompted an interpleader action by the deposit's escrowee against the two transacting parties in Oklahoma state court. That action was removed to the United States District Court for the Western District of Oklahoma, and then transferred to the Southern District of Florida. *See Insured Aircraft Title Service, Inc. v. Stephen M. Ross and Grafair, Inc.,* 02-14081-Civ (S.D. Fla.) (the "Florida Lawsuit").

Ross and Grafair cross-claimed against each other in the Florida [*6] Lawsuit, the former alleging it had a right to terminate the Grafair Agreement, the latter alleging it was entitled to receive the entire $ 100,000 deposit, as well as consequential damages flowing from Ross's breach of the Grafair Agreement. Ross's motion for judgment on the pleadings on his cross-claim against Grafair was denied. *See* Florida Lawsuit, Order of Nov. 21, 2002. [3]

> 3  Ross's motion for judgment on the pleadings was not denied on the merits, but instead because Grafair had not yet filed an answer to Ross's cross-claims. *See id.,* P 5. In the Order, discovery was ordered completed by December 30, 2002, and a cutoff date of January 15, 2003 was set for dispositive motions. *Id.,* at P 8.

Following the denial of Ross's motion, Ross and Grafair entered into a settlement which, *inter alia,* provided for the escrowee's release to Grafair of the entire $ 100,000 deposit, and the discontinuation with prejudice of both Ross's and Grafair's cross-claims. *See* Affidavit in Support of Defendant's [*7] Motion to Dismiss of Russell J. Sweeting, Document 33 (Stipulation for Settlement). According to Ross's Amended Complaint, he entered into the settlement because the cost of discovery and trial would exceed his deposit, and to eliminate exposure to a potentially substantial verdict against him on Grafair's breach of contract cross-claims.

### C. *Ross's Claims.*

On December 31, 2003, Ross filed an Amended Complaint in this action alleging that PrivatAir committed a breach of contract, breach of fiduciary duty, and negligence in the course of negotiating and executing the Grafair Agreement. Specifically, Ross claims that PrivatAir (1) drafted an Agreement with an ambiguity preventing Ross from recovering $ 85,000 of the deposit; [4] (2) misrepresented to Ross that the Grafair Agreement permitted Ross's recovery of $ 85,000 of the deposit; and (3) urged Grafair, without Ross's knowledge or authorization, to make certain repairs to the Aircraft. All three of these acts and omissions of PrivatAir's are alleged to constitute a breach of contract, a breach of fiduciary duty, and negligence. Ross claims that PrivatAir is liable to him for $ 169,612.65 plus interest, which is the sum of [*8] the $ 84,612.65 he paid in legal fees and disbursements in defending against the Florida Lawsuit, as well as the $ 85,000 partial deposit refund he believed he was entitled to upon terminating the Grafair Agreement. [5] On February 6, 2004, PrivatAir moved to dismiss the Amended Complaint. Oral argument on the motion was held on June 24, 2004.

4    Oddly, Ross's Amended Complaint never identifies the alleged ambiguity in the Grafair Agreement which in part gives rise to this lawsuit.

However, the arguments of the parties in their briefing papers and clarification provided at oral argument indicates that the reference is to § 1.2(a) of the Grafair Agreement, which provides, in relevant part:

> Upon Buyer's acceptance of the Aircraft, as defined by Exhibit "B" attached, Buyer shall cause the [$ 100,000] deposit to be paid to Seller. The balance of the [$ 6,550,000.00] purchase price ... will be due and payable in immediately available U.S. funds upon delivery of the Aircraft pursuant to this Agreement.

Exhibit "B" is a document headed "CONFIRMATION OF AIRCRAFT ACCEPTANCE". The document reads in relevant part:

> Pursuant to the Aircraft Purchase Agreement dated October 29, 2001 between Steven Ross ("Buyer") and Grafair ("Seller"), this is to confirm that Buyer has inspected the above referenced Aircraft on this date. Buyer hereby accepts the Aircraft and the deposit is nonrefundable in accordance with the terms of the Agreement subject to Seller correcting or requiring the following items[.]

No items are identified, and the signature lines for Grafair and Ross are blank.

Section 1.2(b) of the Agreement reads in full:

> If buyer does not accept the aircraft, Buyer will pay Seller, from the deposit, $ 15,000 to cover costs of moving aircraft to and from the pre-purchase facility.

Also relevant to these provisions is the right of inspection given to Ross under the Agreement in § 2.2, which reads in relevant part:

> The sale is subject to Buyer's inspection and a one-hour test flight ... to determine [if] the Aircraft conforms with the conditions specified in Section 2.1 [related to the Aircraft's airworthiness] ... Buyer shall provide Seller with a written list of discrepancies within two (2) business days after completion of said inspection. All costs and expenses for repairs in order to make the Aircraft conform with conditions set forth in Section 2.1 shall be borne by Seller.

[*9]

5    Although PrivatAir has not yet counterclaimed against Ross, Ross seeks also seeks a declaration that neither he nor anyone on his behalf owes PrivatAir $ 43,395.42 for services allegedly rendered.

## DISCUSSION

### I. Standard of Review for Motion to Dismiss

In assessing a motion to dismiss under *Fed. R. Civ. P. 12(b) (6)*, the Court is obligated to accept as true all well-pleaded factual allegations in the Amended Complaint, and view them in the light most favorable to plaintiff. *See Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683; Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993).* Defendant's motion is to be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Still v. De-Buono, 101 F.3d 888, 891 (2d Cir. 1996)* (citing *Conley v. Gibson, 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)).*

### II. Breach of Contract Claim

According to plaintiff, he and PrivatAir [*10] entered into a contract under which plaintiff was to act as plaintiff's agent for plaintiff's purchase of an airplane, and plaintiff in turn would pay PrivatAir a commission upon purchase. *See* Am. Compl., P7-8. This contract was not reduced to writing.

Plaintiff alleges that defendant committed a breach of the contract by "(a) drafting the [Grafair] Agreement with an ambiguity that prevented Ross from recovering $ 85,000 of his deposit; (b) wrongly representing to Ross that the [Grafair] Agreement, as drafted, would permit

him to recover $ 85,000 of his deposit; and (c) without Ross' knowledge or authorization, urging Grafair to proceed with certain repairs to the Aircraft." Am. Compl., P 32. *See also* Am. Compl., PP 12, 15, 19.

A breach of contract claim under New York law [6] must establish (1) the existence of a contract; (2) plaintiff's performance on the contract; (3) defendant's breach of contract; and (4) resulting damages. *See Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994).* Additionally, where a breach of contract claim fails to denote the "essential terms of the parties' purported contract, including the specific provisions [*11] of the contract upon which liability is predicated," it will be dismissed. *See Highlands Ins. Co. v. PRG Brokerage, Inc., 2004 U.S. Dist. LEXIS 83, No. 01 Civ. 2272 (GBD), 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004)* (quoting *Sud v. Sud, 211 A.D.2d 423, 621 N.Y.S.2d 37, 38 (1st Dep't 1995); see also Window Headquarters, Inc. v. MAI Basic Four, Inc., 1993 U.S. Dist. LEXIS 11245, Nos. 91 Civ. 1816 (MBM), 92 Civ. 5283 (MBM), 1993 WL 312899 at *3 (S.D.N.Y. 1993)* (stating that while a "plaintiff is not required to attach a copy of the contract or to plead its terms verbatim", a complaint in a breach of contract action must nevertheless "set forth the terms of the agreement upon which liability is predicated"). Defendant challenges the viability of plaintiff's breach of contract claim, contending that plaintiff has not alleged a breach of any term of the contract. While it is clear from the face of the Amended Complaint that plaintiff enumerates certain acts and omissions of PrivatAir's alleged to comprise breaches of the contract, PrivatAir maintains that this alleged conduct did not violate any contractual obligations actually existing between the parties. Based on Ross's recitation in the [*12] Amended Complaint of the contract's formation and terms, we agree with PrivatAir. [7]

6    There is agreement that New York law governs the consideration of this motion.

7    PrivatAir also charges that Ross's damages claim is impermissibly speculative as the Florida Lawsuit's settlement forever placed in doubt whether Ross was entitled to recoup the deposit. Because we find that plaintiff's Amended Complaint fails to allege a breach of a contract provision, we need not address the damages issue.

A. *$ 85,000 of the Deposit.*

According to Ross, he contract with PrivatAir to "act as Ross' agent in connection with the prospective purchase of an aircraft by Ross." Am. Compl., PP 7 and 8. PrivatAir, in turn, was to receive a commission from Ross if he ultimately purchased an aircraft. *See id.,* P 7. Ross asserts that because his Agreement with Grafair did

not ultimately result in his recovery of $ 85,000 of his deposit, PrivatAir breached the contract it had with Ross. [8]

8    The Grafair Agreement specified that "[a] refundable deposit of [$ 100,000] has been placed in escrow" and that "upon Buyer's acceptance of the Aircraft ... Buyer shall cause the deposit to be paid to Seller. The balance of the purchase price [$ 6,550,000.00] will be due and payable ... upon delivery of the Aircraft pursuant to this Agreement." Agreement, §§ 1.2, 1.2(a). The Grafair Agreement further provided that if Ross did not accept the Aircraft, "Buyer will pay Seller, from the deposit, $ 15,000 to cover costs of moving aircraft to and from the pre-purchase facility." *Id.,* at § 1.2(b).

[*13] Ross argues that PrivatAir, both before and throughout their engagement with Ross, held itself out as an "expert in aircraft sales and acquisitions, including without limitation, in negotiating contracts for the purchase and sale of aircraft." Am. Compl., P 6. Moreover, Ross claims he relied on this self-professed expertise in choosing to contract for PrivatAir's services. *Id.* at P 9.

These representations, however, are not alleged to have ever matured into specific, incorporated and binding terms of its contract with Ross. Thus, at most, the results of defendant's performance were inconsistent with general representations about its expertise and competence made incident to contract formation. Even if PrivatAir is to be held to an "as advertised" standard of performance, Ross's complaints are outside the scope of PrivatAir's representations. PrivatAir's self-praise related to contract *negotiation* (i.e. locating an airworthy aircraft and securing Ross a competitive price), not contract *drafting.* [9] Ross faults PrivatAir for misfeasance classifiable in the latter category.

9    Ross evidently understands this distinction, as in his Memorandum of Law in Opposition to Summary Judgment ("Opp. Mem.") he states "as Ross' broker, PrivatAir not only found Ross an airplane, but *negotiated* the transaction with the seller on Ross' behalf and *drafted* for him a contract embodying the deal it had *negotiated.*" Opp. Mem. at 11 (emphasis added). While the two pursuits are not mutually exclusive, neither are they coterminous, or synonymous. An expert in contract negotiating is by no means necessarily an expert in contract drafting, and a skilled contract drafter might not have any aptitude for contract negotiation and bargaining.

[*14] More importantly, Ross does not allege that, as part of PrivatAir's contractual obligations, PrivatAir

was to furnish Ross a aircraft purchase agreement that permitted Ross to abort the agreement after an inspection at-will and then reclaim eighty-five percent of the deposit. PrivatAir's assurances regarding Ross's right under the Grafair Agreement to recover his deposit did not concern terms of its contract with Ross susceptible to breach. Significantly, it was not until *after* Ross and PrivatAir consummated their agreement that PrivatAir is alleged to reference particular rights possessed by Ross under its prospective contract with Grafair. Specifically, Ross avers that PrivatAir located the Aircraft and negotiated a purchase and sale transaction on Ross's behalf with Grafair. *See* Am. Compl., PP 10-11. Thereafter, PrivatAir drafted the Aircraft Purchase Agreement, which was to be executed by Ross and Grafair. *See id.,* P 12. PrivatAir informed Ross that the drafted Agreement was PrivatAir's "standard purchase agreement," one which allowed for Ross to terminate the Grafair Agreement after inspection of the Aircraft, for any or no reason, and then recover $ 85,000 of his [*15] $ 100,000 deposit. *See id.,* PP 14-15.

Any facts giving rise to an obligation on the part of PrivatAir to arrange the Aircraft purchase in a way that offered Ross an opportunity to terminate the purchase and recover the bulk of his deposit postdate the formation of the Ross/PrivatAir contract. Nor does Ross allege that his contract with PrivatAir was subsequently modified to include this obligation. [10] Thus, PrivatAir was under no such obligation, and PrivatAir's alleged failure to draft an agreement in this regard cannot be a breach of the contract.

> 10   In his opposition memorandum, Ross argues that "PrivatAir advised Ross that the contract was the standard agreement used for [aircraft] purchases, and that under it he could recover $ 85,000 of his deposit if he chose to terminate the deal. Ross reasonably relied upon such representations in signing the [Grafair] Agreement." Opp. Mem. at 11. Ross's Amended Complaint does not seek recovery on a theory of promissory estoppel, although this appears to be the legal basis for this particular argument. Under New York law, a cause of action for promissory estoppel requires demonstration of the following: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance. *See Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000).* Ross would face the difficult task of establishing that the prospective purchaser of a $ 6 million aircraft reasonably relied on what amounts to legal advise from a non-lawyer.

[*16] B. *Repairs to the Aircraft.*

Ross also alleges that PrivatAir unauthorizedly petitioned Grafair to repair the Aircraft after Ross's inspection gave Ross reason to seek to terminate the Grafair Agreement. *See* Am. Compl., PP 18-20. Because Grafair was urged to proceed with repairs, Grafair maintained that Ross could not then back out of the sale. *Id.,* P 21. Ross argues that PrivatAir's unauthorized statements to Grafair, which had the purported effect of binding Ross to purchase the Aircraft, were a breach of contract.

Ross's allegations in this regard fail to articulate an actionable breach of contract. As with Ross's claim of a breach with respect to the deposit, this allegation does not identify what term of his contract with PrivatAir was breached by these statements or their consequences. Instead, it simply assumes the described conduct was proscribed by or inconsistent with the contract. If Ross limited PrivatAir's authority to act on his behalf, the Amended Complaint should at the very least demarcate the bounds on that authority. Otherwise, there is no way for the Court to discern whether this particular act, if true, violated a provision of the contract agreed [*17] upon by the two parties. [11] *See Highlands Ins., 2004 U.S. Dist. LEXIS 83, 2004 WL 35439, at *8; Sud, 211 A.D. at 424, 621 N.Y.S. 2d at 38; see also Window Headquarters, 1993 U.S. Dist. LEXIS 11245, 1993 WL 312899, at *3.*

> 11   Ross cites to *William Wrigley Jr. Co. v. Waters, 890 F.2d 594 (2d Cir. 1989)* for the proposition that "it is well settled under New York law that negligent performance of a contract may give rise to a claim sounding in tort as well as one for breach of contract, which may be submitted to the trier of the case alternatively", and that by acting without authority with regard to the aircraft repairs, PrivatAir did not act with reasonable skill and care. For this reason, Ross claims he need not allege the specific supposedly broken terms of his agreement with PrivatAir because PrivatAir's failure to deliver its services with appropriate competence was itself a breach. We disagree with Ross's interpretation of *Wrigley.* The case merely stands for the proposition that negligent performance of contract can sometimes constitute a tort as well as a breach of contract. We do not think this means that every negligent performance of a contract is *itself* a breach of the contract. Instead, a negligent performance of a contract might *cause* a breach of contract. Under that circumstance, a plaintiff is not relieved of its obligation to identify what term of a contract was actually breached. Moreover, plaintiff's assertion that he need not specify the terms of the agreement on which he maintains defendant's liability is directly refuted by well-settled New York law. *See*

*Highlands Ins., 2004 U.S. Dist. LEXIS 83, 2004 WL 35439, at \*8; Sud, 211 A.D. at 424, 621 N.Y.S. 2d at 38; see also Window Headquarters, 1993 U.S. Dist. LEXIS 11245, 1993 WL 312899, at \*3.* To the extent Ross means to advance a breach of the term of good faith and fair dealing implied in every contract, it is subsumed by the discussion of plaintiff's breach of a fiduciary duty claim.

[*18] III. *Breach of Fiduciary Duty Claim*

Ross asserts that "as Ross's agent, PrivatAir had a fiduciary duty to Ross." Am. Compl., P 35. Ross's Amended Complaint does not define what that duty was or entailed. [12] As discussed above, Ross elsewhere alleges that PrivatAir "held itself out to be expert in aircraft sales and acquisitions, including without limitation, in negotiating contracts for the purchase and sale of aircraft," *id.,* P 6, and that Ross relied on these representations in entering into its contract. *id.,* P 9. According to Ross, the same exact acts and omissions of PrivatAir's that violated the contract also constituted a breach of fiduciary duty, namely, again, "(a) drafting the [Grafair] Agreement with an ambiguity that prevented Ross from recovering $ 85,000 of his deposit; (b) wrongly representing to Ross that the [Grafair] Agreement, as drafted, would permit him to recover $ 85,000 of his deposit; and (c) without Ross' knowledge or authorization, urging Grafair to proceed with certain repairs to the Aircraft." *Id.,* P 37.

> 12  In his opposition memorandum, Ross asserts that "a broker owes fiduciary duties to his principal." Opp. Mem. at 10 (citations omitted). Nowhere in his Amended Complaint does Ross allege that PrivatAir was his broker. If being an agent is not synonymous with being a broker, then Ross's arguments about the responsibilities of a broker are an impermissible attempt to amend his complaint through a briefing memorandum. *See Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977)* (stating that party may not amend pleading through statements in briefs).

[*19] Under New York law, an actionable breach of fiduciary duty claim is comprised of the existence of a fiduciary relationship and damages caused by a breach of the fiduciary duty. *See, e.g., Cramer v. Devon Group, 774 F. Supp. 176, 184 (S.D.N.Y. 1991).*

A. *Was There A Fiduciary Relationship?*

A fiduciary duty exists "when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another", and "whether one party is a fiduciary of another depends on the relationship between the parties." *Reuben H. Donnelley Corp. v. Mark I Marketing Corp., 893 F. Supp. 285, 289 (S.D.N.Y. 1995).* Attorney/client or doctor/patient relationships "are sufficiently rooted in trust and confidence to trigger super-contractual fiduciary duties." *Id.* However, "a conventional business relationship does not create a fiduciary relationship in the absence of additional factors." *Id., quoting Feigen v. Advance Capital Management Corp., 150 A.D.2d 281, 283, 541 N.Y.S.2d 797, 799 (1st Dep't 1989).* Indeed, "under New York law, [*20] parties to a commercial contract do not ordinarily bear a fiduciary relationship to one another unless they specifically so agree," or if "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." *Calvin Klein Trademark Trust v. Wachner, 123 F. Supp.2d 731, 733-34 (S.D.N.Y. 2000).*

It is insufficient to merely allege the existence of a fiduciary relationship. Instead, "to plead a cause of action alleging that defendants became fiduciaries, plaintiffs must allege at least some factors from which a court could conclude that such a relationship has been established." *Boley v. Pineloch Associates, Inc., 700 F. Supp. 673, 681 (S.D.N.Y. 1988).* Moreover, it is well-settled that "a simple breach of contract is not to be considered a tort unless a duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389, 516 N.E.2d 190, 521 N.Y.S.2d 653, 656-57 (1987)* [*21] (citations omitted). A tort claim is barred as redundant where it is "merely a restatement, albeit in slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract." *Id. at 657.*

Fiduciary obligations are not imposed on one party merely because it possesses relative expertise as compared to the other. *See Mechigian v. Art Capital Corp., 612 F. Supp. 1421, 1430 (S.D.N.Y. 1985)* (finding that "plaintiff has provided no support for the proposition that mere expertise in a matter create fiduciary responsibilities, which is essentially the sum and substance of his argument"); *see also Boley, 700 F. Supp. 673, 681* (holding that "allegations of reliance on another party with superior expertise, standing by themselves, will not suffice").

Furthermore, where the parties' contract forms both the foundation and boundary of their relationship, fiduciary responsibilities have not attached. *See Reuben H. Donnelley Corp., 893 F. Supp. at 290* (refusing to find a

fiduciary obligation where "absent ... contractual obligations" the complained of "conduct would not be actionable"); [*22] *see also Clark-Fitzpatrick, Inc., 521 N.Y.S.2d at 656-57, 70 N.Y.2d at 389* (barring a tort claim that was redundant of a contract claim).

With the foregoing authority in mind, for purposes of this motion we conclude that plaintiff has adequately pled that PrivatAir had a fiduciary relationship with Ross based on his allegation and description of an agency relationship with PrivatAir coupled with his claim that he both relied on PrivatAir's espoused expertise and over the course of their relationship had PrivatAir negotiate with Grafair on his behalf. *See Fyrdman & Co. v. Credit Suisse First Boston Corp., 272 A.D.2d 236, 237, 708 N.Y.S.2d 77, 79 (1st Dep't 2000)* (holding that a fiduciary duty existed where bank provided plaintiff "with investment banking advice and other services, including conducting negotiations with ... on [plaintiff's] behalf ... in connection with the attempted acquisition" of a business); *see also Wiener v. Lazard Freres & Co., 241 A.D.2d 114, 672 N.Y.S2d 8, 15 (1st Dep't 1998)* (holding that a fiduciary obligation has been adequately pled where *inter alia* the defendant assumed negotiations on behalf of plaintiff, [*23] where plaintiff relied on defendant's expertise).

B. *Was The Fiduciary Duty Breached?*

To find a fiduciary relationship through agency only begins the inquiry, which also requires identifying, amongst other things, the particular obligations owed. *See SEC v. Chenery Corp., 318 U.S. 80, 85-86, 87 L. Ed. 626, 63 S. Ct. 454 (1943).* Under New York law an agent owes its principal fiduciary duties of good faith and loyalty. *See Six West Retail Acquisition, Inc. v. Sony Theatre Management Corp., 2004 U.S. Dist. LEXIS 5411, No. 97 Civ. 5499 (LAP), 2004 WL 691680 at *19, (S.D.N.Y. Mar 31, 2004)* (stating that all agents owe their principals "general fiduciary duties of good faith and loyalty"); *cf. Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003)* ("Under New York law, an agent is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties") (citations and quotations omitted). Additionally, there is authority for the general proposition that a fiduciary is "responsible to undertake reasonable [*24] diligence" upon matters within the fiduciary obligation. *BNY Capital Markets, Inc. v. Moltech Corp., 2001 U.S. Dist. LEXIS 2705, 99 Civ. 11754 (GEL), 2001 WL 262675 at *8 (S.D.N.Y. Mar. 14, 2001).* A fiduciary obligation, however, is "limited to matters relevant to affairs entrusted." *Rush v. Oppenheimer & Co., Inc., 681 F. Supp. 1045, 1055 (S.D.N.Y. 1988); BNY Capital Markets, 2001*

*U.S. Dist. LEXIS 2705, 2001 WL 262675 at *8* (stressing that a "fiduciary is only responsible to undertake reasonable diligence or give advice for the benefit of another upon matters *within the scope of the relation")* (emphasis in original, citations and quotations omitted).

PrivatAir's alleged breaches with respect to the contract language are on their face outside the confines of its fiduciary obligations. PrivatAir is affirmatively alleged to only possess expertise in "aircraft sales and acquisitions" and in "negotiating contracts for the purchase and sale of aircraft." Am. Compl. P 6. PrivatAir is not a law firm. Plaintiff cites no authority which supports holding a non-lawyer to a special standard of care for conduct that is the province of attorneys, such as contract drafting and interpretation. Regardless [*25] of how plaintiff may have interpreted PrivatAir's abilities or representations, PrivatAir cannot be held liable for what is essentially a legal malpractice claim when it never held itself out to be an attorney. *See BNY Capital Markets, 2001 U.S. Dist. LEXIS 2705, 2001 WL 262675, at *8.*

Ross also claims that PrivatAir breached its fiduciary duty by urging Grafair to make repairs to the Aircraft. Unlike contract drafting and interpretation, PrivatAir's charge to communicate with prospective airplane sellers was attended by fiduciary duties. Thus, it would be inappropriate to dismiss this particular claim of Ross's at this time. [13]

13 It is, however, appropriate to note that the authority which enables a portion of Ross's breach of fiduciary duty claim to survive contain affirmative allegations of active disloyalty and self-dealing. *See Frydman, 708 N.Y.S.2d at 79; Wiener, 672 N.Y.S2d at 15.* The absence of such claims here could make those cases distinguishable from the present one. Moreover, based on what has been presented to the Court thus far (in Ross's amended complaint, his opposition memorandum, and during oral argument), we are highly skeptical that Ross will be able to establish a breach of fiduciary duty sufficient to withstand summary judgment. For example, Ross will have to demonstrate that PrivatAir's statements to Grafair were actually unauthorized, a position which has yet been set out in any detail. But there is serious tension between Ross's claim that PrivatAir was his fiduciary, which depends in large part on PrivatAir possessing authority to negotiate on Ross's behalf, and the claim that PrivatAir had to seek permission from Ross before acting. It seems the more control Ross had over PrivatAir, the less PrivatAir can be considered a trusted and empowered fiduciary acting on Ross's behalf by virtue of its expertise as opposed to

Ross's direction. Ross will also have to establish that PrivatAir's supposedly unauthorized actions actually caused the damage he claims. Again, based on the Court's current understanding of the allegations, this will be a challenge. This Court is not bound to Grafair's interpretation of PrivatAir's communications or the Grafair Agreement, which included specific provisions defining the mechanics of acceptance, as well as an integration clause.

[*26] IV. *Negligence Claim*

PrivatAir is alleged to have committed negligence for the same exact reasons PrivatAir is alleged to have breached its contract with and fiduciary duties owed to Ross. *See* Am. Compl., P 42. The elements of a negligence claim under New York law are "(1) a duty owed by the defendant to the plaintiff; (2) a breach thereof; and (3) injury proximately resulting therefrom." *Solomon v. City of New York, 66 N.Y.2d 1026, 489 N.E.2d 1294, 1294-95, 499 N.Y.S.2d 392 (1985); see also Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 79 (2d Cir. 1997).* In particular, Ross is accused of violating a duty to act with reasonable care and skill. *See* Am. Compl., P 43; *see also* Opp. Mem., at 18. This allegation, framed as one for negligence, is subsumed by Ross's contract and fiduciary duty claims. Again, "a simple breach of contract is not to be considered a tort unless a duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389, 516 N.E.2d 190, 521 N.Y.S.2d 653, 656-57 (1987)* [*27] (citations omitted). The only possible sources of a duty of PrivatAir's to exercise reasonable care and skill in performing its contract with Ross are the contract itself, or from PrivatAir's fiduciary status. As such, plaintiff's negligence claim fails. *See, e.g., Seybert-Nicholas Printing Corp. v. MLP U.S.A., Inc., 1992 U.S. Dist. LEXIS 16220, No. 92 Civ. 6143 (RPP), 1992 WL 315643, at *1 (S.D.N.Y. Oct. 22, 1992).*

V. *Rule 11 Sanctions*

Defendant's motion for *Rule 11* sanctions is plainly deficient as a matter of procedure, and is therefore denied.

*Rule 11* sanctions are appropriate only after the allegedly offending party has been afforded a remedial "safe harbor" period. Under *Rule 11 (c) (1) (A)*:

A motion for sanctions ... shall be made separately from other motions or requests ... [and] shall be served as provided in *Rule 5*, but shall not be filed with or presented to the court unless, within 21 days after service of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Here, Ross was not served with PrivatAir's *Rule 11* motion twenty-one days prior to its filing. Instead, the *Rule 11* motion, [*28] which was made as part of PrivatAir's motion to dismiss, was contemporaneously served on Ross and filed with this Court. Nor is the Court informed of any other pre-filing notice provided by PrivatAir to Ross substantially fulfilling the safe harbor requirement. In brief, Ross has been deprived of any opportunity to "withdraw[] or appropriately correct[]" the challenged matter, and therefore we will not consider the merits of PrivatAir's *Rule 11* application. The motion is denied.

*CONCLUSION*

For the foregoing reasons, defendant's motion to dismiss is granted with respect to the breach of contract and negligence counts. With respect to the breach of fiduciary duty count, defendant's motion is granted except that it is denied with respect to Ross's allegation that PrivatAir urged Grafair to repair the Aircraft without Ross's knowledge or authorization. Defendant's motion for *Rule 11* sanctions is denied.

By September 8, 2004, the parties are to confer about and submit for the Court's review a discovery and motion schedule that is prompt and targeted at the issues raised in footnote 13 of this Memorandum. Upon completion of this limited discovery the Court will entertain [*29] a motion for summary judgment from defendant.

IT IS SO ORDERED.

DATED: New York, New York

August 16, 2004

NAOMI REICE BUCHWALD

UNITED STATES DISTRICT JUDGE

Not Reported in F.Supp.2d
(Cite as: 1999 WL 787658 (S.D.N.Y.))
<KeyCite Citations>

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

**George W. SIRADAS, Robin L. Siradas, Laszlo Takacs and Judith E. Takacs, individually and on behalf of all others similarly situated, Plaintiffs,
v.
CHASE LINCOLN FIRST BANK, N.A., Chase Home Mortgage Corporation, Chase Manhattan Mortgage Corporation, Chase Manhattan Bank, N.A., and Federal Home Loan Mortgage Corporation, Defendants.**

**No. 98 CIV. 4028(RCC).**

Sept. 30, 1999.

MEMORANDUM AND ORDER

CASEY, D.J.

*1 George W. Siradas, Robin L. Siradas, Laszlo Takacs and Judith E. Takacs (the "Plaintiffs") have brought a class-action suit against The Chase Manhattan Bank, successor by merger to the Chase Manhattan Bank, N.A. ("CMB"), and successor in interest to Chase Lincoln First Bank, N.A. ("Chase Lincoln"), and Chase Mortgage Services, Inc., (formerly known as Chase Manhattan Mortgage Corporation, formerly known as Chase Home Mortgage Corporation) ("CMSI") (collectively referred to as the "Chase Defendants") and Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "Defendants") for their alleged unlawful practices in the servicing of Adjustable Rate Mortgages ("ARMs"). Plaintiffs have brought this suit on behalf of all persons whose six month treasury indexed Adjusted Rate Mortgage is or was owned or serviced by Defendants and who were damaged because of the method of calculation of interest.

The Supreme Court of the State of New York, County of New York, removed the instant case to this Court pursuant to 28 U.S.C. § 1446 [FN1] and 12 U.S.C. § 1452(f)(3). [FN2] According to 12 U.S.C. § 1452(f)(3), the Federal Home Loan Mortgage Corporation ("FHLMC"), a corporate entity created by the United States of America,

organized and existing under the terms of the Emergency Home Finance Act of 1970, has the statutory right to remove this action to the District Court of the United States in the district and division embracing where the action is pending. Therefore, federal jurisdiction is appropriate.

FN1. 28 U.S.C. § 1446 sets forth the procedure for removal to federal court.

FN2. 12 U.S.C. § 1452(f)(3) provides, in pertinent part: ... any civil or other action, case or controversy in a court of a State, or in any court other than a district court of the United States, to which the Corporation is a party may at any time before the trial thereof be removed by [FHLMC], without the giving of any bond or security, to the district court of the United States for the district and division embracing where the same is pending ... by following any procedure for removal of causes in effect at the time of such removal. 12 U.S.C. § 1452(f)(3).

Before the Court is a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, as to all of the Takacses' individual claims, and a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to the Siradases' individual claims for violation of Section 349 and 350 of the New York General Business Law (McKinney 1991), unjust enrichment and money had and received, and breach of duty of fair dealing. [FN3] Both motions have been brought by The Chase Defendants.

FN3. Although the parties motion papers refer to the duty of fair dealing, such duty is commonly referred to as the duty of good faith and fair dealing. The Court will refer to this duty in a manner consistent with the parties' motion papers.

Also before the Court is a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the aforementioned Plaintiffs' claims, brought by Defendant Freddie Mac. For the reasons set forth below, Defendants' motions are granted with respect to all of the Takacses' individual claims and the Siradases unjust enrichment, money had and received and breach of fair dealing claims, and denied with respect to the Siradases' deceptive

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

**Page 107**

(Cite as: 1999 WL 787658, *1 (S.D.N.Y.))

practices claim.

FACTUAL BACKGROUND

The underlying facts in this case are not in controversy. In the mid-1980's, Plaintiffs George W. Siradas and Robin L. Siradas obtained a six month treasury-indexed adjustable rate mortgage ("ARM") loan from Chase Lincoln. See Answer ¶ 6. In 1986, Plaintiffs Laszlo Takacs and Judith E. Takacs obtained a six month treasury indexed ARM loan from Chase Lincoln. Fourth Amended Complaint ¶ 7; Answer ¶ 7. Plaintiffs' ARM loans provided that the interest rates were to be adjusted using the Auction Average every six months until the loans were paid off. Subsequently, Freddie Mac purchased the mortgage and owned the Siradases' loan at all relevant times.

**\*2** The Siradases' ARM loan provided that the interest rate could be adjusted every six months, based on the weekly auction average of the six-month United States Treasury Bills. See Fourth Amended Complaint ¶ 17; Answer ¶ 17. Such auction average may be obtained using two methods: (1) contacting the member banks of the Federal Reserve Board, newspapers or electronic information sources (collectively referred to as the "Telerate Method"); or (2) by consulting the Federal Reserve Board's Statistical Release H.15(519), which is publicized each Monday by the Federal Reserve Board ("H15 Method"). See Fourth Amended Complaint ¶ 18; Answer ¶ 18.

The adjustable rate rider attached to the Siradases' mortgage provides that the H15 method should be used. [FN4] In addition, Freddie Mac has published a policy which mandates use of the H15 method for six-month treasury indexed ARMs. [FN5]

FN4. The rider states: "Beginning with the first Change Date, my interest will be based on an Index. The "Index" is the weekly auction average on six-month United States Treasury bills, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index." " See Fourth Amended Complaint ¶ 17.

FN5. A Freddie Mac bulletin states: "[T]he Treasury index will be considered to have been made available on the release date that appears on the Federal Reserve Statistical Release H.15(519)." See Freddie Mac Bulletin, No. 91--18 (Sept. 5, 1991).

According to Freddie Mac, the proper method for adjusting the interest rate on six month treasury indexed ARMs is the H15 method. See Fourth Amended Complaint, Exhibit C, Freddie Mac Bulletin, No. 91-18. Chase Manhattan serviced the Siradases' mortgage under an agreement with the owner, Freddie Mac, by making interest rate adjustments commencing June 1, 1986 and each and every June 1 and December 1 thereafter up to the time the loan was transferred to Mellon Mortgage in or about May 1995. At times, the Defendants used the Telerate method, rather than the H15 method to compute the Plaintiffs' interest rates. See Carson Decl. ¶ 4. In or about April of 1998, Joseph M. Carson, the Assistant Manager of Alternative Servicing for Chase Manhattan Mortgage Corporation ("CMMC") [programed] CMMC's computer to run analysis on the Takacses' loan from inception to payoff making interest rate adjustments on their ARM loan mortgage using the H15 Method. He compared this analysis to the Takacses' actual loan history and found that had the H15 method been used, Plaintiffs would have been charged $55.72 more in interest over the life of the loan than they were actually charged. Id.

DISCUSSION

I. The Takacses' Claims

The Takacses claim breach of contract, violation of New York General Business Law Section 349 and 350 (the "Deceptive Practices Act"), unjust enrichment, and breach of the duty of fair dealing. The Chase Defendants move for summary judgment on all of these claims.

Summary Judgment may only be granted when, "there is no genuine issue as to any material fact [and] ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party carries the burden of demonstrating that there exists no genuine issue as to any material fact. See Gallo v. Prudential Residential Services, Limited Partnership, 22 F.3d 1219, 1223 (2d Cir.1994). All ambiguities must be resolved and all inferences must be drawn in favor of the non-moving party. Id. The

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
**(Cite as: 1999 WL 787658, \*2 (S.D.N.Y.))**

moving party may also succeed on a summary judgment motion by showing that little or no evidence may be found in support of the non-moving party's case. Id.

\*3 Each of the Takacses' claims is based solely on the allegation that they suffered damages due to Defendants charging them excessive interest. See Fourth Amended Complaint ¶¶ 47, 51, 55. However, the evidence demonstrates that not only were the Takacses not overcharged, but they were actually undercharged. An analysis showed that they paid less in interest than they would have if the Defendants had used the H15 method. See Decl. of Joseph Carson ¶ 4. The Plaintiffs have not presented any contradictory evidence on this issue, thus, there is no genuine issue of fact on the question of damages. As damages is an essential element on the Plaintiff's claim, the Defendants are entitled to summary judgment on the Plaintiffs' claims of breach of contract, violation of the Deceptive Practice Act and unjust enrichment.

The Takacses cannot maintain a cause of action, because they have not been damaged. See N.Y. Gen. Bus. Law § 349(h) (McKinney 1991) (allowing a cause of action to "any person who has been injured by reason of any violation of this section"); Lexington 360 Associates v. First Union Nat'l Bank, 234 A.D.2d 187, 651 N.Y.S.2d 490 (1st Dep't 1996) (granting defendant's motion for summary judgment where borrower could not prove that he suffered any damages as the result of the lender's alleged breaches); Small v. Bank of New York, 222 A.D.2d 667, 636 N.Y.S.2d 71 (2d Dep't 1995) (granting defendant's motion for summary judgment because plaintiff suffered no damages from defendant's conduct). The Takacses themselves admit that they have suffered no injury and request a voluntary dismissal without prejudice. See Plaintiffs' Memorandum in Opposition to Chase's Motion at 2-3.

Defendants are entitled to summary judgement on the Takacses' individual claims, because, on the specific facts of this case, the Takacses have demonstrated no injury.

II. Deceptive Practices Act

The Chase Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure  [FN6] regarding the Siradases' claim of violation of New York's Deceptive Practices Act. The Deceptive Practices Act, which applies to New York residents and New York transactions, provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce ... are hereby declared unlawful." N.Y. Gen. Bus. Law § 349-50. [FN7]

> FN6. The Federal Rules state: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).

> FN7. The Court notes that the Plaintiffs, in the Fourth Amended Complaint, allege that The Chase Defendants violated Florida's uniform deceptive acts and practices statute, Fla. Stat. Ann. § 501.201 et seq., which they claim applies to The Chase Defendants because Chase Mortgage is located in Florida and carried out the unlawful practices from Florida. None of the parties addressed this claim in their moving papers on the issues addressed herein, therefore, the Court will not address the applicability of this statute to the Defendants' motions. However, as the Court has denied the Defendants' motion with respect to the New York uniform deceptive acts and practices statute, the parties suffer no prejudice by omitting discussion on this issue here.

The standard for obtaining a judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as the standard used for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6): A court may dismiss the complaint only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Cohen v. Koening, 25 F.3d 1168, 1172 (2d Cir.1994), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In this case, it does not appear beyond doubt that the Plaintiffs can prove no set of facts entitling them to relief under the Deceptive Practices Act.

\*4 Plaintiffs maintain that the Chase Defendants violated the Deceptive Practices Act by deceptively using a formula for computing interest rate adjustment that was inconsistent with the formula agreed upon in the mortgage. See Fourth Amended Complaint ¶ 49. Defendants' motion for judgment

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

on the pleadings regarding this claim is denied, given that Defendants' conduct could arguably meet all of the elements of a violation of the Deceptive Practices Act.

In order to prove a claim for deceptive practices the Plaintiff's must demonstrate that the act or practice was misleading in a material respect, and that the plaintiff was injured. Schneider v. Citicorp Mortg., Inc., 1997 982 F.Supp. 897, 903 (E.D.N.Y.1997) (citing Steinmetz v. Toyota Motor Credit Corp., 963 F.Supp. 1294, 1306 (E.D.N.Y.1997). There is no requirement that the Plaintiff show specific dollars injury. In order for the Plaintiffs to plead and prove their claims for relief under the Deceptive Practices Act, they must prove, at a minimum, that the conduct is consumer oriented, that Defendant's acts have a broad impact on consumers at large, and that there is injury to the public generally. Occidental Chemical Corp. v. OHM Remediation Services Corp., 173 F.R.D. 74, 76-77 (W.D.N.Y.1997).

First, a miscalculation of interest rates by major servicers of mortgages in the United States clearly has a broad impact on consumers at large. See Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995) (basing denial of a deceptive practices on the fact that the deceptive act did not have a sufficiently broad impact on consumers at large); United Knitwear Co. v. North Sea Ins. Co., 203 A.D.2d 358, 359 (2d Dep't 1994) (requiring that claims under the Deceptive Practices Act be "harmful to the public at large"). Additionally, the Chase Defendants' practices are of a persisting nature, rather than isolated incidents. See id. at 359 (requiring that violations of the Deceptive Practices Act involve conduct "of a recurring nature."); Teller, 213 A.D.2d at 148, 630 N.Y.S.2d at 774 (the Deceptive Practices Act is not applicable to "single-shot" transactions). Unlike Teller, which involved deceptive conduct between only two parties, the Chase Defendants' deceptive practices extended to hundreds of thousands of borrowers. See Fourth Amended Complaint ¶ 12. This vast impact on consumers at large is the type of ongoing behavior which the Deceptive Practices Act was intended to censure.

Defendants argue that Plaintiffs' claim under the Deceptive Practices Act must be dismissed because it is "duplicative of their breach of contract claim."

Defendants' Memorandum at 7. Defendants base this contention on the Teller court's statement that the Deceptive Practices Act "was not intended to turn a simple breach of contract into a tort," Teller, 213 A.D.2d 141 at 148. Additionally, Defendants refer to the United Knitwear court's denial of a claim under the Deceptive Practices Act because it "amounts to nothing more than a private contract dispute between the parties." United Knitwear Co., 203 A.D.2d at 359. Defendants have taken these statements out of context to support their claim that the Deceptive Practices Act cannot apply to those deceptive practices which are rooted in contracts. The Teller court clearly bases its decision to deny the deceptive practices claim on the insufficient manner and extent to which the defendant's conduct impacts consumersnot the fact that a contract was involved. Only after a lengthy analysis of these factors does the court give its conclusory statement that the Deceptive Practices Act "was not intended to turn a simple breach of contract into a tort." Id.

*5 Similarly, the court in United Knitwear Co. based its denial of the claim under the Deceptive Practices Act on the fact that the deception was neither harmful to the public nor of a recurring nature. Only after an extensive examination of these factors, did the court conclude that there was nothing more than a simple breach of contract.

Because the mortgages serviced by the Chase Defendants clearly do have a broad impact and are of a recurring nature, their conduct amounts to more than a "simple breach of contract" and as such is subject to the Deceptive Practices Act. Although Plaintiffs supplied little evidence of other mortgagors who potentially were harmed by Chase's and Freddie Mac's practices, this is a factual issue. It is possible that evidence of such could be developed to demonstrate deceptive practices which caused harm to consumers. Therefore, the Defendants' motion for summary judgment on this point is denied.

III. Claim of Unjust Enrichment

Plaintiffs George and Robin Siradas also bring a quasi contract claim of unjust enrichment and money had and received. (See Fourth Amended Complaint ¶¶ 53-55); see generally Rocks & Jeans Inc. v. Lakeview Auto Sales & Service, Inc., 184 A.D.2d 502, 502 (2d Dep't 1992) (holding that a claim for

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

money had and received "sounds in quasi contract" and arises when "in the absence of an agreement, one party possesses money that in equity and good conscience it ought not retain"). Plaintiffs base this claim on the assertion that Defendants unjustly received their money through the charging of excessive interest rates.

Plaintiffs and Defendants agree that one may not maintain a claim in quasi contract where a contract governs the "particular subject matter of its claims for unjust enrichment." See Plaintiffs' Memorandum at 7 (quoting Metropolitan Elec. Mfg. Co. v. Herbert Constr. Co., 183 A.D.2d 758, 759 (2d Dep't 1992)).

The only dispute here is whether Plaintiffs' claim in quasi contract covers subject matter different from that covered by the contract itself. Plaintiffs argue that the two claims cover two different subjects: the contract (the mortgage) governs the proper method to calculate interest rates, whereas the subject matter of the quasi contract claim "is not the method of calculation contained in the contract, but that the defendants did not use the method of calculation contained in the contract." Plaintiff's Memorandum at 8.

This analysis is unpersuasive. Simply rephrasing an affirmative, contractual obligation into a failure to uphold this obligation, does not create a new subject matter. The quasi contract claim does not have a subject matter independent from the contract itself. The Chase Defendants' motion for judgment of the pleadings with respect to Plaintiff's claim of unjust enrichment and money had and received against the Chase Defendants is dismissed, as there is no set of facts in support of the Plaintiffs' claim which would entitle them to relief. Cohen, 25 F.3d at 1172 (quoting Conley, 355 U.S. at 45-46).

IV. The Duty of Fair Dealing

**\*6** A party may maintain a claim for breach of the duty of fair dealing only if it is based on allegations different than those underlying the accompanying breach of contract claim. See Geler v. National Westminster Bank USA, 770 F.Supp. 210, 215 (S.D.N.Y.1991) (denying plaintiff's claim under breach of duty of fair dealing because the allegations of that claim presupposed a breach of the express terms of the contract). Geler is analogous to this

case, in that the Siradas Plaintiffs have not asserted any basis for their breach of duty of fair dealing claim beyond the allegation that Defendants breached the contract.

Plaintiffs' reliance on Davis v. Dime Bank of New York, FSB, 158 A.D.2d 50 (Appel Div.3d Dep't 1990) (holding that a plaintiff could sue for breach of contract, as well as breach of fiduciary duty, only if the latter duty arose from more than the mere existence of the contract) is misguided for two reasons. First, the plaintiffs in Davis claimed breach of fiduciary duty, which involves a very different relationship between the parties and requires a different standard of conduct, [FN8] rather than breach of duty of fair dealing. Second, the Davis court found a fiduciary relationship between the parties which was based on allegations independent of the contract itself. There was no such special duty between the Siradases and the Chase Defendants, other than the duty of fair dealing which is implicit in every contract. See Geler, 770 F.Supp. at 215 (holding that every contract obligates the party to engage in fair dealing). The breach of that implicit duty to engage in fair dealing is merely a breach of the underlying contract. Id.

> FN8. "The essence of a fiduciary relationship is that the fiduciary agrees to act as his principal's alter ego ...." United States v. Ashman, 979 F.2d 469, 478 (7th Cir.1992).

Plaintiffs cannot claim both breach of contract and breach of the duty of fair dealing, because the latter claim is not independent of the contract itself. For this reason, the Defendants' motion for judgment of the pleadings with respect to the Plaintiffs' breach of duty of fair dealing claim is granted.

V. Plaintiff's Claims Against Freddie Mac

Freddie Mac has brought a motion to dismiss all of the Plaintiffs' claims against it. For the reasons set forth below, the Court grants such motion as to each claim.

A. Overcharging of Interest

Plaintiffs are subject to New York Civil Practice Law and Rules § 215(6), because they seek recovery of an overcharge of interest. This law imposes a one

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.