UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FINEMAN FURNITURE CO. INC. and
SEYMOUR FINEMAN, individually,

            Plaintiffs,

        v.

PLANNED FURNITURE PROMOTIONS, INC.,
GENE ROSENBERG AND ASSOCIATES, LLC,
EUGENE ROSENBERG, LESTER ROY HESTER,
PAUL COHEN, KURT EARLYWINE,
FURNITURE AUCTIONS OF AMERICA,
TODAY'S FURNITURE, and BH ASSOCIATES,
INC.,

            Defendants.

Civil Action No. 07 Civ. 9749 (JSR)

**AFFIDAVIT OF
CATHERINE R. KEENAN IN
OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

STATE OF NEW YORK      )
                       )ss.:
COUNTY OF NEW YORK     )

CATHERINE R. KEENAN, being duly sworn, deposes and says:

1.    I am an attorney admitted to practice law in the State of New York and this Court. I am an associate with the law firm of Kirkpatrick & Lockhart Preston Gates Ellis LLP, counsel for Plaintiffs Fineman Furniture Co. Inc. and Seymour Fineman in the above-captioned action. I submit this affidavit in opposition to Defendants' Motion to Dismiss.

2.    Annexed hereto as Exhibit 1 is a true and correct copy of a complaint filed against Planned Furniture Promotions, Inc., Gene Rosenberg Associates, Gene Rosenberg, and others in the Superior Court of the Commonwealth of Massachusetts, Suffolk County, entitled Commonwealth of Massachusetts v. Dean Weinstein, et al., Civil Action 00-2262, and the final judgment, which is referenced in paragraph 2 of Plaintiffs' Amended Complaint.

3.    Annexed hereto as Exhibit 2 is a true and correct copy of a complaint filed against Planned Furniture Promotions, Inc., Lester Roy Hester, Gene Rosenberg Associates, Gene Rosenberg, Paul Cohen, and others in the United States District Court for the Central District of California, entitled Hen Huynh v. Zimmer/Hester Furniture Liquidations, Inc., et al., Civil Action 04-671, which is referenced in paragraph 2 of Plaintiffs' Amended Complaint.

Catherine R. Keenan (CK 5925)

Sworn to before me this
31st day of January, 2008

Notary Public

ARNOLD J. BURRUS
Notary Public, State of New York
No. 41-4720413
Qualified in Queens County
Certificate Filed in New York County
Commission Expires March 30, 20___

# EXHIBIT 1

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, §.

SUPERIOR COURT
CIVIL ACTION NO.

00-2262  E

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  COMPLAINT |
| | ) |
| DEAN WEINSTEIN, INDIVIDUALLY AND | ) |
| DOING BUSINESS AS DEAN'S HOME | ) |
| FURNITURE; SLUMBERWORLD OF | ) |
| WESTWOOD, INC., DOING BUSINESS AS | ) |
| DEAN'S HOME FURNITURE; | ) |
| GENE ROSENBERG, INDIVIDUALLY | ) |
| AND DOING BUSINESS AS GENE | ) |
| ROSENBERG ASSOCIATES a/k/a GRA; and | ) |
| PLANNED FURNITURE PROMOTIONS, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## I. INTRODUCTION

1.  This action is brought by the Commonwealth of Massachusetts, by and through its Attorney General Thomas F. Reilly, pursuant to the Removal, Termination or Fire Sales Act, G.L. c. 93, §§ 28A-28F, and the Massachusetts Consumer Protection Act, G.L. c. 93A. The defendants have violated § 28A of the Removal, Termination or Fire Sales Act, G.L. c. 93, and § 2(a) of the Massachusetts Consumer Protection Act, G.L. c 93A, in connection with their operation of a "going out of business" sale of retail furniture.

2.  The Commonwealth seeks a temporary restraining order, a preliminary and permanent injunction, restitution for injured consumers, civil penalties, and the costs of investigating and prosecuting this action, including attorneys fees.

## II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to G.L. c. 93, § 28E, G.L. c. 93A, § 4, and G.L. c. 214, § 1, and over the defendants pursuant to G.L. c. 223A, §§ 3(a) and (b).  Venue in Suffolk County is proper under G.L. c. 93A, § 4.

## III. THE PARTIES

4.      The plaintiff is the Commonwealth of Massachusetts, represented by the Attorney General, who brings this action in the public interest.  The Attorney General is authorized to bring actions enforcing the Consumer Protection Act pursuant to G.L. c. 93A, § 4, and G.L. c. 12, § 10.  He is authorized to bring actions enforcing the Removal, Termination, or Fire Sales Act pursuant to G.L. c. 93, § 28E, and G.L. c. 12, § 10.

5.      Defendant Dean Weinstein is a natural person with a principal place of residence at 10 Wallace Drive in South Easton, Massachusetts.  Defendant Weinstein also does business as "Dean's Home Furniture."

6.      Defendant Slumberworld of Westwood is a Massachusetts corporation with a principal place of business at 63 Morse St. in Norwood, Massachusetts.  Slumberworld is engaged in the retail sale of furniture.  Defendant Slumberworld does business in Dedham, Massachusetts, under the name "Dean's Home Furniture."

7.      Defendant Dean Weinstein is the Agent and Clerk of Slumberworld of Westwood. In addition, defendant Weinstein, acting alone or in concert with others, has directed, controlled, formulated or participated in the acts and practices of the Dean's Home Furniture store in Dedham, Massachusetts, including the acts and practices set forth in this Complaint.

8.      Defendant Gene Rosenberg is a natural person with a principal place of residence at

2

28 Pinnacle Mountain Road in Simsbury, Connecticut. Defendant Rosenberg also does business as Gene Rosenberg Associates or GRA, with a principal place of business at 75 Kitts Lane, Newington, Connecticut. Defendant Rosenberg is engaged in the business of conducting furniture liquidation sales. Defendant Rosenberg, acting alone or in concert with others, has directed, controlled, formulated or participated in the operation of the "going out of business" sale at the Dean's Home Furniture store in Dedham, Massachusetts, including the acts and practices set forth in this Complaint.

9.    Defendant Planned Furniture Promotions is a Pennsylvania corporation with a principal place of business at 75 Kitts Lane in Newington, Connecticut. Defendant Planned Furniture Promotions is engaged in the business of conducting furniture sales promotions. Defendant Planned Furniture Promotions, acting alone or in concert with others, has directed, controlled, formulated or participated in the operation of the "going out of business" sale at the Dean's Home Furniture store in Dedham, Massachusetts, including the acts and practices set forth in this Complaint.

## IV. FACTS

10.    At all times relevant to this Complaint, the defendants have been engaged in conducting a "going out of business" sale at the Dean's Home Furniture store located at 450 Providence Highway in Dedham, Massachusetts.

11.    Defendants began conducting this "going out of business" sale in or around late March or early April 2000. The defendants plan to end this sale on Memorial Day, Monday, May 29, 2000.

12.    This sale is primarily operated by defendant Gene Rosenberg d/b/a GRA, and his

3

employees, and by Planned Furniture Promotions, Inc., all of whom conduct furniture liquidation sales on a professional basis. Upon information and belief, defendants Dean Weinstein and/or Slumberworld of Westwood, Inc., contracted or arranged with defendant Rosenberg and Planned Furniture Promotions to operate this sale.

13.    Prior to this "going out of business" sale, the defendants failed to file a complete and detailed inventory with the Town of Dedham listing all of the items to be included in the sale, as required by G.L. c. 93, § 28A, subsection (2)(a).

14.    Prior to this "going out of business" sale, the defendants also failed to file a copy of this complete and detailed inventory with the Office of the Attorney General, as required by G.L. c. 93, § 28A, subsection (2)(a).

15.    Prior to this "going out of business" sale, the defendants failed to file a $1,000 bond with the Town of Dedham, as required by G.L. c. 93, § 28A, subsection (2)(b).

16.    The defendants have advertised this "going out of business" sale in print, on radio stations, and on television. The defendants' advertisements do not state the final date of this "going out of business" sale, nor do they state that the sale includes only those goods listed in the complete and detailed inventory, all as required by G.L. c. 93, § 28A(9).

17.    In anticipation of this "going out of business" sale, the defendants purchased a significant amount of furniture. This furniture is not owned by defendant Weinstein or defendant Slumberworld, but is owned by defendant Rosenberg and/or Planned Furniture Promotions. This furniture was purchased with the specific intent and purpose of selling it at the "going out of business" sale at the Dean's Home Furniture store in Dedham, Massachusetts.

18.    Much of this furniture has been stored at a warehouse in Norwood, Massachusetts.

4

This warehouse is not used in the ordinary course of business by Dean's Home Furniture.

19.    During this "going out of business" sale, the defendants, on a frequent basis, delivered truckloads of furniture from this warehouse or from other locations to the Dean's Home Furniture store in Dedham.  The defendants delivered this furniture, which was not located in the usual course of business at the Dean's Home Furniture store in Dedham, for the specific purpose of selling it at this "going out of business" sale.

20.    The defendants misrepresent to consumers that the furniture being sold at this "going out of business" sale is actually furniture that Dean's Home Furniture had sold in its usual course of business prior to this sale, when it is not.

21.    The defendants misrepresent to consumers that the furniture being sold at this "going out of business" sale was sold prior to the sale at substantially higher prices, and that the prices have been lowered significantly, when in fact the furniture was never sold at the higher prices.

22.    In December 1991, the Attorney General filed an action against, inter alia, defendant Rosenberg, individually and doing business as Gene Rosenberg Associates, alleging that he had violated the Removal, Termination or Fire Sales Act, G.L. c. 93, § 28A, and the Massachusetts Consumer Protection Act, G.L. c. 93A.  The Attorney General alleged that Rosenberg and his co-defendants had:  (1) failed to file a copy of the inventory required by G.L. c. 93, sec. 28A, subsection (2)(a) with the Office of the Attorney General; (2) purchased goods and products for the sole purpose of selling them at a going out of business sale; (3) sold products at a going out of business sale that were not on the premises of the store at the time an inventory was filed with the town where the sale was held; (4) sold products that were not

5

included on the inventory filed with the town; and (5) inflated or exaggerated prices as a basis of making fictitious price reductions.

23.    The Attorney General's 1991 action against Rosenberg was resolved when he and his co-defendants entered into a Final Judgment by Consent on March 30, 1993.  This Final Judgment required the defendants to pay $104,014.62 in restitution and $25,000 to the Local Consumer Aid Fund in lieu of costs of investigation and litigation.   It also contained a two-year injunction prohibiting Rosenberg from failing to comply with the Removal, Termination or Fire Sales Act and requiring him to give the Office of the Attorney General written notice of any sale he conducted in the Commonwealth of Massachusetts.

24.    The defendants knew or should have known that their conduct violates the Removal, Termination or Fire Sales Act and constitutes an unfair or deceptive act or practice in violation of G.L. c.  93A, § 2(a).

## V.  CAUSES OF ACTION

### COUNT I

(Violation of G.L. c. 93, § 28A, the Removal, Termination or Fire Sales Act)

25.    The Commonwealth realleges paragraphs 1-24 of this Complaint.

26.    In the course of promoting and conducting the "going out of business" sale at the Dean's Home Furniture store located in Dedham, Massachusetts, the defendants have violated G.L. c. 93, § 28A, by, including but not limited to:

a.    Failing to file prior to the sale with the clerk of the town in which the sale is being conducted, a complete and detailed inventory which lists all of the items to be included in the sale;

b.    Failing to file prior to the sale a copy of said complete and detailed inventory with

6

the Office of the Attorney General;

c.    Failing to file prior to the sale a $1,000 bond with the town in which the sale is being conducted;

d.    Selling goods which were not actually located prior to the "going out of business" sale in the place of business where the sale is being conducted;

e.    Purchasing goods and products for the sole purpose of selling them at a "going out of business" sale; and

f.    Failing to state when advertising a "going out of business" sale the final date of the sale and that the sale includes no goods other than those listed in the complete and detailed inventory.

27.    Section § 28E of G.L. c. 93, provides that any person may seek an order from the Superior Court to restrain and enjoin violations of G.L. c. 93, § 28A.

## COUNT II

### (Violation of G.L. c. 93A, § 2(a), the Consumer Protection Act)

28.    The Commonwealth realleges paragraphs 1-27 of this Complaint.

29.    In the course of promoting and conducting the "going out of business" sale at the Dean's Home Furniture store located in Dedham, Massachusetts, the defendants have violated G.L. c. 93A, § 2(a), by engaging in unfair or deceptive acts or practices, including but not limited to:

a.    Misrepresenting to consumers that the merchandise offered at this sale is actually furniture that was sold in the usual course of business prior to the sale, when it is not; and

b.    Misrepresenting to consumers that the merchandise offered at this sale was sold prior to the sale at substantially higher prices, when the higher prices are fictitious.

30.    The defendants have violated regulations promulgated pursuant to Consumer Protection Act, G.L. c. 93A, § 2(a), including but not limited to:

7

a.   Attaching tickets or labels to merchandise which contain fictitious or inflated prices capable of being used as a basis for offering fictitious price comparisons, in violation of 940 C.M.R. § 6.05(9);

b.   Failing to meet the time period requirements of 940 C.M.R. § 6.05(3) for advertising which makes price comparisons with a seller's own former prices;

c.   Advertising merchandise using "sale" or "clearance" terminology while failing to disclose the actual former price of the merchandise, in violation of 940 C.M.R. § 6.05(5);

d.   Engaging in oppressive or unconscionable sales tactics, in violation of 940 C.M.R. § 3.16(1);

e.   Misrepresenting material facts or information, in violation of 940 C.M.R. § 3.05 and 940 C.M.R. § 3.16;

f.   Engaging in deceptive advertising, in violation of 940 C.M.R. § 3.02(2) and 940 C.M.R. § 3.05;

g.   Failing to disclose to a buyer or prospective buyer relevant information, which failure had the capacity or tendency or effect of deceiving buyers or prospective buyers in a material respect, in violation of 940 C.M.R. § 3.05(1); and

h.   Failing to disclose to a buyer or prospective buyer facts which may have influenced the buyer not to enter into the transaction, in violation of 940 C.M.R. § 3.16(2).

31.   As alleged in paragraph 26 above, the defendants have violated § 28A of the Removal, Termination or Fire Sales Act, G.L. c. 93. The purpose of G.L. c. 93, § 28A, is to protect the public from deceptive practices in the operation of a removal, termination or "going out of business" sale. Pursuant to 940 C.M.R. § 3.16.(3), a violation of any Massachusetts rules, regulations or law promulgated for the protection for the public's health, safety or welfare is a violation of G.L. c. 93A, § 2(a). By violating G.L. c. 93, § 28A, in accordance with 940 C.M.R. § 3.16 (3), the defendants are also in violation of G.L. c. 93A, § 2(a).

8

## VI. PRAYERS FOR RELIEF

WHEREFORE, the Commonwealth requests that this Court grant the following relief:

1.      Issue an ex parte order temporarily restraining defendants Weinstein and Slumberworld, individually and doing business under any name, and their general partners, directors, officers, agents, employees, successors and assigns, and all persons in active concert or participation with them, from continuing to operate the "going out of business" sale at the Dean's Home Furniture store in Dedham, Massachusetts, until the Hearing on the Commonwealth's Motion for Preliminary Injunction.

2.      Issue an ex parte order temporarily requiring defendants Weinstein and Slumberworld, individually and doing business under any name, and their general partners, directors, officers, agents, employees, successors and assigns, and all persons in active concert or participation with them, to:

a.      Within 10 days, produce all documents or records relating to the "going out of business" sale at the Dean's Home Furniture store in Dedham, including but not limited to:

        i.      Any contract, agreement, letter agreement, or memorandum of understanding between or among any of the defendants concerning this "going out of business" sale;

        ii.      Any lease, contract, agreement, letter agreement, or memorandum of understanding between any of the defendants and the landlord or owner of the former Home Quarters warehouse/store in Norwood;

        iii.      All invoices, packing slips, bills of lading, or shipping labels from furniture manufacturers for any furniture delivered since January 1, 2000, to either the Dean's Home Furniture store in Dedham or the former Home Quarters warehouse in Norwood;

        iv.      All inventory lists prepared within the last 12 months of furniture or other merchandise owned or held by the Dean's Home Furniture in

9

Dedham; and

    v.    All sales receipts or invoices for furniture sold at the Dean's Home Furniture Store in Dedham from March 15, 2000, to the present.

b.    Within 10 days, file an accounting of all furniture merchandise purchased and sold during said "going out of business" sale;

c.    Within 10 days, provide to the Office of the Attorney General a list of all consumers who have purchased furniture from the Dean's Home Furniture store in Dedham from March 15, 2000, to the present; and

d.    Within 10 days, provide to the Office of the Attorney General a list of all employees employed by any of the defendants who have worked at the Dean's Home Furniture store in Dedham, Massachusetts.

3.    Issue an ex parte order temporarily restraining defendants Weinstein and Slumberworld, individually and doing business under any name, and their general partners, directors, officers, agents, employees, successors and assigns, and all persons in active concert or participation with them, from destroying or transferring custody of any records in any way related to, connected with, or referring to the "going out of business" sale at the Dean's Home Furniture store in Dedham or to the inventory of this store within the preceding twelve months of this sale, including the records listed in Prayer 2 above.

4.    Issue a short order of notice to the defendants, requiring them to show cause why a preliminary injunction should not issue against them.

5.    Issue a preliminary injunction restraining the defendants, individually and doing business under any name, and their general partners, directors, officers, agents, employees, successors and assigns, and all persons in active concert or participation with them, from violating the Removal, Termination or Fire Sales Act or engaging in unfair or deceptive acts or practices, including but not limited to:

a.   operating any "going out of business", "close out", termination, or removal sale of furniture in Massachusetts, unless and until:

    i.   they have filed a complete and detailed inventory with the city or town in which the sale is being conducted, with a copy to the Office of the Attorney General, as required by G.L. c. 93, § 28A, subsection 2(a); and

    ii.   they have filed a $1,000 bond with the city or town in which the sale is conducted, as required by G.L. c. 93, § 28A, subsection 2(b).

b.   offering at any "going out of business", "close out", termination, or removal sale any merchandise which is not included on such an inventory;

c.   offering at any "going out of business", "close out", termination, or removal sale any merchandise which was not actually located prior to the sale at the premises in which the sale is being conducted;

d.   offering at any "going out of business", "close out", termination, or removal sale any merchandise which has been purchased by or delivered for the specific purpose of selling the merchandise at such sale;

e.   failing to include in any advertisements for any "going out of business," "close out," termination, or removal sale the final date of the sale and that the sale includes no goods other than those listed in the complete and detailed inventory;

f.   misrepresenting to consumers that merchandise offered at a sale was actually sold in the usual course of business prior to the sale, when it is not;

g.   misrepresenting to consumers that merchandise offered at a sale was sold prior to the sale at substantially higher prices, when the higher prices are fictitious;

h.   attaching tickets or labels to merchandise which contain fictitious or inflated prices capable of being used as a basis for offering fictitious price comparisons;

i.   failing to meet the time period requirements of 940 C.M.R. § 6.05(3) for advertising which makes price comparisons with a seller's own former prices; and

j.   advertising merchandise using "sale" or "clearance" terminology while failing to disclose the actual former price of the merchandise.

6.   Issue a preliminary injunction ordering the defendants, individually and doing

business under any name, and their general partners, directors, officers, agents, employees,

successors and assigns, and all persons in active concert or participation with them to maintain

any and all records of the defendants in any way related to, connected with, or referring to the

"going out of business" sale at the Dean's Home Furniture store in Dedham or to the inventory of

this store within the preceding twelve months of this sale.

7.  After a trial of the merits, issue:

a.  a permanent injunction restraining the defendants individually and doing business under any name, and their general partners, directors, officers, agents, employees, successors and assigns, and all persons in active concert or participation with them from operating or conducting any "going out of business" sale in Massachusetts.

b.  an order requiring the defendants to make full and complete restitution to each person injured by their unfair or deceptive acts or practices; and

c.  an order requiring the defendants to pay to the Commonwealth civil penalties and costs, including attorneys fees, pursuant to G.L. c. 93A, § 4.

8.  Grant such other relief as the Court deems just and proper.

COMMONWEALTH OF MASSACHUSETTS

THOMAS F. REILLY
ATTORNEY GENERAL.

Dated: May ___ 2000                    By: _____
                                       Chi Chi Wu, BBO# 560178
                                       Assistant Attorney General
                                       Consumer Protection and
                                            Antitrust Division
                                       One Ashburton Place
                                       Boston, Massachusetts 02108
                                       (617) 727-2200

H:\WPWIN60\DEANFURN\PLEADING\CPLT2.WPD

12

27

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                    *Notify*                    SUPERIOR COURT
                                                            CIVIL ACTION NO. 00-2262E

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEAN WEINSTEIN, INDIVIDUALLY AND | ) |
| DOING BUSINESS AS DEAN'S HOME | ) |
| FURNITURE; SLUMBERWORLD OF | ) |
| WESTWOOD, INC., DOING BUSINESS AS | ) |
| DEAN'S HOME FURNITURE; | ) |
| GENE ROSENBERG, INDIVIDUALLY | ) |
| AND DOING BUSINESS AS GENE | ) |
| ROSENBERG ASSOCIATES a/k/a GRA; and | ) |
| PLANNED FURNITURE PROMOTIONS, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

*[handwritten notations in right margin: Notice sent 12/07/01 CCW MAGO MWA IWAGO PAT n DS PJDn DS JSZ MCLF- JDC MCLF- TAUB Ø]*

## FINAL JUDGMENT BY CONSENT

It appearing to the Court that the defendants, Dean Weinstein (individually and d/b/a Dean's Home Furniture), Slumberworld of Westwood, Inc. (d/b/a Dean's Home Furniture), Gene Rosenberg (individually and d/b/a Gene Rosenberg Associates a/k/a GRA), and Planned Furniture Promotions, Inc., have consented, by the Consents attached hereto, to the entry of this Final Judgment; that the defendants have waived all rights of appeal; and that this Court has subject matter and personal jurisdiction and sufficient basis for the entry of this Final Judgment.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Complaint alleges that defendants violated § 28A of the Removal, Termination or Fire Sales Act, G.L. c. 93, and § 2(a) the Massachusetts Consumer Protection Act, G.L. c. 93A, in connection with their operation of a "going out of business sale" at the Dean's Home Furniture store in Dedham, Massachusetts during April and May 2000. The Commonwealth claims that defendants violated G.L. c. 93, § 28A by, among other things, (a) failing to file the requisite inventory and post the necessary bond with the appropriate town and/or state officials before opening the sale, (b) purchasing goods for the specific purpose of selling them at the sale, (c) selling such goods at the sale, and (d) using advertisements for the sale that stated neither the final date of the sale nor that the sale did not include goods not listed on the inventory. The Commonwealth further alleges that defendants violated G.L. c. 93A, § 2(a) and regulations issued pursuant to that statute by, among other things, (i) misrepresenting to consumers that furniture being offered at the sale was furniture that had been offered at the store in the usual course of business prior to the sale, and (ii) misrepresenting that the prices of the furniture had been lowered from former, substantially higher prices. The Complaint sought an injunction, restitution for consumers, and civil penalties and costs under G.L. c. 93A, § 4.

2.    While consenting to the entry of this Final Judgment, defendants vigorously contend this is a compromise of a doubtful and disputed claim in which liability has expressly been denied. The defendants raised a number of substantive defenses in their Answer to the Plaintiff's Complaint, including that their actions were not in violation of G.L. c. 93, § 28A and/or G.L. c. 93A, § 4; and that there was nothing whatsoever deceptive in the subject sale. Defendants specifically declare that they never misrepresented to any consumer that the price of the furniture had been lowered from former, substantially higher prices. As such, defendants

2

state that any payment pursuant to this agreement shall not in any way be construed as an admission of liability

## I. INJUNCTIVE RELIEF

3.    Dean Weinstein, individually and d/b/a Dean's Home Furniture; Slumberworld of Westwood, Inc., d/b/a Dean's Home Furniture; Gene Rosenberg, individually and d/b/a Gene Rosenberg Associates a/k/a GRA; and Planned Furniture Promotions, Inc. (collectively as "defendants") and their general partners, principals, directors, officers, agents, attorneys, employees, servants, subsidiaries, affiliates, successors and assigns, and all persons in active concert or participation with them, directly or indirectly, acting individually or through any corporate or other device, are hereby permanently enjoined from:

a.    Failing to comply with the provisions of G.L. c. 93, § 28A, including but not limited to:

(1)    Operating any removal sale or termination sale, as those terms are defined in G.L. c. 93, § 28A, subsection (1), including any "going out of business" or "closing out" sale, in Massachusetts, without:

(a)    filing a complete, accurate, and detailed inventory, as described in G.L. c. 93, § 28A, subsection (2)(a), with the clerk of the city or town in which said sale is to take place at least three days prior to the opening of such sale;

(b)    filing a copy of such inventory with the Office of the Attorney General, directed to the attention of the Consumer Protection and Antitrust Division, at least three days prior to the opening of such sale;

(c)    filing a good and sufficient bond, made payable to such city or town, in the penal sum of $1,000, as described in G.L. c. 93, § 28A, subsection 2(b);

(2)   Offering at any such sale any goods, wares, or merchandise not listed in the inventory filed in connection with the sale;

(3)   Offering at any such sale any goods, wares, or merchandise which was not actually in the place of business where such sale is to be operated, or in the warehouse supporting such place of business, at the opening of such sale;

(4)   Offering at any such sale any goods, wares, or merchandise which were purchased for the purpose of selling the same at such sale;

(5)   Advertising any such sale without prominently stating the final date of the sale and that the sale includes no goods other than those listed in the inventory filed in connection with such sale;

b.   Failing to clearly and conspicuously identify to consumers any goods, wares, or merchandise offered at such sale that were not offered by the seller at that location in the usual course of business prior to the opening of the sale (the phrase "ticketed prices are offering prices only and may or may not have resulted in prior sales" will not satisfy this provision);

c.   Failing to comply with the provisions of 940 C.M.R. 6.05, including but not limited to making price comparisons based on fictitious, false, arbitrary, or inflated prices, and including but not limited to making such price comparisons on tickets or labels attached to merchandise; and

d.   Failing to comply with the provisions of 940 C.M.R. 3.04, including but not limited to making claims or representations by any means which has the capacity or tendency or effect of deceiving buyers or prospective buyers as to the value or the past, present, common or usual price of a product, or as to any reduction in price of a product, or any saving related to a product.

4.   Any defendant that plans to operate any sale governed by the provisions of G.L. c. 93, § 28A, in Massachusetts, must provide written notice to the Office of the Attorney General, directed to the attention of the Chief of the Consumer Protection and Antitrust Division, of the location and dates of the sale, and must provide said notice at the same time as providing the copy of the inventory as required by section A above. The notice shall also refer to the caption

4

of this civil action. This paragraph shall apply equally whether defendant is a general partner, principal, director, officer, agent, employee, servant, subsidiary, affiliate, successor, assign, or independent contractor of, is an owner or holder of a controlling interest in, or is in active concert or participating directly or indirectly with, the entity which plans to operate the sale. Such notice shall also identify the capacity in which defendant serves any such entity. This paragraph shall remain in effect for two years from the date of entry of this Final Judgment.

5.    Defendants shall inform any successors and assigns of the terms of this Final Judgment, including, specifically, the terms of this Injunctive Relief section.

6.    By the time of its execution and signature of its Consent to this Final Judgment, defendant Planned Furniture Promotions, Inc. ("PFP") shall also provide to the Commonwealth an affidavit, executed and signed under the pains and penalties of perjury by its President, in the form annexed hereto as Exhibit A. Specifically. the Commonwealth requested information concerning all sales in Massachusetts from May 1996 to the present which were undertaken and/or run by defendant Planned Furniture Promotions, Inc. and/or defendant Gene Rosenberg, a/k/a Gene Rosenberg Associates, and which were governed by G.L. c. 93, § 28A. Planned Furniture Promotions, Inc. has provided this information in Exhibit A. It is understood that the production of this information is made on the express condition that the Commonwealth shall not undertake any investigation for any alleged violation of G.L. c. 93A or G.L. c. 93, § 28A as to these sales. It is further understood that, in agreeing to the entry of this Final Judgment, the Commonwealth is relying on the representations made in this affidavit. The falsity of any such representation will be deemed a violation of this Injunctive Relief section and will make this Final Judgment voidable at the Commonwealth's option.

5

7.    Defendant Slumberworld of Westwood, Inc. ("Slumberworld") shall make all reasonable, good faith efforts to resolve any consumer complaints made to the Office of the Attorney General which remain outstanding at the time these defendants execute and sign their Consents to this Final Judgment.

8.    At the Commonwealth's request, all defendants will make all reasonable, good faith efforts to assist the Commonwealth in determining the names and addresses of consumers who are deemed by the Commonwealth to be entitled or potentially entitled to restitution under the terms of this Final Judgment. It is understood that defendants have already produced all relevant customer invoices from the subject sale, and that this paragraph does not alter the sole responsibility of the Commonwealth with respect to distributing restitution in accord with paragraph 12 below. Rather, this paragraph is intended to apply only to the extent that the Commonwealth seeks additional information with respect to particular consumers and only to the extent that defendants have such information in their possession, custody, or control.

9.    Any violations of this Injunctive Relief section or of any other provision of this Final Judgment are punishable under G.L. c. 93A, §4, and/or by civil or criminal contempt sanctions.

10.    If any material violation of paragraph 3 of this Injunctive Relief section is found against defendant PFP, or against any of its general partners, principals, directors, officers, agents, employees, servants, subsidiaries, affiliates, successors, or assigns, or against any person or entity in active concert or direct or indirect participation with PFP, then PFP and all persons and entities against whom such violation is found shall be jointly required to forfeit and pay to the Commonwealth a minimum civil penalty in the amount of fifty thousand dollars ($50,000.00)

but the Commonwealth does not waive its right to seek a larger civil penalty pursuant to the final paragraph of G.L. c. 93A, § 4. For purposes of this paragraph only, no more than one "violation" of the Injunctive Relief section will be found for any one sale that is governed by this Consent Judgment.

## II. RESTITUTION

11.    Pursuant to G.L. c. 93A, § 4, and upon its execution and signature of its Consent to this Final Judgment, defendant PFP shall pay to the Commonwealth the sum of two hundred thirty thousand dollars ($230,000.00) as restitution to be distributed to consumers who purchased merchandise during the "going out of business" sale at issue in this matter. The payment required by this paragraph shall be by means of a certified check payable to the Commonwealth of Massachusetts and delivered to the Office of the Attorney General, directed to the attention of the Consumer Protection and Antitrust Division, simultaneously with the delivery of its Consent. The Office of the Attorney General will not deposit the certified check unless and until this Final Judgment is entered.

12.    The Office of the Attorney General shall be responsible, in its sole discretion, for the distribution of restitution to consumers, including the determination of eligible consumers and of the appropriate amount of restitution to be distributed to each such consumer. After the Commonwealth has exercised due diligence to distribute as much of the total restitution as possible to all eligible consumers, any amount remaining may be transferred to the Local Consumer Aid Fund, as provided by G.L. c. 12, § 11G.

7

## III. CIVIL PENALTIES AND OTHER PAYMENTS

13.     Pursuant to G.L. c. 93A, § 4, and upon its execution and signature of its Consent to this Final Judgment, defendant PFP shall pay to the Commonwealth the sum of twenty-five thousand dollars ($25,000.00) as a civil penalty. The payment required by this paragraph shall be by means of a certified check payable to the Commonwealth of Massachusetts and delivered to the Office of the Attorney General, directed to the attention of the Consumer Protection and Antitrust Division, simultaneously with the delivery of its Consent. The Office of the Attorney General will not deposit the certified check unless and until this Final Judgment is entered.

14.     Pursuant to G.L. c. 93A, § 4, and upon its execution and signature of its Consent to this Final Judgment, defendant Slumberworld shall pay to the Commonwealth the sum of fifteen thousand dollars ($15,000.00) as the reasonable costs that the Office of the Attorney General may incur in administering the distribution of restitution to consumers. As part of this administration, and in the sole discretion of the Office of the Attorney General, all or part of this sum may be used to pay any third party that the Office of the Attorney General may duly authorize to assist in this administration. The payment required by this paragraph shall be by means of a certified check payable to the Commonwealth of Massachusetts and delivered to the Office of the Attorney General, directed to the attention of the Consumer Protection and Antitrust Division, simultaneously with the delivery of its Consent. The Office of the Attorney General will not deposit the certified check unless and until this Final Judgment is entered. In the Office of the Attorney General's sole discretion, it may use all or part of this sum to pay any third party that it duly authorizes to assist in the distribution of restitution. Any portion of this sum remaining after restitution has been distributed may be transferred to the Local Consumer

8

Aid Fund, as provided by G.L. c. 12, § 11G.

## IV. SETTLEMENT OF CLAIMS

15.    Defendants' compliance with the provisions of this Final Judgment is intended to
resolve all claims by the Commonwealth that defendants violated G.L. c. 93, § 28A and G.L. c.
93A, § 2, arising from the sale described in paragraph 1 above, as well as from the sales
described in the affidavit attached hereto as Exhibit A, and upon entry of this Final Judgment and
making all payments required by this Final Judgment, defendants and their general partners,
principals, directors, officers, agents, attorneys, employees, servants, subsidiaries, affiliates,
successors, and assigns shall be released from all such claims.  In addition, upon entry of this
Final Judgment, the Commonwealth and its agents, officers, employees, servants, attorneys, and
subdivisions shall be released from all claims of defendants arising from all such sales.

APPROVED AND ORDERED:

_____
Justice of the Superior Court

Dated: _____ , 2001.

H:\WPWIN61\WPDOCS\DEANS\JUDGMNEW.WPD

9

# EXHIBIT 2

Steven L. Martin, Esq. [CSB# 077315]
LAW OFFICES OF STEVEN L. MARTIN
100 Wilshire Boulevard, Suite 200
Santa Monica, California 90401
Telephone: (310) 260-6055
Facsimile: (310) 260-6065

Attorneys for Plaintiffs
HEN HUYNH (a.k.a. HENRY WONG)
DOMAIN FURNITURE & LIGHTING, INC.,
d.b.a. NEST FURNISHINGS

ORIGINAL

FILED
CLERK, U.S. DISTRICT COURT

MAY - 4 2005

CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT

APR 11 2005

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEN HUYNH (a.k.a. HENRY WONG), an individual; DOMAIN FURNITURE & LIGHTING, INC., a California corporation d.b.a. NEST FURNISHINGS<br><br>Plaintiffs,<br><br>vs.<br><br>ZIMMER/HESTER FURNITURE LIQUIDATIONS, INC., a California corporation; ROY HESTER, an individual; PLANNED FURNITURE PROMOTIONS, INC., a corporation; GENE ROSENBERG ASSOCIATES, a business organization, form unknown; PLANNED SALES PROMOTIONS, INC., a suspended California corporation; GENE ROSENBERG, an individual; PAUL COHEN, an individual; DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. SACV 04-671-JVS(ANx)<br><br>**FOURTH AMENDED CLAIM FOR DAMAGES FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **FRAUD**<br>3. **CIVIL CONSPIRACY**<br>4. **UNFAIR BUSINESS PRACTICES**<br>5. **CONVERSION**<br>6. **ACCOUNTING**<br>7. **UNJUST ENRICHMENT**<br>8. **IMPOSITION OF A CONSTRUCTIVE TRUST** |

DOCKETED ON CM

MAY 11 2005

BY                039

59

-1-

**FOURTH AMENDED CLAIM FOR DAMAGES**

**COMES NOW** Plaintiffs HEN HUYNH (a.k.a. HENRY WONG) and DOMAIN FURNITURE & LIGHTING, INC., d.b.a. NEST FURNISHINGS and for causes of action against Defendants, and each of them, allege as follows:

## THE PARTIES

1.     At all times material to the allegations contained in this Complaint, Plaintiff Hen Huynh, a.k.a., Henry Wong ("Mr. Wong") was and is a resident of the County of Los Angeles, State of California.

2.     At all times material to the allegations contained in this Complaint, Plaintiff Domain Furniture and Lighting, Inc., d.b.a. Nest Furnishings ("Nest") was and is a corporation organized and existing under the laws of the State of California and authorized to and doing business in the County of Orange, State of California. (Mr. Wong and Nest are referred to sometimes in this Complaint collectively as "Plaintiffs.")

3.     At all times material to the allegations contained in this Complaint, Defendant Zimmer/Hester Furniture Liquidations, Inc. ("ZHFL") was and is a corporation organized and existing under the laws of the State of Florida and authorized to and doing business in the County of Orange, State of California.

4.     Plaintiffs are informed and believe and thereon allege that at all times material to the allegations contained in this Complaint, Defendant Planned Furniture Promotions, Inc. ("PFP"), was and is a corporation doing business in the County of Orange, State of California.

5.     At all times material to the allegations contained in this Complaint, Defendant Gene Rosenberg Associates ("GRA"), a business organization, form unknown, was and is doing business in the County of Orange, State of California.

6.     At all times material to the allegations contained in this Complaint, Defendant Planned Sales Promotions, Inc. ("PSP"), was a corporation organized and existing under the laws of the State of California and whose corporate status with the

-2-

**FOURTH AMENDED CLAIM FOR DAMAGES**

Secretary of State of the State of California is "suspended." Despite its suspended status, PSP, through its alter egos as alleged in this Complaint, still conducted business in the County of Orange, State of California at all times material to the allegations contained in this Complaint.

7.    At all times material to the allegations contained in this Complaint, Defendant Roy Hester ("Hester") was and is an individual doing business in the County of Orange, State of California.

8.    At all times material to the allegations contained in this Complaint, Defendant Gene Rosenberg ("Rosenberg") was and is an individual doing business in the County of Orange, State of California.

9.    At all times material to the allegations contained in this Complaint, Defendant Paul Cohen ("Cohen") was and is an individual doing business in the County of Orange, State of California.

10.    The true names and capacities of the Defendants sued herein as DOES 1 through 100 are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that the Defendants designated in this Complaint as DOES are individuals or entities who participated in the commission of the acts or omissions complained of in this Complaint, and, therefore, are liable for those acts and omissions as individuals and as employees, agents, or representatives of the named Defendants. Plaintiffs will amend this Complaint to include their true names and/or capacities when the same are ascertained together with appropriate charging allegations.

11.    Plaintiffs are informed and believe and thereon allege that Defendants Hester and Does 1-10 own one hundred per cent (100%) of the outstanding stock of Defendant ZHFL. By virtue of their 100% ownership of the outstanding stock and their concomitant complete control exercised over ZHFL's Board of Directors, their failure to adhere to corporate formalities, as well as their direction of and/or

-3-

**FOURTH AMENDED CLAIM FOR DAMAGES**

participation in the fraudulent actions alleged below, adherence to the fiction of the separate existence of ZHFL from Hester and Does 1-10 would promote injustice, constitute an abuse of the corporate privilege and allow an inequitable result. By reason of these facts, Hester and Does 1-10 are the alter egos of ZHFL and any liability of ZHFL as alleged in this Complaint should be ascribed to said Defendants.

12.     Plaintiffs are informed and believe and thereon allege that Rosenberg, Cohen and Does 11-20 own a one hundred per cent (100%) controlling interest in GRA and one hundred per cent (100%) of the outstanding stock of both PFP and PSP. By virtue of this 100% controlling interest and their concomitant complete control exercised over the operations of GRA and the Board of Directors of both PFP and PSP, their failure to adhere to corporate formalities, as well as their direction of and/or participation in the fraudulent actions alleged below, adherence to the fiction of the separate existence of PFP, GRA and PSP from Rosenberg, Cohen and Does 11-20 would promote injustice, constitute an abuse of the corporate privilege and allow an inequitable result. By reason of these facts, Rosenberg, Cohen and Does 11-20 are the alter ego of PFP, GRA and PSP and any liability of either PFP, GRA or PSP as alleged in this Complaint should be ascribed to Rosenberg, Cohen and Does 11-20.

13.     Plaintiffs are informed and believe and thereon allege that at all times mentioned in this Complaint, each of the Defendants was the agent, employee, employer, co-conspirator and/or joint venturer of each of the remaining Defendants and in doing the things alleged in this Complaint were acting within the course and scope of such agency, employment or other relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants has pursued a common course of conduct with, acted in concert with, and aided and abetted each other Defendant to accomplish the wrongs set forth in this Complaint, and is each, in whole or in part, legally responsible for Plaintiffs' damages as set forth in this

-4-

**FOURTH AMENDED CLAIM FOR DAMAGES**

Complaint.

## THE TRANSACTION WITH PFP

14.    Mr. Wong owns and operates Nest, a furniture store located in The Marketplace in Tustin, California.  In or about April 2001, Mr. Wong decided to move his furniture store into a smaller space within The Marketplace.  Because the new space was one-half the size of his current store, Mr. Wong further decided to liquidate his stock prior to moving to the new premises.

15.    In or about April 2001, and in an effort to facilitate the liquidation of his stock, Mr. Wong contacted Les Diehl ("Diehl"), who was located in Scottsdale, Arizona, by telephone.  During their telephone conversation, Diehl represented to Mr. Wong that Diehl was the regional manager of a national furniture liquidator known as GRA and that GRA was associated with PFP.  Mr. Wong explained to Diehl that he was moving his store to a different location and wanted to liquidate his stock, which included furniture located in a nearby warehouse and trailer, prior to the move.  Diehl represented to Mr. Wong that GRA was an experienced liquidator who was qualified to conduct the liquidation and that it would do so subject to Diehl acquiring approval from the owner of his company, Rosenberg.

16.    Later during the month of April 2001, Diehl, Hester and Ed Borowsky, an agent of GRA and PFP visited Mr. Wong at his store in Tustin. Mr. Wong informed them that the sale was to be a "moving sale" and not a  "going out of business" sale and that Nest had hundreds of thousands of dollars in inventory in its showroom, nearby warehouse and trailer.

17.    Diehl Hester and Borowsky reviewed the inventory and advised Mr. Wong that they would get back to him with their proposal for conducting the liquidation sale. Before leaving the store, they gave Mr. Wong a brochure containing promotional materials from "Gene Rosenberg & Associates–Planned Furniture Promotions."  A true and correct copy of the brochure is attached to this Complaint

-5-

**FOURTH AMENDED CLAIM FOR DAMAGES**

as Exhibit A.

18.    On or about May 21, 2001, Mr. Wong received an unsigned contract from PFP's attorney, Leo Esses, that contained said Defendant's proposal for conducting the sale.  The parties to the contract were listed as PFP and Plaintiffs. Satisfied with the terms of the contract, Mr. Wong signed the contract between Plaintiffs and PFP and returned it to Mr. Esses via overnight mail.

19.    Pursuant to the principal terms of the contract, in consideration for, *inter alia*, Plaintiffs appointing said Defendant as Plaintiffs' exclusive consultant to conduct the auction and liquidation sale, and the division of the profits derived from the liquidation sale as described below, PFP agreed to do the following:

a.    Conduct an auction and liquidation sale of Nest's entire inventory, including that contained in the nearby warehouse and trailer.  The contract defined "entire inventory" to include, among other things, any clearance, distressed, damaged, unsaleable and/or used merchandise ("Distressed Merchandise").

b.    Make guaranteed payments (the "Guaranteed Amount") to Plaintiffs for furniture sold in the following amounts:

(1)    One hundred per cent (100%) of cost plus freight charges for merchandise sold falling within the designation of Category A (first quality matched sets of inventory);

(2)    Seventy-five per cent (75%) of cost plus freight charges for merchandise sold falling within the designation of Category B (less than optimal and pristine, or unmatched inventory);

(3)    Fifty per cent (50%) of cost plus freight charges for merchandise sold falling within the designation of Category C (Distressed Merchandise);

c.    Pay fifty per cent (50%) of the Guaranteed Amount to Plaintiffs prior to the commencement of the liquidation sale, with the remaining 50% of the Guaranteed Amount to be paid to Plaintiffs within forty-five (45) days of the

-6-

**FOURTH AMENDED CLAIM FOR DAMAGES**

commencement of the liquidation sale;

d.    Make payments to Plaintiffs for accessories sold at fifty per cent (50%) of their sales price on a weekly basis;

e.    Pay all expenses in connection with the liquidation sale including, without limitation, rent and related expenses, property taxes, insurance costs, licensing and permit fees, advertising costs, trash removal, utilities and lodging and compensation for PFP's sales personnel.

f.    At the conclusion of the auction and liquidation sale, PFP was to calculate the profits of the sale and divide such profits with Plaintiffs on a 50-50 basis.

20.    Mr. Wong never received a fully executed copy of the contract that he entered into with PFP. Rather, on or about June 5, 2001, Diehl and another agent of GRA and PFP, Michael Kash, met with Mr. Wong at the store in Tustin. Diehl informed Mr. Wong that Michael Kash ("Kash") would ultimately be responsible for conducting the sale.

21.    Thereafter, Defendants GRA and PFP, in concert with the other Defendants named herein, by and through their agents, employees, co-conspirators and joint venturers began a series of misrepresentations directed at Mr. Wong as part of a preconceived design, plan and scheme calculated to defraud Plaintiffs out of their money and merchandise, all in conscious disregard of Plaintiffs' rights and all to satisfy Defendants' desire for economic gain at whatever cost. These misrepresentations were made by Defendants with the specific intent to induce Plaintiffs into contracting with Defendants and in furtherance of Defendants' preconceived design, plan, scheme and conspiracy to defraud Plaintiffs.

22.    During their meeting at the Nest facility in Tustin on June 5, 2001, Diehl and Kash, in furtherance of Defendants' preconceived design, plan, scheme and conspiracy and in conjunction with and in reference to the contents of the brochure

-7-

**FOURTH AMENDED CLAIM FOR DAMAGES**

embodied in Exhibit A, made the following representations to Mr. Wong:

a.    That Mr. Wong's merchandise would be liquidated pursuant to a duly advertised "moving sale" and that it was clearly understood that this was not a "going out of business sale."

b.    That Mr. Wong's entire store, at Defendants' expense, would be closed for five to seven days during which time Defendants would conduct an inventory of the merchandise in Plaintiffs' store;

c.    That following the liquidation sale, the store would be left broom clean;

d.    That the professional and experienced sales staff who would be conducting the liquidation sale would yield the highest possible return;

e.    That the professional and experienced sales staff who would be conducting the liquidation sale would preserve Plaintiffs' good name and reputation;

f.    That Mr. Wong would be allowed to review and approve all advertising banners and signs before they were used by Defendants in connection with the liquidation sale;

g.    That in conducting the sale, Defendants would abide by all restrictions on advertising imposed by Plaintiffs' lease agreement and applicable local law;

h.    That Plaintiffs would not lose a dime by allowing Defendants to liquidate Plaintiffs' inventory; and

i.    That all of Plaintiffs' merchandise would be disposed of by virtue of the liquidation sale.

23.    These representations were made by Diehl and Michael Kash with the knowledge, permission and consent of each of the remaining Defendants, who, in authorizing their employees, agents and co-conspirators, including Diehl and Kash, to make the representations alleged in this Complaint, ratified their conduct as is hereinafter alleged.

24.    Defendants' representations notwithstanding, two days later, on or about

-8-

**FOURTH AMENDED CLAIM FOR DAMAGES**

June 7, 2001, Kash came to the Tustin store along with a crew to begin taking inventory of the merchandise. This action taken by Defendants even though Defendants (1) had not returned to Mr. Wong the fully executed contract with PFP, and (2) did not, at their own expense or otherwise, close the store for the purpose of taking the inventory as previously represented.

### THE TRANSACTION WITH ZHFL

25.    After having begun work at Plaintiffs' store under the ostensible auspices of PFP, Mr. Esses, on or about June 21, 2001, provided Mr. Wong with a second contract, identical to the first except that it designated the furniture liquidator as ZHFL. Even though Mr. Wong had never received a fully executed contract with PFP, Mr. Wong signed the contract with ZHFL because he was lead to believe that the entities, ZHFL and PFP, were indeed one in the same by virtue of the fact that Diehl, who initially introduced himself to Mr. Wong as PFP's regional manager, signed the ZHFL contract on behalf of ZHFL in his capacity as ZHFL's regional manager, that the terms of the contract were the same as the PFP contract, that it was sent by Mr. Esses, PFP's attorney, and that the same personnel, including Mr. Kash, continued to work at the store. A true and correct copy of said contract is attached to this Complaint as Exhibit B.

26.    Pursuant to the principal terms of the contract, in consideration for, *inter alia*, Plaintiffs appointing said Defendant as Plaintiffs' exclusive consultant to conduct the auction and liquidation sale, and the division of the profits derived from the liquidation sale as described below, ZHFL agreed to do the following:

a.    Conduct an auction and liquidation sale of Nest's entire inventory, including that contained in the nearby warehouse and trailer. The ZHFL contract defined "entire inventory" to include, among other things, any clearance, distressed, damaged, unsaleable and/or used merchandise ("Distressed Merchandise").

b.    Make guaranteed payments (the "Guaranteed Amount") to Plaintiffs for

**FOURTH AMENDED CLAIM FOR DAMAGES**

furniture sold in the following amounts:

(1)    One hundred per cent (100%) of cost plus freight charges for merchandise sold falling within the designation of Category A (first quality matched sets of inventory);

(2)    Seventy-five per cent (75%) of cost plus freight charges for merchandise sold falling within the designation of Category B (less than optimal and pristine, or unmatched inventory);

(3)    Fifty per cent (50%) of cost plus freight charges for merchandise sold falling within the designation of Category C (Distressed Merchandise);

c.    Pay fifty per cent (50%) of the Guaranteed Amount to Plaintiffs prior to the commencement of the liquidation sale, with the remaining 50% of the Guaranteed Amount to be paid to Plaintiffs within forty-five (45) days of the commencement of the liquidation sale;

d.    Make payments to Plaintiffs for accessories sold at fifty per cent (50%) of their sales price on a weekly basis;

e.    Pay all expenses in connection with the liquidation sale including, without limitation, rent and related expenses, property taxes, insurance costs, licensing and permit fees, advertising costs, trash removal, utilities and lodging and compensation for ZHFL's sales personnel.

f.    At the conclusion of the auction and liquidation sale, ZHFL was to calculate the profits of the sale and divide such profits with Plaintiffs on a 50-50 basis.

## THE LIQUIDATION SALE

27.    Defendants, and each of them, in furtherance of their preconceived design, plan scheme and conspiracy, began taking inventory of Plaintiffs' merchandise in preparation for the liquidation sale on or about June 7, 2001. Despite their promise to close Plaintiffs' store during the inventory taking process,

**FOURTH AMENDED CLAIM FOR DAMAGES**

Defendants, and each of them, failed and refused to do so. Because Plaintiffs were still open for business and Plaintiffs customers continued to come into the store while Plaintiffs' merchandise was being inventoried by Defendants, and each of them, Plaintiffs' customers began to raise questions as to whether or not Nest was going out of business.

28. As part of the inventory process, Defendants, and each of them, requested Mr. Wong to deliver his trailer which contained merchandise subject to the contracts to a warehouse owned or leased by Defendants. Mr. Wong delivered his trailer to Defendants' warehouse as directed on or about June 22, 2001. Rather than fulfill their obligations under the contract pertaining to the inventory and sale of Distressed Merchandise, Defendants, and each of them, complained that some of the merchandise in the trailer was too old and refused to include such merchandise in the liquidation sale. In some instances, Defendants, and each of them, either damaged Plaintiffs' merchandise or simply threw Plaintiffs' merchandise away, thereby forever depriving Plaintiffs of its use.

29. During the inventory of Plaintiffs' merchandise, Defendants, and each of them, in contravention of their prior representations and promises, requested Plaintiffs to, among other things, purchase workers' compensation insurance for Defendants' employees and assist Defendants in certain administrative aspects of preparing for the liquidation sale such as pricing and tagging of accessories.

30. After Defendants completed the inventory, a process that took almost three weeks during which time Mr. Wong was still attempting to conduct business at the store, the liquidation sale commenced on or about June 27, 2001. However, the liquidation sale was not conducted in conformance with the terms of the contracts in, among others, the following material respects:

a. The initial payment of one-half of the Guaranteed Amount that was supposed to be paid to Plaintiffs by Defendants *prior* to the commencement of the

-11-

**FOURTH AMENDED CLAIM FOR DAMAGES**

liquidation sale, w  .1ot paid until approximately fo.. weeks *after* the liquidation sale commenced;

b.    Defendants, without Plaintiffs' permission or consent, unilaterally re-designated merchandise that fell within Category A as Category B or Category C merchandise;

c.    Defendants, who should have been conducting the liquidation sale exclusively for Plaintiffs' benefit, sold more of their *own* merchandise during the liquidation sale conducted in Nest's showroom than they sold of Plaintiffs' merchandise;

d.    Defendants specifically advertised the sale of and actually made sales during the liquidation sale in Nest's showroom of oriental rugs, a product that Plaintiffs never sold at the store;

e.    Defendants violated Plaintiffs' lease agreement by posting prohibited signs and banners advertising the liquidation sale on the premises and refused to take down such signage after being informed that the landlord disapproved of it;

f.    Defendants advertised Plaintiffs' sale as a "going out of business" sale even though they knew that Plaintiffs were conducting a "moving sale" and were simply moving a few doors away within The Marketplace;

g.    Defendants, by selling its own merchandise during the liquidation sale, violated state laws prohibiting the introduction of new merchandise at liquidation sales, specifically California Code of Regulations § 1312.

h.    Defendants' advertisements for the liquidation sale violated local laws regulating the usage of signs.  Because of Defendants' continued refusal to comply with officials of the City of Tustin regarding such signage, a misdemeanor complaint was filed against Plaintiffs by the City.

///

///

-12-

**FOURTH AMENDED CLAIM FOR DAMAGES**

# FIRST CAUSE OF ACTION FOR
# BREACH OF CONTRACT

(Against Defendants PFP and Does 21-30)

31.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 30 of this Complaint as if fully set forth.

32.    On or about May 21, 2001, Plaintiffs entered into an agreement (the "PFP Contract") with Defendants PFP and Does 21 through 30, inclusive. As previously alleged in this Complaint, pursuant to the PFP Contract, said Defendants, and each of them, *inter alia*, agreed to:

a.    Conduct an auction and liquidation sale of Nest's entire inventory, including that contained in the nearby warehouse and trailer. The PFP contract defined "entire inventory" to include, among other things, any clearance, distressed, damaged, unsaleable and/or used merchandise ("Distressed Merchandise").

b.    Make guaranteed payments (the "Guaranteed Amount") to Plaintiffs for furniture sold in the following amounts:

(1)    One hundred per cent (100%) of cost plus freight charges for merchandise sold falling within the designation of Category A (first quality matched sets of inventory);

(2)    Seventy-five per cent (75%) of cost plus freight charges for merchandise sold falling within the designation of Category B (less than optimal and pristine, or unmatched inventory);

(3)    Fifty per cent (50%) of cost plus freight charges for merchandise sold falling within the designation of Category C (Distressed Merchandise);

c.    Pay fifty per cent (50%) of the Guaranteed Amount to Plaintiffs prior to the commencement of the liquidation sale, with the remaining 50% of the Guaranteed Amount to be paid to Plaintiffs within forty-five (45) days of the commencement of the liquidation sale;

-13-

d.    Make payments to Plaintiffs for accessories sold at fifty per cent (50%) of their sales price on a weekly basis;

e.    Pay all expenses in connection with the liquidation sale including, without limitation, rent and related expenses, property taxes, insurance costs, licensing and permit fees, advertising costs, trash removal, utilities and lodging and compensation for Defendants' sales personnel.

f.    Divide the profits from the liquidation sale with Plaintiffs on a 50-50 basis.

33.    Although Plaintiffs never received any documents evidencing PFP's execution of the contract signed by Mr. Wong, Defendant's and, each of them, partially, though negligently or fraudulently, performed the obligations on their part to be performed, as alleged hereinabove.

34.    Plaintiffs have performed all conditions, covenants and promises required to be performed on their part in accordance with the terms and conditions of the PFP Contract including, without limitation, appointing said Defendants, and each of them, as Plaintiffs' exclusive consultant to conduct the auction and liquidation sale, except such conditions, covenants and promises the performance of which have been excused by reason of Defendants' acts and omissions.

35.    Said Defendants, and each of them, materially breached the PFP Contract by, among other things:

a.    Failing to pay the Guaranteed Amount to Plaintiffs and failing to divide the profits with Plaintiffs on a 50-50 basis despite Plaintiffs' repeated demands for such payments:

b.    Unilaterally re-designating Plaintiffs' merchandise that fell within Category A as Category B or Category C merchandise and thereafter selling it;

c.    Selling Defendants' own merchandise during Plaintiffs' liquidation sale. In this regard, Defendants, who should have been conducting the liquidation sale

-14-

**FOURTH AMENDED CLAIM FOR DAMAGES**

exclusively for Plaintiffs' benefit, sold more of their *own* merchandise during the liquidation sale conducted in Nest's showroom than they sold of Plaintiffs' merchandise;

     d.    Advertising the sale of and actually making sales during the liquidation sale in Nest's showroom of oriental rugs, a product that Plaintiffs never sold at the store;

     e.    Violating Plaintiffs' lease agreement by posting prohibited signs and banners advertising the liquidation sale on the premises and refusing to take down such signage after being informed of the landlord's disapproval;

     f.    Advertising Plaintiffs' sale as a "going out of business" sale even though they knew that Plaintiffs were conducting a "moving sale" and were simply moving a few doors away within The Marketplace;

     g.    Selling its own merchandise during the liquidation sale in violation of state laws prohibiting the introduction of new merchandise at liquidation sales;

     h.    Advertising the liquidation sale in violation of local laws regulating the usage of signs.

     36.    As a direct and proximate cause of the acts and omissions of Defendants, and each of them, Plaintiffs have suffered, and continue to suffer damages, including, general, consequential, incidental, and special damages, all as yet not ascertained but in an amount according to proof at trial which exceeds the jurisdictional minimum of this court.

## SECOND CAUSE OF ACTION FOR
## BREACH OF CONTRACT

(Against Defendants ZHFL and Does 31-40)

     37.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 36 of this Complaint as if fully set forth.

     38.    On or about June 21, 2001, Plaintiffs entered into an agreement (the

-15-

**FOURTH AMENDED CLAIM FOR DAMAGES**

"ZHFL Contract") with Defendants ZHFL and Does 31through 40, inclusive. As previously alleged in this Complaint, pursuant to the ZHFL Contract, said Defendants, and each of them, *inter alia*, agreed to:

    a.    Conduct an auction and liquidation sale of Nest's entire inventory, including that contained in the nearby warehouse and trailer. The ZHFL contract defined "entire inventory" to include, among other things, any clearance, distressed, damaged, unsaleable and/or used merchandise ("Distressed Merchandise").

    b.    Make guaranteed payments (the "Guaranteed Amount") to Plaintiffs for furniture sold in the following amounts:

    (1)    One hundred per cent (100%) of cost plus freight charges for merchandise sold falling within the designation of Category A (first quality matched sets of inventory);

    (2)    Seventy-five per cent (75%) of cost plus freight charges for merchandise sold falling within the designation of Category B (less than optimal and pristine, or unmatched inventory);

    (3)    Fifty per cent (50%) of cost plus freight charges for merchandise sold falling within the designation of Category C (Distressed Merchandise);

    c.    Pay fifty per cent (50%) of the Guaranteed Amount to Plaintiffs prior to the commencement of the liquidation sale, with the remaining 50% of the Guaranteed Amount to be paid to Plaintiffs within forty-five (45) days of the commencement of the liquidation sale;

    d.    Make payments to Plaintiffs for accessories sold at fifty per cent (50%) of their sales price on a weekly basis;

    e.    Pay all expenses in connection with the liquidation sale including, without limitation, rent and related expenses, property taxes, insurance costs, licensing and permit fees, advertising costs, trash removal, utilities and lodging and compensation for Defendants' sales personnel.

-16-

**FOURTH AMENDED CLAIM FOR DAMAGES**

f. Divide the profits from the liquidation sale with Plaintiffs on a 50-50 basis.

39. Plaintiffs have performed all conditions, covenants and promises required to be performed on their part in accordance with the terms and conditions of the ZHFL Contract including, without limitation, appointing said Defendants, and each of them, as Plaintiffs' exclusive consultant to conduct the auction and liquidation sale, except such conditions, covenants and promises the performance of which have been excused by reason of Defendants' acts and omissions.

40. Said Defendants, and each of them, materially breached the ZHFL Contract by, among other things:

a. Failing to pay the Guaranteed Amount to Plaintiffs and failing to divide the profits with Plaintiffs on a 50-50 basis despite Plaintiffs' repeated demands for such payments:

b. Unilaterally re-designating Plaintiffs' merchandise that fell within Category A as Category B or Category C merchandise and thereafter selling it;

c. Selling Defendants' own merchandise during Plaintiffs' liquidation sale. In this regard, Defendants, who should have been conducting the liquidation sale exclusively for Plaintiffs' benefit, sold more of their _own_ merchandise during the liquidation sale conducted in Nest's showroom than they sold of Plaintiffs' merchandise;

d. Advertising the sale of and actually making sales during the liquidation sale in Nest's showroom of oriental rugs, a product that Plaintiffs never sold at the store;

e. Violating Plaintiffs' lease agreement by posting prohibited signs and banners advertising the liquidation sale on the premises and refusing to take down such signage after being informed of the landlord's disapproval;

f. Advertising Plaintiffs' sale as a "going out of business" sale even

**FOURTH AMENDED CLAIM FOR DAMAGES**

though they knew that Plaintiffs were conducting a "moving sale" and were simply moving a few doors away within The Marketplace;

g.    Selling its own merchandise during the liquidation sale in violation of state laws prohibiting the introduction of new merchandise at liquidation sales;

h.    Advertising the liquidation sale in violation of local laws regulating the usage of signs.

41.    As a direct and proximate cause of the acts and omissions of said Defendants, and each of them, Plaintiffs have suffered, and continue to suffer damages, including, general, consequential, incidental, and special damages, all as yet not ascertained but in an amount according to proof at trial which exceeds the jurisdictional minimum of this court.

## THIRD CAUSE OF ACTION FOR

## FRAUD

### (Against All Defendants)

42.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully set forth.

43.    Plaintiffs are informed and believe and thereon allege that at all times material to the allegations contained in this Complaint, Defendants, and each of them, knew that one or more of the Defendants had been permanently enjoined from conducting certain liquidation sales in the State of California by order of the Superior Court of the State of California.  See In re White Crane Trading Co., Inc. (1994) 170 B.R. 694.  Plaintiffs are further informed and believe and thereon allege that the plenary of unlawful conduct engaged in by Defendants, and each of them, that gave rise to the issuance of the permanent injunction included, without limitation, Defendants introducing their own new merchandise/inventory during the course of conducting liquidation sales for the supposed benefit of Defendants' clients.  By so doing, Defendants, and each of them, would sell more of its own merchandise during

-18-

**FOURTH AMENDED CLAIM FOR DAMAGES**

the liquidation sales than that of its clients. Defendants were therefore using the supposed liquidation sale of its clients in a deceptive manner and as a mere subterfuge for Defendants to offload its own merchandise on an unsuspecting public, all in an effort to satisfy its own greed and avarice.

44.    When Plaintiffs contacted Defendants in or about April 2001, to inquire as to whether Defendants could facilitate the moving sale contemplated by Plaintiffs, Defendants, and each of them, conspired to fraudulently induce Plaintiffs into entering into a contractual relationship with Defendants, and each of them, so that Defendants could use a liquidation sale for the supposed benefit of Plaintiffs as a front to market Defendants' own merchandise thereby gleaning money to which they were not entitled to place in their own coffers. During the discussions held between Defendants, and each of them, and Plaintiffs as alleged below, Defendants, and each of them, concealed and failed to disclose to Plaintiffs the fact of the permanent injunction and the practices in which Defendants engaged that gave rise to the permanent injunction.

45.    On or about June 5, 2001, Diehl and Kash, in furtherance of Defendants' preconceived design, plan, scheme and conspiracy and in conjunction with and in reference to the contents of the brochure embodied in Exhibit A, made certain representations to Plaintiffs while in Plaintiffs' store located in Tustin. These representations were made by Diehl and Kash with the knowledge, permission and consent of each of the remaining Defendants, who, in authorizing their employees, agents and co-conspirators, including Diehl and Kash, to make the representations alleged in this Complaint, ratified their conduct as is hereinafter alleged. In addition to concealment of the existence of the permanent injunction and its predicate facts, the representations made by Diehl and Kash, on behalf of Defendants, and each of them, included, without limitation, the following:

a.    That Mr. Wong's merchandise would be liquidated pursuant to a duly

-19-

**FOURTH AMENDED CLAIM FOR DAMAGES**

advertised "moving sale" and that it was clearly understood that this was not a "going out of business" sale.

b.    That Mr. Wong's entire store, at Defendants' expense, would be closed for five to seven days during which time Defendants would conduct an inventory of the merchandise in Plaintiffs' store;

c.    That following the liquidation sale, the store would be left broom clean;

d.    That the professional and experienced sales staff who would be conducting the liquidation sale would yield the highest possible return;

e.    That the professional and experienced sales staff who would be conducting the liquidation sale would preserve Plaintiffs' good name and reputation;

f.    That Mr. Wong would be allowed to review and approve all advertising banners and signs before they were used by Defendants in connection with the liquidation sale;

g.    That in conducting the sale, Defendants would abide by all restrictions on advertising imposed by Plaintiffs' lease agreement and applicable local law;

h.    That Plaintiffs would not lose a dime by allowing Defendants to liquidate Plaintiffs' inventory; and

i.    That all of Plaintiffs' merchandise would be disposed of by virtue of the liquidation sale.

46.    At the time these representations were made by Defendants, and each of them, Defendants, knew such representations were false. These affirmative representations were made by Defendants, and each of them, with the specific intention to defraud Plaintiffs and to induce Plaintiffs into entering into the PFP and ZHFL contracts.  Moreover, Defendants, and each of them, intentionally concealed and suppressed the truth and existence of the facts giving rise to the permanent injunction with the specific intent to defraud Plaintiffs and to induce Plaintiffs into entering into the PFP and ZHFL contracts so that Defendants, and each of them,

-20-

**FOURTH AMENDED CLAIM FOR DAMAGES**

could acquire the profits from the liquidation sale to Plaintiffs' damage.

47.    Plaintiffs were unaware of the falsity of the representations and did not know that material facts and information were being withheld.  Plaintiffs reasonably and justifiably relied on the representations and this concealment or failure to disclose by entering into the PFP and ZHFL contracts.  Had Plaintiffs been aware of the facts concealed by Defendants, and each of them, or known the truth of the representations made by Defendants, and each of them, Plaintiffs would not have changed their position to their own damage by entering into the PFP and ZHFL contracts.

48.    As a direct and proximate result of the acts and omissions of Defendants, and each of them, Plaintiffs have suffered damages as alleged in this Complaint in an amount in excess of the jurisdictional minimum of this court according to proof at trial.

49.    The acts and omissions of Defendants, and each of them, were extreme and outrageous and Defendants, and each of them, are guilty of malice, oppression and fraud in that Defendants' conduct was despicable, subjected Plaintiffs to cruel and unjust hardship and was carried out with a willful and conscious disregard for Plaintiffs' rights for the sole purpose and intent of causing Plaintiffs injury and depriving Plaintiffs of his money.  Plaintiffs are therefore entitled to recover an award of punitive damages for the sake of example and by way of punishing Defendants, and each of them.

## FOURTH CAUSE OF ACTION FOR

## CONSPIRACY

### (Against All Defendants)

50.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 49 of this Complaint as if fully set forth.

51.    As alleged in this Complaint, Defendants consciously planned and

-21-

conspired with each other to defraud Plaintiffs and to induce Plaintiffs into entering into the PFP and ZHFL contracts. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, reaped a pecuniary and financial benefit by conspiring with each other in the wrongful conduct and breaches of the contractual duties alleged in this Complaint. Accordingly, Defendants, and each of them, are jointly and severally liable or the fraudulent and tortious conduct and breaches of contractual duties alleged in this Complaint.

52.    Defendants, and each of them, are liable for civil conspiracy based on the formation and operation of the conspiracy and damage resulting to Plaintiffs from Defendants' concealment of material facts, non-disclosures and acts committed in furtherance of the preconceived common design, plan, scheme and conspiracy. Applied Equipment Corp. V. Litton Saudi Arabia Ltd. (1994) 7 Cal.4th 503, 512.

53.    As a direct and proximate result of the acts and omissions of Defendants, and each of them, Plaintiffs have suffered damages as alleged in this Complaint in an amount in excess of the jurisdictional minimum of this court according to proof at trial.

54.    The acts and omissions of Defendants, and each of them, were extreme and outrageous and Defendants, and each of them, are guilty of malice, oppression and fraud in that Defendants' conduct was despicable, subjected Plaintiffs to cruel and unjust hardship and was carried out with a willful and conscious disregard for Plaintiffs' rights for the sole purpose and intent of causing Plaintiffs injury and depriving Plaintiffs of his money.  Plaintiffs are therefore entitled to recover an award of punitive damages for the sake of example and by way of punishing Defendants, and each of them.

///

///

///

**FOURTH AMENDED CLAIM FOR DAMAGES**

# FIFTH CAUSE OF ACTION FOR

# UNFAIR BUSINESS PRACTICES

### (Violation of Business & Professions Code § 17200)

(Against All Defendants)

55.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 54 of this Complaint as if fully set forth.

56.    Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, have engaged in and continue to engage in acts of unfair competition as defined in Business & Professions Code § 17200 by, among other things, the following:

a.    Unlawfully conducting business in violation of a permanent injunction prohibiting Defendants, and each of them, from doing so;

b.    Entering into contractual arrangements with owners of furniture stores and using such contractual arrangements as a subterfuge for the unlawful purpose of introducing Defendants' own new merchandise/inventory into the liquidation sale ostensibly being held for the benefit of the owners of the furniture stores in violation of the laws of the State of California;

c.    Fraudulently inducing owners of furniture stores into contracting with Defendants by misrepresenting the nature of the services to be provided by Defendants, all as a means of providing a stage upon which Defendants can unlawfully introduce their own merchandise for sale to an unsuspecting and misinformed public;

d.    Conducting liquidation sales in violation of local ordinances and laws regarding advertising as a means of increasing sales of Defendants' own merchandise/inventory during the advertised liquidation sales

57.    By committing the acts and omissions complained of above, Defendants, and each of them, have committed unfair business practices in violation

-23-

**FOURTH AMENDED CLAIM FOR DAMAGES**

of Business & Professions Code § 17200.

## SIXTH CAUSE OF ACTION FOR

## CONVERSION

### (Against All Defendants)

58.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 57 of this Complaint as if fully set forth.

59.    As previously alleged in this Complaint, Defendants, and each of them, wrongfully and with specific intent took possession of and destroyed certain articles of merchandise that belonged to Plaintiffs both in the course of preparing for and in the wake of the liquidation sale.

60.    Plaintiffs owned and had a legal right of possession to the articles of merchandise confiscated and destroyed by Defendants, and each of them.

61.    Despite Plaintiffs' demands, Defendants, and each of them, have refused to either return to Plaintiffs the articles of merchandise confiscated by Defendants, or to remit to Plaintiffs the value of the articles of Plaintiffs' merchandise destroyed by Defendants, and each of them.

62.    As a direct and proximate result of the acts and omissions of Defendants, and each of them, Plaintiffs have suffered damages as alleged in this Complaint in an amount in excess of the jurisdictional minimum of this court according to proof at trial.

63.    The acts and omissions of Defendants, and each of them, were extreme and outrageous and Defendants, and each of them, are guilty of malice, oppression and fraud in that Defendants' conduct was despicable, subjected Plaintiffs to cruel and unjust hardship and was carried out with a willful and conscious disregard for Plaintiffs' rights for the sole purpose and intent of causing Plaintiffs injury and depriving Plaintiffs of his money.   Plaintiffs are therefore entitled to recover an award of punitive damages for the sake of example and by way of punishing

**FOURTH AMENDED CLAIM FOR DAMAGES**

Defendants, and each of them.

## SEVENTH CAUSE OF ACTION FOR
## ACCOUNTING

(Against Defendants PFP, ZHFL and Does 21-40)

64.    Plaintiffs reallege each and every allegation contained in paragraphs 1 through 63 of this Complaint as if fully set forth.

65.    Under the terms of their respective contracts, Defendants PFP and Does 21 through 30, and each of them, pursuant to the PFP contract, and Defendants ZHFL and Does 31 through 40, and each of them, pursuant to the ZHFL contract, were required to furnish Plaintiffs with a final accounting of the liquidation sale. Because they conducted the liquidation sale, said Defendants, and each of them, are in possession of the relevant documents, records, invoices, assets and accounts with respect to the liquidation sale.

66.    The true amounts due to Plaintiffs under the PFP and/or ZHFL contracts are unknown to Plaintiffs. Such amounts, especially given the fact that said Defendants, and each of them, sold more of their own merchandise during the liquidation sale than that of Plaintiffs, cannot be ascertained by Plaintiffs without an accounting of the revenue generated by the liquidation sale, less all costs, expenses and other reimbursement due Defendants under the terms of the PFP and ZHFL contracts.

67.    Plaintiffs are entitled to certain payments and profits under the terms of the PFP and ZHFL contracts to be calculated from the total amount of revenue generated by reason of the liquidation sale.

68.    An accounting is therefore necessary. Without an accounting, Defendants' perfidy will be rewarded in an almost unbridled fashion since, under the terms of the PFP and ZHFL contracts, Defendants, and each of them, are solely responsible for the calculation and distribution of profits.

-25-

**FOURTH AMENDED CLAIM FOR DAMAGES**

69.     Plaintiffs have demanded an accounting but said Defendants, and each of them, have failed and refused and continue to fail and refuse to provide an accurate and complete accounting or settlement of accounts for the proper payments and division of profits due Plaintiffs under the PFP and ZHFL contracts.

## EIGHTH CAUSE OF ACTION FOR

## UNJUST ENRICHMENT

(Against All Defendants)

70.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 69 of this Complaint as if fully set forth.

71.     Defendants, and each of them, have been unjustly enriched by reason of their wrongful, fraudulent and illegal acts and omissions as alleged in this Complaint. Equity requires that defendants, and each of them, not be allowed to profit and reap a windfall as a result of their conduct.

72.     As a direct and proximate result of the acts and omissions of Defendants, and each of them, Plaintiffs have suffered damages as alleged in this Complaint in an amount in excess of the jurisdictional minimum of this court according to proof at trial.

## NINTH CAUSE OF ACTION FOR

## IMPOSITION OF A CONSTRUCTIVE TRUST

(Against All Defendants)

73.     Plaintiffs reallege each and every allegation contained in paragraphs 1 through 72 of this Complaint as if fully set forth.

74.     Defendants, and each of them, hold money and other property which rightfully and legally belongs to Plaintiffs. Plaintiffs are therefore entitled to the imposition of a constructive trust upon all such money and other property and any and all interests and profits derived from such property in whatever form such interests and profits are now embodied.

**FOURTH AMENDED CLAIM FOR DAMAGES**

75.    Plaintiffs therefore request the court to impose a constructive trust or equitable upon all such money and other property and any and all interests and profits derived from such property in whatever form such interests and profits are now embodied as against Defendants, and each of them.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For compensatory damages according to proof at trial;

2.    For consequential damages according to proof at trial;

3.    For punitive damages according to proof at trial;

4.    For an injunction restraining and prohibiting Defendants, and each of them, from, among other things:

a.    Unlawfully conducting business in violation of a permanent injunction prohibiting Defendants, and each of them, from doing so;

b.    Entering into contractual arrangements with owners of furniture stores and using such contractual arrangements as a subterfuge for the unlawful purpose of introducing Defendants' own new merchandise/inventory into the liquidation sale ostensibly being held for the benefit of the owners of the furniture stores in violation of the laws of the State of California;

c.    Fraudulently inducing owners of furniture stores into contracting with Defendants by misrepresenting the nature of the services to be provided by Defendants, all as a means of providing a stage upon which Defendants can unlawfully introduce their own merchandise for sale to an unsuspecting and misinformed public; and

///

///

///

-27-

**FOURTH AMENDED CLAIM FOR DAMAGES**

1    d.    Conducting liquidation sales in violation of local ordinances and laws
2 regarding advertising as a means of increasing sales of Defendants' own
3 merchandise/inventory during the advertised liquidation sales

4    5.    For the imposition of a constructive trust or equitable lien;

5    6.    For reasonable attorney's fees;

6    7.    For costs of suit incurred in this action;

7    8.    For such other and further relief deemed just and proper by this court.

8

9

10    DATE: April 11, 2005

11

12    **LAW OFFICES OF STEVEN L. MARTIN**

13

14

15    By:_____
16          Steven L. Martin, Esq.
             Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

**FOURTH AMENDED CLAIM FOR DAMAGES**

# PROOF OF SERVICE
## 1013a (3) CCP Revised 1/1/88

STATE OF CALIFORNIA )

                          )   .ss

COUNTY OF LOS ANGELES )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 100 Wilshire Boulevard, Suite 200, Santa Monica, California 90401.

On **April 11, 2005,** I served the foregoing document described as **FOURTH AMENDED CLAIM FOR DAMAGES** on the interested parties in this action as listed below:

The Kennedy Law Firm
1230 Columbia St., Ste. 600
San Diego, CA 92101

Attn: Stuart D. Hirsch, Esq.

Cohen Tauber Spievack & Wagner
420 Lexington Avenue
New York, NY 10170

Attn: Leo L. Esses, Esq.

\_\_\_   **VIA FACSIMILE**

\_\_\_   **VIA AIRBORNE EXPRESS**

**XX**   **VIA U.S. GROUND MAIL**
I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Santa Monica, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

\_\_\_   **BY PERSONAL SERVICE**
Messenger Service delivered such envelope by hand to the office of the addressee.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on **April 11, 2005,** Santa Monica, California.

Gloria Yung

-29-

**FOURTH AMENDED CLAIM FOR DAMAGES**