TAB 5

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

Page 1

**H**Caiafa v. Sea Containers Ltd.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Anthony CAIAFA, on behalf of himself and All
others similarly situated, et al., Plaintiffs,
v.
SEA CONTAINERS LTD., James B. Sherwood,
Daniel J. O'Sullivan and Ian C. Durant, et al.,
Defendants.
Nos. 06 Civ. 2565(RMB), 06 Civ. 2670(RMB), 06
Civ. 2744(RMB), 06 Civ. 2776(RMB), 06 Civ.
2909(RMB), 06 Civ. 3099(RMB) 06 Civ.
3563(RMB), 06 Civ. 5655(RMB).

Sept. 25, 2007.

**Background:** Shareholders brought putative
class action against Bermuda corporation and some
of its officers, alleging violations of federal securities
laws. Officers moved to dismiss complaint.

**Holdings:** The District Court, Richard M.
Berman, J., held that:

(1) dismissal without prejudice, for failure to
establish standing, was warranted as to claim alleging
violation of statute governing false registration
statements;

(2) complaint did not satisfy fraud pleading rule
in alleging false registration statements;

(3) complaint failed to allege with sufficient
particularity how corporation's financial statements
reflecting valuations of corporation's ferry and
container assets were false or misleading;

(4) complaint failed to adequately allege that
corporation's officers made fraudulent or misleading
statements with respect to corporation's joint venture;
and

(5) allegations of recklessness did not raise
requisite strong inference of fraudulent intent.

Motion to dismiss granted without prejudice.

**[1] Federal Civil Procedure 170A ⬦103.2**

170A Federal Civil Procedure
 170AII Parties
  170AII(A) In General
   170Ak103.1 Standing
    170Ak103.2 k. In General; Injury or
Interest. Most Cited Cases
Burden to establish Article III standing rests on the
party asserting its existence. U.S.C.A. Const. Art. 3,
§ 2, cl. 1.

**[2] Federal Civil Procedure 170A ⬦103.2**

170A Federal Civil Procedure
 170AII Parties
  170AII(A) In General
   170Ak103.1 Standing
    170Ak103.2 k. In General; Injury or
Interest. Most Cited Cases
At the pleading stage, plaintiff bears the burden of
clearly alleging facts demonstrating that it is a proper
party to invoke judicial resolution of the dispute.

**[3] Federal Civil Procedure 170A ⬦1772**

170A Federal Civil Procedure
 170AXI Dismissal
  170AXI(B) Involuntary Dismissal
   170AXI(B)3 Pleading, Defects In, in
General
    170Ak1772 k. Insufficiency in General.
Most Cited Cases
To survive motion to dismiss for failure to state
claim, plaintiff must provide the grounds upon which
his claim rests through factual allegations sufficient
to raise a right to relief above the speculative level.
Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⬦636**

170A Federal Civil Procedure
 170AVII Pleadings and Motions
  170AVII(A) Pleadings in General
   170Ak633 Certainty, Definiteness and
Particularity
    170Ak636 k. Fraud, Mistake and
Condition of Mind. Most Cited Cases

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

A Rule 10b-5 plaintiff must plead securities fraud with particularity so that defendants have a reasonable opportunity to answer the complaint and adequate information to frame a response. 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.App.(2000 Ed.).

[5] Securities Regulation 349B ⚷60.53

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.50 Pleading
                    349Bk60.53 k. Misrepresentation. Most Cited Cases
Securities fraud complaint based on misstatements must (1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent; allegations that are conclusory or unsupported by factual assertions are insufficient. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.App.(2000 Ed.).

[6] Securities Regulation 349B ⚷25.19

349B Securities Regulation
    349BI Federal Regulation
        349BI(B) Registration and Distribution
            349BI(B)4 Registration Statements
                349Bk25.17 False Statements or Omissions; Accuracy
                    349Bk25.19 k. Persons Entitled to Sue or Recover. Most Cited Cases
Aftermarket buyers who can trace their shares to an allegedly misleading registration statement have standing to sue under provision of Securities Act governing false registration statements. Securities Act of 1933, § 11, 15 U.S.C.A. § 77k.

[7] Securities Regulation 349B ⚷25.25

349B Securities Regulation
    349BI Federal Regulation
        349BI(B) Registration and Distribution
            349BI(B)4 Registration Statements
                349Bk25.25 k. Pleading. Most Cited Cases
Pleading requirement for standing to sue under provision of Securities Act governing false registration statements is satisfied by general allegations that plaintiff bought shares "pursuant to" or traceable to a false registration statement. Securities Act of 1933, § 11, 15 U.S.C.A. § 77k.

[8] Securities Regulation 349B ⚷25.25

349B Securities Regulation
    349BI Federal Regulation
        349BI(B) Registration and Distribution
            349BI(B)4 Registration Statements
                349Bk25.25 k. Pleading. Most Cited Cases
Claim asserted in putative class action against corporation's officers for alleged violation of provision of Securities Act governing false registration statements did not specify whether lead plaintiff's stock purchase was traceable to particular offering, in that complaint alleged that lead plaintiff bought corporation's stock "pursuant to and traceable to the Prospectus as hereinafter defined," but then failed to define term "Prospectus," and therefore dismissal without prejudice, for failure to establish standing, was warranted. Securities Act of 1933, § 11, 15 U.S.C.A. § 77k.

[9] Securities Regulation 349B ⚷25.60

349B Securities Regulation
    349BI Federal Regulation
        349BI(B) Registration and Distribution
            349BI(B)5 Prospectuses and Communications
                349Bk25.55 False Statements or Omissions; Accuracy
                    349Bk25.60 k. Persons Entitled to Sue or Recover. Most Cited Cases
Under Securities Act provision barring offer or sale of securities through prospectus containing material misstatements or omissions, claim may only be maintained by buyer who purchased securities in disputed public offering, rather than in secondary market transaction. Securities Act of 1933, § 12(a)(2), 15 U.S.C.A. § 77l(a)(2).

[10] Securities Regulation 349B ⚷25.65

349B Securities Regulation
    349BI Federal Regulation
        349BI(B) Registration and Distribution
            349BI(B)5 Prospectuses and Communications
                349Bk25.65 k. Pleading. Most Cited

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

Cases

Absence of allegation that named plaintiffs in putative class action bought their securities in public offering, as opposed to buying them in the aftermarket, necessitated dismissal, without prejudice, of claim against corporation's officers for alleged violation of Securities Act provision of barring offer or sale of securities through prospectus containing material misstatements or omissions. Securities Act of 1933, § 12(a)(2), 15 U.S.C.A. § 77l(a)(2).

[11] Federal Civil Procedure 170A ☞636

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
                170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
Class complaint did not satisfy fraud pleading rule in asserting claim against corporation's officers under provision of Securities Act governing false registration statements, given that plaintiffs did not identify prospectus or registration statement at issue or cite any specific statement alleged to be misleading. Securities Act of 1933, § 11, 15 U.S.C.A. § 77k; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.App.(2000 Ed.).

[12] Securities Regulation 349B ☞25.18

349B Securities Regulation
    349BI Federal Regulation
        349BI(B) Registration and Distribution
            349BI(B)4 Registration Statements
                349Bk25.17 False Statements or Omissions; Accuracy
                    349Bk25.18 k. In General. Most Cited Cases
To allege a claim under Securities Act provision governing false registration statements, plaintiff must show that a registration statement (1) contained an untrue statement of material fact, (2) omitted to state a material fact required to be stated therein, or (3) omitted to state a material fact necessary to make the statement therein not misleading. Securities Act of 1933, § 11, 15 U.S.C.A. § 77k.

[13] Federal Civil Procedure 170A ☞636

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
                170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
Claims alleging violation of Securities Act provision governing false registration statements that rely upon averments of fraud are subject to rule requiring that averments of fraud be pleaded with particularity. Securities Act of 1933, § 11, 15 U.S.C.A. § 77k; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.App.(2000 Ed.).

[14] Federal Civil Procedure 170A ☞636

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak633 Certainty, Definiteness and Particularity
                170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases
Particularity requirements of fraud pleading rule are that the complaint (1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.App.(2000 Ed.).

[15] Securities Regulation 349B ☞60.18

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
            349BI(C)7 Fraud and Manipulation
                349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
                    349Bk60.18 k. In General. Most Cited Cases
To state a claim under § 10(b) and the corresponding Rule 10b-5, securities fraud plaintiff must plead that defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused injury to plaintiff. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

[16] Securities Regulation 349B ☞60.53

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.53 k. Misrepresentation.
Most Cited Cases
Although a financial restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis, in securities fraud action, for pleading that those statements were false when made; the mere fact that statements were restated at all is sufficient to establish falsity at the pleading stage. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[17] Securities Regulation 349B ☞60.53

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
         349Bk60.50 Pleading
            349Bk60.53 k. Misrepresentation.
Most Cited Cases
Complaint in securities fraud class action failed to allege with sufficient particularity how corporation's $500,000,000 write-down established that corporation's earlier financial statements reflecting valuations of its ferry and container assets were false or misleading, particularly given press release explaining that $500,000,000 impairment followed decision to sell ferry business and certain containers. Securities Exchange Act of 1934, §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4; 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.App.(2000 Ed.).

[18] Securities Regulation 349B ☞60.27(6)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
         349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
            349Bk60.27 Misrepresentation
               349Bk60.27(6) k. Financial or Periodic Reports; Accounting Data and Valuations.
Most Cited Cases
Mere allegation that statements in report should have

been made earlier does not make out a claim of securities fraud. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[19] Securities Regulation 349B ☞60.27(6)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
         349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
            349Bk60.27 Misrepresentation
               349Bk60.27(6) k. Financial or Periodic Reports; Accounting Data and Valuations.
Most Cited Cases
Statements by chief executive officer (CEO) that corporation's earlier financial statements might have to be restated did not provide basis for securities fraud claim. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[20] Securities Regulation 349B ☞60.53

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
         349Bk60.50 Pleading
            349Bk60.53 k. Misrepresentation.
Most Cited Cases
Complaint in securities fraud class action failed to adequately allege how statements surrounding corporation's $85,000,000 container write-down were fraudulent and misleading, given that statements attributed to confidential source were contingent and did not specify amount by which containers were overvalued, or at what times, and that complaint alleged in conclusory fashion that corporation's assets were overstated by at least $50,000,000 at beginning of class period, without distinguishing between corporation's ferry and container assets and without stating basis for its valuation. Securities Exchange Act of 1934, §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4; 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.App.(2000 Ed.).

[21] Securities Regulation 349B ☞60.53

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets

--- F.Supp.2d ----
Page 5
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

349BI(C)7 Fraud and Manipulation
349Bk60.50 Pleading
349Bk60.53 k. Misrepresentation.
Most Cited Cases
Complaint in securities fraud class action failed to adequately allege that corporation's officers made fraudulent or misleading statements by virtue of joint venture being recorded in corporation's books and reflected on its financial statements and failure to make reserve against receivables for estimated losses, given absence of allegations that any of corporation's officers were aware that corporation's dispute with joint venturer would be arbitrated or aware of likelihood of adverse result. Securities Exchange Act of 1934, §§ 10(b), 21D, 15 U.S.C.A. §§ 78j(b), 78u-4; 17 C.F.R. § 240.10b-5; Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.App.(2000 Ed.).

**[22] Securities Regulation 349B** 🗝️60.27(6)

349B Securities Regulation
349BI Federal Regulation
349BI(C) Trading and Markets
349BI(C)7 Fraud and Manipulation
349Bk60.17 Manipulative, Deceptive or Fraudulent Conduct
349Bk60.27 Misrepresentation
349Bk60.27(6) k. Financial or Periodic Reports; Accounting Data and Valuations. Most Cited Cases

**Securities Regulation 349B** 🗝️60.45(1)

349B Securities Regulation
349BI Federal Regulation
349BI(C) Trading and Markets
349BI(C)7 Fraud and Manipulation
349Bk60.43 Grounds of and Defenses to Liability
349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
349Bk60.45(1) k. In General.
Most Cited Cases
Allegations of violations of generally accepted accounting principles (GAAP) or accounting irregularities, standing alone, are insufficient to state a securities fraud claim; only when such allegations are coupled with evidence of corresponding fraudulent intent might they be deemed sufficient. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

**[23] Securities Regulation 349B** 🗝️60.51

349B Securities Regulation
349BI Federal Regulation
349BI(C) Trading and Markets
349BI(C)7 Fraud and Manipulation
349Bk60.50 Pleading
349Bk60.51 k. In General. Most Cited Cases
In determining whether the pleaded facts in securities fraud action give rise to a strong inference of scienter, the court must take into account plausible opposing inferences; a reasonable person must deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. Securities Exchange Act of 1934, §§ 10(b), 21D(b)(2), 15 U.S.C.A. §§ 78j(b), 78u-4(b)(2); 17 C.F.R. § 240.10b-5.

**[24] Securities Regulation 349B** 🗝️60.51

349B Securities Regulation
349BI Federal Regulation
349BI(C) Trading and Markets
349BI(C)7 Fraud and Manipulation
349Bk60.50 Pleading
349Bk60.51 k. In General. Most Cited Cases
Securities fraud plaintiff may establish a strong inference of scienter by alleging facts (1) showing that defendants had both motive and opportunity to commit the fraud, or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness. Securities Exchange Act of 1934, §§ 10(b), 21D(b)(2), 15 U.S.C.A. §§ 78j(b), 78u-4(b)(2); 17 C.F.R. § 240.10b-5.

**[25] Securities Regulation 349B** 🗝️60.51

349B Securities Regulation
349BI Federal Regulation
349BI(C) Trading and Markets
349BI(C)7 Fraud and Manipulation
349Bk60.50 Pleading
349Bk60.51 k. In General. Most Cited Cases
When motive is not apparent, it is still possible to plead scienter supporting securities fraud claim by identifying circumstances indicating conscious behavior by defendant, though the strength of the circumstantial allegations must be correspondingly greater. Securities Exchange Act of 1934, §§ 10(b),

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

21D(b)(2), 15 U.S.C.A. §§ 78j(b), 78u-4(b)(2); 17 C.F.R. § 240.10b-5.

**[26]** Securities Regulation 349B ⚖60.51

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.51 k. In General. Most Cited Cases

To plead recklessness in support of scienter element of securities fraud claim, plaintiff must specifically allege defendants' knowledge of facts or access to information contradicting their public statements. Securities Exchange Act of 1934, §§ 10(b), 21D(b)(2), 15 U.S.C.A. §§ 78j(b), 78u-4(b)(2); 17 C.F.R. § 240.10b-5.

**[27]** Securities Regulation 349B ⚖60.45(1)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.43 Grounds of and Defenses to Liability
               349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
                  349Bk60.45(1) k. In General. Most Cited Cases

Alleged desire of securities fraud defendant to raise additional capital in a private placement or to maintain compliance with financial covenants of company loan agreement are inadequate to support an allegation of intent to commit fraud. Securities Exchange Act of 1934, §§ 10(b), 21D(b)(2), 15 U.S.C.A. §§ 78j(b), 78u-4(b)(2); 17 C.F.R. § 240.10b-5.

**[28]** Securities Regulation 349B ⚖60.51

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.51 k. In General. Most Cited Cases

To establish recklessness in support of scienter element of securities fraud claim, plaintiffs alleging defendants' knowledge of facts or access to information contradicting their public statements must specifically identify the reports or statements containing such information. Securities Exchange Act of 1934, §§ 10(b), 21D(b)(2), 15 U.S.C.A. §§ 78j(b), 78u-4(b)(2); 17 C.F.R. § 240.10b-5.

**[29]** Securities Regulation 349B ⚖60.53

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
               349Bk60.53 k. Misrepresentation. Most Cited Cases

Allegations of recklessness did not raise strong inference of fraudulent intent in support of securities fraud class claim against corporation's officers when there were no allegations that internal reports suggested that corporation's failure to take impairment charge earlier was incorrect application of accounting principles rising to level of fraud, or that inventory reports regularly received by corporation's senior management suggested that corporation's ferries or containers were overvalued or amount by which they were overvalued, and neither statements made by corporation's new chief executive officer (CEO), after class period ended, that corporation's earlier financial statements might have to be restated, nor timing of write-downs following original CEO's resignation, showed officers' scienter during class period. Securities Exchange Act of 1934, §§ 10(b), 21D(b)(2), 15 U.S.C.A. §§ 78j(b), 78u-4(b)(2); 17 C.F.R. § 240.10b-5.

**[30]** Securities Regulation 349B ⚖60.45(1)

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.43 Grounds of and Defenses to Liability
               349Bk60.45 Scienter, Intent, Knowledge, Negligence or Recklessness
                  349Bk60.45(1) k. In General. Most Cited Cases

Allegations that securities fraud defendants should have known about corporation's financial state based solely on their executive positions are not enough to plead scienter. Securities Exchange Act of 1934, §

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

Page 7

10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

**[31] Securities Regulation 349B ☜60.45(1)**

349B Securities Regulation
    349BI Federal Regulation
        349BI(C) Trading and Markets
          349BI(C)7 Fraud and Manipulation
            349Bk60.43 Grounds of and Defenses
to Liability
                349Bk60.45 Scienter, Intent,
Knowledge, Negligence or Recklessness
                    349Bk60.45(1) k. In General.
Most Cited Cases
Size of the fraud alone does not create an inference of
scienter supporting securities fraud claim. Securities
Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b);
17 C.F.R. § 240.10b-5.

### DECISION AND ORDER

RICHARD M. BERMAN, District Judge.

**I. Introduction**

    *1 This consolidated securities law action was
initiated on March 31, 2006, by Beverlie Wissner,
Rita and Mark Winczewski, Helane Sue Tartikoff,
Dave Tartikoff Services, Inc., and Scott Scheurer
("Named Plaintiffs") on behalf of a putative class of
plaintiffs ("Plaintiffs" or "Class") who purchased the
securities of Sea Containers Ltd. ("SCL" or "Sea
Containers" or "Company"), a Bermuda corporation,
during the period February 23, 2004 through March
24, 2006 ("Class Period").[FN1] Plaintiffs filed a 70-
page Consolidated Amended Complaint on October
4, 2006 ("Complaint"), asserting claims under
Sections 11, 12(a)(2), and 15 of the Securities Act of
1933, as amended ("Securities Act Claims"), and
Sections 10(b) and 20(a) of the Securities Exchange
Act of 1934, as amended ("Exchange Act Claims"),
against SCL and certain of its officers, including
James H. Sherwood ("Sherwood"), Daniel J.
O'Sullivan ("O'Sullivan"), and Ian C. Durant
("Durant") (the "Individual Defendants")
(collectively with SCL, "Defendants").[FN2] Plaintiffs
allege, among other things, that Defendants
materially misstated SCL's financial statements
during the Class Period. (See Compl. ¶ ("The value of
Sea Containers' ferry and container assets was
materially impaired throughout the Class Period and
such material impairments should have been

recognized and recorded in much greater amounts
during the Class Period.").)

    On December 20, 2006, the Individual
Defendants jointly moved to dismiss the Complaint
under Rules 9(b), 12(b)(1) and 12(b)(6) of the
Federal Rules of Civil Procedure ("Fed. R. Civ.P."),
arguing, among other things: (A) Plaintiffs lack
standing to assert certain Securities Act Claims in
Counts I and III; (B) the Securities Act Claims under
Sections 11 and 12(a)(2) fail to "allege false or
misleading statements in any offering material"; (C)
the Exchange Act Claim under Section 10(b) fails to
"plead with particularity any actionable
misstatements or omissions" and fails to plead facts
giving rise to a "strong inference of scienter"; and
(D) the claims for "control person" liability under
Section 15 of the Securities Act and Section 20(a) of
the Exchange Act ("Control Person Claims") fail to
"allege 'culpable participation' by any Individual
Defendant."(See Def. Mem.) On February 2, 2007,
Plaintiffs filed a Memorandum of Law which
opposes the motion to dismiss and requests "an
opportunity to amend the Complaint" in the event of
dismissal. (Plaintiffs' Memorandum of Law, dated
February 2, 2007 ("Pl.Mem."), at 25 n. 16.) On
February 23, 2007, the Individual Defendants filed a
Reply Memorandum of Law ("Def.Reply"). The
parties waived oral argument.

    **For the reasons set forth below, the Court
grants the Individual Defendants' joint motion to
dismiss without prejudice.**

**II. Background**

    For the purposes of this motion, the allegations
of the Complaint are taken as true. Cooper v. Parsky,
140 F.3d 433, 440 (2d Cir.1998).

    *2 During the Class Period, SCL was engaged in
four main businesses: (1) passenger and freight ferry
services in, among other places, the Baltic Sea, the
English Channel, and New York harbor; (2)
passenger rail transport between London and
Scotland; (3) ownership and leasing of large cargo-
shipping containers, both independently and through
GE SeaCo, a joint venture with General Electric
Capital Corp. ("GE Capital"); and (4) operation of
hotels, restaurants, tourist trains, and river cruise
ships through Orient-Express Hotels, Ltd. ("OEH").
(See Compl. ¶ 11.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
Page 8
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

During the Class Period, SCL conducted two public offerings of SCL common stock (*i.e.,* on February 23, 2004 covering 2.2 million shares and on December 28, 2004 covering 2.4 million shares) and one public offering of debt (*i.e.,* on May 4, 2004 covering $103 million in 10 1/2 % Senior Notes due in 2012 ("Notes")). (*See* Compl. ¶¶ 7-10, 23, 32, 46, 122, 128; Def. Mem. at 4 & n. 3, 11; Exs. A, B, and P; Pl. Mem. at 19.) [FN1]

In SCL's annual report on Form 10-K filed with the Securities and Exchange Commission ("SEC") for the calendar year 2004, SCL stated the following:

In the course of preparing SCL's consolidated financial statements for the year ended December 31, 2004, SCL management concluded that SCL had insufficient personnel resources and technical accounting expertise within the accounting function to resolve and report in a timely manner non-routine or complex accounting matters in accordance with U.S. generally accepted accounting principles. As a result, procedures and documentation to review and analyze elements of the financial statements closing process and to prepare the consolidated financial statements had not reduced to a less than remote likelihood that a material misstatement in those financial statements would not be prevented or detected within a timely period in the normal course of the financial statement closing process.

(SCL 2004 SEC Form 10-K at 92; *see* Compl. ¶¶ 51, 99.) SCL's SEC Form 10-Q financial statements for the first three quarters of 2005 also stated that "SCL's disclosure controls and procedures were not effective."(Compl.¶¶ 58, 65, 74.)

In a press release, dated November 3, 2005, SCL announced that it intended to restructure the Company by, among other things, selling certain ferry and container assets, resulting in a total "restructuring charge" to income of $157 million in the third and fourth quarters of 2005. (Compl.¶ 71.) This figure included $99 million in "impairment charges" relating to the ferry business, $30 million in impairment charges relating to the container business, $26 million in cash expenses, and a $2 million impairment charge relating to computer systems. (*Id.;* Ex. I at 2.) "[T]he market reacted favorably to this announcement ...." (Compl.¶ 72.) [FN2]

Sherwood was the founder, President, Chief Executive Officer ("CEO") and a Director of SCL from 1965 until his resignation as President and CEO on December 1, 2005 and as Director on March 20, 2006. (Compl.¶ 12.) Sherwood was replaced as CEO in January 2006 by Robert MacKenzie ("MacKenzie"), who is not named as a Defendant. (Compl.¶¶ 12, 89.) Durant became Vice President and Deputy Chief Financial Officer on June 1, 2004, Senior Vice President and Chief Financial Officer ("CFO") on January 1, 2005, and President and CEO from December 1, 2005 until January 4, 2006, when he reverted to CFO. (Compl.¶ 13.) [FN3] O'Sullivan was Senior Vice President for Finance and CFO from June 1997 until he retired in December 2004. (Compl.¶ 14.)

*3 On March 24, 2006, the last day of the Class Period, SCL announced that it intended to "withdraw completely from the ferry business," resulting in an "impairment charge" to SCL's ferry assets of "approximately $415 million" as of December 31, 2005, pursuant to the Financial Accounting Standards Board's ("FASB") Statement of Financial Accounting Standard ("SFAS") No. 144. (Compl. ¶ 81 (quoting SCL Press Release, dated March 24, 2006 ("March 24, 2006 Press Release")).) SCL also announced that certain of its containers (that were "owned and managed by SCL separately and not part of GE SeaCo.") were "being held for sale at December 31, 2005," resulting in an SFAS 144 "impairment charge" of approximately $40 million. (Compl. ¶¶ 81, 102; March 24, 2006 Press Release.) "The expected loss on these [container] sales initiated an impairment review on the Company's entire container fleet in accordance with SFAS 144," resulting in an additional impairment charge on refrigerated containers (and goodwill) of approximately $45 million. (*Id.*) These charges included the $157 million charge announced on November 3, 2005. (Ex. J at 2-3.)

The March 24, 2006 Press Release also announced that SCL had found "errors in the accounting for the release of accumulated foreign currency reserves related to [SCL's] sale of OEH shares," which reduced by $10.3 million SCL's gains on the sale of OEH stock in March 2005, and resulted in a restatement of SCL's financial statements for the periods ending March 31, 2005, June 30, 2005, and September 30, 2005 (the "Accounting Error Restatement"). (Compl.¶¶ 63, 70, 79.) And, the March 24, 2006 Press Release announced that SCL "would miss the deadline for filing[ ] its 2005 annual

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

report."(Compl.¶ 80.) The Company's stock dropped from $12.06 per share on March 23, 2006 to $7.45 per share on March 24, 2006. (Compl.¶ 80.)

On May 3, 2006, SCL announced that an arbitration panel had ruled against SCL, awarding GE Capital approximately $16.3 million with respect to "breaches of the services agreement by which SCL provided services to GE SeaCo."(Compl.¶ 84.) During an August 17, 2006 "conference call [with] the investor community," MacKenzie stated that he had "spent a lot of time on the 31st of December balance sheet ... and where the difficulty arises is certifying the previous years. I have a responsibility to go back and certify the ... previous four years."(Compl.¶ 89.) On October 2, 2006, SCL's stock price closed at $1.04 per share and the New York Stock Exchange suspended SCL from trading. (Compl.¶ 2.)

Based upon, among other things, interviews with five "anonymous" former employees of SCL ("Confidential Sources" ("CS") 1-5), the Complaint alleges that SCL's public statements during the Class Period were misleading because Defendants failed to disclose, among other things, the following:
a. The Accounting Error, *i.e.,* "errors in the accounting for the release of accumulated foreign currency reserves related to [SCL's] sale of OEH shares," which reduced by $10.3 million SCL's gains on the sale of OEH stock in March 2005.
*4 b. The $500 Million Write-down, *i.e.,* that SCL's ferry assets "were impaired" and should have been "written down" earlier pursuant to SFAS 144; "negotiations for sales of ... two vessels had indicated their book value was in excess of market value"; "the Company's restructuring program was a farce"; "the ferry business has traded poorly for the past five years and been hit by extremely serious fuel increases"; and "SCL had numerous containers ... whose values were impaired" and should have been "written down" earlier pursuant to SFAS 144.
c. Other Misrepresentations and Omissions, including that: SCL's internal accounting function lacked "sufficient personnel resources and technical accounting expertise" to comply with Generally Accepted Accounting Principles ("GAAP") adopted by the FASB; and "SCL's relationship with ... GE Capital, was strained and threatened such that either the revenue from the GE SeaCo. joint venture should not have been recorded on SCL's books or reflected on SCL's financial statements, and if reflected, a reserve should have been provided against

receivables for estimated losses."

(Compl.¶¶ 23-89.)

On October 14, 2006, SCL filed for bankruptcy protection in the United States Bankruptcy Court for the District of Delaware (Case No. 06-11156), without having filed with the SEC its Form 10-K for 2005 or and without having issued restated financials for any (earlier) periods. (Compl. ¶ 2; Def. Mem. at 1 n. 1.)

**III. Legal Standard**

[1][2]Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. "The burden to establish standing rests on the party asserting its existence. At the pleading stage, the plaintiff bears the burden of clearly ... alleg[ing] facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute."*In re AOL Time Warner, Inc. Secs. and "ERISA" Litig.,* 381 F.Supp.2d 192, 245 (S.D.N.Y.2004) (citations and internal quotation marks omitted).

[3]"In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff."*Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* ---U.S. ----, ----, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007)."The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'"*Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citation omitted). At the same time, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."*Bell Atlantic v. Twombly,* --- U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citation and internal quotations omitted); *accord ATSI Comms., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 n. 2 (2d Cir.2007) (applying *Twombly* to securities fraud action)."[P]laintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"*ATSI Comms.,* 493 F.3d at 98 (quoting *Twombly,* 127 S.Ct. at 1965);*see Iqbal v.

--- F.Supp.2d ----                                                                Page 10
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

*Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007)(*Twombly* "requi[res] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*").

*5[4][5] A Rule 10b-5 plaintiff must plead fraud with particularity so that defendants have "a reasonable opportunity to answer the complaint and ... adequate information to frame a response." *Ryan v. Hunton & Williams,* 2000 WL 1375265, at *6 (E.D.N.Y. Sept. 20, 2000) (citation omitted); Fed.R.Civ.P. 9(b)."A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Allegations that are conclusory or unsupported by factual assertions are insufficient."*ATSI Comms.,* 493 F.3d at 99.

## IV. Analysis

## (A) Standing

The Individual Defendants argue, among other things, that: "Plaintiffs make no attempt to allege that any named plaintiff purchased SCL Class A common shares directly in the challenged offerings (February 23, 2004 or December 28, 2004) or in a market containing only shares issued pursuant to the challenged offering" (Def. Mem. at 11); and "only investors who purchased the [Notes] *in* the public offering have standing to sue under Section 12(a) (2)." (Def. Mem. at 10-12).[FN6] Plaintiffs counter that, among other things, the standing question is "fact-intensive," "inappropriate for dismissal at the pleading stage," and "more appropriately addressed at either the class certification stage or summary judgment stage."(Pl. Mem. at 23.)

[6][7] It is well settled that "aftermarket purchasers who can trace their shares to an allegedly misleading registration statement have standing to sue under § 11 of the 1933 Act."*DeMaria v. Andersen,* 318 F.3d 170, 178 (2d Cir.2003)."The pleading requirement for Section 11 standing is satisfied by 'general allegations that plaintiff purchased pursuant to or traceable to [a] false registration statement.'"*In re Marsh & Mclennan Cos. Secs. Litig.,* 2006 WL 2057194, at *33

(S.D.N.Y. July 20, 2006) (citation omitted); *accord Funke v. Life Financial Corp.,* 237 F.Supp.2d 458, 473 (S.D.N.Y.2002) ("If the shares were issued in the 1997 IPO, they may be traced to it, irrespective of when plaintiffs bought.").

[8] While the Complaint alleges that Lead Plaintiff Beverlie Wissner purchased SCL common stock "pursuant to and traceable to the Prospectus as hereinafter defined," it fails, in fact, to define the term "Prospectus." (Compl.¶ 7.) Count I is, therefore, dismissed, without prejudice, because it fails to specify whether Ms. Wissner's stock purchase is traceable to a particular offering (Compl.¶¶ 23, 46, 107-18).*See In re Global Crossing, Ltd. Secs. Litig.,* 313 F.Supp.2d 189, 207 (S.D.N.Y.2003) ("it is not enough that plaintiffs seek damages only for a class that has standing; at least one named plaintiff must be a member of that class-that is, a named plaintiff must have purchased shares traceable to the challenged offering").

[9][10] Under Section 12(a)(2), a "claim may only be maintained by a purchaser who purchased [securities] in the public offering at issue rather than in a secondary market transaction."*In re Cosi, Inc. Secs. Litig.,* 379 F.Supp.2d 580, 588-89 (S.D.N.Y.2005). Plaintiffs' Section 12(a)(2) Claim relates to the sale of "Notes," not common stock (Compl.¶¶ 128-31), but none of the Named Plaintiffs are alleged to have purchased Notes in a public offering (Compl.¶¶ 7-10)."[B]ecause the plaintiffs fail to allege that they purchased the securities in a public offering, as opposed to in the aftermarket, their Section 12(a)(2) claim [in Count III is] dismissed," without prejudice. *In re Sterling Foster & Co. Secs. Litig.,* 222 F.Supp.2d 216, 246 (E.D.N.Y.2002).[FN7]

## (B) Section 11 Claim

*6[11] The Individual Defendants argue that "Plaintiffs fail to allege that there was a single false or misleading statement in any of the challenged Registration Statements or Prospectuses."(Def. Mem. at 9.) Plaintiffs counter that, among other things, "[t]he Registration Statements and Prospectus incorporated by reference various SEC filings."(Pl. Mem. at 22.)

[12]"To allege a claim under Section 11 of the Securities Act, a plaintiff need show that a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

registration statement: (1) 'contained an untrue statement of material fact'; (2) 'omitted to state a material fact required to be stated therein'; or (3) omitted to state a material fact 'necessary to make the statement therein not misleading.'"*In re Morgan Stanley and Van Kampen Mut. Fund Secs. Litig.,* 2006 WL 1008138, *6 (S.D.N.Y. Apr. 14, 2006) (quoting 15 U.S.C. § 77k); *see also DeMaria,* 318 F.3d at 175.

[13][14]"[W]hile fraud is not a necessary element of ... a Section 11 ... claim, the Second Circuit has held that the heightened pleading standard of Rule 9(b) applies to these claims insofar as the claims are premised on allegations of fraud."*In re Axis Capital Holdings Ltd. Secs. Litig.,* 456 F.Supp.2d 576, 597 (S.D.N.Y.2006) (citing *Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir.2004)). That is, Section 11 claims, such as those presented here, "that do rely upon averments of fraud are subject to the test of Rule 9(b)."*Rombach,* 355 F.3d at 171.Here, the Complaint makes no attempt to differentiate the Count II Section 11 Claim from Plaintiffs' fraud claims in Counts V and VI (Compl.¶¶ 119-25, 134-48).*See In re Philip Services Corp. Secs. Litig.,* 383 F.Supp.2d 463, 481-82 (S.D.N.Y.2004). Accordingly, the Section 11 Claim "sounds in fraud" and must satisfy the particularity requirements of Rule 9(b), which are that the Complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."*Rombach,* 355 F.3d at 170 (citations omitted).

The Section 11 Claim is dismissed because it fails to satisfy the first element of Rule 9(b)-*i.e.,*"specify the statements that the plaintiff contends were fraudulent."*Id.* While Plaintiffs argue in their brief that "[t]he Registration Statements and Prospectus incorporated by reference various SEC filings" (Pl. Mem. at 22), the Complaint appears to contain no such allegations. (*See* Compl. ¶¶ 23 (February 23, 2004 stock offering), 32 (May 4, 2004 Note offering), and 46 (December 12, 2004 or December 28, 2004 stock offering).) "Because plaintiffs cite no prospectus [or registration statement] ... actually at issue in this case, nor cite any specific statement alleged to be misleading, they do not meet the particularity requirement of Rule 9(b)."*In re Merrill Lynch Investment Mgmt. Funds Secs. Litig.,* 434 F.Supp.2d 233, 239 (S.D.N.Y.2006).

**(C) Section 10(b) Claim**

*7[15]"To state a claim under § 10(b) and the corresponding Rule 10b-5, a plaintiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff."*Ganino v. Citizens Utilities Co.,* 228 F.3d 154, 161 (2d Cir.2000); *see Herman & MacLean v. Huddleston,* 459 U.S. 375, 381-82, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) ("Section 10(b) is a 'catchall' antifraud provision ... [w]hile a Section 11 must be based on misstatements or omissions in a registration statement."). The Court finds that the Complaint does not adequately plead the elements of (1) falsity ("explain why the statements were fraudulent") or (2) scienter.

**Allegedly False Statements**

The Individual Defendants argue, among other things, that: "Plaintiffs' allegations fundamentally derive from the Company's decision to exit the ferry business and its accounting determination to write-down certain of its assets under SFAS 144."The Individual Defendants also say "Plaintiffs fail, however, to allege with the requisite particularity how the Company-let alone any Individual Defendant-was to have known the write-downs should have been taken earlier or the amount of any such earlier charges."(Def. Mem. at 14-15 (citations omitted).) [FN8]

Plaintiffs counter that, among other things: the "Complaint clearly sets forth which statements are misleading ... and specifies 'the date, publication and speaker of each of the alleged misstatements or omissions.'" (Pl. Mem. at 8 n. 5); "the Complaint specifically details reasons why each statement was false, including allegations [of] specific GAAP violations which caused SCL's financial statements to be materially false and misleading"(*id.* at 11); and "the information provided by Plaintiffs' confidential sources are not only sufficiently particularized but are also consistent in supporting the overall scheme in the Complaint"(*id.* at 9 n. 6).

The Private Securities Litigation Reform Act ("PSLRA") and Fed.R.Civ.P. 9(b) require that Section 10(b) plaintiffs "(1) specify the statements that the plaintiff contends were fraudulent, (2)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)

(Cite as: --- F.Supp.2d ----)

identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."*Stevelman v. Alias Research, Inc.,* 174 F.3d 79, 84 (2d Cir.1999) (citations and internal quotation marks omitted).

"Each of the misrepresentations alleged in the consolidated amended class action complaint were made in specifically identified financial disclosures ... or press releases discussing financial disclosures [identified by Plaintiffs]. Thus, plaintiffs have satisfied the first three prongs of the Rule 9(b) requirements."*In re Globalstar Secs. Litig.,* 2003 WL 22953163, at *5 (S.D.N.Y. Dec. 15, 2003). At the same time, except with respect to the Accounting Error Restatement, Plaintiffs have failed to plead with particularity the fourth prong of the Rule 9(b) requirements, namely, "how the statements were false or misleading."*In re Northern Telecom Ltd. Securities Litigation,* 1994 WL 455534, at *6 (S.D.N.Y. Aug. 22, 1994). With respect to this fourth prong, the Court separately analyzes (a) the Accounting Error Restatement, (b) statements relating to the $500 million write-down, and (c) other alleged misrepresentations, as follows:

**(a) Accounting Error Restatement**

*8[16] As noted, the Complaint alleges that the March 24, 2006 Press Release announced that SCL had found "errors in the accounting for the release of accumulated foreign currency reserves related to [SCL's] sale of OEH shares," which resulted in a $10.3 million restatement of SCL's financial statements for the periods ending March 31, 2005, June 30, 2005, and September 30, 2005. (Compl.¶¶ 63, 70, 79.) "Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made."*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,* 324 F.Supp.2d 474, 486 (S.D.N.Y.2004). That is, "the mere fact that ... statements were restated at all" is sufficient to establish falsity at the pleading stage. *In re Cylink Secs. Litig.,* 178 F.Supp.2d 1077, 1084 (N.D.Cal.2001).[FN9]

**(b) $500 Million Write-Down**

[17] The Complaint's central allegation is that SCL's financial statements overstated the value of SCL's assets (*i.e.,* ferries and containers) during the

Class Period, in violation of SFAS 144. (*See* Compl. ¶ 1 ("The value of Sea Containers' ferry and container assets was materially impaired throughout the Class Period and such material impairments should have been recognized and recorded in much greater amounts during the Class Period.").) " '[T]he standard is whether the need to write-down [the asset] ... was 'so apparent' to [the defendant] before the announcement, that a failure to take an earlier write-down amounts to fraud.' " *In re K-tel Intern., Inc., Secs. Litig.,* 107 F.Supp.2d 994, 1001 (D.Minn.2000) (citation omitted), *aff'd,*300 F.3d 881 (8th Cir.2002); *accord In re NTL, Inc. Secs. Litig.,* 347 F.Supp.2d 15, 26 (S.D.N.Y.2004) (The Complaint must "allege[ ] sufficient facts to support the assertions that material problems existed ... at the times the statements complained of were made.").

[18][19][20] Plaintiffs have failed to plead with particularity how SCL's $500 million write-down establishes "why [Defendants'] statements were fraudulent," *i.e.,* how SCL's valuations of its ferry and container assets were false or misleading. *See, e.g., In re Serologicals Secs. Litig.,* No. Civ.A.1:00-CV1025, 2003 WL 24033694, at *10 (N.D.Ga. Feb. 20, 2003) ("The plaintiffs have not pled with particularity facts indicating that the defendants' review of the recoverability or failure to recognize an impairment in 1999 did not comply with FAS 121 [now 144]."). For one thing, in the March 24, 2006 Press Release, SCL explained the timing of the $500 million impairment-*i.e.,* that it followed the decision to sell the ferry business along with certain containers. (*See* SFAS 144 (long-lived assets should be tested for impairment if, among other things, there arises "a current expectation that *more likely than not*... a long-lived asset will be sold or otherwise disposed of significantly before the end of its previously estimated life").) "The mere allegation that statements in one report should have been made earlier does not make out a claim of securities fraud."*Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 53 (2d Cir.1995). Second, Plaintiffs cannot base its fraud claim on statements by SCL's CEO that the Company's earlier financial might have to be restated. *See In re Flag Telecom Holdings, Ltd. Secs. Litig.,* 308 F.Supp.2d 249, 261 (S.D.N.Y.2004) (finding "simply too vague" a statement by former director of sales that "he and other employees had 'personally questioned ... the ethical boundaries' of the swap transactions"); *see also Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir.2001) ("A plaintiff cannot base securities fraud claims on speculation and conclusory

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

allegations."). Third, the Complaint fails to state the basis for its book-value allegations and fails to specify the amounts by which the ferries and containers were allegedly overvalued. *See Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 116 (2d Cir.1982).*[FN10]

**(c) Other Alleged Misrepresentations or Omissions**

*9[21] The support for Plaintiffs' GE Claim is limited to vague statements that "there were a number of issues between GE and SCL concerning the operations of GE SeaCo" (Compl.¶ 22(e)), and allegations about SCL contained in pleadings from an unrelated lawsuit which are inadmissible, *see, e.g., Geinko v. Padda, No. 00 C 5070, 2002 WL 276236, at *5-6 (N.D.Ill. Feb. 27, 2002).* Plaintiffs do not plead with particularity that any Individual Defendant was aware, prior to May 10, 2005, that the dispute with GE Capital would be arbitrated, or aware, prior to April 28, 2006, of the likelihood of an adverse result. *See, e.g., Hinerfeld v. United Auto Group, 1998 WL 397852, at *7 (S.D.N.Y. July 15, 1998)* ("The failure to anticipate the extent of necessary reserves, even if it amounts to mismanagement, is not actionable under federal securities laws.").[FN11]

[22] The Complaint also fails to establish falsity with respect to allegations that SCL did not disclose that its internal accounting function lacked "sufficient personnel resources and technical accounting expertise" to comply with GAAP. (*See, e.g.,* Compl. ¶ 38.) Beginning with its Form 10-K for 2004, SCL disclosed weaknesses in its internal controls. (*See* pages 3-4, *supra.*)And, "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim .... Only where such allegations are coupled with evidence of corresponding fraudulent intent might they be deemed sufficient."*Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir.2000).*

**Scienter**

The Individual Defendants argue, among other things, that: "Plaintiffs fail to plead any facts giving rise to a strong inference of scienter by any Individual Defendant. The Complaint sets forth no particularized allegations that any Individual Defendant was aware of, participated in, or benefited from any alleged fraud. Rather, the Complaint is replete with conclusory allegations of nothing more than purported mismanagement, supposed GAAP violations by the Company, and other classic indicia of an impermissible attempt to plead 'fraud by hindsight.' " (Def. Mem. at 3.) Plaintiffs' "allegations amount to no more than an assertion that the Company violated GAAP, ... which does not state a claim for securities fraud in the absence of particularized allegations of scienter."(*Id.* at 22.)

Plaintiffs counter, among other things, that they have pleaded scienter by alleging facts showing that the Individual Defendants had the "motive and opportunity" to commit fraud, and constituting "strong circumstantial evidence of recklessness." The Individual Defendants were motivated to commit fraud, Plaintiffs say, because "[i]f SCL had [properly] written down the value of the assets on its balance sheet during the Class Period, the writedown would have violated the Company's financial covenants with its lenders, SCL would have been unable to issue new debt to retire old debt and unable to complete the securities offerings during the Class Period."(Pl. Mem. at 20.) According to Plaintiffs, recklessness is established by "SCL's failure to take appropriate and timely impairment charges" during the Class Period, in violation of SFAS 144; "[t]he fact that SCL admitted on March 24, 2006 that it had to restate its financial statements for prior reporting periods"; "the writedown of $500 million in assets"; and "the statements made by the new CEO [MacKenzie] after the Class Period about the problems plaguing SCL during the Class Period."(*Id.* at 14-18.)

*10[23][24][25][26] Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required [fraudulent intent]."15 U.S.C. § 78u-4(b)(2); *see Novak,* 216 F.3d at 310."[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* ---U.S. ----, ----, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007). That is, "a reasonable person [must] deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."*Id.* at 2510.A plaintiff may establish a strong inference of scienter "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."*ATSI Comms.,* 493 F.3d at 99."Where motive is not

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir.2001). In order to plead "recklessness," plaintiffs must "specifically allege[ ] defendants' knowledge of facts or access to information contradicting their public statements." *Novak,* 216 F.3d at 308.

**Motive and Opportunity**

[27] The Complaint does not adequately allege that the Individual Defendants' motive and opportunity to commit fraud. "[T]he alleged desires to raise additional capital in a private placement or to maintain compliance with the financial covenants of a company loan agreement ... are ... inadequate to support an allegation of intent to commit fraud." *In re Cross Media Mkting. Corp. Sec. Litig.,* 314 F.Supp.2d 256, 264-65 (S.D.N.Y.2004).

**Recklessness**

[28][29] To establish recklessness, Plaintiffs must "specifically allege [ ] defendants' knowledge of facts or access to information contradicting their public statements." *Novak,* 216 F.3d at 308.And, generally, "[w]here plaintiffs contend defendants had access to contrary facts, [plaintiffs] must specifically identify the reports or statements containing this information." *Id.* at 309 (citation omitted).

[30] Plaintiffs' allegations of recklessness, "even taken together, are insufficient to raise a strong inference of fraudulent intent." *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,* 117 F.3d 655, 664 (2d Cir.1997). The Complaint contains "no allegations that there were any internal reports that suggested that the failure to take an impairment charge earlier was an incorrect application of accounting principles" and "rose to the level of fraud." *In re Loral Space & Comms. Ltd. Secs. Litig.,* 2004 WL 376442, at *17 (S.D.N.Y. Feb. 27, 2004). While the Complaint alleges that SCL's senior management received regular reports on inventory (Compl.¶ 22(e)), it does not allege that such inventory reports suggested that SCL's ferries or containers were overvalued or the amount by which they were overvalued. *See Zucker v. Sasaki,* 963 F.Supp. 301, 309 (S.D.N.Y.1997) ("To plead facts establishing a strong inference that defendants engaged in accounting fraud, a plaintiff must specify the improper transactions, explain why such procedures used were improper, and estimate the approximate amount by which the company's finances were misstated."); *Schick v. Ernst & Young,* 808 F.Supp. 1097, 1102 (S.D.N.Y.1992)."Allegations that [defendants] should have known about [SCL's] financial state based solely on their executive positions are not enough to plead scienter." *In re NTL, Inc. Sec. Litig.,* 347 F.Supp.2d 15, 34 (S.D.N.Y.2004).[FN12]

*11[31] Even assuming, *arguendo,* that GAAP violations under SFAS 144 were adequately pleaded with respect to the impairment of SCL's ferry and container assets, it is well settled that "allegations of GAAP ... violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations are coupled with evidence of corresponding fraudulent intent might they be sufficient." *Novak,* 216 F.3d at 309 (citations and internal quotations omitted).[FN13]"[T]he size of the fraud alone does not create an inference of scienter," *In re WorldCom, Inc. Sec. Litig.,* 2003 WL 21488087, at *7 (S.D.N.Y. June 25, 2003), and "[m]ere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud," *Stevelman v. Alias Research, Inc.,* 174 F.3d 79, 84-85 (2d Cir.1999) (citation omitted); *accord Novak,* 216 F.3d at 309;*see In re Serologicals,* 2003 WL 24033694, at *12 ("The mere magnitude of the improperly overestimated value provides no indication of how or when the defendants became aware of its true value.").

The (only) restatement of SCL's financials appears to have involved the $10.3 million Accounting Error Restatement, and Plaintiffs have offered no facts supporting the allegation that the Accounting Error was the product of fraudulent intent. *See, e.g., In re DRDGOLD Ltd. Secs. Litig.,* 472 F.Supp.2d 562, 573 (S.D.N.Y.2007) ("The nature and magnitude of the restatement was not such that scienter can be strongly inferred.").

Finally, the Individual Defendants' scienter is not established through statements by SCL's non-Defendant CEO, after the Class Period, that the Company's earlier financial statements might have to be restated, *see In re Flag Telecom Holdings, Ltd. Secs. Litig.,* 308 F.Supp.2d 249, 261 (S.D.N.Y.2004) ("statements made by the Director are simply too vague to establish" defendants' scienter), or based

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                          Page 15
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

upon the timing of SCL's write-downs soon after the original CEO's resignation, *see In re BISYS Secs. Litig.,* 397 F.Supp.2d 430, 446-48 (S.D.N.Y.2005) ("absent any alleged facts linking the two resignations and the alleged fraud, the resignations ... do not support an inference of conscious misbehavior or recklessness") (collecting cases).[FN14]

**(D) Control Person Claims**

Because the Control Person Claims are "necessarily predicated on a primary violation of securities law, ... these secondary claims must also be dismissed."*Rombach v. Chang,* 355 F.3d 164, 177-78 (2d Cir.2004).

**(E) Motion to Amend**

Plaintiffs request an opportunity to amend the Complaint "[i]n the event that the Court deems the claims against the Individual Defendants insufficiently pleaded ...." (Pl. Mem. at 25 n. 16.) The Individual Defendants counter that "[h]aving rested on their Complaint, itself an amended and consolidated pleading, without identifying any additional factual allegations that might cure the numerous deficiencies identified herein, Plaintiffs' boilerplate request should be denied."(Def. Reply at 10 n. 10.)

*12 The October 4, 2006 amended Complaint was filed for the purpose of consolidating the various underlying actions prior to the Individual Defendants' motion to dismiss. (*See* Case Management Plan, dated Oct. 16, 2006.) "Plaintiffs whose complaints are dismissed pursuant to Rule 9(b) [as here] are typically given an opportunity to amend their complaint."*Olsen v. Pratt & Whitney Aircraft, Div. of United Technologies Corp.,* 136 F.3d 273, 276 (2d Cir.1998); *accord Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48-51 (2d Cir.1991). Plaintiffs will be given one **final** opportunity to amend the Complaint by October 15, 2007.

**V. Conclusion and Order**

The Individual Defendants' joint motion [44] to dismiss the Complaint is granted without prejudice. Plaintiffs' final amended complaint must be served and filed no later than October 15, 2007.

Counsel are requested to appear at a status/scheduling conference with the Court on October 19, 2007, 2007, at 10:30 a.m., in Courtroom 14A, 500 Pearl Street, New York, New York. **The Court directs the parties to engage in good faith settlement negotiations prior to the conference with the Court.**

FN1. In a Decision and Order, dated August 14, 2006, "seven related securities fraud actions filed against Sea Containers" were consolidated pursuant to Federal Rule of Civil Procedure 42(a), "Beverlie Wissner [was] appointed lead plaintiff" pursuant to 15 U.S.C. §§ 78u-4(a)(3)(B), "and the Law Offices of Bernard M. Gross [was] appointed lead counsel" pursuant to 15 U.S.C. §§ 78u-4(a)(3) (B)(iv). (Decision and Order, dated Aug. 14, 2006.)

FN2. The action is stayed as to SCL which filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on October 14, 2006. (*See* Defendants' Memorandum of Law, dated December 20, 2006 ("Def.Mem."), at 1 n. 1.)

FN3. SCL also sold all of its shares in OEH common stock in registered public offerings in March and November of 2005. (Compl.¶¶ 49, 57, 78.) In their motion papers, the parties also refer to an "April 15, 2004 Registration Statement for $150 million of senior notes due 2014."(Pl. Mem. at 22; Def. Reply at 2 n. 2; Ex. O (draft Registration Statement).)

FN4. SCL had incurred smaller impairment charges earlier in the Class Period, including a $16 million impairment charge reflected on SCL's 2003 Form 10-K ($6 million of which related to refrigerated containers, Compl. ¶ 28), and a $2.9 million impairment charge reflected on SCL's 2004 Form 10-K relating to the discontinuance of the "Belfast-Troon" ferry service (Compl. ¶ 53). (See Pl. Mem. at 16.)

FN5. Plaintiffs withdrew the Securities Act Claims against Durant because he "did not sign any of the offering documents."(Pl. Mem. at 22 n. 13.) The Exchange Act Claims against Durant remain.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
(Cite as: --- F.Supp.2d ----)

FN6. The Individual Defendants do not move for the dismissal for lack of standing with respect to Count II alleging violations of Section 11 as to the "Debt Offerings." (*See* Def. Mem. at 10-12.)

FN7. Plaintiffs have withdrawn their Section 11 and Section 12(a) (2) Claims, but not their Section 10(b) Claim, against Durant. (Pl. Mem. at 22.) Because the Count I Section 11 Claim (relating to stock) and the Section 12(a)(2) Claim are dismissed on standing grounds, Plaintiffs have standing (only) with respect to the Count II Section 11 Claim (relating to the Notes) against Sherwood and O'Sullivan and with respect to the Section 10(b) Claim against Sherwood, O'Sullivan, and Durant.

FN8. According to the Individual Defendants, the "Plaintiffs fail to specify *what* facts should have triggered an impairment analysis *at what point* or otherwise allege with any specificity how SCL's financial disclosures were inaccurate. Plaintiffs offer no basis for their random assertion that SCL should have taken an impairment charge of 'at least approximately $50 million at the beginning of the Class Period.'"(*Id.* at 15 (citations omitted).)

FN9. However, as noted in Section IV.C.2, below, Plaintiffs have not pleaded adequately scienter with respect to the Accounting Error Restatement.

FN10. The Complaint's allegations regarding an $85 million container write-down are inadequate. The statements attributed to Confidential Source 5 are contingent ("SCL may have been overstating"), and fail, for example, to specify the amount by which the containers were overvalued, and at what times. (Compl.¶ 22(e).) The Complaint alleges that SCL's non-GE SeaCo. containers were overvalued by "at least $85 million during the Class Period" (Compl.¶ 102), but fails to specify the date of such overvaluation in relation to the Class Period. The Complaint

also alleges, in conclusory fashion, that SCL's assets were overstated by "at least approximately $50 million at the beginning of the Class Period" (Compl.¶ 95), but fails to distinguish between ferry and container assets or to state the basis for its valuation. *See, e.g., Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 522 (S.D.N.Y.1977) ("although it is alleged that [defendant-issuer's] 10-K forms overstated [its] accounts receivable for each of the calendar years from 1970 through 1975, defendants are also entitled to be apprised of the approximate amount of overstatement involved").

FN11. Moreover, beginning with its Form 10-K for 2004, dated March 31, 2005, SCL disclosed disputes with GE Capital over GE SeaCo. (Compl.¶ 54), and on May 10, 2005, disclosed that the disputes were being arbitrated (Compl.¶ 56).*See, e.g., In re BellSouth Corp. Secs. Litig.,* 355 F.Supp.2d 1350, 1366-67 (N.D.Ga.2005).

FN12. Certain of the Complaint's allegations ("that there was not an annual review process to 'feel the pulse' of the shipping container assets," and that "SCL did not have an annual nor quarterly inventory review process in place to physically inspect inventory" (Compl.¶ 22(e))), would appear to contradict Plaintiffs' scienter argument. *See also Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982) ( "section 10(b) was not designed to regulate corporate mismanagement").

FN13.*See also In re Tower Automotive Securities Litigation,* 483 F.Supp.2d 327, 340-41 (S.D.N.Y.2007); *Davidoff v. Farina,* 2005 WL 2030501, at *7, 14, 17 (S.D.N.Y. Aug. 22, 2005); *In re BellSouth Corp. Secs. Litig.,* 355 F.Supp.2d 1350, 1368-69, 1375-76 (N.D.Ga.2005); *In re Serologicals Secs. Litig.,* No. Civ.A.1:00-CV1025, 2003 WL 24033694, at *10 (N.D.Ga. Feb. 20, 2003).

FN14. Because the Complaint does not adequately plead (1) falsity or (2) scienter, the Court need not address the Individual Defendants' arguments contesting materiality and loss causation. See *Ato Ram,*

--- F.Supp.2d ----
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)
**(Cite as: --- F.Supp.2d ----)**

*II, Ltd. v. SMC Multimedia Corp.,* 2004 WL 744792, at *6 (S.D.N.Y. April 7, 2004) ("Because plaintiff did not adequately plead the element of scienter, I need not address defendants' other arguments concerning [plaintiff's] failure to plead the remaining elements with particularity.").

S.D.N.Y.,2007.
Caiafa v. Sea Containers Ltd.
--- F.Supp.2d ----, 2007 WL 2815633 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 6



**H**Geinko v. Padda
N.D.Ill.,2002.

United States District Court, N.D. Illinois, Eastern
Division.
Robert C. GEINKO, Mark Pugh, Steve Fagerman,
and Kenneth Janowski Plaintiffs,
v.
K. Shan PADDA, Steven L. Holden, John Reilly,
William D. Lautman, EGS Securities Corp., and
KPMG, LLP, Defendants.
**No. 00 C 5070.**

Feb. 27, 2002.

MEMORANDUM OPINION AND ORDER

COAR, District J.
   *1 This action arises from Plaintiffs' sale of their
business, Strategic Reimbursement Services, Inc.
("SRS"), to Sabratek Corporation ("Sabratek") for
allegedly overvalued shares of Sabratek stock (the
"SRS Transaction"). Plaintiffs sue Sabratek's highest-
ranking officers and directors, its investment banking
advisor on the SRS Transaction, and its principal
accounting firm alleging violations of the securities
laws as well as violations under Illinois state law.

   On September 28, 2001, this Court dismissed
without prejudice Plaintiffs' original complaint
against these defendants because of Plaintiffs' failure
to plead facts sufficient to give rise to a strong
inference of scienter under the Private Securities
Litigation Reform Act of 1995 ("PSLRA").*See
Geinko v. Padda,* No. 00 C 5070, 2001 WL 1163728,
at *1 (N.D.Ill. Sept. 28, 2001) (hereinafter "*Geinko I*
"). On November 5, 2001, Plaintiffs filed an
Amended Complaint and attached copies of the facts
alleged in three other independent actions in attempt
to cure their pleading deficiencies.[FN1]On December
13 and 14, 2001, all Defendants moved to dismiss the
Amended Complaint for lack of jurisdiction.
Defendants Padda, Holden, Reilly, Lautman, and
KPMG argue that Plaintiffs' Section 10(b) and Rule
10b-5 claims are time-barred, in the alternative that
the Amended Complaint is defective under Federal
Rule of Civil Procedure 8, and in the other
alternative, along with defendant EGS, that Plaintiffs
fail to state a claim under Federal Rule of Civil

Procedure 12(b)(6) based on the pleading
requirements of Fed.R.Civ.P. 9(b) and the PSLRA.
This Court now considers whether Plaintiffs'
Amended Complaint alleges sufficient facts to
withstand these motions to dismiss.

   FN1. These actions are: (1) a complaint filed
   by the Securities and Exchange
   Commission, No. 01 C 7463 (N.D.Ill.)
   (hereinafter the "SEC Complaint"); (2) a
   complaint filed by the class action plaintiffs
   in *Brisker, et. al. v. Padda, et. al.,* No. 00 C
   6186 (N.D.Ill.) (hereinafter the "Brisker
   Complaint"); and (3) a "Motion to Compel
   Arbitration of Purchase Price Dispute" that
   was filed by Baxter Healthcare Corporation,
   an unrelated third party, in a Delaware
   bankruptcy court (hereinafter the "Baxter
   Motion").

I. Background

   This Court herein incorporates the background
facts that it stated in its previous opinion, *Geinko I,*
2001 WL 1163728, at* 1-2. While the Amended
Complaint is 86 pages (which is 65 pages longer than
Plaintiffs' Original Complaint), and while Plaintiffs
attach over 300 pages of additional material, there are
few new facts that Plaintiffs directly allege
themselves. The Amended Complaint provides a
summary of the allegations in paragraphs 1-8.
Specifically these paragraphs summarize "The
Fraudulent Accounting Scheme" and the
"Defendants' Direct Misrepresentations." Plaintiffs
allege that "within weeks of the closing" the
fraudulent scheme and the defendants'
misrepresentations "began to be revealed." Plaintiffs
outline a time line that indicates when and to what
extent they received knowledge of the defendants'
fraud:
   • On or about late July or early August 1999,
Reilly informed Geinko and Plaintiffs' accountant
that KPMG's New York office wanted to restate
Sabratek's financial statements to correct the
improper capitalization of R & D expenses reported
as intangible assets in Sabratek's statements.
According to Reilly, KPMG's Chicago office, which
had audited Sabratek's financial statements and
consulted on the suspect R & D transactions, opposed

Not Reported in F.Supp.2d                                                                                              Page 2
Not Reported in F.Supp.2d, 2002 WL 276236 (N.D.Ill.), Fed. Sec. L. Rep. P 91,711
(Cite as: Not Reported in F.Supp.2d)

the restatement.

**\*2** • On or about August 2, 1999, Sabratek announced that its second-quarter 1999 earnings would be "significantly" below estimated but nonetheless further stated that an "extensive review of its accounting policies" would result in no change in prior periods' reported results. This announcement precipitated a sharp 30% one-day decline in Sabratek's share price to $14.46.

• On or about August 13, 1999, Sabratek announced a delay in the release of its second-quarter earnings "pending completion of a review with its independent auditors" (i.e., KPMG), precipitating a further one-day decline in Sabratek's share price of more than 36% to $6.97.

• On or about August 23, 1999, Sabratek announced plans for a restructuring and the further delay in its second-quarter earnings release, as well as the resignation of Padda. This announcement triggered a further 57% one-day decline in Sabratek's share price to $2.75.

• On October 7, 1999, "any remaining doubts concerning defendants' scheme to defraud plaintiffs were dispelled" by Sabratek's announcement that Sabratek's audited financial statements for the two years ended March 31, 1999 greatly overstated Sabratek's earnings and were materially misstated when issued. The proposed adjustment of approximately $39 million, restating as expenses amounts that had been improperly mischaracterized as assets, completely wiped out Sabratek's reported pre-tax earnings for the entire two-year period. In fact, the proposed adjustment was more than double (248%) Sabratek's reported pre-tax earnings for the two-year period. This announcement resulted in a further one-day decline in Sabratek's share price of more than 52% to $1.03.

• Based on Plaintiffs' further investigation and analysis, Plaintiffs learned that the material misstatements were even greater than what they announced on October 7, 1999. In total, as of December 31, 1998, the fraudulent scheme at Sabratek resulted in a $50-million overstatement in Sabratek's pre-tax earnings for the prior three years- or more than $35 million in undisclosed pre-tax losses compared to the approximately $15 million in pre-tax profits Sabratek had reported.

• After October 7, 1999, Sabratek was reduced to the status of a penny stock, its shares were delisted from trading on the NASDAQ, and Sabratek entered bankruptcy liquidation.

Paragraphs 9-10 identify the extraneous material

they attach to the Amended Complaint. Plaintiffs state: "[i]n addition to their own investigation, plaintiffs' allegations are based upon facts alleged by other public and private litigants ...." The actions whose allegations Plaintiffs refer to are the SEC and Brisker Complaints and the Baxter Motion.[FN2] Much of the Amended Complaint either sets out established rules of conduct [FN3] or lists facts and/or conclusions taken from the SEC and Brisker Complaints and the Baxter Motion.[FN4]

> FN2. Plaintiffs explain in Paragraph 11 that except where alleged, the underlying information relating to defendants' misconduct is not available to the Plaintiffs, and that it lies within the possession and control of defendants. Plaintiffs assert that they believe that substantial evidentiary support will exist for the allegations set forth in the Amended Complaint after they have a reasonable opportunity for discovery.

> FN3. Paragraphs 24-50 set out the required disclosures under the Securities Exchange Act of 1934 as well as the general accepted accounting principles ("GAAP") and the general accepted auditing standards ("GAAS"), and paragraphs 62-63 further reiterate GAAP principles.

> FN4. For example, paragraphs 55-61 list the facts alleged in the SEC Complaint and paragraphs 64-80 outline the facts alleged in the SEC Complaint and identifies *red flags* from these facts that were alleged in the SEC Complaint. Similarly, paragraphs 94-101 list "additional allegations" taken from the Baxter Motion and paragraphs 108-109, 111, 113-114, 117, and 121 list allegations in the Brisker Complaint. Further, other paragraphs in the Amended Complaint do not directly cite to these third-party actions, but they indirectly refer to them by citing to the paragraphs in the Amended Complaint that *do* directly cite to the third-party actions. *See e.g.,* ¶¶ 138, 141, and 144.

## II. Discussion

A complaint fails to state a claim upon which relief can be granted, *see* Fed.R.Civ.P. 12(b)(6), only if "it appears beyond doubt that the plaintiff can

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 276236 (N.D.Ill.), Fed. Sec. L. Rep. P 91,711
(Cite as: Not Reported in F.Supp.2d)

prove no set of facts in support of his claim which would entitle him to relief."*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). The plaintiff gets the benefit of the doubt with ambiguities and inferences. Also, the Court treats well-pleaded facts as true for purposes of the motion. *See, e.g., Chu v. Sabratek Corp.,* 100 F.Supp.2d 815 (N.D.Ill.2000) ("Chu I"). In fraud cases, though, Federal Rule of Civil Procedure 9(b) requires plaintiffs to state "with particularity" the circumstances constituting the fraud. *See*Fed.R.Civ.P. 9(b). In Seventh Circuit vernacular, this means that plaintiffs must plead facts related to the "who, what, when, where, how" of the fraud. *See DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1996). The PSLRA further requires plaintiffs to "specify each statement alleged to have been misleading, [and] the reason why the statement is misleading."15 U.S.C. § 78u-4(b)(1).

### A.

*3 As a preliminary matter, several of the defendants argue that the Amended Complaint should be dismissed on procedural grounds. First, defendants argue that the Amended Complaint violates Fed.R.Civ.P. 8(a) and (e). Specifically, defendants Padda, Holden, Reilly, and KPMG argue that the Amended Complaint does not contain a short and plain statement of the claim and that each averment is not simple, concise, and direct, as the rule requires. Second, defendants Padda, Holden, Reilly, and KPMG argue that Plaintiffs' section 10(b) claim is time barred.

### 1. Fed.R.Civ.P. 8

Under Rule 8, a complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is."*Vicom, Inc. v. Harbridge Merchant Servs. Inc.,* 20 F.3d 771, 776 (7th Cir.1994). Defendants argue that because the Amended Complaint is 86 pages, because it is replete with allegations made by third parties in other allegations, and because Plaintiffs also attach copies of these third party actions that consist of approximately 300 additional pages, the Amended Complaint violates Rule 8. Plaintiffs, on the other hand, argue that established jurisprudence allows them to attach copies of the complaints filed in other actions and that the Amended Complaint does not violate Rule 8 because it is well organized and it is not inordinately lengthy given that their Amended Complaint alleges a massive fraudulent scheme involving many defendants.

For support, Plaintiffs cite to *Davis v. Ruby Foods, Inc.,* 269 F.3d 818, 820 (7th Cir.2001), in which the Seventh Circuit held that a district court is not authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter and that "it is an abuse of discretion ... to dismiss a complaint merely because of the presence of superfluous matter."As defendants point out, however, the complaint in *Davis* was a 20-page *pro se* sexual harassment complaint and the Seventh Circuit expressly recognized that its general rule had exceptions. *Id.* Two exceptions that the *Davis* court cited were *In re Westinghouse Securities Litigation,* 90 F.3d 696 (3d Cir.1996), which was a 240-page, 600-paragraph securities class action complaint, and *Michaelis v. Nebraska State Bar Ass'n,* 717 F.2d 437 (8th Cir.1983), which was a 98-page, 144-paragraph civil rights complaint.

This Court notes that there is some tension between the particularity requirements of pleading fraud under the PSLRA and 9(b) and Rule 8, but that these particularity demands do not negate the commands of Rule 8. *See Vicom,* 20 F.3d at 776. That being said, this Court does not believe that the Amended Complaint in this case is "prolix and confusing." While Plaintiffs may have attached superfluous and irrelevant matter to their Amended Complaint, *see* Section II.B. *infra,* and while some of the paragraphs serve as background rather than allegations, the Amended Complaint is not an unwieldy, "puzzle-style" complaint. Rather, the Amended Complaint is well organized and Plaintiffs clearly delineate the charges they allege against each individual defendant. This Court therefore declines to dismiss the Amended Complaint on this ground.

### 2. Statue of Limitations for Section 10b Claims

*4 Defendants also move to dismiss the Amended Complaint on grounds that Plaintiffs' Section 10(b) claim is time barred. An action under Section 10(b) must be filed "within one year after the discovery of the facts constituting the violation."*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilberston,* 501 U.S. 350, 364 (1991). "Discovery" occurs, and the applicable one-year period begins to run, when the potential plaintiff is put on "inquiry notice." *Fujisawa Pharmaceutical Co. v. Kapoor,* 115 F.3d 1332, 1334 (7th Cir.1997). Inquiry notice

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                            Page 4
Not Reported in F.Supp.2d, 2002 WL 276236 (N.D.Ill.), Fed. Sec. L. Rep. P 91,711
(Cite as: Not Reported in F.Supp.2d)

requires only that plaintiff have enough facts to prompt a reasonable person to begin investigating. *Kauthar SDV DHD v. Sternberg,* 149 F.3d 659, 670 (7th Cir.1998). Whether a plaintiff had sufficient facts to put him on inquiry notice of a securities fraud claim under 10b-5, however, is a question of fact and it therefore is often inappropriate for resolution on a motion to dismiss. *Marks v. CDW Computer Cntrs., Inc.,* 122 F.3d 363, 367 (7th Cir.1997).

This action was filed on August 18, 2000, and Defendants argue that Plaintiffs were on inquiry notice prior to August 18, 1999. First, on June 7, 1999, the *Chu*[FN5] Amended Complaint was filed, of which Plaintiffs admit they were aware at the time it was filed. Defendants argue that while the *Chu* Amended Complaint by itself would have prompted any reasonable person to conduct further inquiry, there are even more facts that put Plaintiffs on inquiry notice more than a year before they filed this action. These facts are: Sabratek's announcement on August 2, 1999 that its second-quarter 1999 earnings would be significantly below estimates; Sabratek's announcement on August 13, 1999 that there would be a delay in the release of its second-quarter earnings "pending completion of [a] review with its independent auditors ...."; Sabratek's stock price dropping in this period from approximately $20.66 to $6.97 a share, despite Padda's alleged mid-June 1999 statement that the stock would soon be trading at $40 per share; and "in late July or early August 1999," plaintiff Geinko was told by a Sabratek officer that KPMG's New York office "demanded" a restatement of Sabratek's financial statements to correct the "improper" capitalization of R & D expenses. Based on these facts, Defendants believe that Plaintiffs were on inquiry notice more than a year before August 18, 2000, when they filed their original complaint.

FN5.*Chu v. Sabratek,* 100 F.Supp.2d 827, 838 (N.D.Ill.2000).

Plaintiffs, on the other hand, argue that although they were aware of the delay in the release of the financials and a dispute between KPMG's New York and Chicago offices, "the significance of these matters was not 'confirmed or substantiated' until October 7, 1999, when Sabratek announced that it intended to restate approximately $39 million in assets as expenses."Plaintiffs further argue that even if the July and August facts to which Defendants refer somehow aroused Plaintiffs' suspicions, Plaintiffs were not in a position to acquire the

necessary facts to state a meritorious claim within the confines of Rule 11.

*5 While a close call, this Court finds that Defendants have not met their burden of showing that the allegations in the Amended Complaint conclusively demonstrate that Plaintiffs were on inquiry notice prior to August 18, 1999. With respect to the *Chu* Amended Complaint, Defendants point out that Plaintiffs were aware of it when it was filed, but they neglect also to point out that Plaintiffs allegedly were told at least twice that there was no merit to the facts alleged in the *Chu* Amended Complaint; once in a conference call sometime between June 15 and 20 and again through a press release on June 21, 1999. *See* Am. Compl. ¶¶ 147(a), 148, and 159. Further, in that same press release, Plaintiffs similarly were reassured that the financial statements were prepared in accordance of GAAP, and defendant Padda stated, "We stand by those financial statements."Am. Compl. ¶ 148. Finally, an additional significant event occurred on or about August 23, 1999, when Sabratek announced plans for a restructuring, a further delay in its second-quarter earnings release, and the resignation of Padda. This announcement triggered a further 57% one-day decline in Sabratek's share price to $2.75. The facts to which Defendants point as putting Plaintiffs on inquiry notice must be examined in context. Thus, while inquiry notice may begin before a plaintiff is in possession of all facts sufficient to file a complaint immediately, *see Fujisawa,* 115 F.3d at 1336, in this case, given the sequence of events and the discussion among the parties, it is not clear that Plaintiffs were on inquiry notice prior to August 18, 1999. This Court, therefore, declines to dismiss the Amended Complaint on this ground.

B.

Like the original complaint, Count I of the Amended Complaint alleges securities fraud in direct violation of Section 10b of the Securities Exchange Act and Rule 10b-5 [FN6]. The elements of a Section 10(b) claim are: (1) knowing or recklessly indifferent (2) misstatement or omission, (3) of material fact (4), in connection with the purchase or sale of securities, (5) upon which plaintiff has relied and (6) to the plaintiff's detriment. *E.g., In re HealthCare Compare Corp.,* 75 F.3d 276, 280 (7th Cir.1996). As with the original complaint, all of the defendants challenge the Amended Complaint for failing to allege any misstatements with sufficient particularity under Rule

Not Reported in F.Supp.2d                                                                          Page 5
Not Reported in F.Supp.2d, 2002 WL 276236 (N.D.Ill.), Fed. Sec. L. Rep. P 91,711
(Cite as: Not Reported in F.Supp.2d)

9b, and for failing to allege scienter under the PSLRA.

> FN6. Count I is a threshold claim because before plaintiffs can state a claim under Section 20(a) of the Securities Exchange Act for "control person liability" (Count II), they must make sufficient allegations of a primary violation under Section 19(b) and 10b-5. *See Geinko I,* 2001 WL 1163728, at *9. Further, Counts III-V are state-law claims and are entertained only if the federal claims to which they are pendant survive.*Id.*

When this Court dismissed Plaintiffs' original complaint, this Court stated that "[i]f, like the plaintiffs in *Chu,* plaintiffs are able to plead more specific facts, including 'red flags' ... such additional facts would likely mean the survival of their complaint."*Geinko I,* 2001 WL 1163728, at *9 n. 8. The Amended Complaint now contains 223 paragraphs and 86 pages (which is 65 pages longer than Plaintiffs' Original Complaint), and Plaintiffs attach over 300 pages of additional material. Defendants, however, argue that by attaching the SEC Complaint, the Brisker Complaint, and the Baxter Motion, that Plaintiffs attempt to piggyback on contested allegations made by third parties in independent actions rather than plead, as this Court instructed, more specific facts as their own allegations. More importantly, by simply attaching complaints filed in other cases, Plaintiffs sidestep the requirements of Rule 11. Accordingly, defendants argue that these imported allegations are improper and should be ignored.[FN7]Thus, the threshold issue before this Court is whether Plaintiffs, in order to allege sufficient facts that provide a basis of scienter, may recite alleged facts extrapolated from other actions against some of the same defendants.

> FN7. Even though this Court found that the Amended Complaint does not violate Rule 8, it still can ignore superfluous or improper matter that do not amount to allegations.

*6  Plaintiffs argue that "established jurisprudence" allows them to refer to and attach copies of these independent actions, and they cite *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.1982) and *In re Livent, Inc. Sec. Litig.,* 78 F.Supp.2d 194, 216 (S.D.N.Y.1999) for support. These cases, however, hardly support Plaintiffs' proposition. In *Lewis,* the Third Circuit held that reliance on information

printed in the *Wall Street Journal* was sufficient to satisfy the certification requirement of Fed.R.Civ.P. 23.1, because "[r]eliance on an article in the *Wall Street Journal* is not reliance on an insubstantial or meaningless investigation" and "plaintiffs and their attorneys need not make further expenditures to prove independently that which may be read with some confidence of truthfulness and accuracy in a respected financial journal."671 F.2d at 788. *Lewis,* however, dealt with Fed.R.Civ.P. 23.1, and not with Rule 11, which conveys a non-delegable duty upon the signing attorney to conduct his own independent analysis of the facts and law which form the basis of a pleading or motion. *See Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 125-127 (1989). In light of the Supreme Court's ruling in *Pavelic,* if the signing attorney cannot rely on the analysis of a member of his law firm to have ascertained the facts, it is a non sequitur that he somehow can rely on the analysis of attorneys in *different actions* and who are presumably from different law firms.

*In re Livent* similarly is inapposite. Plaintiffs rely on that case because it contains the following paragraph: "It is also apparent that much of the Complaint is culled from Livent's SEC filings and the SEC complaint in the separate civil action against several of the Individual Defendants. These sources, and others, are acknowledged in Paragraph 211 of the Complaint, which sufficiently alleges Plaintiffs' sources of information."*In re Livent,* 78 F.Supp.2d at 216. As defendant KPMG points out, however, in *In re Livent,* the defendants apparently argued only that the plaintiffs had failed to identify adequately the source for the allegations *that were pleaded* in the complaint. The pervasive defect in the Amended Complaint in this case, however, is that it does not make clear what Plaintiffs directly allege as fact, and what Plaintiffs merely are asserting that someone else has alleged. In other words, Plaintiffs' attorneys cannot shirk their Rule 11 obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances by merely stating that "the SEC alleges" certain additional facts.[FN8]

> FN8. Significantly, Plaintiffs do not allege any of these facts as their own. The Amended Complaint refers to the SEC Complaint more than 70 times, the Brisker Complaint 13 times, and the Baxter Motion (or its exhibits) 9 times. Plaintiffs do not attest to independently examining the

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 276236 (N.D.Ill.), Fed. Sec. L. Rep. P 91,711
(Cite as: Not Reported in F.Supp.2d)

materials underlying these third-party allegations; they did not contact the attorneys for the plaintiffs in these actions or the witnesses quoted. As defendant KPMG points out, if this Court were to accept Plaintiffs' view of pleading fraud, two plaintiffs could file separate actions each relying on the allegations in the other's complaint and both would state a claim for fraud. Clearly, Rule 11's requirements do not allow this type of pleading loophole.

In *Geinko I*, this Court noted that in their original complaint, Plaintiffs had gone so far "as to compare their complaint to the complaint in *Chu* and suggest that since Judge Castillo found scienter as to certain defendants there, this Court ought to find that the plaintiffs here have adequately plead scienter."*Geinko I, 2001 WL 1163728, at \*5*. With their Amended Complaint, Plaintiffs have not done better. Essentially, in response to this Court's request that Plaintiffs plead more specific facts, and that they allege "red flags" similar to those alleged in *Chu*, Plaintiffs merely have recited facts from other actions, attached copies of those actions, and asserted that red flags emerge from those facts. Clearly, this is not enough; the hearsay allegations [FN9] that Plaintiffs offer in their Amended Complaint are improper, and therefore superfluous, and they will not be considered. This Court gives Plaintiffs 14 days to amend their complaint an additional time in conformance of Rule 11. This Court notes, however, that Plaintiffs must do more than merely include the words, "based on information and belief," because alleging fraud on information and belief is insufficient. *See Bankers Trust Co. v. Old Republic Ins. Co., 959 F.2d 677, 683-84 (7th Cir.1992)*. While the duty to plead with particularity is relaxed in cases where facts indicating "circumstances constituting fraud" are inaccessible to plaintiff, *id.*, in this case Plaintiffs would need to explain clearly (rather than just conclusively state) why this is the case and cite adequate case law in support.[FN10] If Plaintiffs fail to amend their complaint satisfactorily within the 14 days, this action will be dismissed with prejudice because the remaining facts in the Amended Complaint do not cure the pleading deficiencies that this Court identified in *Geinko I*..

FN9. For support that these are hearsay allegations, defendant Padda cites *SSDD Enters., Inc. v. Village of Lansing, No. 95 C 6064, 1996 WL 238931, at \*2 n. 7 (N.D.Ill.*

May 3, 1996), in which the court held that allegations from newspaper articles are hearsay and were made on information and belief, which the court then disregarded as violating Rule 11. In this case, while Plaintiffs do not take facts from newspapers but from other complaints in which arguably Rule 11 applied, it is still hearsay because Rule 11 imposes a non-delegable duty upon the signing attorney to conduct his own independent analysis. *See Pavelic, 493 U.S. at 125-127.*

FN10. For example, Plaintiffs baldly assert that it was appropriate for them to rely upon and submit the third-party actions because they do not have the resources of the SEC or of the class action plaintiffs' counsel.

### III. Conclusion

\*7 For the reasons stated herein, this Court GRANTS the defendants motions on pleading grounds, but grants Plaintiffs 14-days leave to amend their complaint to conform to the requirements of Rule 11. If Plaintiffs fail to amend their complaint satisfactorily within the 14 days, this action will be dismissed with prejudice and without further notice.

N.D.Ill.,2002.
Geinko v. Padda
Not Reported in F.Supp.2d, 2002 WL 276236 (N.D.Ill.), Fed. Sec. L. Rep. P 91,711

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 7

Westlaw.

Slip Copy                                                                                          Page 1
Slip Copy, 2007 WL 4232778 (E.D.N.Y.), RICO Bus.Disp.Guide 11,412
**(Cite as: Slip Copy)**

Gristede's Foods, Inc. v. Unkechauge Nation
E.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
GRISTEDE'S FOODS, INC., Plaintiff,
v.
UNKECHAUGE NATION a/k/a Unkechauge
Poospatuck Tribe; Harry Wallace; Poospatuck Smoke
Shop and Trading Post; the Shinnecock Tribe, a/k/a
the Shinnecock Indian Nation; Randall King; James
W. Eleazer, Jr.; Lance A. Gumbs; Shinnecock Ltd.;
and John Does 1 through 100, Defendants.
No. 06-CV-1260 (CBA).

Nov. 28, 2007.

Howard Kleinhendler, William B. Wachtel, Wachtel
& Masyr, LLP, New York, NY, for Plaintiff.
James Simermeyer, New York, NY, Robert J.
Kipnees, John Albert Fialcowitz, Lowenstein Sandler
PC, Roseland, NJ, William C. Cagney, Windels Marx
Lane & Mittendorf LLP, New Brunswick, NJ, B.
Benjamin Fenner, Monteau & Pebbles, LLP, Omaha,
NE, for Defendants.

MEMORANDUM AND ORDER

AMON, District Judge.
    *1 Plaintiff Gristede's Foods, Inc. ("Gristede's")
has filed suit against the Unkechauge Nation, a/k/a
Unkechauge Poospatuck Tribe (the "Unkechauge"),
Lance A. Gumbs, and the Poospatuck Smoke Shop
and Trading Post (collectively, the "Unkechauge
defendants"), as well as the Shinnecock Tribe, a/k/a
the Shinnecock Indian Nation (the "Shinnecock"),
Harry Wallace, Randall King, James W. Eleazer, Jr.,
and Shinnecock, Ltd. (collectively, the "Shinnecock
defendants"). Plaintiff alleges that the defendants
have engaged in the unauthorized sale of untaxed
cigarettes to non-tribe members through smoke
shops, over the internet, and through telemarketing
and print ads, and that the defendants have "created,
fostered and nourished a thriving black market in
illegally discounted cigarette sales."(Pl.'s Br. at 1.)
The complaint alleges three federal law claims for
relief and four state law claims for relief. It alleges
two claims for civil violations of 18 U.S.C. §§
1962(a), (b), (c), and (d), the Racketeering Influence
and Corrupt Organizations Act ("RICO"), one against

the Unkechauge defendants, and one against the
Shinnecock defendants. The complaint also alleges,
against all defendants, one claim of false advertising
in violation of the Lanham Act, 15 U.S.C. § 1125(a);
two claims for violations of New York statutes
prohibiting false advertising and deceptive trade
practices, New York General Business Law §§ 349
and 350; a claim for common law unfair competition;
and a claim for common law unjust enrichment. The
defendants have moved to dismiss all claims pursuant
to Rule 12(b)(6) of the Federal Rules of Civil
Procedure. For the reasons set forth below,
defendants' motions are granted in part and denied in
part.

**I. Standard of Review**

    Under Rule 12(b)(6), a complaint may be
dismissed "for failure of the pleading to state a claim
upon which relief can be granted."Fed.R.Civ.P.
12(b)(6). Although "a complaint attacked by a Rule
12(b)(6) motion to dismiss does not need detailed
factual allegations, a plaintiff's obligation to provide
the grounds of his entitlement to relief requires more
than labels and conclusions, and a formulaic
recitation of the elements of a cause of action will not
do.... Factual allegations must be enough to raise a
right to relief above the speculative level ... on the
assumption that all the allegations in the complaint
are true (even if doubtful in fact)."Bell Atl. Corp. v.
Twombly, --- U.S. ----, ---- - ----, 127 S.Ct. 1955,
1965-66, 167 L.Ed.2d 929 (2007) (internal citations
and quotations omitted). Thus, in order to survive a
motion to dismiss, a complaint must contain "enough
fact to raise a reasonable expectation that discovery
will reveal evidence" that the alleged violation of law
took place. Id. at 1965.The Second Circuit has
interpreted Twombly to require "a flexible
'plausibility standard,' which obliges a pleader to
amplify a claim with some factual allegations in
those contexts where such amplification is needed to
render the claim plausible."Iqbal v. Hasty, 490 F.3d
143, 157-58 (2d Cir.2007) (emphasis in original).

    *2 When determining the sufficiency of a
pleading for Rule 12(b)(6) purposes, "consideration
is limited to the factual allegations in plaintiffs' [ ]
complaint, which are accepted as true, to documents
attached to the complaint as an exhibit or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."*Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993) (citations omitted). The Court will draw all reasonable inferences in the plaintiff's favor.*Chambers v. Time Warner Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

## II. Discussion

### A. Plaintiff is Granted Leave to Amend the Complaint

The Unkechauge argue that the case against it should be dismissed because they have not been properly named by Gristede's. New York State Indian Law §§ 150-153 specifically names the Unkechauge people as the "Poospatuck (Unkechauge) Indian Nation" or the "Poospatuck Indian tribe." However, the tribe is referenced in the complaint as "the Unkechauge Nation, a/k/a Unkechauge Poospatuck Tribe."In addition, the Unkechauge defendants argue that the "Poospatuck Smoke Shop and Trading Post" "does not exist" as "no such entity is registered with the New York Department of State or filed with the Suffolk County Clerk as a DBA, partnership or sole proprietorship."(Unkechauge Def.'s Br. at 3-4, 6.) Similarly, the Shinnecock defendants allege that "Shinnecock Ltd." is a non-existent entity because it is not registered with the New York Department of State. (Shinnecock Def.'s Br. at 20-21.)

According to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend the complaint "shall be freely given when justice so requires."Fed.R.Civ.P. 15(a). Furthermore, an amended pleading that "changes the party or the naming of the party" against whom a claim is asserted will "relate back" to the date of the original pleading when the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original complaint, and the party received notice of the action within the period provided by Rule 4(m) for service of the summons. Fed Rule Civ. P. 15(c)(3). The Court grants the Gristede's leave to amend the complaint to properly name the Unkechauge defendants, as there is no dispute that the proper defendants received actual notice of this action prior to the expiration of the initial 120-day period for service under Rule 4(m).

In addition, the Court finds that registration with the New York Department of State is not dispositive of whether "Poospatuck Smoke Shop and Trading Post" and "Shinnecock Ltd." are suable entities. The Court declines to dismiss plaintiff's claims against these defendants on this ground.

### B. RICO Claims

The RICO statute makes it unlawful for any person to: (a) use or invest income from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; (b) acquire or maintain an interest in an enterprise through a pattern of racketeering activity; (c) conduct or participate in the affairs of an enterprise through a pattern of racketeering activity; or (d) conspire to do any of the above. 18 U.S.C. §§ 1962(a)-(d).Section 1964(c) creates a private civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962."*Id.*§ 1964(c).

*3 In order to demonstrate standing under the RICO statute, a plaintiff must plead and ultimately prove "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."*De Falco v. Bernas,* 244 F.3d 286, 305 (2d Cir.2001) (quoting *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101 F.3d 900, 904 (2d Cir.1996)); *accord Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 120 (2d Cir.2003). Because a civil RICO plaintiff must plead that his injuries were caused "by reason of" the defendant's RICO violation, 18 U.S.C. § 1964(c), a civil RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."*Ouaknine v. MacFarlane,* 897 F.2d 75, 83 (2d Cir.1990) (quoting *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)) (emphasis omitted). Furthermore, there must be a "direct relation between the injury asserted and the injurious conduct alleged."*Anza v. Ideal Steel Supply Corp.,* --- U.S. --- -, 126 S.Ct. 1991, 1996, 164 L.Ed.2d 720 (2006)("*Anza*" ) (citing *Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)).

### 1. Plaintiff's RICO Section 1962(c) Claim

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                 Page 3
Slip Copy, 2007 WL 4232778 (E.D.N.Y.), RICO Bus.Disp.Guide 11,412
**(Cite as: Slip Copy)**

RICO Section 1962(c) prohibits conducting or participating in the affairs of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). As discussed above, a plaintiff must allege that the conduct constituting a RICO violation caused injury to the plaintiff's business or property. The compensable injury flowing from a violation of section 1962(c)"necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise."*Sedima, 473 U.S. at 497;see also Quaknine, 897 F.2d at 83.* A plaintiff, therefore, must plausibly allege that the predicate acts themselves are the proximate cause of its injury. *See Anza, 126 S.Ct. at 1996-97.* Analysis of causation under Section 1962(c) is controlled by the Supreme Court's decision in *Anza v. Ideal Steel Supply Corp* . 126 U.S.1991 (2006), which found that the connection between defendant's alleged tax fraud and competitor's lost sales was too attenuated to allow a competitor to maintain civil suit for section 1962(c) violations, as the claim failed to meet Section 1964(c)'s requirement for a "direct causal connection" between the alleged injury and the defendant's conduct.[FN1]*See also Globe Wholesale Tobacco Distrib. v. Worldwide Wholesale,* No. 06 Civ. 2865, 2007 WL 2826630, at *4 (S.D.N.Y. September 29, 2007) ("The Section 1962(c) causation analysis is controlled by *Anza.* " ).

> FN1. The facts of *Anza* are similar to the instant case and therefore are instructive. In *Anza,* the plaintiff and defendant conducted competing businesses selling steel mill products and related supplies and services. 126 S.Ct. at 1994. Plaintiff alleged that defendant adopted a practice of not charging New York State sales tax to cash-paying customers, which allowed defendant to reduce its prices without affecting its profits. *Id.* Plaintiff brought suit under RICO § 1962(c), alleging that defendant's practices gave it an illegal, competitive advantage in the market. *Id.* at 1995.

In the instant case, plaintiff asserts that defendants sell tax-free cigarettes through a pattern racketeering activity that involves predicate acts of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, as well as violations of 18 U.S.C. § 2342 (the Contraband Cigarette Trafficking Act), and 18 U.S.C. § 2320

("Trafficking in Counterfeit goods or services"). Plaintiff claims that it has been harmed because its stores "sell cigarettes at prices that include all applicable State and local excise taxes," while defendants' illegal sales of untaxed cigarettes "have given [them] an unfair competitive advantage over the Plaintiff which must sell cigarettes at substantially higher prices."(Compl.¶¶ 5, 35.) Thus, plaintiff asserts that it has "lost in excess of $20 million in cigarette sales."(*Id.* ¶ 35.)

*4 The connection between plaintiff's injury and the defendants' alleged RICO violations is too "attenuated" to sustain a civil RICO claim. In this case, the RICO violation alleged by the plaintiff is that defendants sell tax-free, and therefore discounted, cigarettes through a pattern racketeering. The direct victim of the defendants' conduct is the State of New York, who is allegedly losing tax revenue on illegally untaxed cigarettes, or perhaps the purchasers of those cigarettes, who erroneously believe that they need not pay taxes on the cigarettes. The plaintiff in this case, as in *Anza,* is not a direct victim of this conduct. *See Anza,* 126 S.Ct. at 1997 ("It was the State being defrauded and the State that lost tax revenue as a result.") Although the plaintiff in this case asserts that it has suffered its own harms by the defendants' alleged failure to charge customers applicable taxes, "[t]he cause of [the plaintiff's] asserted harms ... is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)."*Id; see also Globe Wholesale Tobacco Distrib.,* 2007 WL 2826630, at *4 (dismissing plaintiff's 1962(c) claim because "[p]laintiff's alleged harm was caused by a set of actions (offering lower prices) distinct from the alleged RICO violation (transporting counterfeit tax stamps and distributing contraband cigarettes)").

As the Supreme Court has explained, "[t]his conclusion is confirmed by considering the directness requirement's underlying premises."*Anza,* 126 S.Ct. at 1997. One of the reasons informing the proximate cause requirement is that difficulties may arise when courts attempt to ascertain the damages caused by some remote action. *Holmes,* 503 U.S. at 269 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors.") Here, as in *Anza,* the injury plaintiff alleges is its own loss of sales resulting from defendants' decreased prices. However, ascertaining how much of the plaintiff's lost profits are

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                              Page 4
Slip Copy, 2007 WL 4232778 (E.D.N.Y.), RICO Bus.Disp.Guide 11,412
(Cite as: Slip Copy)

attributable to the defendants' alleged RICO activities would be a highly complex matter. As the Court in *Anza* noted, "businesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of [the plaintiff's] lost sales were the product of [the defendant's] decreased prices."*126 S.Ct at 1997.*

The Court finds unpersuasive plaintiff's argument that it has suffered a more direct injury than the plaintiff in *Anza.*Indeed, the correlation between defendants' lower prices and plaintiff's lost profits would likely have been easier to ascertain in *Anza* than in the instant case. In *Anza,* the plaintiff and defendant were one another's "principal competitor." *Id.* at 1994.By contrast, the plaintiff and defendants in this case are not direct competitors; the defendants do not operate grocery stores in the New York City metropolitan area. In addition, to the degree that plaintiff and defendant are competitors, the plaintiff is one of many proprietors affected by the defendants' alleged actions. *See Globe Wholesale Tobacco Distrib., 2007 WL 2826630, at *5* (rejecting plaintiff's attempt to distinguish *Anza* and noting that the harm suffered by plaintiff was remote, in part because "plaintiff is one of many competitors harmed by defendants' lower prices").

*5 Plaintiff also claims that, because of the defendants' actions, many more cigarettes are sold in New York than would be otherwise. In particular, plaintiff claims that defendants sell to underage purchasers and make cigarettes "more affordable and therefore more available, thereby promoting increased smoking."(Pl.'s Br. at 36-37 (citing Compl. at ¶¶ 31, 33).) Thus, another complicating factor would be ascertaining to what extent defendants are causing the plaintiff to lose business, as opposed to creating new business. The Supreme Court explained in *Anza:*

A court considering the claim would need to begin by calculating the portion of [the defendants'] price drop attributable to the alleged pattern of racketeering activity. It next would have to calculate the portion of [the plaintiff's] lost sales attributable to the relevant part of the price drop. The element of proximate causation recognized in *Holmes [v. Securities Investor Protection Corp.]* is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation. It has particular resonance when applied to claims brought by economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust

laws.

> *126 S.Ct. at 1998.*

In addition, as the *Anza* Court further observed, "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims."*Id .* Here, the direct victim of the RICO violations is the State of New York, who has allegedly been defrauded of substantial tax revenues. If the allegations are true, the State may pursue appropriate remedies. Furthermore, determining the extent of the State's damages is far easier than determining the plaintiff's damages. "[W]hile it may be difficult to determine facts such as the number of sales [the plaintiff] lost due to [the defendants'] tax practices, it is considerably easier to make the initial calculation of how much tax revenue the [defendants] withheld from the State." *Id.*

In short, *Anza* teaches that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."*Id.* Here, as in *Anza,* the answer is no. Because the plaintiff has failed to satisfy the proximate cause requirement articulated in *Holmes* and reaffirmed in *Anza,* it does not have standing to pursue its section 1962(c) claims.

**2. Plaintiff's RICO Section 1962(a) and Section 1962(b) Claims**

In contrast to section 1962(c), which prohibits conducting or participating in the affairs of an enterprise through racketeering activity, section 1962(a) prohibits investing income from a pattern of racketeering activity in an enterprise. 18 U.S.C. § 1962(a)."[T]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income."*Quaknine, 897 F.2d at 83.* "Accordingly, to state a claim under 1962(a), a plaintiff must allege an injury resulting from the defendant's investment of racketeering income in an enterprise (i.e., an 'investment injury'), separate and apart from any injury caused by the predicate acts themselves."*OSRecovery, Inc. v. One Groupe Int'l., Inc., 354 F.Supp.2d 357, 371 (S.D.N.Y.2005)* (citing *Quaknine, 897 F.2d at 83;Stolow v. Greg Manning Auctions, Inc., 258 F.Supp.2d 236, 245-46*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(S.D.N.Y.2003)). Moreover, allegations that a RICO enterprise simply reinvested racketeering proceedings back into its own activities, on their own, are insufficient to maintain a claim under § 1962(a); in that situation, "the plaintiff's injuries derive proximately not from the investment but rather from the predicate acts themselves."*Allstate Insurance Co. v. Seigel*, 312 F.Supp.2d 260, 271 (D.Conn.2004); *see also Falise v. American Tobacco Co.*, 94 F.Supp.2d 316, 348-350 (E.D.N.Y.2000) ("Where reinvestment of racketeering proceeds back into the same RICO enterprise is alleged, the injuries stem proximately not from the investment, but from the predicate acts that make up the racketeering activity."); *Leung v. Law*, 387 F.Supp.2d 105, 120-21 (E.D.N.Y.2005) (finding that plaintiff lacked standing to sue under 1962(a) because the complaint did not "explicitly allege[ ] that the asserted reinvestment of the stolen funds caused a distinct injury to [the plaintiff]" or otherwise "present an injury distinguishable from the original theft") (citing *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063 (2d Cir.1996), *vacated on other grounds*,525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998)); *Allen v. New World Coffee, Inc.*, No. 00 Civ. 2610, 2002 WL 432685, at *2-3 (S.D.N.Y. March 19, 2002) (noting " § 1962(a) aims at punishing not the predicate offenses but the investment of the ill-gotten gains of the predicate offenses" and finding that plaintiff failed to allege an injury distinct from the predicate activity).

*6 Similarly, section 1962(b) prohibits the acquisition or maintenance of an interest in an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(b)."[T]o state a claim under Section 1962(b), a plaintiff must allege that he suffered an injury resulting from the defendant's acquisition or maintenance of its interest (*i.e.,* an 'acquisition or maintenance injury'), as distinct from an injury caused by the predicate acts alone."*OSRecovery*, 354 F.Supp.2d at 371-72 (citing *Discon*, 93 F.3d at 1062-63;*Stolow*, 258 F.Supp.2d at 246).

With respect to its section 1962(a) claims, the plaintiff asserts that the defendants "have taken the income derived from their racketeering activity to unlawfully and unfairly compete with Plaintiffs by using the funds to improve their in-store sales activity, Internet sales, telephone sales and sales to black market resellers, thereby sharply reducing the Plaintiff's revenue from cigarette sales."(Complaint ¶¶ 44, 58.) In essence, the complaint states that the defendants are competing with the plaintiffs by selling tax-free cigarettes. However, that is precisely the injury that is alleged to have been caused by the predicate acts, and which forms the basis of the plaintiff's section 1962(c) claims. Thus, the complaint does not state an "investment injury" distinct from the injury caused by the predicate acts alone. *See Globe Wholesale Tobacco Distrib.*, 2007 WL 2826630, at *5 (dismissing plaintiff's Section 1962(a) claims because "the complaint does not allege any facts to support an inference that the plaintiff suffered an investment injury distinct from any injury suffered as a result of the predicate acts"); *Soberman v. Groff Studios Corp.*, 99 Civ. 1005, 1999 WL 349989, at *5 (S.D.N.Y. June 1, 1999) ("allegations that money was used or invested to further the same scheme are insufficient [to state a claim under section 1962(a) ], since they do not allege a distinct [investment] injury").

With respect to its section 1962(b) claims, the complaint states only bare bones allegations that the defendants have acquired or maintained an interest in a racketeering enterprise. (*See* Compl. ¶¶ 38, 52.) Plaintiff fails to indicate what injury, if any, resulted from an alleged violation of section 1962(b) and how that injury is distinct from the injury caused by the predicate acts. *See Discon*, 93 F.3d at 1062-63 (dismissing Section 1962(b) claim because plaintiff failed to "allege a 'use or investment injury' that is distinct from the injuries resulting from predicate acts"). Furthermore, plaintiff does not respond to defendants' argument that it has failed allege an "acquisition or maintenance injury" other than by referencing its cursory statements in the complaint, which simply track section 1962(b)'s language.

Accordingly, because the Gristede's has failed to state both an "investment injury" and an "acquisition or maintenance injury" distinct from the injury caused by the predicate acts, its section 1962(a) and section 1962(b) claims are dismissed.

**3. Plaintiff's RICO Section 1962(d) Claim**

*7 Finally, Gristede's asserts a cause of action under section 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of "sections 1962(a), (b), or (c).18 U.S.C. § 1962(d). To establish the existence of a RICO conspiracy, a plaintiff must prove "the existence of an agreement to violate RICO's substantive

provisions."*United States v. Sessa,* 125 F.3d 68, 71 (2d Cir.1997) (internal citation omitted). Thus, the plaintiff must allege that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise."*Id.*

Moreover, to establish standing to sue under section 1962(d), a plaintiff must satisfy the proximate cause requirement of section 1964(c). That is, a plaintiff must establish that he was injured and that his injury was proximately caused by an overt act committed in furtherance of the conspiracy. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1345-46 (2d Cir.1994). The overt act must be a section 1961 predicate act. *Id.* ("[S]tanding may be founded only upon injury from overt acts that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy.") (internal quotations omitted). In other words, "a § 1962(d) violation requires ... an agreement to commit the requisite predicate acts, followed by the commission of a predicate act that proximately causes injury to the plaintiff."*Id.* at 1346 n. 4.

In the instant case, the only injury that the plaintiff claims to have suffered is the same injury asserted for the alleged violations of section 1962(c), namely, lost profits arising from the defendant's sale of untaxed cigarettes. However, as explained above, these injuries were not proximately caused by the defendant's commission of the alleged predicate acts. Accordingly, the plaintiff has failed to establish standing to sue for violations of section 1962(d), and its claims must be dismissed.

Therefore, for the reasons discussed above, plaintiff's 18 U.S.C. §§ 1962(a), (b), (c), and (d) claims are dismissed.

## C. Lanham Act Claims

Plaintiff has asserted a cause action under the Lanham Act, 15 U.S.C. § 1125(a), based on defendants' advertising the sale of "tax-free" or "cheap" cigarettes. To establish an advertising claim under the Lanham Act, the plaintiff must demonstrate that the challenged advertisement is false.*Lipton v. The Nature Co.,* 71 F.3d 464, 474 (2d Cir.1995)."Falsity may be established by proving that

(1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers."*Id.*

In the instant case, the plaintiff alleges that, between 2000 and 2006, the defendants have repeatedly stated in advertisements and marketing that they sell cigarettes "tax-free" to all consumers. (Compl.¶¶ 65, 67.) The plaintiff further alleges that these advertisements are false and misleading because the cigarette sales are not tax-free under New York law. (Compl.¶ 66).

*8 Article 20 of the New York Tax Law imposes a tax on all cigarettes possessed in New York State except for those cigarettes that New York is "without power" to tax. *See Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc.,* 512 U.S. 61, 114 S.Ct. 2028, 129 L.Ed.2d 52 (1994) (citing N.Y.Tax Law § 471(1)). New York's cigarette tax has two components: the cigarette tax imposed on possession for sale in the state pursuant to Tax Law section 471 (the "cigarette sales tax"); and the cigarette use tax imposed pursuant to Tax Law section 471-a (the "cigarette use tax"). The state cigarette use tax must be paid by any person who uses (i.e., possesses, stores, retains, imports, etc.) cigarettes in the state, not including possession for sale, for which the state cigarette sales tax has not been paid and where the use of the cigarettes is not exempt from the Article 20 tax. *See* N.Y. Tax Law § 471-a.

New York lacks authority to tax cigarettes sold to tribal members for their own consumption. Thus, cigarettes to be consumed on the reservation by enrolled tribal members are tax-exempt. *Milhelm Attea & Bros., Inc.,* 512 U.S. at 64 (citing *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 475-481, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976)). However, "on-reservation cigarette sales to persons other than reservation Indians ... are legitimately subject to state taxation."*Id.* (citing *Washington v. Confederated Tribes of Colville Reservation,* 447 U.S. 134, 160-161, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980)).

There is currently a dispute in New York State as to whether and how to collect taxes on cigarettes sold on reservations to persons other than tribal members. Under New York tax law, the burden of collecting the cigarette sales tax falls on wholesalers. N.Y. Tax Law § 471(2). Wholesalers collect cigarette sales tax by selling cigarettes affixed with tax stamps to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                          Page 7
Slip Copy, 2007 WL 4232778 (E.D.N.Y.), RICO Bus.Disp.Guide 11,412
**(Cite as: Slip Copy)**

retailers and remitting the tax payments to the state. However, the New York State Department of Taxation and Finance has allowed wholesalers to sell unstamped cigarettes to tribes, without requiring an accounting to reflect that the unstamped cigarettes are being sold only to reservation Indians. (Exh. 1, State of New York Commissioner of Taxation and Finance, Advisory Opinion Petition no. M06316A, March 16, 2006 ("The New York State Department of Taxation and Finance has a long-standing policy of allowing untaxed cigarettes to be sold from licensed stamping agents to recognized Indian Nations and reservation-based retailed making sales from qualified Indian reservations.").)

In 2005, New York passed a new tax law that would require wholesalers to sell only stamped cigarettes to Indian tribes. *See* N.Y. Tax Law § 471-e. Under the new scheme, tribes would be granted reimbursement coupons on a quarterly basis. *Id.* Those coupons would allow the possessor to purchase stamped cigarettes without paying taxes. However, a New York State Supreme Court decision has preliminarily enjoined the enforcement of § 471-e. *See Day Wholesale v. State of New York,* No. 06-7688, slip op. at 5 (N.Y.Sup.Ct. Jan. 2, 2007) (holding that § 471-e"is not in effect because on March 1, 2006 and subsequent thereto there has not been actions taken or rules and regulations issued that would be necessary to implement the provisions of this act"). Accordingly, wholesalers continue to sell unstamped cigarettes to reservation retailers.

\*9 Regardless of whether the State of New York allows wholesalers or reservation retailers to sell unstamped cigarettes, however, it is clear that the "ultimate incidence of and liability for the tax [is] upon the consumer." N.Y. Tax Law § 471(2). When a non-Indian consumer in New York uses more than four-hundred cigarettes on which no cigarette sales tax has been used, he must pay a cigarette use tax on those cigarettes, at a rate of $1.50 per twenty-pack of cigarettes. N.Y. Tax Law § 471a. The consumer must pay that tax by filing a CG-15 Cigarette Use Tax Return to New York State within 24 hours of the incurring the tax liability. It is a misdemeanor for any person required to file a CG-15 to willfully fail to do so. N.Y. Tax Law § 1814(b). It is also a misdemeanor for any person to "willfully attempt[ ] in any manner to evade or defeat" the cigarette tax. N.Y. Tax Law § 1814(a). In addition, to discourage the sale of untaxed cigarettes, New York Tax Law § 481(b)(i) provides for the imposition of a penalty, in the

amount of $150 per two hundred cigarettes, upon a person in possession of unstamped or unlawfully stamped cigarettes. Accordingly, even if reservation retailers sell unstamped cigarettes to non-Indian consumers, and even if such sales are lawful, the non-Indian consumer in New York must still pay taxes on those cigarettes, and is subject to a fine if he does not. *See In re John H. Davis, DTA,* No. 850262, 2006 WL 2106182 (N.Y.Div.Tax.App. July 20, 2006) (affirming imposition of $15,000 penalty for person in possession of over 20,000 unstamped cigarettes that he purchased from Indian smoke shop located on Long Island reservation).

Thus, although the defendants advertise their cigarettes as "tax-free," non-Indian purchasers are still required to pay taxes on those cigarettes to New York State. To the extent that the defendants' alleged advertisements lead consumers to believe that they need not pay any taxes on the cigarettes sold on Indian reservations, those advertisements may be "false advertising" under the Lanham Act. Defendants' motions to dismiss Gristede's false advertising claim under the Lanham Act, therefore, are denied.

**D. State Law Deceptive Acts and False Advertising Claims**

New York General Business Law § 349 makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."Similarly, New York General Business Law § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

To establish a *prima facie* case under section 349, a plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."*Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000) (citing *Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y.1995)). "Deceptive acts" are defined as acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances."*Id.* at 522 (quoting *Local 214 Pension Fund,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741). The Second Circuit has applied the same interpretation to section 350. *Id.* (citing *Galerie*

Slip Copy                                                                                                                    Page 8
Slip Copy, 2007 WL 4232778 (E.D.N.Y.), RICO Bus.Disp.Guide 11,412
**(Cite as: Slip Copy)**

*Furstenberg v. Coffaro*, 697 F.Supp. 1282, 1291-92 (S.D.N.Y.1988)). Indeed, courts have noted that the standards under both sections are substantively identical. *See e.g. C.V. Starr & Co., Inc. v. Am. Int'l Group*, No. 06-CV-2157, 2006 WL 2527565, at *3 (S.D.N.Y. Sept. 14, 2006).

*10 Under both sections 349 and 350, "[a]ny person who has been injured by reasons of a violation of [sections 349 and 350] of this article may bring an action in his own name."*Krasnyi Oktyabr, Inc. v. Trilini Imports*, No. CV-05-5359, 2007 WL 1017620, at *12 (E.D.N.Y. Mar. 30, 2007) (citations omitted); *see*N.Y. Gen. Bus. Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring an action in his own name ...."); N.Y. Gen. Bus. Law § 350e-(3) ("Any person who has been injured by reason of any violation of [section 350] may bring an action in his own name ...."). The Second Circuit has noted that "corporate competitors ... have standing to bring a claim ... so long as some harm to the public at large is at issue."*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 257 (2d Cir.1995) (quoting *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc. .*, 786 F.Supp. 182, 215 (E.D.N.Y.), *vacated in part on other grounds,*973 F.2d 1033 (2d Cir.1992)); *see also, City of New York v. Cyco.Net, Inc.,* 383 F.Supp.2d 526, 561-62 (S.D.N.Y.2005); *Constr. Tech., Inc. v. Lockformer Co.,* 704 F.Supp. 1212, 1222 (S.D.N.Y.1989). "The critical question" in assessing a suit by a corporate competitor "is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor."*Securitron*, 65 F.3d at 257.

Although defendants argue that the plaintiff has failed to allege any harm to the public at large, it is clear that a significant portion of the injury at issue in the instant claim is an injury to the public. That is, if plaintiff's allegations are true, the defendants are defrauding the state of tax revenue and inducing consumers to violate tax laws by purchasing unstamped cigarettes, thereby exposing those consumers to criminal fines. These allegations are sufficient to establish plaintiff's standing to sue under sections 349 and 350.

The defendants also argue that plaintiff has failed to state a claim for relief under sections 349 and 350 because it has failed to assert any misleading or deceptive act, practice, or advertisement. However, as discussed in relation to the plaintiff's Lanham Act

claims, while wholesalers continue to sell unstamped cigarettes to Indian retailers, a non-Indian consumer purchasing from an Indian retailer remains responsible for paying taxes on those cigarettes. Accordingly, to the extent that plaintiff's allegations are true and the defendants advertise that their cigarettes are tax-free, this is misrepresentation, as it is likely to mislead the consumer into believing that he or she need not pay taxes on purchased cigarettes. Thus, Gristede's has properly alleged a misleading and deceptive act, practice or advertisement under sections 349 and 350.

**1. Plaintiff's claims are limited by a three-year statute of limitations**

When a federal court presides over supplemental state law claims, state substantive law controls. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Statute of limitations is part of New York substantive law. *See e.g. Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir.2002); *Architectronics, Inc. v. Control Systems, Inc.,* 935 F.Supp. 425, 430-31 (S.D.N.Y.1996).

*11 Defendants assert that plaintiff's claims alleging violations of section 349 and section 350 are governed by the three-year statute of limitations of section 214(2) of the New York Civil Practice Law and Rules. *See Gaidon v. Guardian Life Ins. Co.,* 94 N.Y.2d 330, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999) ("*Gaidon I*"); *Beller v. William Penn Life Insurance Co.,* 8 A.D.3d 310, 314, 778 N.Y.S.2d 82 (N.Y.App.Div.2004) ("A General Business Law § 349 cause of action is governed by a three-year limitations period, which accrues when the plaintiff has been injured by a deceptive trade act or practice in violation of the statute."). The plaintiff argues that a six-year statute of limitations applies, as these section 349 and 350 actions are grounded in fraud and the common law statute of limitations for fraud is six years.

As the New York Court of Appeals explained, "claims which, although provided for in a statute, merely codify or implement an existing common-law liability, ... are not governed by CPLR 214(2) but by the Statute of Limitations applicable to their common-law sources."*Gaidon v. Guardian Life Ins. Co.,* 96 N.Y.2d 201, 209-10, 727 N.Y.S.2d 30, 750 N.E.2d 1078 (N.Y.2001) ( "*Gaidon II*" ) (quoting

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 9
Slip Copy, 2007 WL 4232778 (E.D.N.Y.), RICO Bus.Disp.Guide 11,412
(Cite as: Slip Copy)

*Matter of Motor Vehicle Acc. Indem. Corp. v. Aetna Cas. & Sur. Co.,* 89 N.Y.2d 214, 220-221, 652 N.Y.S.2d 584, 674 N.E.2d 1349 (N.Y.1996). In contrast, section 214(2) applies to "claims which, although akin to common-law causes, would not exist but for the statute."*Id. at 209, 652 N.Y.S.2d 584, 674 N.E.2d 1349* (quoting *Matter of Motor Vehicle Acc. Indem. Corp.,* 89 N.Y.2d at 220-21, 652 N.Y.S.2d 584, 674 N.E.2d 1349).

The Court of Appeals has concluded that section 349, "as invoked in this case, falls in the latter category. While section 349 may cover conduct 'akin' to common-law fraud, it encompasses a far greater range of claims that were never legally cognizable before its enactment."*Id.* In particular, " § 349 contemplates actionable conduct that does not necessarily rise to the level of fraud. In contrast to common-law fraud ...§ 349 is a creature of statute based on broad consumer-protection concerns."*Id.*Section 350 is interpreted similarly. The Court of Appeals has noted that "[t]he scope of [section] 350 is equally broad [as section 349], prohibiting the promulgation of false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."*Karlin v. IVF America, Inc.,* 93 N.Y.2d 282, 290, 690 N.Y.S.2d 495, 712 N.E.2d 662 (N.Y.1999) (internal quotations omitted).Section 350"has elements different from, and more relaxed than, common law fraud."*Williams v. Dow Chemical Co.,* No. 01-cv-4307, 2004 WL 1348932, at *6 (S.D.N.Y. Jun 16, 2004).

Accordingly, Sections 349 and 350 are governed by CPLR § 214(2).*Williams v. Dow Chemical Co.,* 2004 WL 1348932, at *6 (citing *Soskel v. Handler,* 189 Misc.2d 795, 736 N.Y.S.2d 853 (N.Y.Sup.Ct.2001) (applying CPLR § 214(2) to section 350 claim under a *Gaidon II* analysis). Since *Gaidon II,* New York courts have uniformly applied a three-year statute of limitations to section 349 and section 350 cases. *See, e.g., Morelli v. Weider Nutrition Group, Inc.* 275 A.D.2d 607, 712 N.Y.S.2d 551 (N.Y.App.Div.2000) ("Claims pursuant to General Business Law § 349 are governed by the three-year limitation period set forth in CPLR 214(2).") (citing *Cole v. Equitable Life Assur. Soc'y.,* 271 A.D.2d 271, 707 N.Y.S.2d 56, 57 (N.Y.App.Div.2000)); *Avdon Capitol Corp. v. Nationwide Mut. Fire Ins. Co.,* 240 A.D.2d 353, 658 N.Y.S.2d 383 (N.Y.App.Div.1997); *Rabouin v. Metropolitan Life Ins. Co.,* 814 N.Y.S.2d 564 (Table)

(N.Y.Sup.Ct.2005) (same); *Soskel v. Handler,* 189 Misc.2d 795, 736 N.Y.S.2d 853 (N.Y.Sup.Ct.2001) (applying C.P.L.R. § 214(2) to section 350 claim under a *Gaidon II* analysis); *see also Leider v. Ralfe,* No. 01 Civ. 3137, 2004 WL 1773330 at *9 n. 5 (S.D.N.Y. Jul.30, 2004) (citing *Gaidon II,* 96 N.Y.2d at 211-12, 727 N.Y.S.2d 30, 750 N.E.2d 1078, for the proposition that the statute of limitations for claims brought under Sections 349 and 350 is three years). The sole case cited by the plaintiff in support of a six-year statute of limitations, *Quiroga v. Fall River Music, Inc.,* No. 93-CV-3914, 1995 WL 103842 (S.D.N.Y. Mar.7, 1995), was decided prior to *Gaidon II.*

*12 The claims asserted here under sections 349 and 350 are clearly broader than common law fraud. Accordingly, this Court concludes that a three-year statute of limitations applies to both the section 349 and 350 claims.

**2. Time bar**

Under New York law, a claimant's cause of action accrues upon injury by the deceptive act or practice, *i.e.,*"when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief."*Gaidon II,* 96 N.Y.2d at 210, 727 N.Y.S.2d 30, 750 N.E.2d 1078;*Beller,* 8 A.D.3d at 314, 778 N.Y.S.2d 82. The defendants argue that "[t]here are no tolling provisions which allow for renewal of the limitations period under N.Y. Gen. Bus. Law" and that "the claim accrues only once (as of the date of the initial injury) and does not continue to accrue upon each subsequent violation."

While the Court agrees that plaintiff's cause of action accrues upon injury, it notes that plaintiff has alleged more than one act of deception and false advertisement under sections 349 and 350. (See Compl. ¶ 74 ("defendants have ... stated, through the Internet, the mail, in newspaper advertising, in billboards and through telephone marketing, that they sell ... cigarettes 'tax-free' ....").) Insofar as each deceptive act or false advertisement, subsequent to the first, may convey misinformation to additional consumers and inflict new injuries, it is not clear to the Court that plaintiff's claims under Sections 349 and 350 are time barred in their entirety. Thus, although Gristede's may not assert any claims which arose prior to March 20, 2003, three years before the complaint was filed, the Court declines to dismiss

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

claims based upon conduct taking place on or after that date.

### E. State Law Unfair Competition Claims

Plaintiff's sixth claim for relief alleges that "the defendants, through the illegal sale of cigarettes ... have obtained an unfair competitive advantage over the plaintiff."(Complaint ¶ 85.) Under New York law, the "essence" of a common law claim of unfair competition "is that the defendant has misappropriated the labors and expenditures of another."*Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1044 (2d Cir.1980).* That is, "[a] cause of action for unfair competition requires unfairness and an unjustifiable attempt to profit from another's expenditure of time, labors and talent ...."*Roy Export Co. Establishment Etc. v. Columbia Broadcasting System, Inc., 503 F.Supp. 1137, 1151-1152 (S.D.N.Y.1980); Coors Brewing Co. v. Anheuser-Busch Co., 802 F.Supp. 965, 975 (S.D.N.Y.1992).* It is not sufficient for the plaintiff to assert that the defendants' actions are unfair. Rather, the plaintiff must allege that the defendants misappropriated its labors and expenditures. As Gristede's has failed to do so, its unfair competition claims is dismissed.

### F. Unjust Enrichment

"Under New York law, a plaintiff asserting a claim of unjust enrichment must show that the defendant was enriched at the plaintiff's expense and that equity and good conscience require the plaintiff to recover the enrichment from the defendant."*Golden Pacific Bancorp. v. F.D.I.C., 375 F.3d 196, 203 n. 8 (2d Cir.2004)* (citing *Lake Minnewaska Mountain Houses, Inc. v. Rekis, 259 A.D.2d 797, 686 N.Y.S.2d 186 (3d Dep't 1999)*)."The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'"*Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir.2000)* (quoting *City of Syracuse v. R.A. C. Holding, Inc., 258 A.D.2d 905, 685 N.Y.S.2d 381 (4th Dep't 1999)*)."It is important to note, however, the nature of an unjust enrichment claim in New York: 'The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement.'"*Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 575, 586 (2d Cir.2006)* (quoting *Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005)*).

*13 Although there is conflicting authority on the extent of the relationship required between the plaintiff and defendant in order to sustain a claim for unjust enrichment, *compare Reading Int'l, Inc. v. Oaktree Capital Mgmt., 317 F.Supp.2d 301, 333-34 (S.D.N.Y.2003)* (claims for unjust enrichment "clearly contemplate that a defendant and plaintiff must have had some type of direct dealings or an actual, substantive relationship"), *with Cox v. Microsoft Corp., 8. A.D.3d 39, 40-41 (1st Dep't 2004)* (direct dealing not required to state a claim for unjust enrichment), the weight of authority suggests that there are circumstances where the relationship between a plaintiff and defendant is simply too attenuated to support this claim. *See Sperry v. Crompton Corp., 8 N.Y.3d 204, 215-16, 831 N.Y.S.2d 760, 863 N.E.2d 1012 (N.Y.2007)* (holding that while privity is not required, the connection between plaintiff and defendant is too attenuated to support an unjust enrichment claim); *State ex rel. Spitzer v. Daicel Chemical Industries, Ltd., 42 A.D.3d 301, 840 N.Y.S.2d 8. 12 (1st Dep't 2007)* (same); *In re Canon Cameras, No. 05 Civ. 7233, 2006 WL 1751245, at *2 (S.D.N.Y. June 23, 2006)* (the relationship between the plaintiff and a particular defendant "may be too attenuated to support an unjust enrichment claim"); *Redtail Leasing, Inc. v. Bellezza, No. 95-5191, 1997 WL 603496, at *8 (S.D.N.Y. Sept.30, 1997)* ("[A]n unjust enrichment claim, which is a quasi-contract claim, requires some type of direct dealing or actual, substantive relationship with a defendant."); *In re Motel 6 Sec. Litig., Nos. 93-2183, 93-2866, 1997 WL 154011, at *7 (S.D.N.Y. Apr.2, 1997)* ("The requirements [of unjust enrichment] clearly contemplate that the defendant and the plaintiff must have had some type of direct dealing, an actual relationship or some greater substantive connection than is alleged in this case.").

In the instant case, plaintiff has alleged no prior course of dealing with the defendants. *See Reading Int'l, Inc., 317 F.Supp.2d at 334* (finding no unjust enrichment claim as plaintiff has "not alleged that they had a contractual or quasi-contractual relationship with defendants, and in fact have alleged no prior course of business dealings with defendants whatsoever"). Rather, plaintiff simply asserts that the defendants have been unjustly enriched by "illegally and improperly [selling] cigarettes in New York without charging applicable excise and sales taxes," and that this "conduct has improperly diverted

Slip Copy                                                                 Page 11
Slip Copy, 2007 WL 4232778 (E.D.N.Y.), RICO Bus.Disp.Guide 11,412
**(Cite as: Slip Copy)**

cigarette sales from the Plaintiff."(Compl.¶¶ 89-90.) Although the plaintiff's claim recites the elements of unjust enrichment under New York law, the connection between plaintiff and defendant is too attenuated to support the claim. Allowing plaintiff to maintain such a claim "would remove the elements of unjust enrichment from the context in which they must be viewed: as an alternative to contract, where a contractual relationship has legally failed."*Reading Int'l, Inc. ,* 317 F.Supp.2d at 333-34 (citing *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 905 (2d Cir.1997) ("[U]nder the quasi-contractual doctrine of unjust enrichment, courts may infer the existence of an implied contract to prevent one person who has obtained a benefit from another ... from unjustly enriching himself at the other party's expense."). Accordingly, plaintiff's unjust enrichment claim fails.

## CONCLUSION

*14 For the reasons set forth above, the defendants' motions to dismiss Gristede's RICO claims, state law unfair competition claims, and unjust enrichment claims are granted. The defendants' motions to dismiss the remaining claims are denied. Furthermore, the plaintiff is granted leave to replead so as to properly name the Unkechauge defendants.

SO ORDERED.

E.D.N.Y.,2007.
Gristede's Foods, Inc. v. Unkechauge Nation
Slip Copy, 2007 WL 4232778 (E.D.N.Y.), RICO Bus.Disp.Guide 11,412

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 8

Westlaw.

Not Reported in F.Supp.                                                                              Page 1
Not Reported in F.Supp., 1997 WL 154011 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,454, RICO Bus.Disp.Guide 9255
(Cite as: Not Reported in F.Supp.)

**H**In re Motel 6 Securities Litigation
S.D.N.Y.,1997.

United States District Court,S.D. New York.
In re MOTEL 6 SECURITIES LITIGATION.
REDTAIL LEASING, INC., individually and on
behalf of all others similarly situated, Plaintiffs,
v.
Hugh THRASHER, et al., Defendants.
Robert J. ROSENER, individually and on behalf of
all others similarly situated, Plaintiffs,
v.
Hugh THRASHER, et al., Defendants.
Nos. 93 Civ. 2183 (JFK), 93 Civ. 2866 (JFK).

April 2, 1997.

Sachnoff & Weaver, Chicago, IL, (Jonathan S.
Quinn, John W. Moynihan, of counsel), Lawrence
Walner & Associates, Chicago, IL, (Lawrence
Walner, of counsel), Robin J. Oahana, Chicago, IL,
(Robin J. Oahana, of counsel), Susman, Buehler &
Watkins, Chicago, IL, (Charles R. Watkins, of
counsel), Chicago, IL, Pollack & Greene, L.L.P.,
New York City, (Alan M. Pollack, of counsel), for
Plaintiffs.
Nagler & Associates, Beverly Hills, CA, (Lawrence
H. Nagler, Robert M. Zaab, of counsel), for Jonathan
Hirsh.

*OPINION AND ORDER*

KEENAN, District Judge.
*1 Before the Court is Defendant Jonathan
Hirsh's motion to dismiss, pursuant to Fed. R. Civ.
Pro. 12(b)(6), Plaintiffs' Securities Exchange Act
claims, New York General Business Law claim, and
common law fraud and unjust enrichment claims. For
the reasons stated below, the Court grants
Defendant's motion in part and denies Defendant's
motion in part.

*Background*

Plaintiffs allege a nationwide insider trading
scheme by persons who possessed material,
nonpublic information concerning the proposed
acquisition of Motel 6, L.P., a Dallas-based national

chain of owner-operated economy motels, by Accor,
S.A. ("Accor"), a French-based company.[FN1]
Plaintiffs were the holders of call options on Motel 6
securities. Plaintiffs assert that Defendants were part
of a conspiracy to trade on highly sensitive inside
information about tender offer negotiations occurring
in New York between Motel 6's largest shareholder,
Kohlberg Kravis Roberts & Company ("KKR"), and
Accor. Defendant Hugh Thrasher ("Thrasher") was
executive vice-president of Motel 6 in charge of
communication at the time of the tender offer
negotiations. Thrasher allegedly tipped Carl V. Harris
("Harris") about the tender offer negotiations in May
1990. Am. Compl. ¶¶ 94-95. Harris then allegedly
told nine others, including Defendant Jeffrey Sanker.
Am. Compl. ¶¶ 97-99, 110-12, 121, 125, 162, 177-
180. Jeffrey Sanker allegedly tipped Defendant
Jonathan Hirsh, who then purchased Motel 6 call
options. Am. Compl. 168-169. Plaintiffs claim Hirsh
realized illegal profits of at least $29,262 from these
transactions in his personal securities accounts. Am.
Compl. ¶ 169. Hirsh also allegedly entered into a
partnership with Defendant Lee Rosenblatt to trade
Motel 6 securities through Rosenblatt's securities
account and split the illegal profits. Pursuant to that
partnership, these Defendants realized profits of
about $360,000, of which Defendant Hirsh received
$180,000. Am. Compl. ¶¶ 170-74. Hirsh is also
alleged to have tipped Defendant Roger Odwak. Am
Compl. ¶¶ 175-76.

> FN1. The Court has also discussed the facts
> underlying this action in *In re Motel 6
> Securities Litigation v. Thrasher*, No. 93-
> 2183, 1995 WL 431326 (S.D.N.Y. July 20,
> 1995). That decision addressed a prior
> motion to dismiss by certain other
> Defendants in this action and provides a
> background against which this Court bases
> this decision.

Plaintiffs further contend that the scheme to trade
on inside information also included a conspiracy to
cover-up the alleged tipping and trading activity
through fraud, perjury, money laundering, the
widespread dissemination of inside information, and
the willful failure to disclose material facts. Am.
Compl. ¶¶ 69, 87, 164, 189, 200, 201, 206-07, 212,
224.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1997 WL 154011 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,454, RICO Bus.Disp.Guide 9255
(Cite as: Not Reported in F.Supp.)

*Discussion*

A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The factual allegations set forth in the complaint must be accepted as true, *see Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990), and the Court must view the allegations in the light most favorable to the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

*2 As a preliminary matter, the Court will not readdress arguments addressed or decided in the July 5, 1995 Opinion and Order denying a motion to dismiss the RICO claims by Defendants Chammah, Kuznetsky, Schor, Thrasher, and Darrell Sandy Marsh. The Court assumes the readers' familiarity with that decision. Additionally, the Court notes that in his reply papers Defendant Hirsh raised an argument regarding Plaintiffs' failure to specifically allege their losses for RICO standing. In that Hirsh did not raise this argument in his papers in support of the motion to dismiss, and Plaintiffs did not have a chance to address the argument, the Court declines to address the issue raised for the first time in reply papers.

A. The Securities Exchange Act Claims

Defendant Hirsh argues that the Securities Exchange Act claims must be dismissed because the Amended Complaint fails to allege that Plaintiffs' trades were contemporaneous with those of Hirsh.

The Second Circuit has held that only those investors who trade contemporaneously with the inside trader have standing to sue on an insider trading claim. *See Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 94-95 (2d Cir.1981). Defendant argues that Plaintiffs have not adequately pleaded contemporaneous trading because the Amended Complaint does not specifically allege the dates of the purchases and sales of Hirsh and Plaintiffs to demonstrate contemporaneous trading. Defendant therefore contends that the Plaintiffs have not demonstrated standing and the federal securities law claims must be dismissed.

In the September 16, 1996 decision granting Plaintiffs' motion for class certification, this Court addressed the issue as to the adequacy of Plaintiffs' allegations that they traded contemporaneously with the Defendants. Several Defendants had argued that the Plaintiffs did not have standing because they "pleaded the bare legal conclusion that they traded 'contemporaneously' with defendants but only plaintiff Redtail has specified in the Amended Complaint what it traded and when." Defs. Joint Mem. in Supp. of Class Cert. at 20. Addressing this argument, the Court stated:

Defendants also argue that the proposed class representatives are inadequate because the proposed representatives, especially Hull Trading, are not contemporaneous sellers of securities and therefore lack standing ... The Court disagrees. The Court finds that a motion to dismiss and not a motion for class certification would have been the proper vehicle to raise this argument. The Court nevertheless finds that Plaintiffs adequately alleged the standing of the proposed representatives such that they would have survived a pre-discovery motion to dismiss: any more detailed examination of the representative Plaintiffs' contemporaneous trading status before discovery and the development of the record would be premature. Defendants are of course free to reassert their argument under the contemporaneous trading rule after discovery as a defense to liability.

*3*In re Motel 6 Securities Litigation*, 1996 WL 531819, at *2 (S.D.N.Y. Sept.18, 1996). This holding is equally applicable to the argument Defendant Hirsh makes here.

B. The RICO Claims

Defendant argues that the RICO claims must be dismissed because the Amended Complaint fails to plead (1) a causal connection between the RICO violation and Plaintiffs' injury, and (2) the required pattern of racketeering activity.

1. RICO's Proximate Cause Requirement

Defendant asserts that the RICO claims are governed by common law concepts of proximate cause, which are narrower than the proximate cause requirement for a § 10(b) insider trading claim based upon material omissions brought by contemporaneous traders on a public market.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1997 WL 154011 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,454, RICO Bus.Disp.Guide 9255
(Cite as: Not Reported in F.Supp.)

Defendant recognizes that for this particular type of § 10(b) securities fraud claim a plaintiff need not demonstrate contractual privity or actual reliance on a defendant's omissions of material inside information. The contemporaneous trading requirement serves as a proxy for contractual privity in a § 10(b) claim, and consequently, a plaintiff need not show actual reliance on the omission for standing in such an insider trading action. However, the RICO proximate cause requirement means that a plaintiff must prove both transaction and loss causation, which requires actual reliance, and therefore Defendant argues that Plaintiffs must show a direct relationship between the fraud-doing defendant and the RICO plaintiff. Insofar as Plaintiff has not adequately alleged privity with Defendant Hirsh or actual reliance on his material omission, Defendant contends that the RICO claims based on securities fraud cannot survive because Plaintiff has not adequately met the RICO proximate cause requirement. Defendant makes the argument that "since reliance-which is required under RICO, is *not* required under § 10(b) as broadly read to permit insider trading claims by contemporaneous traders on a public market, such claims are not actionable under RICO."Defs. Mem. in Supp. at 9.

The Supreme Court has held that where a material omission serves as the basis for the § 10(b) claim,

positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor [would] have considered them important in the making of this decision.

*Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153-54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *see also dupont v. Brady,* 828 F.2d 75, 78 (2d Cir.1987) (stating that for a § 10(b) and Rule 10b-5 claim, "in instances of total non-disclosure, ... it is of course impossible to demonstrate reliance" and finding that reliance may be presumed where the plaintiff proves that the facts withheld are material in the sense that a reasonable investor would have considered them important (quoting *Titan Group, Inc. v. Faggen,* 513 F.2d 234, 239 (2d Cir.), *cert. denied,*423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975))). Once a plaintiff shows the materiality of the omission for a § 10(b) claim, and thus reliance, defendant can avoid liability by proving by a preponderance of the evidence that disclosure of that information would not have altered plaintiff's investment decision. *See duPont,* 828 F.2d

at 78. In the instant case, Plaintiffs have adequately pleaded reliance to support a § 10(b) and Rule 10b-5 claim. The Court does not accept Hirsh's view that Plaintiffs, contemporaneous traders on a public market, alleging insider trading claims as a predicate act in a RICO action must show actual reliance on the omission and privity beyond that required for the § 10(b) claim. The Supreme Court, and this Circuit, have recognized that actual reliance need not be proved for a § 10(b) insider trading claim based on material omissions and brought by contemporaneous traders because it is near impossible to prove such reliance. To accept Defendant's argument-requiring proof of actual reliance for such § 10(b) nondisclosure claims which are pleaded as RICO predicate acts-would necessitate application of a standard of proof for such claims that the Supreme Court and this Circuit abandoned as unworkable. This Court declines to impose an actual reliance requirement for § 10(b) omission claims pleaded as predicate acts in RICO actions.

### 2. RICO Continuity Requirement

*4 Defendant Hirsh argues that in considering whether the RICO pattern requirement is met, including whether continuity is sufficiently alleged, the Court must separately evaluate the pattern of racketeering acts by each defendant. Hirsh contends that Plaintiffs have not sufficiently pleaded that he engaged in a pattern of racketeering activity because Plaintiffs do not adequately plead that he engaged in two predicate acts which represent a threat of continuity. Therefore, Hirsh argues that the RICO claims must be dismissed as against him. Hirsh also makes an argument that while Plaintiffs make general conspiracy allegations, Plaintiffs have not alleged a RICO conspiracy because (1) they make no claim under 18 U.S.C. § 1962(d), which is the exclusive means for asserting a RICO conspiracy claim, and (2) Plaintiffs' conspiracy allegations are too conclusory.

The Court finds that Plaintiffs have adequately pleaded a pattern of racketeering activity by Hirsh. Plaintiffs have alleged that the twenty-four Defendants, including Hirsh, were part of a RICO conspiracy to trade on material, nonpublic information concerning Motel 6 and that this scheme included a continuing conspiracy to conduct illegal acts to cover-up the alleged tipping and insider trading activity concerning Motel 6. Plaintiffs have sufficiently pleaded that Defendant Hirsh participated in two predicate acts: Hirsh made illegal trades on

Not Reported in F.Supp.                                                                                                   Page 4
Not Reported in F.Supp., 1997 WL 154011 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,454, RICO Bus.Disp.Guide 9255
(Cite as: Not Reported in F.Supp.)

inside information, utilizing mail or wire transmission to execute those trades, Am. Compl. ¶¶ 169, 194; Hirsh knowingly disclosed the inside information to Rosenblatt with the expectation of benefit and with knowledge that Rosenblatt would trade on that information, Am. Compl. ¶ 170; and Hirsh agreed to pay and paid Sanker for the tip, Am. Compl. ¶ 174. Whether these acts establish a threat of continued racketeering activity depends on the facts of each case, *H.J., Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 242, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195 (1989), and "external facts may ... provide evidence of the requisite threat of continuity...." *United States v. Kaplan*, 886 F.2d 536, 542-543 (2d Cir.1989), *cert. denied*,493 U.S. 1076, 110 S.Ct. 1127, 107 L.Ed.2d 1033 (1990). The Court need not examine one defendant's actions in isolation when considering continuity.

The allegations concerning Hirsh's activities indicate that Hirsh was aware that the insider trading was not limited to him, that others were involved in the tipping and trading, including a Motel 6 insider, and that the information was disseminated to many others who would trade on it. Plaintiffs allege a RICO conspiracy based upon close personal and business relationships among the Defendants. The Amended Complaint contains factual allegations that Defendants conspired to cover up the insider trading scheme through fraud, perjury, money laundering, the widespread dissemination of inside information, and the willful failure to disclose facts that they were under a legal duty to disclose. Am. Compl. ¶¶ 69, 87, 164, 189, 200, 201, 206-07, 212, 224. Defendant Hirsh is specifically alleged to have played a role in this widespread dissemination of inside information by tipping Rosenblatt and Odwak. Am. Compl. ¶¶ 170-175. In the July 5, 1995 decision, the Court viewed the allegations in the light most favorable to Plaintiffs and found that Plaintiffs had adequately pleaded continuity. The allegations concerning Hirsh's insider trading, his extending the conspiracy by disseminating information to others, his willingness to engage in the illegal actions of the conspiracy, and the close relationships among the Defendants, is enough at the pleading stage for this Court to find the same continuity. with respect to Hirsh that this Court found in the July 5, 1995 decision. The Court gives Plaintiffs the benefit of the doubt on 12(b)(6) motions. Viewing the allegations in the light most favorable to the pleaders and drawing all reasonable inferences in their favor, the Court will deny Hirsh's motion to dismiss the RICO

claims. Defendant Hirsh, however, may reassert these arguments and put the Plaintiffs to their proof in a post-discovery motion.

*5 The Court also finds that Plaintiffs have adequately pleaded a RICO conspiracy claim. The heading of the very first claim cites 18 U.S.C. § 1962(d) and includes allegations of violations of that statute. The Court also finds that Plaintiffs' factual allegations sufficiently support the conspiracy claim against Defendant Hirsh. This Court has stated:

[To demonstrate a RICO conspiracy, the plaintiff must show] that the defendant agree[d] to commit the substantive racketeering offense [here, Section 1962(b) and (c) ] through agreeing to participate in two predicate acts, ... that he [knew] the general nature of the conspiracy and that the conspiracy extend[ed] beyond his individual role.

*United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir.), *cert. denied*,493 U.S. 982, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989). In addition, those "two predicate crimes" must, as with every other RICO violation, constitute a pattern of racketeering activity. *United States v. Ruggiero*, 726 F.2d 913, 923 (2d Cir.), *cert. denied*,469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984). The Plaintiffs "need not prove that a conspirator-defendant agreed with every other conspirator, or knew all the other conspirators, or had full knowledge of all the details of the conspiracy." *United States v. Rastelli*, 870 F.2d at 828. As discussed above, Plaintiffs adequately pleaded that Hirsh engaged in two predicate acts which constituted a pattern, and the factual allegations support a conclusion that Hirsh knew the nature of the conspiracy and that the conspiracy extended beyond his role.

C. New York General Business Law Claim

Plaintiffs' New York General Business Law § 349(a) claim against Defendant Hirsh is dismissed for the same reasons this Court dismissed this claim against Defendants Chammah, Kuznetsky, Schor, Thrasher and Marsh in the July 5, 1995 Opinion and Order. *See In re Motel 6 Securities Litigation*, 1995 WL 431326, *6-7 (S.D.N.Y. July 20, 1995).

D. Common Law Fraud Claim

Defendant argues that because a common law fraud claim requires privity and actual reliance, and

Not Reported in F.Supp.                                                                Page 5
Not Reported in F.Supp., 1997 WL 154011 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,454, RICO Bus.Disp.Guide 9255
**(Cite as: Not Reported in F.Supp.)**

the Amended Complaint does not allege direct dealings between the Plaintiffs and Hirsh or any facts which demonstrate direct reliance on the omissions, the fraud claim must be dismissed. This Court agrees to the extent that Plaintiffs have failed to alleged facts to support a claim that they directly relied on Defendants' omissions.

Common law fraud claims must be supported by factual allegations demonstrating plaintiff's actual, direct reliance on the misrepresentation or omission. See *Golden Budha Corp. v. Canadian Land Co.*, 931 F.2d 196, 202 (2d Cir.1991); *Turtur v. Rothschild Registry Int'l. Inc.*, 1993 WL 338205, at *6 (S.D.N.Y, Aug.27, 1993); see also *Aniero Concrete Company, Inc. v. New York City Construction Authority*, 1997 WL 3268, at *13 (S.D.N.Y. Jan.3, 1997) ("The elements of fraudulent concealment under New York law are: a relationship between the contracting parties that creates a duty to disclose, knowledge of the material facts by the party bound to disclose, scienter, reliance, and damage."). Consequently, common law fraud claims

*6 are distinct from actions brought under the federal securities laws, which "permit a rebuttable presumption of reliance where a plaintiff purchases his shares on the open market."

Common law fraud cases such as the present one are therefore to be distinguished from cases that involved a fraud on the market theory or other theories in which reliance on a material omission is presumed to have existed and which are applicable primarily in the context of federal securities fraud claims arising under section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

*Turtur*, 1993 WL 338205, at *7 (citations omitted); see also *Basic Inc. v. Levinson*, 485 U.S. 224, 241-47, 108 S.Ct. 978, 988-91, 99 L.Ed.2d 194 (1988) (observing that actions under § 10(b) and Rule 10b-5 are distinct from common law deceit and misrepresentation claims and are designed to add to the protections provided investors by common law). Plaintiffs contend that for a common law fraud claim based on an "omission" theory, reliance is presumed upon a showing that the omissions were material and that the defendant had a duty to disclose. Pls. Mem. in Opp. at 23 (citing *Pollack v. Laidlaw Holdings, Inc.*, 1995 WL 261518, at *11 (S.D.N.Y. May 3, 1995)). Rather, this is the standard for showing reliance under a § 10(b) or Rule 10b-5 securities fraud claim based on a fraud on the market theory,

not common law fraud, and the sole case Plaintiffs cite for this proposition discussed reliance under § 10(b)-not common law fraud. See *Pollack*, 1995 WL 261518, at *11. Common law fraud claims do not enjoy a presumption of reliance once a material omission and duty to speak have been sufficiently pleaded. See *Turtur*, 1993 WL 338205, at *7 ("Because common law fraud claims must be supported by a showing of direct reliance on the misrepresentation or omission, they are distinct from actions brought under the federal securities laws, which 'permit a rebuttable presumption of reliance where a plaintiff purchases his shares on the open market.' "); *Schultz v. Commercial Programming Unlimited Inc.*, 1992 WL 396434, at *4 (S.D.N.Y.1992) (stating that "this Court will not permit Schultz to circumvent the [reliance] requirement by infusing the fraud on the market theory into his common law fraud action" and dismissing the common law fraud claim). Certainly, Plaintiffs have alleged facts to support a claim of reliance in their § 10(b) and Rule 10b-5 causes of action for insider trading based on a fraud on the market theory. However, where Plaintiffs' factual allegations focus solely on an insider trading conspiracy that perpetrated a fraud on the market, and Plaintiffs have alleged no connection to the Defendants other than the fact that Plaintiffs traded on the market contemporaneously with Defendants, Plaintiffs have not alleged facts to support a claim of actual, direct reliance on Defendants' omissions. In that Plaintiffs have failed to plead facts to support the direct reliance element of the common law fraud claim, the Court grants Defendant Hirsh's motion to dismiss the common law fraud claim. Cf., *In re 3COM Securities Litigation*, 761 F.Supp. 1411, 1419 (N.D.Cal.1990) (finding that Plaintiff adequately pleaded a 10b-5 claim, but dismissing common law fraud claim because Plaintiff had not adequately pleaded actual reliance).

E. Common Law Unjust Enrichment Claim

*7 Defendant assets that under New York law, unjust enrichment is a quasi-contract claim and therefore requires direct dealing between the parties to submit to the quasi-contract. In that Plaintiffs allege no such privity, direct dealings or actual relationship with Hirsh, Defendant argues that the unjust enrichment claim must be dismissed.

Plaintiffs counterargue that privity is not a required element of an unjust enrichment claim. In

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 6
Not Reported in F.Supp., 1997 WL 154011 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,454, RICO Bus.Disp.Guide 9255
**(Cite as: Not Reported in F.Supp.)**

support of their position that privity is not an express requirement of the claim, Plaintiffs correctly point out the elements required:

In order to recover for unjust enrichment under New York law, a plaintiff must show that (1) defendant was enriched, (2) enrichment was at plaintiff's expense and (3) the circumstances were such that equity and good conscience require defendant to make restitution.

Pls.' Mem. in Opp. at 24 (citing *Violette v. Armonk Associates, L.P., 872 F.Supp. 1279, 1282 (S.D.N.Y.1995)); see also Dolmetta v. Unitak Nat'l Corp., 712 F.2d 15, 20 (2d Cir.1983).*

This Court agrees with Defendant Hirsh's contention, that an unjust enrichment claim requires some type of direct dealing or actual, substantive relationship with a defendant. While the elements of the unjust enrichment claim quoted by Plaintiffs do not explicitly spell out such a requirement, those elements imply a more substantive relationship, or greater connection, between a defendant and plaintiff than Plaintiffs have alleged in this case. The requirements that a defendant be enriched at plaintiff's expense and that good conscience necessitate that defendant make restitution to plaintiff, clearly contemplate that a defendant and plaintiff must have had some type of direct dealings or an actual, substantive relationship.

In the instant case, Plaintiffs do not allege any direct dealings or actual, substantive relationship with Defendants other than a "contemporaneous" trading relationship. Plaintiffs claim that they sold their Motel Six shares or call options during the period in which Defendants purchased Six shares and options based upon material inside information regarding the impending acquisition of Motel Six by Accor. Plaintiffs contend that they would not have sold those shares or options had they known about the impending acquisition and that Defendants were unjustly enriched at Plaintiffs' expense in purchasing shares of Motel Six at the same time Plaintiffs sold their shares. These factual allegations do not sound in the quasi-contract common law claim of unjust enrichment. Without factual allegations that Plaintiffs had a more substantive connection to the Defendants beyond a contemporaneous trading relationship, Plaintiffs have not alleged facts to support a claim that Defendants were unjustly enriched at the Plaintiffs' expense and that Defendants should make restitution to Plaintiffs. Cf. *Martes v. USLIFE Corp.,*

927 F.Supp. 146, 149 (S.D.N.Y.1996) (holding that an unjust enrichment claim lies only where the defendant possesses money or received a benefit which defendant should not retain because it belongs to the plaintiff, and dismissing the unjust enrichment claim because defendant received nothing that belonged to plaintiff or had no contractual or other relationship with plaintiff). Therefore, the Court grants Defendant Hirsh's motion to dismiss the unjust enrichment claim.

*Conclusion*

**\*8** For the reasons stated above, the Court denies Defendant Hirsh's motion to dismiss the RICO and Securities and Exchange Act claims, and grants the motion to dismiss the New York General Business Law claim, and common law fraud and unjust enrichment claims.

SO ORDERED.

S.D.N.Y.,1997.
In re Motel 6 Securities Litigation
Not Reported in F.Supp., 1997 WL 154011 (S.D.N.Y.), Fed. Sec. L. Rep. P 99,454, RICO Bus.Disp.Guide 9255

END OF DOCUMENT